**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| OMAR HURLOCK, on behalf of himself and all others similarly situated,<br><br>    *Plaintiff,*<br><br>vs.<br><br>KELSIER VENTURES, KIP PROTOCOL, HAYDEN DAVIS, GIDEON DAVIS, METEORA, THOMAS DAVIS, JULIAN PEH, and BENJAMIN CHOW,<br><br>    *Defendants.* | Case No. 1:25-cv-03891 (JLR) |

**DEFENDANT HAYDEN DAVIS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR AN ORDER DISSOLVING THE TEMPORARY RESTRAINING ORDER ENTERED ON MAY 27, 2025**

**SBAITI & COMPANY PLLC**
Mazin A. Sbaiti, Esq.
New York Bar No. 4339057
2200 Ross Avenue – Suite 4900W
Dallas, TX 75201
T: (214) 432-2899
F: (214) 853-4367
E: mas@sbaitilaw.com


**M. CRIS ARMENTA, P.C.**
M. Cris Armenta
*Pro Hac Vice forthcoming*
 cris@crisarmenta.com
217 Clancy Way
Bozeman, MT 59718
T:: (310) 488-2080
F: (310) 421-1021
E: cris@crisarmenta.com


***COUNSEL FOR HAYDEN DAVIS***

# TABLE OF CONTENTS

TABLE OF CONTENTS................................................................................................. i

TABLE OF AUTHORITIES ............................................................................................

I.     INTRODUCTION .....................................................................................................1

II.    SUMMARY AND BACKGROUND ........................................................................1

III.   ARGUMENTS AND AUTHORITIES......................................................................5

     A.     Applicable Standards ...................................................................................5

     B.     Plaintiff Did Not Post the Required Bond ..................................................6

     C.     The TRO Has Otherwise Expired Under Rule 65 .......................................7

     D.     The TRO Is Void and Should Be Dissolved for Lack of
           Personal Jurisdiction ..................................................................................7

           1.     The Court Lacks Personal Jurisdiction Because Davis
                   Was Never Properly Served.........................................................8

           2.     There Is No Basis for Personal Jurisdiction Otherwise ...........9

     E.     There Is No Basis for the Prejudgment Remedy the Injunction
           Offers .......................................................................................................12

           1.     There Is No Basis to Conclude That "It Is Probable the
                   Plaintiff Will Succeed On the Merits" As to His Individual
                   Claims, Much Less for the Whole Class...................................13

           2.     There Is No Evidence of Irreparable Harm, Evidence of the
                   Risk of Dissipation, or That Mr. Davis Would Not Be Able to
                   Satisfy a Judgment ..................................................................17

     F.     The Bond Is Insufficient to Protect the Defendant's Interests...........................20

IV.   CONCLUSION.......................................................................................................20

# TABLE OF AUTHORITIES

## <u>Cases</u>

*Ambac Assurance Corp. v. Countrywide Home Loans, Inc.*,
  151 A.D.3d 83 (1st Dep't 2017) ...................................................................... 13-14

*Bank Leumi Tr. Co. v. Istim, Inc.*,
  892 F. Supp. 478 (S.D.N.Y. 1995) ...................................................................18

*Blessing v. Chandrasekhar*,
  988 F.3d 889 (6th Cir. 2021) ......................................................................... 11

*Brana v. Moravcik*,
  No. 1:19-cv-2802,  2020 U.S. Dist. LEXIS 153938, 2020 WL 5026502
  (N.D. Ohio, Aug. 25, 2020) ........................................................................... 11

*Bullock* v. *Doe*,
  No. 23-CV-3041, 2023 U.S. Dist. LEXIS 234778, 2023 WL 9503380
  (N.D. Iowa Nov. 3, 2023) .............................................................................. 18

*Chem. Bank v. Haseotes*,
  13 F.3d 569  (2d Cir. 1994) ........................................................................... 19

*Chen v. Individuals*,
  No. 24-60863, 2024 U.S. Dist. LEXIS 157855, 2024 WL 4003697
  (S.D. Fla. Aug. 8, 2024) .................................................................................. 6

*Citibank, N.A. v. Aralpa Holdings Ltd.  P'ship*,
  No. 1:22-cv-08842, 2023 U.S. Dist. LEXIS 226223, 2023 WL 8810142
  (S.D.N.Y. Sept, 19, 2023) .............................................................................. 18

*Elton Leather Corp. v. First Gen. Res. Co.*,
  138 A.D.2d 132 (1st Dept. 1988) .................................................................... 12

*Gaponyuk* v. *Alferov*,
  No. 2:23-cv-01317, 2023 U.S. Dist. LEXIS 125262, 2023 WL 4670043
  (E.D. Cal. July 20, 2023) ............................................................................... 18

*Ger-Nis Int'l LLC v. FJB, Inc.*,
  No. 07-CV-898, 2007 U.S. Dist. LEXIS 18403, 2007 WL 656851
  (S.D.N.Y. Mar. 1, 2007) ................................................................................ 18

*ICO Servs., Ltd. v. Coinme, Inc.*,
  No. 18 CIV 4276, 2018 U.S. Dist. LEXIS 212081, 2018 WL 6605854
  (S.D.N.Y. Dec. 17, 2018)................................................................................ 11

*In re Celsius Network LLC*,
   655 B.R. 301 (Bankr. S.D.N.Y. 2023)................................................................. 16

*In re Telescopes Antitrust Litig.*,
   No. 5:20-cv-03642, 2025 U.S. Dist. LEXIS 63593, 2025 WL 1002483
   (N.D. Cal. 2025)................................................................................................. 19

*Jacobo v. Doe*,
   No. 1:22-cv-00672, 2022 U.S. Dist. LEXIS 101504, 2022 WL 2052637
   (E.D. Cal. June 7, 2022)..................................................................................... 18

*Jones v. Brown*,
   518 Fed. App'x. 643 (11th Cir. 2013) ................................................................... 6

*Kao Hwa Shipping Co., S.A., v. China Steel Corp.*,
   816 F. Supp. 910 (S.D.N.Y. 1993) ....................................................................... 8

*Law Offices of Bruce E. Baldinge,r LLC v. Barchha*,
   No. 13cv9124, 2015 U.S. Dist. LEXIS 35156, 2015 WL 1284266
   (S.D.N.Y. Mar. 20, 2015) ..................................................................................... 6

*MacDermid, Inc. v. Deiter*,
   702 F.3d 725 (2d Cir. 2012) .................................................................................. 8

*Martin v. New York State Dep't of Mental Hygiene*,
   588 F.2d 371, 37 (2d Cir. 1978) ........................................................................... 9

*Mascis Inv. P'ship v. SG Cap. Corp.*,
   2017 NY Slip Op 30813 (Sup. Ct., N.Y. Co. Apr. 21, 2017) .............................. 12

