**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

OMAR HURLOCK, on behalf of himself and all others similarly situated,

                    Plaintiff,

        v.

KELSIER VENTURES, KIP PROTOCOL, HAYDEN DAVIS, GIDEON DAVIS, METEORA, THOMAS DAVIS, JULIAN PEH, and BENJAMIN CHOW,

                 Defendants.

Case No. 25 Civ. 03891 (JLR)

---

**DEFENDANT BENJAMIN CHOW'S OPPOSITION TO PLAINTIFF'S MOTION**
**FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

CAHILL GORDON & REINDEL LLP
Samson A. Enzer
Edward N. Moss
Sheila C. Ramesh
Gregory Mortenson
32 Old Slip
New York, New York 10005
(212) 701-3000

*Attorneys for Defendant Benjamin Chow*

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT .................................................................................1

ARGUMENT ......................................................................................................8

   I.  Plaintiff Cannot Demonstrate Irreparable Harm ...................................8

      A. Money Damages Are an Adequate Remedy ................................8

      B. Plaintiff Fails to Demonstrate Any Risk of Dissipation............................11

   II.  Plaintiff Is Not Likely to Succeed on the Merits of His Claims ........................16

      A. Plaintiff Asserts No Substantive Allegations of Misconduct by Mr. Chow17

      B. Plaintiff's New York General Business Law Claim Fails............................19

      C. Plaintiff's Claim for Negligent Misrepresentation Cannot Succeed ..........21

      D. Plaintiff's Claim for Unjust Enrichment Cannot Succeed .........................23

   III.  The Balance of Equities Does Not Favor Plaintiff and the Public Interest Will Not Be Served by a Preliminary Injunction ...............................................23

   IV. Plaintiff's Application for Injunctive Relief Fails As Overbroad Because it Seeks Recovery for a Class that Has Not Been Certified (and Most Likely Never Will Be) ...................................................................................................24

CONCLUSION...................................................................................................27

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ackerman* v. *Price Waterhouse*,
  252 A.D.2d 179 (1998) ...................................................................................26

*Annabi* v. *New York University*,
  2023 WL 6393422 (S.D.N.Y. Sept. 29, 2023)..............................................22

*Astrove* v. *Doe*,
  2022 WL 2805345 (S.D. Fla. June 17, 2022) ...............................................15

*Barron* v. *Helbiz Inc.*,
  2023 WL 5672640 (S.D.N.Y. Sept. 1, 2023)..................................................22

*Bilalov* v. *Gref*,
  2022 WL 19560947 (S.D.N.Y. Mar. 18, 2022) .........................................12, 13

*Bullock* v. *Doe*,
  2023 WL 9503380 (N.D. Iowa Nov. 3, 2023) ..............................................15n

*Dexter 345 Inc.* v. *Cuomo*,
  663 F.3d 59 (2d Cir. 2011).................................................................................9

*English* v. *Danone North American Public Benefit Corp.*,
  678 F. Supp. 3d 529 (S.D.N.Y. 2023)............................................................25

*Firemen's Insurance Co. of Newark, New Jersey* v. *Keating*,
  753 F. Supp. 1146 (S.D.N.Y. 1990)................................................................12

*FTC* v. *Dluca*,
  2018 WL 1830800 (S.D. Fla. Feb. 28, 2018) ................................................15

*In re Fyre Festival Litigation*,
  399 F. Supp. 3d 203 (S.D.N.Y. 2019).............................................................23

*Gaponyuk* v. *Alferov*,
  2023 WL 4670043 (E.D. Cal. July 20, 2023) ................................................15n

*Garcia De León* v. *New York University*,
  2022 WL 2237452 (S.D.N.Y. June 22, 2022) ...............................................26n

*Georgia Malone & Co.* v. *Rieder*,
  19 N.Y.3d 511 (2012).......................................................................................23

*Goodman* v. *Board of Managers of Harborview Condominium*,
  2023 WL 6977450 (S.D.N.Y. Oct. 23, 2023) ................................................................. 18-19

*Heissenberg* v. *Doe*,
  2021 WL 8154531 (S.D. Fla. Apr. 23, 2021) ................................................................15, 24

*Jacobo* v. *Doe*,
  2022 WL 2052637 (E.D. Cal. June 7, 2022) ................................................................15, 24

*JTH Tax, LLC* v. *Agnant*,
  62 F.4th 658 (2d Cir. 2023) ................................................................................................8

*JustM2J LLC* v. *Brewer*,
  2025 WL 435827 (E.D. Cal. Feb. 7, 2025)................................................................ 10-11

*Kane* v. *De Blasio*,
  19 F.4th 152 (2d Cir. 2021) ..............................................................................................25

*Kuwait Investment Office* v. *American International Group, Inc.*,
  128 F. Supp. 3d 792 (S.D.N.Y. 2015)...............................................................................21

*Lee* v. *Mikimoto (America) Co. Ltd.*,
  2023 WL 2711825 (S.D.N.Y. Mar. 30, 2023) ............................................................. 19-20

*Levy* v. *Young Adult Institute, Inc.*,
  2015 WL 170442 (S.D.N.Y. Jan. 13, 2015) ............................................................12, 13, 14

*Lightbox Ventures, LLC* v. *3RD Home Ltd.*,
  2016 WL 6562107 (S.D.N.Y. Oct. 28, 2016) ......................................................................9

*Livery Round Table, Inc.* v. *New York City FHV & Limousine Commission*,
  2018 WL 1890520 (S.D.N.Y. Apr. 18, 2018)......................................................................16

*In re Lottery.com, Inc. Securities Litigation*,
  765 F. Supp. 3d 303 (S.D.N.Y. 2025)................................................................................18

*Martinangeli* v. *Akerman, LLP*,
  2018 WL 6308705 (S.D. Fla. Sept. 14, 2018) ...................................................................14

*McKoy* v. *Trump Corp.*,
  2023 WL 6842310 (S.D.N.Y. Oct. 17, 2023) ....................................................................26

*Monowise Ltd. Corp.* v. *Ozy Media, Inc.*,
  2018 WL 2089342 (S.D.N.Y. May 3, 2018) ......................................................................16

*Pall Corp.* v. *CleanSpace Modular, LLC*,
  2023 WL 7412096 (S.D.N.Y. Nov. 9, 2023).......................................................................22

iii

*Pamlab, LLC* v. *Macoven Pharmaceuticals, LLC*,
    881 F. Supp. 2d 470 (S.D.N.Y. 2012)......................................................................14

*PharmacyChecker.com* v. *National Association of Boards of Pharmacy*,
    629 F. Supp. 3d 116 (S.D.N.Y. 2022)................................................................ 20-21

*Plusgrade L.P.* v. *Endava Inc.*,
    2023 WL 2402879 (S.D.N.Y. Mar. 8, 2023) ..........................................................19

*R.B. Development, Co. Ltd.* v. *Tutis Capital LLC*,
    2012 WL 2357318 (E.D.N.Y. June 20, 2012) ..........................................11, 12, 24

*Rappaport* v. *Guardian Life Insurance Co. of America*,
    2024 WL 4872736 (S.D.N.Y. Nov. 22, 2024).......................................................11

*Risley* v. *Universal Navigation Inc.*,
    2025 WL 615185 (2d Cir. Feb. 26, 2025).......................................................3-4, 17

*Schiermeyer ex rel. Blockchain Game Partners, Inc.* v. *Thurston*,
    697 F. Supp. 3d 1265 (D. Utah 2023)...................................................................10

*New York ex rel. Schneiderman* v. *Actavis PLC*,
    787 F.3d 638 (2d Cir. 2015).................................................................................23

*Sea Carriers Corp.* v. *Empire Programs, Inc.*,
    2006 WL 3354139 (S.D.N.Y. Nov. 20, 2006) ......................................................13

*SEC* v. *Passos*,
    760 F. Supp. 3d 95 (S.D.N.Y. 2024).....................................................................10n

*Smith* v. *City of New York*,
    754 F. Supp. 3d 581 (S.D.N.Y. 2024).....................................................................8