*McGowan v. Smith*,
   52 N.Y.2d 268 (1981).......................................................................................... 10

*N. Am. Soccer League, LLC v. United States  Soccer Fed'n., Inc.*,
   883 F.3d 32 (2d Cir. 2018) .................................................................................... 5

*Northeast United Corp. v. Lewis*,
   137 A.D. 3d 1387 (3d Dep't 2016) ...................................................................... 12

*Okla. Firefighters Pension & Ret. Sys. v. Banco Santander (México) S.A.*,
   92 F.4th 450 (2d Cir. 2024)................................................................................. 10

*Olivadoti v. 290 Riverside Co., LLC*,
   No. 12 Civ. 386, 2012 U.S. Dist. LEXIS 64654, 2012 WL 1604906
   (S.D.N.Y. May 8, 2012) ........................................................................................ 8

*Omni Cap. Int'l v. Rudolf Wolff & Co..*,
    484 U.S. 97 (1987) ................................................................................... 8

*"R" Best Produce, Inc. v. DiSapio*,
    540 F.3d 115 (2d Cir. 2008) ...................................................................... 8

*Republic of Philippines v. Marcos*,
    806 F.2d 344 (2d Cir.1986) ..................................................................... 17

*Rosenthal v. Rochester Button Co., Inc.*,
    148 A.D.2d 375 (1st Dep't 1989) ............................................................ 12

*Royalty Network, Inc. v. Dishant.com.*,
638 F. Supp.2d 410 (S.D.N.Y. 2009) ........................................................ 11

*Societe Generale Alsacienne de Banque, Zurich v. Flemingdon Dev. Corp.*,
    118 A.D.2d 769 (2d Dep't 1986) ............................................................. 12

*Torre v. Kardooni*,
    No. 22-4693, 2022 U.S. Dist. LEXIS 227622, 2022 WL 17812193
    (D.N.J. Nov. 29, 2022) ............................................................................. 11

*Vanek v. Samsung EMS Co. Ltd.*,
    No. 23-cv-3127, 2024 U.S. Dist. LEXIS 215427, (S.D.N.Y. 2024) ........................ 8

*Vangheluwe v. Got News LLC*,
    365 F. Supp. 3d 850 (E.D. Mich. 2019) .................................................... 11

*VisionChina Media Inc. v. S'holder Representative Servs., LLC*,
    109 A.D.3d 49 (1st Dep't 2013) .......................................................... 12-13

*Von Bock v. Metro. Life Ins. Co.*,
    223 A.D.2d 700 (2d Dep't 1996) .............................................................. 20

*Weiss v. Weiss*,
    984 F.Supp. 682 (S.D.N.Y. 1997) ........................................................... 6-7

*Weitzen v. 130 E. 65th St. Sponsor Corp.*,
    86 A.D.2d 511 (1st Dep't 1982) ............................................................... 20

*Weitzman v. Stein*,
    897 F.2d 653 (2d Cir. 1990) ...................................................................... 7

*Winter v. NRDC, Inc.*,
    555 U.S. 7 (2008) ..................................................................................... 5

*Wishnatzki & Nathel, Inc. v. H.P. Island-Wide, Inc.*,
   No. 00 Civ. 8051, 2000 .S. Dist. LEXIS 15664, 2000 WL 1610790
   (S.D.N.Y. Oct. 27, 2000) .......................................................................... 17
*Yogaratnam* v. *Dubois*,
   No. 24-393, 2024 U.S. Dist. LEXIS 31033, 2024 WL 758387
   (E.D. La. Feb. 23, 2024) ........................................................................ 18

**Rules**

Fed. R. Civ. P. 9(b) ...................................................................................... 14

Fed. R. Civ. P. 64 ................................................................................... 12, 13

Fed. R. Civ. P. 65 ........................................................................................ 13

Fed. R. Civ. P. 65(b) ...................................................................................... 6

Fed. R. Civ. P. 65(b)(2) ............................................................................... 3, 7

Fed. R. Civ. P. 65(c) ...................................................................................... 6

NY CPLR § 3212(e) ..................................................................................... 20

NY CPLR § 5004(a) ..................................................................................... 20

NY CPLR §§ 6201 – 6219 ............................................................................ 12

NY CPLR § 6201(1) ......................................................................................12

NY CPLR 6212 ...................................................................................... 13, 17

NY CPLR 6212(a) ........................................................................................ 12

NY CPLR 6212(b) ........................................................................................ 20

**Other Authorities**

Charles Schwab, "What Are Meme Coins? Uses and Risks to Know" .................................................. 16

de Martino, D. Dario, et al, "Implications of the SEC's Stance that Meme Coins are not Securities,"
Harvard Law School Form on Corporate Governance (Mar. 19, 2025) ...................................................16

https://cointelegraph.com/news/argentina-anti-corruption-office-clears-milei-libra-case .......... 17

https://docs.meteora.ag/product-overview/damm-v2-overview#launch-single-sided-liquidity .. 14

https://medium.com/@duacrypto/you-will-lose-money-on-memecoins-c538874a4dee ....................... 16
https://www.quora.com/Do-you-think-more-people-will-lose-money-than-make-money-with-meme-coins-in-the-long-run. .....................................................................................................................16

Mastropietro, Beatrice, "Tokenomics for Meme Coins".................................................................. 16

Siegel, New York Practice § 317 (5th ed) ............................................................................12-13

U.S. Securities and Exchange Commission, Division of Corporation Finance, "Staff Statement on Meme Coins," (Feb. 27, 2025)............................................................................. 15

Wikipedia: https://en.wikipedia.org/wiki/Meme_coin...................................................................... 16

# I.

## __INTRODUCTION__

Undersigned counsel for Mr. Hayden Davis make this limited special appearance to challenge the Temporary Restraining Order entered on May 27, 2025, as to Mr. Davis, and respectfully, on behalf of Mr. Davis, submit that it should be formally dissolved immediately. Because of the effect of the TRO on the $LIBRA market, the TRO is not in the public's interest. Moreover, the TRO is not, and has never been, in effect for failure to effect service on Mr. Davis who is beyond the jurisdiction of this Court. Plaintiff did not even post the nominal $100 cash bond with the Clerk of Court, despite this Court's order that he do so within five days of the TRO. Pursuant to Rule 65(b)(4), movant respectfully gives the prescribed two days' notice and requests that the Court dissolve the TRO as to him as soon as practicable.

# II.

## __SUMMARY AND BACKGROUND__

The putative Class Action Complaint turns on the idea that Defendant Hayden Davis never intended for $LIBRA, a meme coin, to help Argentinian small businesses—making it "bogus" and a scam. Without averting to any actual evidence, the single New York-based Plaintiff contends he "lost" his investment because there was never a plan to send the proceeds of $LIBRA sales to Argentina, which Plaintiff says explains why there was a lack of market integrity for $LIBRA. The Viva La Libertad Project ("VVL Project") website referenced by Plaintiff unequivocally disclosed what was being offered to any purchaser: the ability to buy $LIBRA as part of an effort to help Argentinian small businesses, and nothing more. None of the allegations in the Complaint squares with this disclosure nor identifies any false disclosures, knowing or otherwise.