*Sterling Ornaments Pvt. Ltd.* v. *Hazel Jewelry Corp.*,
    2015 WL 3650182 (S.D.N.Y. June 10, 2015) ................................................. 12-13

*Sussman* v. *Crawford*,
    488 F.3d 136 (2d Cir. 2007)...................................................................................8

*Takiguchi* v. *MRI International*, *Inc.*,
    611 Fed. Appx. 919, 920-21 (9th Cir. 2015) ........................................................25

*In re Thelen LLP*,
    736 F.3d 213 (2d Cir. 2013)..................................................................................26

*Toray International American Inc.* v. *Nakayama*,
    2014 WL 12543817 (S.D.N.Y. Apr. 29, 2014).......................................................11

iv

*Tradeshift, Inc.* v. *Smucker Services Co.*,
  2021 WL 4463109 (S.D.N.Y. Sept. 29, 2021).................................................................22

*Tristan* v. *Bank of America*,
  2023 WL 4417271 (C.D. Cal. June 28, 2023) .............................................................21

*Velez* v. *Lasko Products, LLC*,
  706 F. Supp. 3d 444 (S.D.N.Y. 2023)..........................................................................23

*Washington* v. *Downstate Administrative Nurse*,
  2023 WL 6282920 (S.D.N.Y. Sept. 26, 2023)..............................................................19

*Wells* v. *Global Tech Industries*,
  658 F. Supp. 3d 912 (D. Nev. 2023)..........................................................................10n

*Westchester Fire Insurance Co.* v. *DeNovo Constructors, Inc.*,
  177 F. Supp. 3d 810 (S.D.N.Y. 2016)..........................................................................11

*Yogaratnam* v. *Dubois*,
  2024 WL 758387 (E.D. La. Feb. 23, 2024) ...............................................................15n

*Yuille* v. *Uphold HQ Inc.*,
  686 F. Supp. 3d 323 (S.D.N.Y. 2023).........................................................................19

**Statutes**

15 U.S.C. § 53(b) ............................................................................................................15

**Rule**

Federal Rule of Civil Procedure 23(b)(3) ......................................................................26

Federal Rule of Evidence 201 ........................................................................................10

**Other Authorities**

Circle Internet Group Inc., Amendment No. 3 to Registration Statement (Form S-
  1) (May 27, 2025) .......................................................................................................10

SEC Division of Corporate Finance, *Staff Statement on Meme Coins* (Feb. 27,
  2025), https://www.sec.gov/newsroom/speeches-statements/staff-statement-
  meme-coins ...............................................................................................................20n

Solana, COINGECKO WEBSITE, https://www.coingecko.com/en/coins/solana............10

VanEck Solana Trust, Registration Statement at 1-2 (Form S-1) (June 27, 2024)........10

v

Defendant Benjamin Chow respectfully files this submission and supporting declarations in opposition to Plaintiff's motion for a temporary restraining order and preliminary injunction (Dkt. 13-17, 19).[1]

## PRELIMINARY STATEMENT

Without notice to Mr. Chow, Plaintiff applied *ex parte* to the Court for extraordinary emergency relief: a temporary restraining order ("TRO") freezing tens of millions of dollars in digital assets to secure their availability in the event that Plaintiff ultimately proves up the untested claims in his Complaint seeking $280 million in alleged money damages on behalf of an uncertified class of $LIBRA token purchasers from around the globe.[2] To temporarily preserve the status quo until the defense could be afforded an opportunity to respond, the Court provisionally granted the TRO after an *ex parte* hearing with Plaintiff's counsel, while noting that the Court had concerns about several aspects of Plaintiff's *ex parte* application and that the Court's views on the application might change after hearing from the defense. The Court was right to be concerned. Plaintiff's self-serving (and one-sided) papers fail to disclose fatal defects in Plaintiff's claims, improperly lump all of the Defendants together, and barely even mention Mr. Chow. Plaintiff's application to freeze assets is frivolous and should be denied.

---

[1] Unless noted otherwise, emphasis is added, internal citations and quotations are omitted, and capitalized terms have the meaning set forth in the Complaint (Dkt. 1-1 ("Compl.")) or Plaintiff's moving brief (Dkt. 15 ("Pl. Br.")). References to "Chow Decl.," "Hoe Yong Decl.," "Ramesh Decl.," and "Spillane Decl." are to the Declarations of Benjamin Chow, Zhen Hoe Yong, Sheila C. Ramesh, and Meghan K. Spillane, respectively, submitted herewith.

[2] There was no basis to proceed *ex parte* against Mr. Chow, as his undersigned counsel was not only in touch with Plaintiff's counsel, but actively working with them. Indeed, through counsel, and before the *ex parte* filing, Mr. Chow voluntarily accepted service of the Complaint and agreed with Plaintiff on a schedule to brief the motion to dismiss in this case and to stay discovery in this matter pending resolution of a related lawsuit filed by certain of Plaintiff's lawyers. (*See* Ramesh Decl. ¶ 3).

As an initial matter, Plaintiff's papers fail to carry his burden of showing that Mr. Chow engaged in any wrongdoing whatsoever—let alone that Meteora, the software that he helped develop, somehow could, or should be, held liable.

Mr. Chow is a consultant for Dynamic Labs Limited ("DLL"), the software development company that created the computer code underlying Meteora. He contributed to Meteora's development and provided technical support to Meteora users at DLL's direction until several months ago. Meteora is software that runs an automated digital asset trading platform for peer-to-peer swaps of digital assets on the Solana blockchain network. Anyone in the world can use Meteora to set up a liquidity pool for trading cryptographically secured tokens without seeking or obtaining permission from any centralized intermediary.[3] Whoever sets up the liquidity pool customizes its features (including whether the pool will be seeded with one-sided versus two-sided liquidity or will deploy tools to prevent "sniping"), chooses the tokens they want to make available in the pool for trading, and places the tokens in the pool where they can be purchased in exchange for other digital assets like USDC (U.S. dollar backed stablecoins) or SOL (Solana tokens). The Meteora software automatically deducts transaction fees from each trade in the pool and transfers them to a program account controlled by DLL.

Plaintiff seeks to hold Mr. Chow, a developer of the software that runs the automated Meteora exchange, liable for claimed money damages sustained by virtually everyone in the world who purchased $LIBRA tokens from a Meteora liquidity pool set up by Defendant Hayden Davis and others (collectively, the "Davis Defendants") due to allegedly fraudulent conduct by the Davis

---

[3] Plaintiff has named "Meteora" as a defendant even though he concedes that it is "a cryptocurrency platform on the Solana Blockchain" that "does not have a corporate entity." (*See* Treanor Decl. ¶¶ 16, 35, Dkt. 16). Because Meteora is merely software (*see* Hoe Yong Decl. ¶ 2), it does not have the legal capacity to be sued and does not control any of the funds at issue.

Defendants on the exchange.  But even if the Davis Defendants misused Meteora to defraud $LIBRA buyers (which Plaintiff has not shown), Plaintiff does not allege (much less prove) any of the facts needed to extend liability to Mr. Chow.  Indeed, Plaintiff does not deny that:

- Mr. Chow was not a member of the Viva La Libertad! project led by the Davis Defendants that created $LIBRA, did not design or launch the project's website, did not market or promote the project, and did not design or create $LIBRA tokens.

- Mr. Chow did not own, control, or set up the virtual smart contract used to mint $LIBRA tokens.

- Mr. Chow did not recruit President Javier Milei, Dave Portnoy, or any other alleged "touters" to promote $LIBRA.  Indeed, Mr. Chow has never met, spoken or corresponded with President Milei or Portnoy.

- Mr. Chow did not set up the Meteora liquidity pool used by the Davis Defendants to sell $LIBRA tokens, and did not elect to make it a one-sided pool (a feature which was disclosed on the Meteora website).

- Mr. Chow did not transfer any $LIBRA tokens into or out of the pool, did not buy or sell $LIBRA tokens, and did not market or promote $LIBRA tokens.

- Mr. Chow did not extract from the pool any of the USDC or SOL tokens that were exchanged for $LIBRA tokens, and did not receive any of the extracted USDC or SOL.

- Mr. Chow did not draft, review, approve, or disseminate any of the allegedly false statements that Plaintiff says the Davis Defendants used to induce $LIBRA token purchases.