The Complaint elides the fact that *all* meme coins are unregulated, unsecured, and

1

speculative, and their markets are decentralized, inefficient, and volatile. The SEC has advised the public that meme coins are not securities— they are speculative investments, have no inherent value, and are mainly for affinity, entertainment, or cultural purposes. The volatile price fluctuations are driven by momentum, community engagement, influencers, and often, philanthropic interest in the purpose of a meme coin.

Plaintiff's allegations as to why Mr. Davis should be liable are gossamer thin—and the evidence is basically non-existent. According to Plaintiff's Complaint, Javier Milei, the President of Argentina, posted his public support for $LIBRA, resulting in a dramatic rise in the $LIBRA price within the first hour after its launch. It dropped in price after President Milei removed his post. The Complaint does not deal with the fact that Milei is an embattled politician who deleted his posts for any one of a thousand possible benign political reasons. But that Milei supported $LIBRA *at all* renders Plaintiff's thesis implausible because it is completely at odds with the "pump-and-dump" scheme alleged. Why would Milei support $LIBRA if he did not want its value to go *up* and continue to stay up? And what would be the purpose in this scheme of his removing his X post, which would have the opposite effect of pumping up the price? Any architect of a so-called pump-and-dump scheme would stand to gain more by not precipitating a price drop via an extraneous actor. The fact is that it was in everyone's common interest for $LIBRA to succeed— that a politician suddenly withdrew public support does not render the project fraudulent. And while it is true that without President Milei's public support, the goal of helping Argentinian businesses has been hindered—it has not been squelched and does not mean that there was never a plan to help Argentinian businesses.

Given these facts, the TRO can and should be dissolved for any of the following reasons:

*First,* Plaintiff appears to have failed to post the required $100 cash bond, which this Court

ordered to be filed with the Clerk of Court within five days. Accordingly, the TRO has never been in effect, and the service of the TRO on Circle and the statements to the media that the TRO was in effect, knowing that no bond was posted, is irresponsible, if not citable, attorney conduct.

*Second,* under Rule 65(b)(2), the TRO expired on June 10, 2025—14 days after it was issued. And the conditions under Rule 65(b)(2) for extending the TRO have not been satisfied, as no one other than Defendant Chow[1] has consented to its extension, and no good cause was established for a continuance of the TRO beyond 14 days. Moreover, the TRO itself does not comply with the rule as it does not provide the required information, *i.e.,* date and hour of issuance.

*Third,* this Court lacks personal jurisdiction over Hayden Davis. He was not served with the Summons and Complaint—meaning, he was not served with process. Davis Decl. ¶ 11. The Plaintiff has not pleaded any basis for personal jurisdiction. The facts show that the coin was launched via Meteora (the platform is in Singapore) and transactions occurred on the Solana Blockchain (which is run out of Zug, Switzerland). Hayden Davis lacks any contacts with the state of New York necessary for this Court to exercise general or specific jurisdiction over him or, as a result, any assets he controls. Neither the Complaint nor the Treanor Declaration establishes minimum contacts with New York as to constitutionally comply with the traditional conception of fair play and substantial justice, nor do they establish facts concerning any alleged evasion of service.

*Fourth,* the injunctive relief sought is basically an attachment or sequestration of what Plaintiff claims is a return of moneys used to purchase $LIBRA tokens. Plaintiff provided zero evidence of the purchase of any tokens, the purchase price, and what assets Plaintiff provided for

---

[1] Upon information and belief, Chow is the co-founder of Meteora and its *former* president. Chow is represented and has appeared, but there is no evidence on the docket that Meteora has been served.

$LIBRA, other than the conclusory and inadmissible statements of Mr. Treanor. Plaintiff presumably received and still has what he purchased: $LIBRA tokens. While Plaintiff and the Class may have lost value upon a *sale* of their $LIBRA, even then, all they have is a damages claim if they can prove nefarious conduct. The TRO/PI is a wholly improper remedy for ensuring that t Plaintiff or an uncertified crudely drawn putative world-wide class might collect damages.

*Fifth*, despite seeking and obtaining class-wide relief with the TRO, Plaintiff did not even attempt to show a likelihood of success on the merits for the class action. This is an *internationally* launched coin with—apparently—a class spanning the entire world—but Plaintiff has not even attempted to show how he would be able to certify an international class and prove class-wide falsity, reliance, causation, or damages under New York law.

*Furthermore*, Plaintiff cannot show that an injunction is necessary, much less warranted. For one thing, Plaintiff contends that tens of million dollars of proceeds from the sales of $LIBRA has not moved for over *four months*. The allegation that Hayden Davis "could" move or appropriate it does not suffice to show any demonstrated intent to dissipate those assets.

*Finally*, the balance of harms tips sharply against the propriety of an injunction, which affects the open market and the ability for Davis to get the tokens designated for Argentine growth to the waiting pool of Argentinian small business grant applicants. The Court should not allow itself to be used by Plaintiff to money-grab when they cannot meet the prima facie requirements for a TRO. Nor should the Court permit itself to be used to stymie the otherwise open market and tradable $LIBRA coin.

Defendant respectfully notes the allegations in the Original Class Action Complaint (ECF 1-1) and averments in the TRO/PI Motion filed on May 27, 2025, and attachments thereto (ECF 13) ("TRO/PI Motion"). The TRO/PI Motion gets the facts decidedly wrong and is insufficient to

warrant any relief. The only materials cited for factual support were the Complaint and the Declaration of Mr. Treanor—who is not (and does not purport to be) a fact witness. Mr. Treanor's statements all lack personal knowledge and should be stricken. (*See* Evidentiary Objections to Treanor Decl.") The Declaration of Justin Ehrenhofer simply describes and summarizes publicly visible blockchain transactions, but supplies no facts as proof of any actionable conduct, deception or fraud. The admissible evidence before the Court does not suffice to support any injunctive relief.

For these reasons, the Court should enter the proposed Order of Dissolution for the TRO against Hayden Davis or the assets he stewards.

### III.

### ARGUMENTS AND AUTHORITIES

The TRO/PI Motion is based on the incorrect assertions that: (1) the Defendants "stole" the $LIBRA liquidity from consumers (*see* Memo. ISO TRO/PI at 1; Treanor Decl. ¶ 7); (2) the Defendants "manipulated the price of their worthless cryptocurrency" (*id.;* Treanor Decl. ¶ 17); (3) the plan to infuse liquidity into the Argentinian economy was "fabricated;" (4) the Defendants "have been avoiding service" (*id.* at 2); (5) that minting the $LIBRA coin without adding additional funds, tokens, of cryptocurrency, is inherently fraudulent when it comes to meme coins. (*id.* ¶ 7; Treanor Decl. ¶ 17.); and (6) that Davis "could" dissipate $LIBRA's liquidity held in USDC.