- Mr. Chow did not engage in any insider trading, "sniping," or other illicit trading of $LIBRA tokens.

Setting aside whether Plaintiff alleges enough to pursue fraud claims against the Davis Defendants (which he does not), there is nothing in Plaintiff's papers justifying claims against Mr. Chow, who simply created the software that Plaintiff contends others abused.  As the Second Circuit recently held in dismissing similar claims against the developers of an automated digital asset trading exchange, "it defies logic that a drafter of a smart contract, a computer code, could be held liable" for "a third-party user's misuse of the platform."  *Risley* v. *Universal Navigation*

*Inc.*, 2025 WL 615185, at *4 (2d Cir. Feb. 26, 2025).  Extending liability to one "whose function is solely to execute the trades" would "be akin to holding the NASDAQ or the New York Stock Exchange liable as facilitators of any fraudulent stock purchase on their exchanges."  *Id.* at *3. That is not law on Wall Street or on the blockchain.

Plaintiff does not come anywhere close to pleading a plausible claim against Mr. Chow, and so he does not raise a serious question—let alone demonstrate a likelihood of success—on the merits of any claim as to Mr. Chow.  Plaintiff's speculative assertions about the theoretical risk of asset dissipation—which are insufficient as to all Defendants—are non-existent as to Mr. Chow. Plaintiff is seeking to freeze whatever assets the Davis Defendants allegedly extracted from the $LIBRA liquidity pool but also—as it relates to Mr. Chow—the transaction fees that Meteora users paid when they traded $LIBRA in the Davis Defendants' liquidity pool.[4]  There is no dissipation risk because Mr. Chow has represented in his accompanying Declaration that he has no personal control of the DLL-controlled program account that received those fees (in which he has an interest), has never moved them, and does not intend to do so.  Plaintiff's lack of any viable claim against Mr. Chow, and the zero risk of dissipation by Mr. Chow, each provides an independent basis to reject Plaintiff's application as to Mr. Chow.  But the Court need not even reach these issues because Plaintiff does not come close to meeting his threshold burden of showing irreparable harm absent the TRO.  Plaintiff's Complaint concedes that he is seeking money

---

[4] The TRO freezes three categories of funds.  (*See* TRO at 3).  Only the first—"any $LIBRA cryptocurrency, or proceeds obtained through trading $LIBRA cryptocurrency"—appears to pertain to Mr. Chow, given his claim to some of the trading fees generated on Meteora that are held in a DLL-controlled program account.  (*See* Chow Decl. ¶ 3).  The other two categories— "approximately $110 million in $LIBRA Proceeds that Defendant Hayden Davis controls" and two specifically identified LIBRA Wallets—are irrelevant to Mr. Chow, Meteora, and DLL.  (*See* TRO at 3).

damages to compensate for claimed class-wide losses from the alleged fraud.  It is black-letter law that any alleged injury that can be redressed with money is not irreparable.

*First*, Plaintiff does not get out of the starting gate because he cannot establish the required element that he will suffer imminent and irreparable harm without the TRO.  There is no serious question that this case is about money.  The Complaint asks for "over $280 million" in "compensatory damages" in order to "***fully compensate*** Plaintiff and the [putative] Class for ***financial losses*** suffered due to Defendants' [alleged misconduct]."  Nor is there anything unique about the USDC and SOL tokens that Plaintiff seeks to recover.  They are fungible, highly liquid, and easily tradeable for cash.  Thus, Plaintiff plainly has an adequate remedy at law without the TRO:  if Plaintiff prevails on his claims (which he will not), the Court will enter a judgment for money damages that he can seek to recover from Mr. Chow.  Even if the assets that Plaintiff seeks to freeze with a TRO were moved, they are fungible and could easily be replaced with cash or other equivalent assets to satisfy any money judgment.  Accordingly, Plaintiff will suffer no irreparable harm if those assets are not frozen.

In any event, there is not a scintilla of evidence that there exists any risk of asset dissipation with respect to Mr. Chow or Meteora (or, for that matter, DLL, whose assets Plaintiff has not even attempted to freeze).  Under well-settled law, Plaintiff's attempt to freeze assets to make judgment collection more convenient (in a case in which Mr. Chow has not yet had the opportunity to file a motion to dismiss the threadbare allegations against him) requires a showing of likely dissipation.  But Mr. Chow's Declaration makes clear that he (i) has no personal control of the program account that holds the transaction fees at issue, (ii) has never moved those assets, (iii) has no intent to move them, and (iv) is nowhere close to insolvent.  Plaintiff has no evidence to the contrary on the issue of dissipation—and certainly nothing specific as to Mr. Chow.  As a result, the best that Plaintiff

can muster are speculative assertions that "Defendants" as a whole can easily move tokens and might try to do so. But if Plaintiff really believed there was a serious risk of dissipation, it stands to reason that he would not have waited *more than 100 days* after the alleged fraud occurred— and *over two months* after filing his Complaint—to seek this supposedly "emergency" relief. Plaintiff, of course, had no reason to rush, because Mr. Chow and Meteora could not (and DLL did not) move the funds in the wake of the alleged fraud, after the filing of the Complaint, after its removal to federal court, or after he agreed to a schedule for briefing a motion to dismiss. There is no reason to think that he or Meteora could (or that DLL would) move them now.

*Second*, Plaintiff fails to establish either a likelihood of success or a serious question going to the merits of any of his claims against Mr. Chow, because the Complaint does not have *any* allegations of consequence against him (nor against Meteora or DLL). Indeed, the Complaint alleges only that Mr. Chow co-founded Meteora and facilitated the $LIBRA launch. Plaintiff did not even mention Mr. Chow's name at the *ex parte* hearing on his TRO application, except to note that he was the only Defendant who had appeared in the case (a fact cutting against the need for a TRO as to Mr. Chow). These paper-thin allegations are nowhere close to enough to sustain the Complaint's claims that Mr. Chow should be held liable (for purported violations of New York General Business Law ("NYGBL") §§ 349 and 350 (Count I), negligent misrepresentation (Count II), and unjust enrichment (Count III)) because the Complaint pleads no plausible factual allegations to support Plaintiff's speculation that Mr. Chow knew about or culpably participated in the alleged fraud (or did anything wrong at all for that matter).

Plaintiff cannot mask the Complaint's fatal deficiencies with group pleading—*i.e.*, by referring to what "Defendants" supposedly did—nor can he resuscitate his insufficient Complaint with the "evidence" he has submitted on this application. All Plaintiff adds to the mix now are an

innocuous social media post from Mr. Chow weeks before the $LIBRA token launch that is not even worth mentioning here, and his after-the-fact comment—during a recorded conversation with a business associate of the Davis Defendants—that he "enabled" someone he should not have (Mr. Davis). What Plaintiff fails to disclose is the context of that comment. As the recording cited by Plaintiff shows, Mr. Chow was told for the first time during this conversation (a few days after hundreds of millions of dollars in liquidity had alleged been extracted from the $LIBRA liquidity pool by the Davis Defendants) that the Davis Defendants had allegedly been engaging in insider trading on Meteora, to which Mr. Chow responded "[t]hat's crazy," that he "wasn't aware of this," that he thought Mr. Davis "was an okay guy," that he "was totally rugged" by Mr. Davis, and that he had "been totally grifted" by Mr. Davis. Against that backdrop, it is crystal clear that Mr. Chow was saying that he had *unwittingly* enabled (and indeed, had been victimized) by Mr. Davis and would resign from his role in order to restore public confidence in the Meteora platform. All that shows is that—after the alleged fraud came to light—Mr. Chow lamented that Mr. Davis had used Meteora. Those frustrated words of after-the-fact regret are evidence that Mr. Chow was *not* a culpable participant in the alleged fraud. And they say *nothing* about what Mr. Chow knew *before* the alleged fraud or what he actually did at that time.