### A. APPLICABLE STANDARDS

To obtain a TRO or preliminary injunctive relief, the plaintiff must show (1) imminent irreparable harm; (2) a likelihood of success on the merits; and (3) that the balance of equities favor an injunction. *N. Am. Soccer League, LLC v. United States  Soccer Fed'n., Inc.*, 883 F.3d 32, 37 (2d Cir. 2018). Irreparable harm must not merely be possible but *must be likely*, absent injunctive relief. *See Winter v .NRDC, Inc.*, 555 U.S. 7 (2008). The standards for a TRO are

coextensive with those for preliminary injunctive relief. *Id.* A TRO expires after 14 days unless extended for good cause shown on the record or consent of the bound party. FED. R. CIV. P. 65(b). A TRO is effective only upon posting of the bond ordered by the Court.

## B.  PLAINTIFF DID NOT POST THE REQUIRED BOND

A bond is required under FED. R. CIV. P. 65(c) ("The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained.").

As part of the TRO, this Court ordered the Plaintiff to post a $100 cash bond "with the Clerk of Court within five days of this Order." Order at 5. The Court's docket does not reflect any evidence that the Plaintiff posted even this nominal bond. As a result, the TRO expired when the bond was not paid and it should be dissolved. *See, e.g., Law Offices of Bruce E. Baldinger, LLC v. Barchha*, No. 13cv9124, 2015 U.S. Dist. LEXIS 35156, 2015 WL 1284266 (S.D.N.Y. Mar. 20, 2015) (TRO expired for failure to post bond); *Jones v. Brown*, 518 Fed. App'x. 643, 644 (11th Cir. 2013) (failure to post bond grounds for dissolving preliminary injunction); *Chen v. Individuals,* No. 24-60863, 2023 U.S. Dist. LEXIS 157855, 2024 WL 4003697 (S.D. Fla. Aug. 8, 2024) (failure to post bond grounds for dissolving TRO).

Despite not posting the required bond, Plaintiff (presumably through counsel) took to the media and touted the TRO as if it were in effect, and served Circle who froze the listed accounts. *See* Declaration of M. Cris Armenta ("Armenta Decl."), ¶ 2, & Ex. B, Press Release dated May 30, 2025, "The Treanor Law Firm Obtains Emergency Freeze of As Much as $280 Million In $LIBRA Cryptocurrency Scam"). This was highly improper. *See Weiss v. Weiss,* 984 F.Supp. 682, 686-87 (S.D.N.Y. 1997) (denying sanctions against counsel where creditor's use of TRO before

satisfying bond requirement was inappropriate, resulting warning to attorney for improper behavior of freezing assets for a few days).

Accordingly, this is reason enough for the TRO to be dissolved.

### C.  THE TRO HAS OTHERWISE EXPIRED UNDER RULE 65

Any TRO issued *ex parte* and without notice (as this one was) must comply with Rule 65(b)(2). Rule 65(b)(2) provides that a TRO has a maximum length of 14 days at which time the PI hearing is supposed to occur. Here, the TRO expired Wednesday, June 10, 2025, unless the Court extended it. A TRO can be extended only if "before that time [expiration], the court, for good cause, extends it for a like period or the adverse party consents to a longer extension. The reasons for an extension must be entered in the record." Rule 65(b)(2).

But here, there is nothing in the record that comports with Rule 65(b)(2). There was no good cause shown on the record for extending the TRO, and no one—other than Mr. Chow apparently[2]—agreed to extend the TRO. Therefore, as of the date of this Motion, the TRO has expired by operation of law as to all persons who did not expressly agree to the extension, including, but not limited to, Hayden Davis.

### D.  THE TRO IS VOID AND SHOULD BE DISSOLVED FOR LACK OF PERSONAL JURISDICTION

Because this Court lacks personal jurisdiction over Hayden Davis, the injunction was void when entered. This Court cannot enjoin parties over whom it lacks personal jurisdiction. *Weitzman v. Stein*, 897 F.2d 653, 659 (2d Cir. 1990) ("[a] prima facie showing of jurisdiction will not suffice….where a plaintiff seeks preliminary injunctive relief. A court must have *in personam*

---

[2] It is actually unclear that Mr. Chow even agreed to extend the TRO. The endorsed letter from Mr. Chow's attorneys of June 3, 2025 (ECF 26) sets schedules for opposition to the TRO and the TRO/PI hearing, but did not in itself extend the TRO nor identify good cause for doing so. Nor could Mr. Chow have agreed to extend the TRO for any non-party to the letter.

jurisdiction over a party before it can validly enter even an interlocutory injunction against him.")
(citations omitted). Plaintiff bears the burden of establishing personal jurisdiction. *See
MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727 (2d Cir. 2012). Any Court order made without
jurisdiction is void and must be vacated. *"R" Best Produce, Inc. v. DiSapio*, 540 F.3d 115, 123
(2d Cir. 2008) (citations omitted); *KAO HWA Shipping Co., S.A. v. China Steel Corp*., 816 F. Supp.
910, 913 (S.D.N.Y. 1993) (noting that void court orders must be vacated). There are two grounds
for this argument, which we turn to next.

### 1.   The Court Lacks Personal Jurisdiction Because Davis Was Never Properly Served

Rule 5 requires timely service of summons and complaint. *See* FED. R. CIV. P. 5; FED. R.
CIV. P. 4(m). A lack of proper service of process means there is no personal jurisdiction. *Omni
Cap. Int'l v. Rudolf Wolff & Co*.., 484 U.S. 97, 104 (1987) ("Before a federal court may exercise
personal jurisdiction over a defendant, the procedural requirement of service of summons must be
satisfied."). Absent proper service, dismissal of the complaint for lack of personal jurisdiction is
proper. *See Vanek v. Samsung EMS Co. Ltd.*, No. 23-cv-3127, 2024 U.S. Dist. LEXIS 215427, at
*3-4 (S.D.N.Y. 2024).