*Third*, the equities do not favor Plaintiff, and an injunction restraining the proceeds obtained through trading $LIBRA would not serve the public interest. Because there are no plausible allegations actually tying Mr. Chow to the alleged fraud, and there is no risk that Mr. Chow will dissipate the assets at issue, granting injunctive relief against him would be inappropriate and set a dangerous precedent. Plaintiff makes much of the fact that this case involves crypto assets, but that does not change the applicable legal standard. To the contrary, Plaintiff's request that this Court freeze fungible and highly liquid tokens makes this case just like

any other in which the plaintiff is attempting to freeze cash or a cash-equivalent just to exert leverage and try to make collection of a possible (but highly unlikely) judgment more convenient.

*Finally*, the Court should reject the application because the relief requested is not tailored to the alleged harm at issue.  Plaintiff seeks to freeze tens of millions of dollars in assets in order to compensate the entire putative class, but this is still an individual action.  Plaintiff has not moved for class certification (or even attempted to show in his current application that class certification would be likely here), and any forthcoming class certification motion will have serious problems.  Plaintiff does not bother to quantify his own alleged damages, but they cannot possibly come anywhere close to the level needed to justify a TRO freezing tens of millions of dollars.

For these and the other reasons below, the Court should deny Plaintiff's TRO application.

## ARGUMENT

To obtain the "extraordinary and drastic remedy" he seeks, Plaintiff bears the heavy burden of making a "clear showing" that he will suffer irreparable harm in the absence of the requested relief, that he is likely to succeed on the merits of his claims, that the equities tip in his favor, and that his requested relief is in the public's interest.  *See JTH Tax, LLC* v. *Agnant*, 62 F.4th 658, 666-67 (2d Cir. 2023); *Sussman* v. *Crawford*, 488 F.3d 136, 139-40 (2d Cir. 2007).  As detailed below, Plaintiff cannot make a clear showing as to any of these elements.

### I. Plaintiff Cannot Demonstrate Irreparable Harm

"A showing of irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction."  *Smith* v. *City of New York*, 754 F. Supp. 3d 581, 583-84 (S.D.N.Y. 2024) (Rochon, J.).  Plaintiff cannot make this showing.

#### A.  Money Damages Are an Adequate Remedy

Plaintiff's theory of this case—and the relief he is requesting—show that this lawsuit is about money and that Plaintiff, thus, has an adequate remedy at law.  The Complaint makes crystal-

clear that Plaintiff is claiming "Defendants" took money from $LIBRA purchasers.  For example,
Plaintiff alleges that:

- insiders "siphoned," "extracted," and "remov[ed]" approximately $107 million from the $LIBRA liquidity pool at the expense of retail purchasers (Compl. ¶¶ 6, 97, 105);

- "LIBRA Wallet 3 generated profits exceeding $29 million through structured liquidity extraction techniques" (*id.* ¶ 90);

- the "liquidity extraction strategies" resulted in "insider profit extraction" and "insider profit-taking" (*id.* ¶ 91);

- the "Defendants" supposedly "stole over $280 million from consumers" by "pull[ing] out" "money" from the $LIBRA liquidity pool (Pl. Br. at 1);

- purchasers put "money" into the liquidity pool and "Defendants quickly extracted it" (*id.* at 3-4);

- purchasers "lost more than $280 million trading $LIBRA" (*id.* at 9);

- the "Defendants" supposedly "manipulat[ed] the token price upwards to extract the money before the scam [was] detected" (*id.* at 19); and

- the "Defendants profited further by collecting transaction fees generated from retail trading activity" (Compl. ¶ 142).

Given these allegations, it is no surprise that Plaintiff seeks money damages.  Indeed,
Plaintiff requests an award of "***compensatory damages in an amount*** to be determined at trial,
sufficient to ***fully compensate*** Plaintiff and the [putative] Class for financial losses suffered due to
Defendants' [alleged misconduct]."  (Compl. at 39).  He even quantifies the claimed amount—
$280 million.  (*See* Pl. Br. at 13).  Plaintiff's own words are fatal to his application.  *See Dexter
345 Inc.* v. *Cuomo*, 663 F.3d 59, 63 (2d Cir. 2011) ("It is well established that an irreparable injury
is an injury" for "which a monetary award cannot be adequate compensation."); *see also Lightbox
Ventures, LLC* v. *3RD Home Ltd.*, 2016 WL 6562107, at *10 (S.D.N.Y. Oct. 28, 2016) (no
irreparable harm, even though plaintiff might have been entitled to "narrowly tailored equitable
relief," where plaintiff could be "largely compensate[d]" with money damages).

It makes sense that Plaintiff seeks money damages because he claims that the Davis Defendants stole money:  specifically, USDC and SOL tokens,[5] which are fungible and highly liquid digital assets.  USDC is a stablecoin pegged to the U.S. dollar, meaning that one USDC can reliably be exchanged for one U.S. dollar (and vice versa).  *See* Circle Internet Group Inc., Amendment No. 3 to Registration Statement (Form S-1), at 3 (May 27, 2025), available on the SEC's EDGAR database.  Similarly, SOL is the native token for the Solana blockchain, with a market capitalization of nearly $70 billion and daily trading in the multi-billions on various digital asset trading exchanges.  *See* VanEck Solana Trust, Registration Statement at 1-2 (Form S-1) (June 27, 2024), available on the SEC's EDGAR database; *Solana*, COINGECKO WEBSITE (last visited June 27, 2025) (displaying SOL's 24-hour trading volume), *at* https://www.coingecko.com/en/coins/solana.[6]  Neither token is unique, and both trade in highly liquid markets that allow for near-instantaneous exchange to U.S. dollars or other tokens.

In light of these market realities, courts routinely refuse to grant preliminary injunctions to freeze crypto assets.  *See, e.g.*, *Schiermeyer ex rel. Blockchain Game Partners, Inc.* v. *Thurston*, 697 F. Supp. 3d 1265, 1272-73 (D. Utah 2023) (no irreparable harm in part because "cryptocurrency tokens are the epitome of fungible property"); *JustM2J LLC* v. *Brewer*, 2025 WL 435827, at *8 (E.D. Cal. Feb. 7, 2025) ("courts have concluded that the issuance of a temporary

---

[5] (*See, e.g.*, Compl. ¶ 6 and Exs. 1-7 (identifying USDC and SOL as the allegedly extracted assets); Treanor Decl. ¶ 19, Dkt. 16 (identifying USDC and SOL as "the cryptocurrencies" that purchasers "were providing when they purchased $LIBRA")).

[6] The Court may take judicial notice of the nature of USDC and SOL as the sources cited "cannot reasonably be questioned."  Fed. R. Evid. 201; *Wells* v. *Global Tech Industries*, 658 F. Supp. 3d 912, 916 n.2 (D. Nev. 2023) (SEC filings are public records appropriate for judicial notice); *SEC* v. *Passos*, 760 F. Supp. 3d 95, 111 (S.D.N.Y. 2024) (taking "judicial notice of well-publicized stock prices").

restraining order is generally inappropriate in cases involving the alleged theft of cryptocurrency where monetary damages were available and would suffice" (collecting cases)).

Recognizing this fatal flaw, Plaintiff tries to dress up his money damages claim by using buzzwords like "restitution" and "disgorgement." (*See* TRO Hearing Tr. 21:6-9, 21:11-15). But restitution and disgorgement are not exclusively equitable remedies, and the tokens Plaintiff seeks to freeze with respect to Mr. Chow are not unique assets, but rather fungible and liquid cash-equivalents. That dooms Plaintiff's claim. *See Rappaport* v. *Guardian Life Insurance Co. of America*, 2024 WL 4872736, at *16 (S.D.N.Y. Nov. 22, 2024) (Rochon, J.) (explaining that restitution can be sought in both law and equity, and denying a counterclaim for restitution because defendant did not identify the specific funds or property at issue and was therefore a "general creditor" seeking money damages); *Toray International American Inc.* v. *Nakayama*, 2014 WL 12543817, at *2 (S.D.N.Y. Apr. 29, 2014) (denying preliminary asset freeze where, like here, the plaintiff sought disgorgement and other equitable relief, because the plaintiff was "in essence" seeking the legal remedy of "[money] damages"); *R.B. Development, Co. Ltd.* v. *Tutis Capital LLC*, 2012 WL 2357318, at *3 (E.D.N.Y. June 20, 2012) (denying injunction because plaintiff's claims for restitution and unjust enrichment were legal, not equitable).