Here, there is no evidence that a summons and complaint have been served in accordance
with Rule 5.[3] Mr. Davis has never been served. Davis Decl. ¶ 11. Actual notice is not substitute
for proper service. *Olivadoti v. 290 Riverside Co., LLC*, No. 12Civ.386, 2012 U.S. Dist. LEXIS
64654, 2012 WL 1604906, at *12 (S.D.N.Y. May 8, 2012) ("Defective service is not cured or
overcome on the mere assertion that a defendant had actual notice." (internal quotation marks and

---

[3] Rule 5(a)(3) is particularly relevant. It provides that "[I]f an action is begun by seizing property
and no person is or need be named as a defendant, any service required before the filing of an
appearance, answer, or claim must be made on the person who had custody or possession of the
property when it was seized." While Defendant does not concede that "no person is or need be
named as a defendant" for the TRO to have been effective, service is still necessary.

citation omitted)); *see also Martin v. New York State Dep't of Mental Hygiene*, 588 F.2d 371, 373 (2d Cir. 1978) ("A showing that the defendant has had actual notice of the lawsuit is not sufficient to bar a motion to dismiss under Rule 12(b)(2)."). And as this Court noted during the May 27th hearing, service of the TRO was not a substitute for service of process either. (Armenta Decl., Ex. B, Transcript, Ex Parte Conference, dated May 27, 2025, at 32:20-22.[4]

Furthermore, there is no motion for substituted service on file (which this Court recognized at the TRO *ex parte* hearing). This, despite the Court's guidance given to Plaintiff's counsel at the hearing on May 27, 2027, that a showing for alternative means of service was not made. *See id.* at 32:25-33:2.[5] As the Court cogently observed, notwithstanding Mr Treanor's Declaration, Plaintiff put in no evidence of futile attempts at service or evasion of service. *Id.*[6] That continues to be true to this day. Therefore, because proper service has never been effectuated on Hayden Davis, this Court lacks personal jurisdiction over him, and there is no basis for the TRO to continue as to him or any other party that has not been properly served.

## 2. There is No Basis for Personal Jurisdiction Otherwise

Separate from service, although the Complaint speaks volumes as to jurisdiction for the Meteora Defendants, it lacks even a semblance of *prima facie* jurisdictional facts as to Hayden

---

[4] The Court: "But the Court will not permit service of the summons and complaint by these alternative service methods. Plaintiff has not formally moved for alternative service of the summons and complaint, and the Court does not have sufficient information to determine whether such service would conform with Rule 4."

[5] The Court: "Plaintiff may file such a motion at a later time if he believes that the applicable legal requirements have been satisfied."

[6] Counsel for Mr. Davis have conferred with Plaintiff's counsel and are in receipt of a request to accept service. While undersigned are not yet authorized to accept service, if service is accepted, it would not cure the lack of service at the time the TRO was entered, and would be accepted with all appropriate reservations, including the right to challenge personal jurisdiction via Rule 12(b)(2).

Davis. Whenever a defendant challenges personal jurisdiction, the plaintiff has to establish personal jurisdiction with evidence. *Okla. Firefighters Pension & Ret. Sys. v. Banco Santander (México) S.A.*, 92 F.4th 450, 453 n.1 (2d Cir. 2024). And it is not enough that a plaintiff lives in New York; the Long-Arm statute, NY CPLR 302 *et seq*., requires more.

The relevant evidence is that Hayden Davis has no contacts with the State of New York. Davis Decl. at ¶¶ 3-7. He does not reside in New York, and there is no evidence that he, maintains assets in or conducts any business in New York. *Id.*. at ¶ 4. Nor is there evidence in the record to show that Plaintiff's transaction was negotiated, signed or consummated in New York. Id. at ¶¶ 4-8. Indeed, it is undisputable that the center of the alleged fraud is in Argentina and for the benefit of small businesses in Argentina. *Id.* at ¶¶ 8-9. The public X post by President Milei was posted from Argentina. *Id.* at ¶ 9. Even Plaintiff's inadmissible evidence is to the contrary—Mr. Treanor's Declaration states that the related business took place over many months *in Argentina*. Treanor Decl. ¶ 9. Mr. Treanor points to sponsorships of a TechForum conference in *Argentina*. *Id.* Mr. Treanor refers to X posts that were made from Argentina. *Id.* The alleged fraudulent launch did not occur in the United States—Meteora, the launch platform, is itself based in Singapore. Davis Decl. ¶ 3. And the blockchain on which all transactions were confirmed and executed—Solana— is operated by the Solana Foundation which is in Zug, Switzerland. Davis Decl. ¶ 3.[7] Meanwhile, there is no evidence in the record that Mr. Davis was the counterparty to the supposed "transaction" at issue in this case with the Plaintiff (as was shown in, e.g., *McGowan v. Smith*, 52 N.Y.2d 268, 271-72 (1981)). *Id.* at ¶ 10. There was therefore no purposeful availment of New York by Mr. Davis. Thus, there exists no nexus to New York that would make the exercise of personal jurisdiction over Mr. Davis constitutional.

---

[7] https://solana.org/.

Furthermore, Mr. Davis is not alleged to have directed any false statements specifically towards the state of New York. More specifically, the Complaint is bereft of any words or statements Mr. Davis allegedly made at all. The fact that an Arizona-based website—¡Viva la Libertad!—was used to launch $LIBRA—does not suffice for the exercise of personal jurisdiction in New York. Courts have explained that merely posting a statement "online is not enough to hale the poster into the state where the plaintiff resides; instead, the poster's conduct must have involved the plaintiff's state in some additional way." *Vangheluwe v. Got News LLC*, 365 F. Supp. 3d 850, 858 (E.D. Mich. 2019) (citations omitted). Or as this district court has stated, the website or post must be more than "passive," as it was in this case. *Royalty Network, Inc. v. Dishant.com., LLC*, 638 F. Supp. 2d 410 (S.D.N.Y. 2009) (refusing to exercise jurisdiction over passive internet postings or website that were not targeted to New York). *Accord Torre v. Kardooni*, No. 22-4693, 2022 U.S. Dist. LEXIS 227622, 2022 WL 17812193, at *1 (D.N.J. Nov. 29, 2022); *Brana v. Moravcik*, No. 1:19-cv-2802, 202 U.S. Dist. LEXIS 153938, 2020 WL 5026502, at *2 (N.D. Ohio, Aug. 25, 2020); *Blessing v. Chandrasekhar*, 988 F.3d 889, 905 n.15 (6th Cir. 2021) ("posting…information on an internet site does not, without more, subject the poster to personal jurisdiction wherever the posting could be read (and the subject of the posting may reside).") (citations omitted).

Because the New York long-arm statute may not be used to exercise personal jurisdiction over Hayden Davis, and the Plaintiff has not carried his burden to establish facts supporting the exercise of jurisdiction,[8] the Court does not have jurisdiction over Mr. Davis. Thus, the TRO was void *ab initio* and should be formally dissolved immediately.

---

[8] And because cryptocurrency is an intangible asset, jurisdiction may be asserted over it only if the holder or owner is subject to the court's *in personam* jurisdiction under New York law. *See ICO Servs., Ltd. v. Coinme, Inc.*, No. 18 CIV 4276, 2018 WL 6605854 (S.D.N.Y. Dec. 17, 2018).