### B.  Plaintiff Fails to Demonstrate Any Risk of Dissipation

To prevail on this application, in addition to showing that he lacks a remedy at law (which he cannot), Plaintiff must also demonstrate a risk of dissipation. *See Westchester Fire Insurance Co.* v. *DeNovo Constructors, Inc.*, 177 F. Supp. 3d 810, 812 (S.D.N.Y. 2016) (opining that a preliminary injunction for money damages "is only appropriate if the non-movant's assets may be dissipated before final relief can be granted, or where the non-movant threatens to remove its assets from the court's jurisdiction"). Plaintiff fails at this too. Rather, Plaintiff offers only speculative

11

assertions—for example, that: Plaintiff "will suffer irreparable harm **if** the \$LIBRA Proceeds" are "dissipated during the pendency of this litigation"; that "[t]here is also a profound risk that the \$LIBRA Proceeds" will "be exhausted absent an injunction" because crypto assets are "much more easily dissipated than assets maintained in the traditional financial system"; and that "Defendants **could** elect at any point to move the money elsewhere." (Pl. Br. at 13-14). These are precisely the type of speculative allegations that courts have found insufficient. *See, e.g., Firemen's Insurance Co. of Newark, New Jersey* v. *Keating*, 753 F. Supp. 1146, 1156-57 (S.D.N.Y. 1990) (plaintiff's alleged irreparable harm was "speculative" where plaintiff offered no "evidence that any defendant will attempt to transfer or dissipate his or her assets so as to frustrate a money judgment"). There is also no evidence that fungible crypto assets like those that Plaintiff seeks to freeze here—which are readily exchangeable for cash—are any more susceptible to dissipation than cash in a defendant's bank account. Courts routinely reject applications for TROs to freeze cash pending the outcome of a civil lawsuit for money damages. *See, e.g., Bilalov* v. *Gref*, 2022 WL 19560947, at \*3-4 (S.D.N.Y. Mar. 18, 2022); *Levy* v. *Young Adult Institute, Inc.*, 2015 WL 170442, at \*9 (S.D.N.Y. Jan. 13, 2015); *Tutis Capital*, 2012 WL 2357318, at \*3.

Even if speculation were enough—and of course it is not—Plaintiff's speculation relates to "Defendants" as a group (and really focuses on the Davis Defendants (*see* Pl. Br. at 13-14)) and says nothing about Mr. Chow or Meteora specifically (and nothing at all about DLL). In fact, Plaintiff's submission is completely devoid of what it actually needs—the identification of specific steps taken to conceal assets or frustrate a potential future judgment, as well as some showing of intent to frustrate the potential future judgment. *See Sterling Ornaments Pvt. Ltd.* v. *Hazel Jewelry Corp.*, 2015 WL 3650182, at \*1 (S.D.N.Y. June 10, 2015) (denying injunctive relief where plaintiff failed to show that "the defendant took steps to frustrate a future judgment or that the

defendant is or imminently will be insolvent"); *Levy*, 2015 WL 170442, at *8-9 (no irreparable harm where plaintiff failed to establish that defendant had taken specific steps to remove assets from the plaintiff's reach); *Sea Carriers Corp.* v. *Empire Programs, Inc.*, 2006 WL 3354139, at *5 (S.D.N.Y. Nov. 20, 2006) (denying preliminary injunction where plaintiff failed to establish "[d]efendant's intent to frustrate any judgment").  Plaintiff does not even attempt to satisfy this standard as to Mr. Chow.  The law is clear that Plaintiff's "conclusory assertions [of potential future dissipation] do not sufficiently demonstrate that [Mr. Chow], who ha[s] appeared in this action and [is] actively litigating this case, [is] likely to dissipate [his] assets." *Bilalov*, 2022 WL 19560947, at *3.

In fact, the only evidence before the Court as to Mr. Chow shows that there is no risk of dissipation at all.  Indeed, in the face of Plaintiff's speculation, Mr. Chow has offered actual evidence:  unrebutted testimony that, although he has a claim on transaction fees generated by users of Meteora, he does not even personally have control over the program account in which those fees accrue.  (*See* Chow Decl. ¶ 3; *see also* Hoe Yong Decl. ¶ 4).  Mr. Chow has further testified that, even if he did have such control, he has no intention of moving those assets (and would never attempt to improperly frustrate any potential judgment).  (*See* Chow Decl. ¶ 4).

Plaintiff cannot seriously dispute any of this.  In fact, he does not have any evidence about dissipation relating to the so-called $LIBRA Proceeds by Mr. Chow (or Meteora or DLL), and he concedes that there have been ***no outflows*** from either wallet identified in the TRO (neither of which concerns Mr. Chow anyway), since February 2025, about a month ***before*** Plaintiff filed his lawsuit.  (*See* Ehrenhofer Decl. ¶ 3, Dkt. 17 (acknowledging "no incoming or outgoing USDC transactions" in $LIBRA Wallet 1 or 2 since February 14 and February 16, 2025, respectively; *see also supra* note 4).  Under these circumstances, Plaintiff cannot claim with a straight face that

there is any imminent risk of dissipation by Mr. Chow. Plaintiff's application should be denied for this reason alone. *See Levy*, 2015 WL 170442, at *9 (no irreparable harm where plaintiff made "no showing that [defendant] has acted fraudulently or is acting to remove its assets from the plaintiffs' reach" because "there is nothing to indicate that [defendant] has specifically acted willfully in order to frustrate a judgment").

Moreover, "courts that have found irreparable injury because of the risk that a judgment will not be satisfied have required a showing that the defendant is insolvent, is on the verge of insolvency, or has tried to transfer or conceal assets." *Pamlab, LLC* v. *Macoven Pharmaceuticals, LLC*, 881 F. Supp. 2d 470, 480 (S.D.N.Y. 2012) (denying preliminary injunction and distinguishing cases in which irreparable harm was found). But Plaintiff cannot clear that hurdle here. To the contrary, Mr. Chow has offered unrebutted testimony that he is solvent and has no reason to believe that he will imminently (or ever) become insolvent. (*See* Chow Decl. ¶ 5).

Without any evidence of likely (let alone actual) dissipation, Plaintiff attempts to make the required showing by citing several crypto-related cases and suggesting that courts apply a different standard in them because the world of cryptocurrency is uniquely prone to asset dissipation. (*See* Pl. Br. at 13-14). Not only is Plaintiff's innuendo about digital assets false, but his cases do not apply any different standard. For example, in *Martinangeli* v. *Akerman, LLP*, 2018 WL 6308705 (S.D. Fla. Sept. 14, 2018), before granting a TRO, the court credited evidence that the defendant had provided false wiring instructions, and had taken concrete steps to dissipate the assets in question—specifically that "[d]efendant ha[d] ***already closed*** the Bank of America account to which [p]laintiff transferred funds and ***emptied*** the account." *Id.* at *2. Plaintiff, of course, has nothing close to this type of evidence here against Mr. Chow.

Moreover, Plaintiff's reliance on *FTC* v. *Dluca*, 2018 WL 1830800 (S.D. Fla. Feb. 28, 2018)—a case involving a pyramid scheme—is deeply misleading because (unlike here) there is no traditional irreparable harm requirement in FTC enforcement actions. *See* 15 U.S.C. § 53(b); *Dluca*, 2018 WL 1830800 at *1-2 (explaining that "[u]nlike private litigants, the FTC need not demonstrate irreparable injury in order to obtain injunctive relief," and "[i]rreparable injury may be presumed in a statutory law enforcement action" filed by the FTC).

In the other cases Plaintiff cites, the courts found a risk of dissipation not merely because tokens were involved, but rather because the cases involved the theft of digital assets by ***unknown and anonymous defendants*** through hacking or organized criminal scams:

- *Heissenberg* v. *Doe*, 2021 WL 8154531, at *1-2 (S.D. Fla. Apr. 23, 2021) involved unidentified defendants using a "SIM swapping" cellphone attack to gain unauthorized access to plaintiff's wallet and abscond with $4.4 million in funds.