**E.   THERE IS NO BASIS FOR THE PREJUDGMENT REMEDY THE INJUNCTION OFFERS**

In requesting the TRO, Plaintiff relied upon NY CPLR § 6201(1) (ECF 15 at p.12). Rule 64 adopts the forum state's prejudgment remedies—here, NY CPLR §§ 6201 - 6219. Thus, Rule 64 and the CPLR govern the relief requested, and it should be adjudged by those standards.

Prejudgment attachment is a drastic remedy, and courts are to "strictly construe[ ]" CPLR § 6201 "in favor of those against whom it may be employed." *Northeast United Corp. v. Lewis*, 137 A.D. 3d 1387, 1388 (3d Dep't 2016) (citation and internal quotation marks omitted). Critically, under the CPLR, a plaintiff must establish *via affidavit or other written evidence* "that it is probable the plaintiff will succeed on the merits." NY CPLR 6212(a) (emphasis added). Therefore, Plaintiff has to come with evidence, not just conclusions, proving the basis upon which the prejudgment remedy is sought. *Societe Generale Alsacienne de Banque, Zurich v. Flemingdon Dev. Corp.*, 118 A.D.2d 769, 773 (2d Dep't 1986). The affidavit must be made by a person with *actual knowledge*. *Rosenthal v. Rochester Button Co., Inc.*, 148 A.D.2d 375 (1st Dep't 1989).

Also, a plaintiff is not entitled to a writ of attachment without "demonstrate[ing] an identifiable risk that the defendant will not be able to satisfy the judgment." *Mascis Inv. P'ship v. SG Capital Corp.*, 2017 NY Slip Op 30813 (Sup. Ct., N.Y. Co. Apr. 21, 2017) (quoting *VisionChina Media Inc. v. S'eholder Representative Servs., LLC*, 109 A.D.3d 49, 60 (1st Dept. 2013)). The risk "should be real." *VisionChina*, 109 A.D.3d at 60 (citation and internal quotations omitted). Where there is no evidence that defendant is in "serious financial distress" then the need for relief has not been shown. *See Elton Leather Corp. v. First Gen. Res. Co.*, 138 A.D.2d 132, 134 (1st Dep't 1988). Similarly, where there is no history of not paying creditors, or statements or actions evincing an intent to dispose of assets, then need has not been shown. *VisionChina*, 109 A.D.3d at 60; *see also* Siegel, New York Practice, § 317 (5th ed) ("[I]f the judge should perceive

from the papers that the plaintiff does not need an attachment, either for jurisdiction or security, discretion is appropriately exercised against it even though a CPLR 6201 showing has been made.").

In this case, there are no facts provided that even suggest or imply that Mr. Davis would not be able to satisfy a judgment, that he has a history of not paying creditors, or that he intends to improperly abscond with $LIBRA tokens or its liquidity. Plaintiff contends repeatedly that a risk exists of dissipation because Mr. Davis "could" move the $LIBRA assets with a few keystrokes. This is true of every defendant who has a bank account at a major bank with online account access. It is not unique to these circumstances. In Plaintiff's own evidence, they admit that Mr. Davis was merely "sitting" on the assets and has expressed no intentions other than to benefit $LIBRA and Argentina. Treanor Decl. ¶¶ 23-26.

Therefore, as more fully discussed below, because the request for TRO/attachment fails all of the above standards under Rule 65 and Rule 64, an order of dissolution should be granted.

### 1.  There Is No Basis to Conclude That "It is Probable the Plaintiff Will Succeed On the Merits" As to His Individual Claims, Much Less for the Whole Class

NY CPLR § 6212 requires a showing that "it is probable that the Plaintiff will succeed on the merits" and that such a showing be supported by admissible evidence. This is completely lacking in the motion papers.[9] The elements of a cause of action for fraud (or one sounding in fraud) are (1) "a misrepresentation or a material omission of fact which was false and known to be false by [the] defendant," (2) was "made for the purpose of inducing the other party to rely upon it," (3) "justifiable reliance of the other party on the misrepresentation or material omission," (4) injury proximately caused by the misrepresentation or omission. *Ambac Assurance Corp. v.*

---

[9] The same is true if this Court evaluates the "likelihood of success on the merits" element for temporary or preliminary injunctive relief under Rule 65.

*Countrywide Home Loans, Inc.*, 151 A.D.3d 83 86 ( 1st Dep't  2017).

Plaintiff cites no case holding that a prejudgment attachment (or an injunction accomplishing the same thing) designed to protect class-wide damages is even available for an uncertified class. At a minimum, because Plaintiff seeks to (and has) attached property to satisfy a future judgment to the whole class ostensibly for fraud (or claims sounding in fraud), Plaintiff must show that it is *probable* that he will be able to certify the class *and* succeed on the merits of the underlying claims on behalf of the entire class.

Plaintiff has not even attempted to meet this standard. Not only does the Complaint not even come close to meeting Rule 9(b) as to the fraud claims against Mr. Davis, but Plaintiff's written submissions fail to attempt to meet the "success on the merits" standard for the whole world-wide class.[10] There is no mention of how or why the pleaded world-wide class[11] meets Rule 23. Nor why such a class would be successful on the merits of the pleaded claims—especially, those elements that often vex fraud class claims such as ascertainability, choice of law, falsity, class-wide reliance, causation, and damages. This is enough on its own to doom the TRO to the extent it seeks class-wide relief.

On the other hand, the fact is that Plaintiff and the Class have gotten everything they bargained for: they wanted to purchase $LIBRA, and now they own it. Beyond that, there was no

---

[10] If Plaintiff's claim is that the single-sided liquidity pool was not disclosed, seeking to the judicial creation of regulations over an unregulated collectible, then the following should be noted: (1) the Plaintiff did not provide any proof of reliance on a different architecture; and (2) such reliance would not be justifiable: Meteora's website discloses the use of single liquidity pools. https://docs.meteora.ag/product-overview/damm-v2-overview#launch-single-sided-liquidity ("Project launches can programmatically create single-sided liquidity pools with only 1 token, similar to DLMM, offering greater flexibility for launches." The restructuring of the manner in which meme coins are launched is beyond the province of this Court and there is no authority for Plaintiff's novel proposition regarding the architecture of the launch.).

[11] The Complaint pleads claims on behalf of "all individuals who purchased $LIBRA tokens (the "Class")." ECF 1-1 at ¶ 172 (p. 30).

promise (and so there existed no reasonable expectation) of being able to sell their $LIBRA at a profit or that the coin would stay at a fixed price.[12] There was no promise that a $LIBRA buyer would be entitled to a refund if the token's value dropped. There was no promise how quickly the moneys would be deployed into Argentina. Plaintiff even alleges that he expected the funds from the sales of $LIBRA to go to Argentina to help small businesses in the form of gifts or grants, not investments that would generate a return back to "investors"—meaning, the lack of a return on investment, or a refund, are not damages here.