- *Astrove* v. *Doe*, 2022 WL 2805345, at *1 (S.D. Fla. June 17, 2022) involved unidentified defendants creating a fake crypto exchange to steal plaintiff's funds.

- *Jacobo* v. *Doe*, 2022 WL 2052637, at *5 (E.D. Cal. June 7, 2022) involved unidentified defendants falsely representing they were affiliated with the Ethereum Foundation to convince plaintiff to invest in a fake investment vehicle.[7]

These cases are far afield. Not only is Mr. Chow identified and known, but he has retained reputable counsel, voluntarily accepted service of the Complaint, appeared in this case to defend it, and has (through counsel) been coordinating with Plaintiff's attorneys in order to ensure that this case proceeds efficiently. (*See* Ramesh Decl. ¶ 3). Similarly, DLL's counsel explained to Plaintiff's attorneys before Plaintiff made its application that Meteora is software, not a legal

---

[7] The rest of Plaintiff's cases also involved unknown defendants utilizing fake cryptocurrency exchanges to abscond with the plaintiff's funds. *See Gaponyuk* v. *Alferov*, 2023 WL 4670043, at *1, *3 (E.D. Cal. July 20, 2023); *Bullock* v. *Doe*, 2023 WL 9503380, at *5-6 (N.D. Iowa Nov. 3, 2023); *Yogaratnam* v. *Dubois*, 2024 WL 758387, at *4 (E.D. La. Feb. 23, 2024).

entity. (*See* Spillane Decl. ¶¶ 5-6). Moreover, Plaintiff here has not even tried to offer evidence (because there is none) of dissipation with respect to Mr. Chow specifically.

As the Court observed at the TRO hearing (Tr. 6:22-25), Plaintiff's delay in seeking injunctive relief further underscores the lack of any realistic threat of dissipation. Plaintiff waited more than ***two months*** after filing his Complaint to make this supposed "emergency" request on an *ex parte* basis, and agreed to stay discovery pending the outcome of Mr. Chow's anticipated motion to dismiss. Courts routinely deny preliminary injunctions filed after this type of delay. *See, e.g.*, *Monowise Ltd. Corp.* v. *Ozy Media, Inc.*, 2018 WL 2089342, at *2 (S.D.N.Y. May 3, 2018) ("courts in this Circuit typically decline to grant preliminary injunctions in the face of unexplained delays of more than two months" (collecting cases)); *Livery Round Table, Inc.* v. *New York City FHV & Limousine Commission*, 2018 WL 1890520, at * 9 (S.D.N.Y. Apr. 18, 2018) (plaintiff's three-month delay "undercuts a showing of immediate and irreparable injury").

## II. Plaintiff Is Not Likely to Succeed on the Merits of His Claims

The Court should deny Plaintiff's application for the independent reason that he has failed to demonstrate any serious question or likelihood of success on the merits for any of his claims against Mr. Chow.[8] The crux of Plaintiff's claim against Mr. Chow is an improper attempt to hold him liable for helping to develop the Meteora software, which the Davis Defendants used for a token launch that allegedly turned out to be a fraud. (*See* Compl. ¶ 92). But those cursory allegations do not come close to supporting a plausible cause of action against Mr. Chow.

---

[8] Even if the Meteora software had the capacity to be sued (it does not), Plaintiff's claims against Meteora would fail for the same reasons the claims fail against Mr. Chow. Accordingly, all of the arguments set forth herein apply equally to Meteora.

The Second Circuit dismissed similar claims in *Risley*, 2025 WL 615185, at *4. There, the *Risley* plaintiffs sued to hold the developers of automated computer code that facilitates peer-to-peer trading of digital assets on the Uniswap exchange liable for allegedly fraudulent conduct by others who sold "scam tokens" via Uniswap liquidity pools to the plaintiffs. In rejecting their claims, the Second Circuit held "that it defies logic that a drafter of a smart contract, a computer code, could be held liable" for "a third-party user's misuse of the platform." *Id.* Extending liability to one "whose function is solely to execute the trades" would "be akin to holding the NASDAQ or the New York Stock Exchange liable as facilitators of any fraudulent stock purchase on their exchanges." *Id.* at *3.

The same result should follow here: Mr. Chow's mere creation of software code that was allegedly misused by others does not make him liable for their alleged misconduct.

### A. Plaintiff Asserts No Substantive Allegations of Misconduct by Mr. Chow

Plaintiff fails to show that Mr. Chow engaged in any misconduct that would support a cause of action against him. In fact, Plaintiff's scant allegations against Mr. Chow do not include anything to even suggest that he had a direct role in launching or promoting $LIBRA, let alone engaged in any sort of fraudulent or otherwise culpable conduct. The Complaint alleges only that:

- Mr. Chow is a co-founder of Meteora (*see* Compl. ¶¶ 21, 26); and

- "Meteora's leadership," which presumably includes Mr. Chow, "facilitate[d]" the $LIBRA launch via Meteora through "IT support," and was aware of $LIBRA's token contracts prior to launch (*id.* ¶¶ 81-84).

Plaintiff's current application adds only two new points concerning Mr. Chow: that Mr. Chow (i) commented on a picture of Hayden Davis and President Javier Milei two weeks before the $LIBRA launch (*see* Treanor Decl. ¶ 9, Dkt. 16 (Mr. Chow allegedly wrote: "What changing the world looks like" and added a fire emoji)), and (ii) said a few days after the $LIBRA market

17

collapse that he "enabled a guy [he] should not have enabled" after he resigned from his role providing technical support to Meteora users (*id.* ¶ 21).  Neither addition changes the analysis. The first is an innocuous comment on a social media post that appears to be irrelevant to Plaintiff's causes of action.  And the second—which Plaintiff takes grossly out of context—is actually exculpatory evidence of Mr. Chow's innocence for the reasons explained above (*see supra* p. 7). With the benefit of hindsight, Mr. Chow expressed his regret that he had ***unwittingly*** allowed Mr. Davis to use Meteora to allegedly commit a fraud.  (*Id.*).  Mr. Chow's after-the-fact statement in no way suggests that he had knowledge of the alleged fraud ***at the time of the alleged fraud*** (indeed, as shown above, it shows the exact opposite).  *Cf. In re Lottery.com, Inc. Securities Litigation*, 765 F. Supp. 3d 303, 353 (S.D.N.Y. 2025) (defendant's contemporaneous knowledge of the alleged fraud could not be inferred from after-the-fact statements).  Whether in the Complaint or in this application, Plaintiff proffers ***nothing*** to tie Mr. Chow to any culpable participation in any alleged misconduct, let alone anything remotely sufficient to carry Plaintiff's burden of demonstrating a serious merits question as to Mr. Chow.  To the contrary, Mr. Chow offers sworn testimony that he had nothing to do with the fraudulent conduct underpinning Plaintiff's claims.  (*See* Chow Decl. ¶¶ 6-15).

In an effort to compensate for this fundamental failure, Plaintiff inappropriately lumps Mr. Chow together with other "Defendants" through improper group pleading, making allegations against "Defendants" as a group rather than as to each.  But it is well-established that group pleading is improper, and a complaint must separately state a claim against each and every defendant.  *See Goodman* v. *Board of Managers of Harborview Condominium*, 2023 WL 6977450, at *5 (S.D.N.Y. Oct. 23, 2023) ("It is well established in this Circuit that plaintiffs cannot simply lump defendants together for pleading purposes."), *appeal dismissed*, No. 23-7862 (2d Cir. Feb.

28, 2024); *Plusgrade L.P.* v. *Endava Inc.*, 2023 WL 2402879, at *5 (S.D.N.Y. Mar. 8, 2023) (granting motion to dismiss due to "group pleading"); *Washington* v. *Downstate Administrative Nurse*, 2023 WL 6282920, at *4 (S.D.N.Y. Sept. 26, 2023) (same).  Plaintiff cannot hide his inability to articulate any allegations of misconduct against Mr. Chow by indiscriminately grouping defendants together.