It is also no secret that meme coins like $LIBRA are unregulated, unsecured, lack any intrinsic value, are highly speculative, volatile, represent no ownership in an enterprise, lack market support, and are basically the modern day equivalent of tulips in Amsterdam in the 1630s.[13]

---

[12] U.S. Securities and Exchange Commission, Division of Corporation Finance, "Staff Statement on Meme Coins," (Feb. 27, 2025) https://www.sec.gov/newsroom/speeches-statements/staff-statement-meme-coins ("SEC Staff Statement") at n.9 ("if the promoters' efforts are limited primarily to hyping the meme coin on social media and online forums and getting the coin listed on crypto trading platforms, then there are not likely to be sufficient indicia to establish that purchasers had a reasonable expectation of profits based on the efforts of the promoters.").

[13] *See, e.g.,* SEC Staff Statement, *supra*:

> A meme coin does not constitute any of the common financial instruments specifically enumerated in the definition of "security" because, among other things, it does not generate a yield or convey rights to future income, profits, or assets of a business. In other words, a meme coin is not itself a security. . . .

> The offer and sale of meme coins does not involve an investment in an enterprise nor is it undertaken with a reasonable expectation of profits to be derived from the entrepreneurial or managerial efforts of others. First, **meme coin purchasers are not making an investment in an enterprise**. That is, their funds are not pooled together to be deployed by promoters or other third parties for developing the coin or a related enterprise. Second, **any expectation of profits that meme coin purchasers have is not derived from the efforts of others**. That is, **the value of meme coins is derived from speculative trading and the collective sentiment of the market, like a collectible**. **Moreover, the promoters of meme coins are not undertaking (or indicating an intention to undertake) managerial and entrepreneurial efforts from which purchasers could reasonably expect profit** (bolding added)

Thus, Plaintiff's qualm that the market for $LIBRA lacked the features of a mature exchange is unavailing. That was never promised—anywhere. Every purchaser relies on the *belief*—and nothing else—that another purchaser down the line will pay more for the token than what they bought it for.[14] To wit, the Southern District of New York bankruptcy court recently explained that any attempt to place any market-based value on a speculative meme coin is "completely unwarranted." *In re Celsius Network LLC*, 655 B.R. 301, 311 (Bankr. S.D.N.Y. 2023). The Plaintiff's attempt to use a class action to create market regulations and rewrite basic economic rules and the realities of a collectible or inherently worthless token is beyond novel.[15]

---

*See also* Article: Mastropietro, Beatrice, "Tokenomics for Meme Coins," https://brightnode.io/blog-articles-blockchain-web3-insights/tokenomics-for-meme-coins; Article: de Martino, D. Dario, et al, "Implications of the SEC's Stance that Meme Coins are not Securities," Harvard Law School Form on Corporate Governance (Mar. 19, 2025); Article: Charles Schwab, "What Are Meme Coins? Uses and Risks to Know." ("Whereas bitcoin and other cryptocurrencies may have been created with thought-out structures like limited supply, meme coins typically are founded with less lofty goals…. Some people buying meme coins care less about intrinsic value because they're buying them for novelty, as a collectible, and not for investment purposes. For example, the issuer of meme coins based on political personalities said that the coins are to be considered expressions of support rather than [as] securities or investments…."investing" in meme coins [is] a highly risky, volatile, and unregulated bet") https://www.schwab.com/learn/story/what-are-meme-coins-uses-and-risks-to-know.

[14] SEC Staff Statement *supra*, ("Meme coins also typically have limited or no use or functionality. Given the speculative nature of meme coins, they tend to experience significant market price volatility[.]"); Wikipedia: https://en.wikipedia.org/wiki/Meme_coin ("Unlike traditional cryptocurrencies with defined use cases or technological foundations, meme coins often lack intrinsic value and derive their price primarily from community hype, social media momentum, and celebrity association. Their prices can skyrocket rapidly as new investors, drawn by viral attention or fear of missing out (FOMO), pour in funds. However, this growth is typically unsustainable, as the price depends heavily on a continuous influx of new buyers."); Article: You will Lose Money in Meme Coins https://medium.com/@duacrypto/you-will-lose-money-on-memecoins-c538874a4dee ("99.9% of tokens are going to zero after you're in"); Quora: Do you Think more people will lose money than make money with meme coins in the long run? https://www.quora.com/Do-you-think-more-people-will-lose-money-than-make-money-with-meme-coins-in-the-long-run.

[15] For example, Plaintiff contends that the launch was not a "fair launch." Notably, Plaintiff cannot point to any evidence that Mr. Davis ever said that $LIBRA would be a "fair launch."

Finally, the balance of equities tips sharply in favor of dissolution. Plaintiff cites case law for the proposition that the freezing of funds that are the subject of a suit is "routine." TRO/PI Motion at 13 (citing *Wishnatzki & Nathel, Inc. v. H.P. Island-Wide, Inc.*, 2000 WL 1610790, at *1 (S.D.N.Y. Oct. 27, 2000), citing *Republic of Philippines v. Marcos*, 806 F.2d 344, 356 (2d Cir.1986).). However, a prejudgment asset freeze is far from routine—especially where, as here, the strictures of CPLR § 6212 have not been met. To wit, the Second Circuit warns against "the inventiveness of men who find new ways to enrich themselves unjustly by grasping what should not belong to them." *Marcos*, 806 F.2d at 355 (citations omitted). That is particularly apt here.

Because Plaintiff cannot show that it is probable that he will succeed in certifying a class and prevail on his New York law claims on a class-wide basis, the TRO should be dissolved.

### 2. There is No Evidence of Irreparable Harm, Evidence of the Risk of Dissipation, or That Mr. Davis Would Not Be Able to Satisfy a Judgment

Plaintiff states that Hayden Davis admitted to being somewhat in limbo while he awaited clarification. Treanor Decl. ¶¶ 23-26. These public statements seemingly attributed to Hayden Davis *at best* demonstrate that he was flummoxed with the placement of the $LIBRA intended for Argentina's benefit after President Milei suddenly withdrew his post and appeared to distance himself from the VVL Project. Davis Decl. ¶¶ 5–9. Developments since then have provided clarification. Opportunistic political opponents of President Milei accused *him* of corruption through his support of $LIBRA.[16]

---

Plaintiff cannot use this Courtroom to enact regulations and manufacture a presumption of "fair launch" where none exists and where all relevant regulators have so far refused to create.

[16]  https://cointelegraph.com/news/argentina-anti-corruption-office-clears-milei-libra-case.  The attacks on President Milei, which have now become public, suggest that the temporary withdrawal of support for $LIBRA was likely based on internal politics in Argentina. Now that President Milei has withstood and been exonerated from claims of corruption for his $LIBRA support, the token should be used as intended, to support the Argentinian economy.