### B.  Plaintiff's New York General Business Law Claim Fails

Plaintiff is not likely to succeed or raise any serious question as to his claim against Mr. Chow under Sections 349 and 350 of the New York General Business Law, which requires a plaintiff to demonstrate that: "(1) the act or practice was consumer oriented; (2) the act or practice was misleading in a material respect; and (3) the plaintiff was injured as a result."  *Yuille* v. *Uphold HQ Inc.*, 686 F. Supp. 3d 323, 343-44 (S.D.N.Y. 2023).

As a threshold matter, Plaintiff fails to allege that Mr. Chow specifically engaged in any type of misleading act or practice.  *Yuille*, 686 F. Supp. 3d at 343-44 ("In order to state a claim under Section 349, a plaintiff must plead that the defendant's statements were likely to mislead a reasonable consumer acting reasonably under the circumstances.").  In fact, as discussed above (in Section II.A), Plaintiff does not (and cannot) identify a single misleading statement or act by Mr. Chow.  The only statement Mr. Chow allegedly made before the alleged fraud was to write "[w]hat changing the world looks like," under a picture of Mr. Davis.  That does not come close.

Nor can Plaintiff premise his General Business Law claim on a materially deceptive omission by Mr. Chow.  *Id*. at 347 (holding that an omission is only actionable under Section 349 "where a defendant fails to supply a consumer information that it alone possesses, and where that information would be material or important to a reasonable consumer and where the consumer could not have reasonably obtained the information other than through the defendant"); *Lee* v. *Mikimoto (America) Co. Ltd.*, 2023 WL 2711825, at *7 (S.D.N.Y. Mar. 30, 2023) ("[A] plaintiff

19

can only state a claim for omission under the GBL where the business alone possesses material information that is relevant to the consumer and fails to provide this information.").

Plaintiff argues that he was injured by "Defendants'" failure to disclose that $LIBRA's one-sided liquidity pool was "inherently unfair" because it "artificially set inflated token valuations without stable asset backing." (Compl. ¶¶ 119-130, 187). But each of these supposed omissions was disclosed. Disclosures on the Meteora website openly informed the public that users could launch tokens using one-sided liquidity. (See Hoe Yong Decl. ¶ 5). And all users at all times can access information identifying the specific assets in each liquidity pool created using Meteora, the balances of assets maintained in each pool, and the fee structures of each pool. (Id. ¶ 6). So Plaintiff, along with every other $LIBRA purchaser, had the opportunity to investigate and verify exactly which assets were in each liquidity pool before deciding to purchase $LIBRA. Trading meme coins like $LIBRA is also widely understood to be risky because their prices are subject to high volatility.[9]

At the ex parte TRO hearing, the Court relied on allegations that "Defendants" as a group made false advertisements about $LIBRA and inflated $LIBRA's prices to create the illusion of a successful launch. (TRO Hearing Tr. 27:14-20). But, as Mr. Chow explains in his unrebutted testimony, he did not engage in any of this (or any other) alleged misconduct. (Chow Decl. ¶¶ 6-15).

Finally, Plaintiff cannot demonstrate that his injury was the result of any deceptive act by Mr. Chow. See PharmacyChecker.com v. National Association of Boards of Pharmacy, 629 F. Supp. 3d 116, 132-33 (S.D.N.Y. 2022) (dismissing NYGBL claims because defendant "failed to

---

[9] See SEC Division of Corporate Finance, Staff Statement on Meme Coins (Feb. 27, 2025), at https://www.sec.gov/newsroom/speeches-statements/staff-statement-meme-coins ("Given the speculative nature of meme coins, they tend to experience significant market price volatility[.]").

sufficiently allege that it suffered an actual, direct injury resulting from [plaintiff's] conduct"). Plaintiff's injury quite obviously was not caused by the fact that Meteora can be used to create one-sided liquidity pools (or, of course, by Mr. Chow's role in helping to develop the Meteora software).

Plaintiff claims that he purchased $LIBRA because he relied on the allegedly false statements made by others about $LIBRA (*see* Compl. ¶¶ 189, 196-200), and that he suffered losses because "insiders" extracted assets from liquidity pools (*see id.* ¶¶ 97-105). But Mr. Chow did not launch or promote $LIBRA, nor did he extract any liquidity from any $LIBRA pool. (*See* Chow Decl. ¶¶ 6-15). That Mr. Chow did not play any role in the allegedly fraudulent conduct Plaintiff claims to have caused his injury is fatal to Plaintiff's claims against Mr. Chow. *See Tristan* v. *Bank of America*, 2023 WL 4417271, at *5 (C.D. Cal. June 28, 2023) ("The immediate cause of [plaintiff's] injury was her reliance on the fraudulent statements of a scammer[.]"), *appeal dismissed sub nom. Tristan* v. *Bank of America, N.A.*, 2025 WL 1293081 (9th Cir. Jan. 21, 2025); *see also Kuwait Investment Office* v. *American International Group, Inc.*, 128 F. Supp. 3d 792, 810-11 (S.D.N.Y. 2015) (dismissing claims against individual defendants who "ha[d] no role" in the alleged fraudulent conduct).

### C.  Plaintiff's Claim for Negligent Misrepresentation Cannot Succeed

Plaintiff's negligent misrepresentation claim against Mr. Chow also is unlikely to succeed or raise any serious question on the merits.[10] To sustain a claim for negligent misrepresentation under New York law, a plaintiff must "demonstrate (1) the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff; (2)

---

[10] At the TRO hearing, the Court correctly found that it need not address Plaintiff's negligent misrepresentation claim because it only seeks monetary damages and thus cannot be the basis for a TRO. (*See* TRO Hearing Tr. 28:17-20).

that the information was incorrect; and (3) reasonable reliance on the information." *Pall Corp.* v. *CleanSpace Modular, LLC*, 2023 WL 7412096, at *3 (S.D.N.Y. Nov. 9, 2023) (Rochon, J.).  This claim fails because Plaintiff has not asserted that Mr. Chow made any misrepresentation or omission, as discussed above (in Section II.A), much less that Plaintiff relied on a misrepresentation or omission made by Mr. Chow.  *See Annabi* v. *New York University*, 2023 WL 6393422, at *17-18 (S.D.N.Y. Sept. 29, 2023) (dismissing claim where plaintiff failed to allege that "defendant made a false representation that he or she should have known was incorrect").

Finally, Plaintiff's negligent misrepresentation claim fails for the additional reason that Plaintiff does not, and cannot, allege the existence of the requisite special relationship between him and Mr. Chow.  Plaintiff, of course, does not allege any direct dealings or privity between Mr. Chow and himself.  And because even an arm's-length business relationship does not give rise to a special relationship, Plaintiff cannot seriously contend that the even more attenuated relationship here between Mr. Chow, who helped develop the Meteora software, and him, a token purchaser, gives rise to any such relationship.  *Cf. Tradeshift, Inc.* v. *Smucker Services Co.*, 2021 WL 4463109, at *8 (S.D.N.Y. Sept. 29, 2021) ("[T]he law of negligent misrepresentation requires a closer degree of trust between the parties than that of the ordinary buyer and seller."); *see Barron* v. *Helbiz Inc.*, 2023 WL 5672640, at *14 (S.D.N.Y. Sept. 1, 2023) (dismissing negligent misrepresentation claim for lack of special relationship, even where plaintiffs alleged they were specifically "solicited as cryptocurrency enthusiasts" to purchase tokens in defendants' initial coin offering).

### D.  Plaintiff's Claim for Unjust Enrichment Cannot Succeed[11]

Finally, Plaintiff's claim for unjust enrichment will not succeed on the merits for two simple reasons.  First, it is improper because it is duplicative of Plaintiff's General Business Law claim.  *See, e.g.*, *Velez* v. *Lasko Products, LLC*, 706 F. Supp. 3d 444, 463 (S.D.N.Y. 2023) (Rochon, J.) ("[C]ourts in the Second Circuit have consistently held that unjust enrichment claims are duplicative of GBL claims."); *In re Fyre Festival Litigation*, 399 F. Supp. 3d 203, 222-23 (S.D.N.Y. 2019) (dismissing unjust enrichment claims as duplicative of tort claims).  Second, Plaintiff does not, and cannot, allege that Mr. Chow—who is entitled to certain trading fees generated on Meteora—engaged in any culpable conduct to make any enrichment "unjust."  Plaintiff claims that "Defendants" were unjustly enriched by manipulating liquidity pools and extracting stable assets contributed by retail purchasers.  (Compl. ¶ 206).  But as discussed above, Plaintiff does not and cannot claim that Mr. Chow had any role in either the purported manipulation or the alleged extraction.  *See Georgia Malone & Co.* v. *Rieder*, 19 N.Y.3d 511, 517-18 (2012) (holding that an unjust enrichment claim must fail where "the relationship between [plaintiff] and [defendant] is too attenuated because they simply had no dealings with each other").