That is no evidence of a fraudulent scheme or any risk of dissipation. *Bank Leumi Tr. Co. v. Istim, Inc.*, 892 F. Supp. 478, 482 (S.D.N.Y. 1995) ("The burden is on the plaintiff to demonstrate that the defendant has begun the process of removing its assets."). The risk of dissipation requires more than mere control by the Defendant, which is all Plaintiff has alleged. *See, e.g.*, *Citibank, N.A. v. Aralpa Holdings Ltd. P'ship*, No. 1:22-cv-08842, 2023 U.S. Dist. LEXIS 226223 *9, 2023 WL 8810142 (S.D.N.Y. Sept, 19, 2023) (finding that judgment debtor had taken affirmative steps to frustrate the enforcement of a judgment).

Furthermore, the cases cited by Plaintiff turn on the defendant's *admitted* inability to pay a judgment *combined* with an additional interest in the subject property (as in, the property once belonged to the plaintiff)—they come nowhere near supporting the injunctive relief requested on these facts. *See, e.g.*, *Ger-Nis Int',l LLC v. FJB, Inc.*, No. 07-CV-898, 2007 U.S. Dist. LEXIS 18403 *7, 2007 WL 656851 (S.D.N.Y. Mar. 1, 2007) (injunction entered because debtor had significant debts and admitted they could not pay them, and plaintiff had a constructive trust over funds because of nature of lien from delivery federally regulated agricultural products); *Yogaratnam* v. *Dubois*, No. 24-393, 2024 U.S. Dist. LEXIS 31033, 2024 WL 758387, at *4 (E.D. La. Feb. 23, 2024) (defendant admitted theft of plaintiff's crypto wallet); *Gaponyuk* v. *Alferov*, No. 2:23-cv-01317, 2023 U.S. Dist. LEXIS 125262, 2023 WL 4670043, at *3 (E.D. Cal. July 20, 2023) (unknown scammers took plaintiff's cryptocurrency and then refused contact and hid their identities); *Jacobo* v. *Doe*, No. 1:22-cv-00672, 2022 U.S. Dist. LEXIS 101504, 2022 WL 2052637, at *5 (E.D. Cal. June 7, 2022) (defendants proven to have taken plaintiff's cryptocurrency to invest then refused to return it upon demand); *Bullock* v. *Doe,* No. 23-CV-3041, 2023 U.S. Dist. LEXIS 234778, 2023 WL 9503380, at *5 (N.D. Iowa Nov. 3, 2023) (plaintiff was lured into depositing her assets into a fake cryptocurrency platform). Here, there is no evidence in the record as to

whether Mr. Davis would not be able to satisfy a judgment, and there is no evidence that any of Mr. Hurlock's funds ended up with Mr. Davis.

And while Plaintiff may allege their fear that Mr. Davis would dissipate the property and frustrate collection, it is irrelevant because no supporting evidence exists. *Accord In re Telescopes Antitrust Litig.*, No. 5:20-cv-03642, 2025 U.S. Dist. LEXIS 63593, at \*12-13, 2025 WL 1002483 (N.D. Cal. Apr. 2, 2025) (denying similar injunctive relief even "if Defendants shut down their operations in the United States and move their assets out of the country before judgment, assuming the Court issues a judgment, then both [plaintiffs'] ability to recover damages and the Court's ability to fashion equitable monetary relief will be destroyed. This may be true. If Defendants do move all their assets outside of the United States, this would likely frustrate any potential judgment collection efforts and cause irreparable harm. However, there is no evidence that this is likely to occur."). Indeed, the fact that there was over $50 million to seize in the first place—four months *after* the launch—is evidence *against* finding any threat of irreparable harm (immediate or otherwise). *Id.* at 15-16 (denying relief because movants "fail to present any evidence, or make any arguments, showing recent conduct by Defendants that necessitate [the] request for such an extraordinary remedy at this time[.]").

Also, there is no evidence of any steps that were taken that would demonstrate the "intent" required by the Second Circuit and the CPLR. *See* N.Y. CPLR § 6201 (attachment requires evidence of "intent to defraud [one's] creditors or frustrate the enforcement of a judgment"); *Chem. Bank v. Haseotes*, 13 F.3d 569, 573 (2d Cir. 1994) (per curiam) ("an injunction may issue to stop a defendant from dissipating assets in an effort to frustrate a judgment," so long as the district court has "found . . . such intent" to frustrate).

Accordingly, the Plaintiff has not met the standards for issuing the requested relief.

**F.  U̲N̲D̲E̲R̲L̲I̲N̲E̲D̲ ̲ T̲HE̲ B̲OND I̲S I̲NSUFFICIENT TO P̲ROTECT THE D̲EFENDANT'S I̲NTERESTS**

NY CPLR § 6212(b) requires a bond of no less than $500. The amount of a bond should be at least enough "to protect the defendant's interest during the pendency of this action." *Von Bock v. Metro. Life Ins. Co.*, 223 A.D.2d 700, 700 (2d Dep't 1996).

Here, the TRO was wholly insufficient to protect Mr. Davis or compensate for the interest on the amount for the effect of an injunction on the $LIBRA free market, and to compensate Mr. Davis under NY CPLR § 3212(e) (right of enjoined party to claim damages and fees in the event that the Court determines that no relief was warranted). Loss of use is typically compensated using the applicable interest rate—here, relevantly, 9%. NY CPLR § 5004(a). Given the pleaded value of the property enjoyed—some $110 million—it means that damages for loss of use are accruing at $9.9 million—$825,000 *per month*—at a minimum, and certainly does not take into account the potential fluctuations in $LIBRA once the TRO is dissolved. The TRO's $100 bond is therefore wholly insufficient even to last between now and the as-yet not scheduled PI hearing. *Weitzen v. 130 E. 65th St. Sponsor Corp.*, 86 A.D.2d 511, 511 (1st Dep't 1982). The fact that even that paltry amount was not posted is gobsmacking.

### IV.

### CONCLUSION

Under Rule 65, Defendant, as the movant, has the right to appear within 48 hours of this filing. Defendant respectfully requests such expedited hearing, either via Zoom or in person, but respectfully requests 24 hours' notice for in-person hearing as counsel reside outside the state.

Dated: June 24, 2025

**SBAITI & COMPANY PLLC**

*/s/ Mazin A. Sbaiti*
**Mazin A. Sbaiti**
New York Bar No. 4339057
2200 Ross Avenue – Suite 4900W
Dallas, TX 75201
T: (214) 432-2899
F: (214) 853-4367
E: mas@sbaitilaw.com

**M. CRIS ARMENTA, P.C.**
M. Cris Armenta
*Pro Hav Vice forthcoming*
217 Clancy Way
Bozeman, Montana 59718
T: (310) 488-2080
F: (310) 421-1021
E: cris@crisarmenta.com

***COUNSEL FOR HAYDEN DAVIS***