### III.  The Balance of Equities Does Not Favor Plaintiff and the Public Interest Will Not Be Served by a Preliminary Injunction

To obtain a preliminary injunction, Plaintiff also must demonstrate that the "balance of the hardships tip[s] decidedly in favor of the moving party[.]"  *New York ex rel. Schneiderman* v. *Actavis PLC*, 787 F.3d 638, 650 (2d Cir. 2015).

---

[11] The Court did not address the merits of Plaintiff's unjust enrichment claim at the TRO hearing because it found that there was a serious question with respect to Plaintiff's claims under New York's General Business Law.  (*See* TRO Hearing Tr. 28:13-17).

But here, Plaintiff can demonstrate no hardship because he provides no evidence that any of the assets at issue have been moved since the alleged fraud took place. (*See* Ehrenhofer Decl. ¶ 3 (acknowledging "no incoming or outgoing USDC transactions" in $LIBRA Wallet 1 or 2 since February 14 and February 16, 2025, respectively); Hoe Yong Decl. ¶ 4). Plaintiff has not even raised the specter of any potential dissipation by Mr. Chow. To the contrary, Mr. Chow has accepted service of the Complaint and is actively engaging in this litigation—eager to prove that he is not responsible in any way for any $LIBRA buyer losses. *Compare with Heissenberg*, 2021 WL 8154531, at *3, *and Jacobo*, 2022 WL 2052637, at *2. Moreover, Plaintiff has nothing to even suggest that Mr. Chow would not be able to satisfy a damages judgment using other funds available to him. Thus, Plaintiff has not come close to showing that he would suffer any hardship absent an injunction as to Mr. Chow.

On the flip side, there would be no benefit to the public interest in restraining Mr. Chow's assets where, as here (i) Plaintiff's Complaint has not even survived a motion to dismiss and is extremely unlikely to prevail on the merits against Mr. Chow; and (ii) Mr. Chow has not dissipated any assets, has testified that he has no intent to do so, and is clearly not insolvent. Moreover, any restraint on Mr. Chow would signal to the general public that in crypto cases, unlike disputes in any other industry, legitimately earned funds can be frozen simply by filing a complaint. That is not the law.

## IV. Plaintiff's Application for Injunctive Relief Fails As Overbroad Because it Seeks Recovery for a Class that Has Not Been Certified (and Most Likely Never Will Be)

There exists another, independent reason to deny Plaintiff's request for injunctive relief: Plaintiff has "made no attempt to posit an equitable interest that corresponds to the breadth of the TRO [he] proposes." *Tutis Capital*, 2012 WL 2357318, at *4. That is because Plaintiff is seeking to freeze tens of millions of dollars in assets to compensate the entire putative class, yet this is still

just an individual action for damages.  Not only has Plaintiff not yet moved for class certification, but there is a strong chance that a class will never be certified (and Plaintiff does not even attempt to argue, let alone show, in his application that class certification would be appropriate).

As the Second Circuit explained, "injunctive relief should be narrowly tailored to prevent harm to the parties before the court."  *Kane* v. *De Blasio*, 19 F.4th 152, 174 (2d Cir. 2021).  This directive "applies with special force where," as here, "there is no class certification."  *Id.*  Indeed, courts have denied preliminary injunction requests, just like this one, which seek to afford relief to potential members of an uncertified class.  *See e.g.*, *Takiguchi* v. *MRI International*, *Inc.*, 611 Fed. Appx. 919, 920-21 (9th Cir. 2015) (vacating a preliminary injunction freezing assets where "certain statements in the district court's order suggest that the preliminary injunction may have been impermissibly issued to afford relief to unnamed class members" of a proposed class that had not yet been certified).

Here, Plaintiff seeks to certify a class of "all individuals who purchased $LIBRA Tokens" anywhere in the world.  (Compl. ¶¶ 172-173).  But this worldwide class definition presents serious problems for class certification.  For example, with respect to the claim under NYGBL Sections 349 and 350 (Count I), "[t]he transaction in which the consumer is deceived must occur in New York," and the consumer must have completed their purchase in New York.  *See English* v. *Danone North American Public Benefit Corp.*, 678 F. Supp. 3d 529, 536 (S.D.N.Y. 2023).  Here, however, the Complaint does not specify where the supposed deception or purchases took place, and Plaintiff's statement that the proposed class contains members spanning the globe all but confirms that the proposed class contains members who are neither citizens of, nor completed their purchase in, New York.

Plaintiff's allegation of a worldwide class also likely dooms certification with respect to the negligent misrepresentation claim (Count II). That is because, under New York choice-of-law rules, the Court may well be required to apply the state law of each state where the alleged injury occurred. *See In re Thelen LLP*, 736 F.3d 213, 219-20, 220 n.7 (2d Cir. 2013) (applying New York choice-of-law principles to conclude that the applicable state substantive law is where the injury was inflicted). As a result, Plaintiff could not satisfy the predominance requirement of Federal Rule of Civil Procedure 23(b)(3). *See McKoy* v. *Trump Corp.*, 2023 WL 6842310, at *5 (S.D.N.Y. Oct. 17, 2023) (denying class certification for negligent misrepresentation claim because "[c]ertification of a nationwide class that would entail the application of the various states' laws of fraud and negligent misrepresentation is inappropriate given the variations in state law"); *Ackerman* v. *Price Waterhouse*, 252 A.D.2d 179, 194 (1998) (declining to certify a class where choice of law issues predominated).[12]

Plaintiff's failure to tailor the requested relief is fatal to his application. But even if the Court were inclined to freeze any assets (and, again, it should not), it should require Plaintiff to make a proffer of his own personal damages and freeze only that amount.

---

[12] Separately, Plaintiff provides no evidence from which the Court can evaluate his suitability as putative class representative. While Plaintiff bears the burden to prove that he "will fairly and adequately protect the interests of the class" as class representative, *Garcia De León* v. *New York University*, 2022 WL 2237452, at *14 (S.D.N.Y. June 22, 2022), Plaintiff provides virtually no information regarding the circumstances surrounding his purchase of $LIBRA—such as his motivation, investing background, or sophistication—let alone his profits or losses. (*See* Compl. ¶ 18 (alleging only that Plaintiff "purchased $LIBRA Token and suffered damages as a result")).

## **CONCLUSION**

For all of these reasons, Plaintiff's TRO motion should be denied.


Dated:  June 27, 2025                          CAHILL GORDON & REINDEL LLP

                                               By:      _/s/ Samson A. Enzer_
                                                        Samson A. Enzer
                                                        Edward N. Moss
                                                        Sheila C. Ramesh
                                                        Gregory Mortenson
                                                        32 Old Slip
                                                        New York, New York 10005
                                                        (212) 701-3000
                                                        senzer@cahill.com


                                               _Attorneys for Defendant Benjamin Chow_

27

## CERTIFICATION OF COMPLIANCE

Pursuant to Paragraph 3.C of the Individual Rules of Practice in Civil Cases of Judge Jennifer L. Rochon, counsel for Defendant Benjamin Chow has complied with all of the formatting rules contained therein. The total number of words contained in this brief—exclusive of the cover page, certificate of compliance, table of contents, and table of authorities—is 8,737 words.

Date:   June 27, 2025

CAHILL GORDON & REINDEL LLP

By:   */s/ Samson A. Enzer*
Samson A. Enzer
Edward N. Moss
Sheila C. Ramesh
Gregory Mortenson
32 Old Slip
New York, New York 10005
(212) 701-3000
senzer@cahill.com

*Attorneys for Defendant Benjamin Chow*