P71DHURC

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x
     OMAR HURLOCK, on behalf of
3    himself and all others
     similarly situated,
4
                     Plaintiff,
5
                 v.                        25 Civ. 3891 (JLR)
6
     KELSIER VENTURES, et al.,
7
                     Defendants.           Conference
8                                          (Remote)
     ------------------------------x
9                                          New York, N.Y.
                                           July 1, 2025
10                                         11:00 a.m.

11   Before:

12                   HON. JENNIFER L. ROCHON,

13                                         District Judge

14                        APPEARANCES

15   HOPPIN GRINSELL, LLP
          Attorneys for Plaintiff
16   BY:  MARGARET HOPPIN
          JOSHUA SHIELDS MOLDER
17
     BURWICK LAW
18        Attorneys for Plaintiff
     BY:  MAX BURWICK, ESQ.
19

20   SBAITI & COMPANY, PLLC
          Attorneys for Defendant Davis
21   BY:  MAZIN AHMAD SBAITI
          GEORGE PADIS
22

23   CAHILL GORDON & REINDEL, LLP
          Attorneys for Defendant Chow
24   BY:  SAMSON AARON ENZER
          GREGORY MORTENSON
25

P71DHURC

1          (Case called)

2          THE COURT:  Good morning, everyone.

3          Before we begin, let me just place a few things on the

4    record.  I am conducting this conference through Microsoft

5    Teams, through video conference, for the convenience of the

6    parties, so that I could get everyone together as soon as

7    possible.

8          As a reminder, court proceedings are public

9    proceedings and, therefore, there is a listen-only line noticed

10   on the docket for any public or press who wish to join.  If

11   you've joined, please mute yourself, because I'm getting a

12   little bit of feedback.

13         I have on the line my deputy.  I also have a court

14   reporter, who is transcribing these proceedings.  As a

15   reminder, no one other than court personnel are permitted to

16   record, rebroadcast, or disseminate these proceedings.

17         All right.  Let's take appearances.  Who do I have

18   here from plaintiff?

19         MS. HOPPIN:  Good morning, your Honor.  Margo Hoppin

20   from Hoppin Grinsell for plaintiff.

21         THE COURT:  Thank you.

22         MR. BURWICK:  Good morning, your Honor.  Max Burwick

23   from Burwick Law for the plaintiffs.

24         THE COURT:  Thank you.

25         MR. MOLDER:  Good morning, your Honor.  Joshua Molder

P71DHURC

| | |
|---|---|
| 1 | from Hoppin Grinsell for plaintiffs. |
| 2 | THE COURT:  Thank you. |
| 3 | Anyone further for the plaintiffs? |
| 4 | MS. HOPPIN:  No, your Honor. |
| 5 | THE COURT:  Thank you. |
| 6 | Who is here for Mr. Chow? |
| 7 | MR. ENZER:  Good morning, your Honor.  Samson Enzer |
| 8 | from Cahill Gordon & Reindel for Mr. Chow, along with my |
| 9 | colleague, Mr. Mortenson. |
| 10 | THE COURT:  Good morning. |
| 11 | Who is here for defendant Mr. Davis? |
| 12 | MR. SBAITI:  Good morning, your Honor.  My name is |
| 13 | Mazin Sbaiti, from Sbaiti & Company.  I'm appearing for |
| 14 | Mr. Davis, and also on the line is co-counsel Chris Armenta.  I |
| 15 | think she called in.  Her pro hac is not yet in.  It should be |
| 16 | in today or tomorrow.  And Mr. George Padis from my office is |
| 17 | also on the line, your Honor. |
| 18 | THE COURT:  Thank you.  Thank you very much. |
| 19 | All right.  Well, I called this conference because I |
| 20 | have a TRO in place.  I have an agreed upon schedule for |
| 21 | briefing of the PI and the TRO, by implication.  I had set that |
| 22 | down on consent of at least Mr. Chow, and then Mr. Davis |
| 23 | appeared and filed a motion to dissolve the TRO. |
| 24 | I put out an order recently that basically advised |
| 25 | that the TRO is going to stay in place, that I thought that the |

P71DHURC

```
 1    schedule that we had was reasonable, because there are a lot of

 2    papers to consider here.  However, I did want to pull the

 3    parties together in the event that there's anything else,

 4    Mr. Sbaiti, that you wanted to present or talk to me about,

 5    because obviously you were not around early on in this case, so

 6    I want to make sure that everyone has an opportunity to be

 7    heard.

 8              As I see it now, we have the opposition to the PI, and

 9    the TRO, again, by extension, that has already been filed by

10    counsel for Mr. Chow.  I have yours, Mr. Sbaiti, which I would

11    be happy to let you augment if you wish to add a little bit

12    more if you think you need to.  Then I have a reply date of

13    July 11, and a preliminary injunction hearing of July 21, which

14    should give everyone enough time to get everything fully

15    briefed and for me to consider everything before the hearing.

16              So, I will ask you in a moment, Mr. Sbaiti, what your

17    position is, but before I do that, Mr. Burwick or Ms. Hoppin,

18    for the preliminary injunction hearing, just because we're

19    going to be talking about timing, what do you envision for that

20    hearing?  Do you envision witnesses?  Do you envision just oral

21    argument and decision on the papers?  What does that look like?

22              MS. HOPPIN:  At this stage, your Honor, we envision

23    oral argument.  No witnesses.  If that changes for any reason

24    as we do the analysis for the reply, we'll let you know

25    promptly, but we envision oral argument only.
```

P71DHURC

1          THE COURT:  Great.  I'm holding a few hours for that

2     on that day.

3          Mr. Sbaiti, let me ask you, is there anything you'd

4     like to add, any reason this schedule doesn't work?  I'm happy

5     to hear from you.

6          MR. SBAITI:  Thank you, your Honor.

7          So, I just want to clear something, in terms of a

8     predicate.  Your Honor's order on Friday I think understood

9     some of the allegations, and I don't think the allegations --

10    it's not allegations.  I think it was an affidavit, about when

11    we got involved and assumed we were involved before the agreed

12    order of an extension was filed on May 29.  And that's exactly

13    not so.  I didn't make -- I wasn't in this case until May 30,

14    which I think Mr. Burwick's affidavit, or maybe it's a

15    declaration, accurately reflects.  All I got was the TRO on the

16    30th.

17          (Recording played)

18          MR. SBAITI:  Sorry.  I -- oh, I think someone entered

19    or left the hearing.  Sorry about that.

20          So, I got the TRO on the 30th.  I tried to reach out

21    to Mr. Burwick on the 30th, not knowing that the motion for

22    extension had even been filed on the 29th.  It was granted on

23    the 30th.  I didn't know that.

24          Mr. Burwick and I spoke midday on the 31st, which,

25    Judge, was Saturday.  He didn't know it had been granted at

P71DHURC

```
1    that point, and, a few hours later, left me a voice message.
2    And I think his assistant emailed me the "so ordered."  So
3    that's the first time I had it.  So, we had nothing to do with
4    setting the schedule that was in place.
5            After that, I will say, we asked for it to be moved
6    up, so we could have the hearing sometime in June, mainly
7    because of the July 4th weekend.  And then I'm going out of
8    town, I'm going overseas to visit family from July 14 through
9    the 29th.  So the current date doesn't work.
10           So, after I got your order, I reached out to counsel
11   yesterday to see if we could do it earlier.  Great.  And you
12   asked the question, I was wondering, is it going to be live
13   witnesses.  I assumed the July 9th hearing would have been life
14   witnesses, but if everything's on paper now, what I've asked
15   for is a chance, as your Honor offered, to properly respond to
16   the PI motion, because that's a different set of circumstances
17   than a TRO.
18           And we were asking for August 1st, which is a few days
19   after I get back, and all the counsel have agreed that they're
20   available the week of August 12 for the hearing.  I don't know
21   if that works for your Honor.  That seemed to work for
22   everybody, all the counsel that are on today.  And so, you
23   know, we'd like a chance to more fulsomely, as your Honor said,
24   respond to the preliminary injunction.
25           We think *Grupo Mexicano* is an important decision for
```

P71DHURC

1    your Honor to consider in the relief requested.  We think the

2    Supreme Court's decision on Friday in *CASA* is an important

3    decision for your Honor to consider, and we'd like to brief

4    that fully for the Court.  And we also think there are some

5    evidentiary issues that wouldn't have been relevant to a TRO

6    that will be relevant to the preliminary injunction.

7            And knowing we're resting on briefs and affidavits

8    already filed obviously clarifies a lot for us and reduces our

9    work.  At the same time, we do want to challenge personal

10   jurisdiction in a 12(b)(2) motion, so we were going to get that

11   on file pretty much by early next week, and would ask that your

12   Honor maybe consider that, oral argument on that at the same

13   time.  I think it's going to be the same issues.  I don't think

14   it's going to add a lot of time to the hearing, may be a little

15   bit.  But that was sort of the thought process we had.

16           Plaintiffs wanted to limit us to our motion to

17   dissolve as our only response to the preliminary injunction.

18   We were objecting to that.  And so that's where we kind of

19   stand.

20           THE COURT:  Okay.  Well, it sounds like we can work

21   through these issues, so I can move the hearing.  My issue is

22   that the week of August 11 I am out of the country, but I could

23   do it the week of August 18.  I could find any time you want

24   for that week, and that would give you enough time to submit

25   anything further you'd like to submit.

P71DHURC

1          I do agree that having the briefing on the 12(b)(2)

2    motion at the same time and argument at the same time on the

3    12(b)(2) motion makes sense, because that's part and parcel of

4    this dispute.  So I'm happy to have that at the same time as

5    well.

6          Mr. Sbaiti, would that work for you, that week of

7    August 18?

8          MR. SBAITI:  I'm trying to pull up my calender as fast

9    as I can, your Honor.

10          THE COURT:  Sure.

11          MR. SBAITI:  I know I'm not -- mine is -- yes, your

12    Honor.  I'm assuming this is going to be live and in person.

13          THE COURT:  Yes.

14          MR. SBAITI:  I can be there.  No problem.

15          THE COURT:  So I'm thinking maybe August 19 at -- I'll

16    give it a couple hours, maybe at 1:00.

17          MR. SBAITI:  That works for me, your Honor.

18          THE COURT:  Okay.  The thought would be, Mr. Sbaiti,

19    and we'll come back for a deadline for papers being submitted,

20    but the thought would be generally you would have the ability

21    to submit any papers you wish for the PI.  We would have full

22    briefing on the personal jurisdiction motion, and the status

23    quo would then be in place with respect to the TRO until the

24    19th.

25          Is that right?

P71DHURC

1            MR. SBAITI:  Your Honor, reserving all rights --

2            THE COURT:  Sure.

3            MR. SBAITI:  -- I think that scheduling wise, that's

4       what we would envision.

5            THE COURT:  All right.  That's fair.  Let me move to

6       --

7            MR. SBAITI:  Your Honor, may I just -- one more

8       housekeeping item on the TRO.  One thing we wanted to ask your

9       Honor, and if you want us to sort of take it offline and get

10      back to you is in our motion to dissolve, we did point out that

11      Mr. Hayden still has intended to use this property for the

12      purposes of benefiting Argentinian businesses.  So one thing we

13      would ask for, in the minimum, is to have that be an exception,

14      as a permissible use.

15           And I'm sure there are some guardrails which your

16      Honor would want to impose that I'm happy to abide by, but

17      there is and always has been a genuine intention to do that.

18      Just because he didn't do it the day after the launch doesn't

19      mean he never intended to do it.  And there's a lot of hoops

20      that have to be jumped through in order to make that happen,

21      but we would ask for an exception to the TRO, and an acceptable

22      use for him under any injunction between now and then, since

23      it's quite a ways after.

24           THE COURT:  Can you articulate that exception one more

25      time for me, that he would be able to use the funds for?

P71DHURC

1          MR. SBAITI:  So, two things:  One, there's a little

2     bit of vagueness the way the TR -- you know, the two wallets

3     listed, one is a locked wallet, so it trades on its own.  And

4     these are still trading, but somehow the injunction suggests

5     that that's not allowed.  So they should be freely trading --

6     they still freely trade.  So he doesn't cause them to trade or

7     not cause them to trade.  But, secondarily, one of the

8     permissible uses that we'd like to have, that would be him

9     using these coins, would be for him to utilize them for their

10    intended purpose, which is to benefit Argentinian businesses.

11         So it doesn't happen overnight, where you can set up a

12    system to make grants and things like that.  That process is

13    still underway.  So if we get to that point between now and the

14    PI hearing, we'd like that to be a permissible use, and we're

15    happy to put whatever guardrails the Court thinks there needs

16    to be that aren't cumbersome.  But I think that's an important,

17    acceptable use option, both of those.

18         THE COURT:  Okay.  I'm hearing one, which is use of

19    the coins to benefit Argentinian businesses.  What's the

20    both -- what's the second?

21         MR. SBAITI:  And the second is that they're part of a

22    trading system.  So, not that he would trade them away to raise

23    money.  If he did, that would only be for purpose one.  But

24    there are coins or tokens within one of these wallets -- my

25    understanding is that they just trade on their own.  In other

P71DHURC

 1   words, they're automatically traded.

 2              THE COURT:  Oh, so that's not enjoined, then; is that

 3   right?  Because if they're automatically traded --

 4              MR. SBAITI:  It's unclear, because the order says he

 5   controls the wallet, so if someone were to bring up a

 6   blockchain record and say, "coins are going in and out, your

 7   Honor, he's in contempt," I don't know what to do with that.

 8   But there is just a little bit of dis-clarity there.

 9              THE COURT:  Thank you.

10              All right.  So let me move over to Ms. Hoppin.

11              What is your position, first of all, on moving the PI

12   hearing to August 19 at 1:00 p.m.?

13              MS. HOPPIN:  That is acceptable for plaintiff,

14   although Max can let me know if that doesn't work for him,

15   but -- that works for us both, yes.

16              THE COURT:  Mr. Burwick?

17              MR. BURWICK:  Yes.  Yes, your Honor, those dates work

18   with me as well.

19              THE COURT:  Okay.  We'll come back to a briefing

20   schedule.  I will grant Mr. Sbaiti the opportunity to put in

21   further papers with respect to the PI, but we'll come back to

22   that.

23              Ms. Hoppin, what is your -- do you have any objection

24   to the consideration of the 12(b)(2) motion at the same time as

25   the PI hearing, so I can hear on both?

P71DHURC

1          MS. HOPPIN:  No objection, your Honor, so long as the

2     briefing schedule permits time for us to fully respond to

3     submissions on that issue.

4          THE COURT:  Sure.  We're going to set down briefing

5     schedules for that on this call.

6          Then the last item is, can I have your position on the

7     exception of particular acceptable uses that Mr. Sbaiti is

8     suggesting for Mr. Davis on these coins?

9          MS. HOPPIN:  Yes.  We emphatically would object to any

10     such exception to this point prior to the hearing with respect

11     to the sort of general, unbounded "benefiting Argentina."  You

12     know, as our initial submission shows, all of these assets are

13     proceeds of a fraud, and to give Mr. Davis discretion to sort

14     of use them really is functionally an unclear and unbounded

15     dissolution of the TRO.

16          With respect to the --

17          THE COURT:  Ms. Hoppin, let me pause you.  Ms. Hoppin,

18     I heard your first point, and now I think you got cut off a

19     little bit, so why don't you start on the second point.

20          MS. HOPPIN:  With respect to the automated token

21     transfers, I will let Mr. Burwick speak to the mechanics of

22     that as needed, but I would say any technically specific

23     modification should be a written motion to modify, so we can

24     understand exactly what's being asked and respond

25     appropriately.

P71DHURC

```
1        THE COURT:  Mr. Burwick.

2        MR. BURWICK:  Yes, your Honor.  Mr. Sbaiti is

3   discussing the different assets.  It lacks a certain

4   specificity given that there are multiple different wallets,

5   and the different wallets have different assets related to

6   them.  So at this moment I'm unclear as to what wallet

7   Mr. Sbaiti is talking about, and I'm also unclear as to what

8   assets he's talking about.  I don't know if he's talking about

9   the LIBRA tokens.  I don't know if he's talking about USDC.  I

10  don't know if he's talking about Solana.  And there are

11  material differences here, your Honor, as they relate to both

12  the TRO briefing, as well as the different rights associated

13  with both plaintiffs here and other potential parties.

14       THE COURT:  I'm sorry, Mr. Burwick.  When you were

15  talking, there was a bit of an interruption with someone

16  joining the line.  So, are you talking about further

17  clarification being needed for the point about the automated

18  token transfers?  Is that what you're referring to?

19       MR. BURWICK:  When it comes to automated token

20  transfers, your Honor, I'm unclear as to what Mr. Sbaiti is

21  identifying, but more than that, your Honor, there's another

22  point which I believe is more important, which is, with

23  specificity, what tokens is Mr. Sbaiti talking about.  Is he

24  talking about the LIBRA tokens?  And in which wallet are those

25  LIBRA tokens?  And, also, what transactions were they related
```

P71DHURC

1    to, as in how did those LIBRA tokens arrive at whatever wallet

2    Mr. Sbaiti is discussing?  As well as, if he's saying Mr. Davis

3    is the controller of that wallet, whichever wallet he's

4    identifying, I'd like to have some type of verification as to

5    whether Mr. Davis is the signer of that wallet, given that this

6    is going to be an issue that comes about later on.

7           So, we would need to know both the assets being

8    discussed, whether Mr. Davis is a signer to that wallet, what

9    transactions were involved to have the assets arrive at that

10   wallet, whether we're talking about the Solana, that is in

11   certain wallets, as well as the USDC that is in certain

12   wallets?

13          THE COURT:  Mr. Burwick, I'm not understanding.  I'm

14   hearing there are two points that Mr. Sbaiti has raised.  The

15   first one is permitting Mr. Davis to use coins to benefit

16   Argentina businesses, and I'm hearing Ms. Hoppin say that is

17   too broad and it essentially eviscerates the point of the TRO.

18   I hear both sides of that.  I'll decide.

19          The second piece is that Mr. Sbaiti is unclear about

20   the fact that the coins are being traded just generally as part

21   of a trading system, and he wants clarification as to whether

22   that can continue, since that's happening or is intended to

23   happen.

24          Were you speaking to the second point, Mr. Burwick?

25          MR. BURWICK:  Yes, your Honor.

P71DHURC

1           When Mr. Sbaiti is saying the coins are traded

2    automatically, when we're saying "coins" in a broad sense, I am

3    unclear as to what coins he's saying.  At issue in the case

4    right now, what we're discussing during the TRO briefing is

5    there are really three main assets that are at question right

6    now.  There is Solana, or SOL, which is the native -- kind of

7    the Solano blockchain.  There is the USDC, which is a stable

8    coin, which is the product of Circle, which recently went

9    public.  And then there is the LIBRA tokens.

10          And, with that in mind, when Mr. Sbaiti is talking

11   about automated token trading, I don't know what asset he's

12   talking about.  And, more than that, your Honor, we can imagine

13   that there are multiple wallets or just accounts that

14   Mr. Sbaiti may be referencing, and we are unclear as to what

15   accounts he's referencing that automatically trade.  I am

16   unclear as to what he's pointing to and what would be

17   automatically traded or out of what account.

18          MR. SBAITI:  May I address those, your Honor?

19          THE COURT:  Yes, you may.  Yes, Mr. Sbaiti.

20          MR. SBAITI:  Thank you.

21          So, dealing with the first thing, it is my

22   understanding one of the wallets -- I'm not sure if it's one of

23   the ones spelled out in a box on the order or it's a different

24   wallet, but my understanding is one of the wallets, the first

25   wallet is what's called a locked wallet.  It automatically buys

P71DHURC

1    and sells LIBRA, what in the securities world we call a market

2    maker of some kind.  And my client doesn't have control over

3    it.  But the way the order is written, there is some lack of

4    clarity as to whether he's supposed to figure out how to stop

5    that, or if he's still in violation of that.

6         I just want to clarify if it's a locked wallet and it

7    continues to trade, that's not on us.  I want --

8         THE COURT:  Let's pause right there.

9         MR. SBAITI:  Yes.

10        THE COURT:  So, Mr. Burwick, that's the clarification

11   that you're looking for, and I presume if it's a locked wallet

12   and there is automatic trading that goes on with that, that the

13   TRO is not stopping that.

14        Is that correct?

15        MR. BURWICK:  Your Honor, without the actual wallet

16   ID, the number on this account, I wouldn't be able to

17   reference.  And given that these are accounts with, you know,

18   both numerical and alphabetic digits that identify the account,

19   Mr. Sbaiti discussing this in almost a degree of abstraction,

20   without saying which account this is, is very difficult to

21   identify and to speak to what he's actually talking about.

22        THE COURT:  Okay.  So then what we'll do is I'm not

23   going to change anything right now.

24        Mr. Sbaiti, if you'd like to talk to Mr. Burwick about

25   a particular wallet that you think needs some clarity with

P71DHURC

1    respect to the TRO, that's fine.  You can come back to me, I

2    will bring you back as soon as you need to come back to me, and

3    I can address that if there needs to be something that I decide

4    that you both can't work out.

5            But it does seem to me -- I'll give you my thought --

6    if it's a locked wallet that undergoes general trading as it

7    normally does, that seems like something that my TRO would not

8    reach.

9            MR. SBAITI:  Yes.

10           THE COURT:  But, again, you should talk that through

11   and see if there's anything that I need to address there.

12           With respect to the carve out for using the coins to

13   benefit Argentinian businesses, I'm not going to put that

14   exception in right now.  I think that is too broad of an

15   exception given the TRO that's in place right now, so I'm not

16   going to make that exception.

17           So then, Mr. Sbaiti, when would you like to put in

18   papers?

19           MR. SBAITI:  We asked for August the 1st.

20           THE COURT:  For --

21           MR. SBAITI:  That would be to respond to the PI, for

22   the 12(b) motions, which would include a 12(b)(2), but so I

23   don't waive -- I just wanted to clarify, so it doesn't come at

24   our blind side, we obviously have to include all our 12(b)

25   arguments in one brief, so we would ask to submit that by the

P71DHURC

1    10th of July. That would give them three weeks to respond.

2    And we can reply before the hearing.

3        THE COURT: Let's do the 12(b), then, first.

4        MR. SBAITI: Yes.

5        THE COURT: You're saying for the 12(b) -- would you

6    like to put it in next week, which is July 10?

7        MR. SBAITI: Yes, your Honor.

8        THE COURT: I'm going to work backwards. I'll be

9    transparent. I'm making sure I have enough time to read

10   through everything and be prepared for the hearing and oral

11   argument.

12        So, let's see, for that briefing, could I move you up

13   slightly? I just need a little bit more time. Could I move

14   you to the 9th --

15        MR. SBAITI: Sure.

16        THE COURT: -- which is Wednesday?

17        Then could I then have opposition papers from the

18   plaintiff by the -- could we get them by the 23rd, Ms. Hoppin?

19   That gives you the two weeks that you get for every motion.

20        MS. HOPPIN: Yes, your Honor. I was on mute. Yes.

21        So, this is just for the 12(b)(2), not any other --

22   yes.

23        THE COURT: Well, it's more the Rule 12 motions, not

24   the PI.

25        MR. SBAITI: Rule 12.

P71DHURC

```
 1              MS. HOPPIN:  Your Honor, forgive me.  I may have
 2     misunderstood earlier.  Pursuant to the stipulated schedule in
 3     this case, we will be putting in an amended complaint followed
 4     by motion to dismiss briefing after that.  So we are -- we do
 5     not think that motions to dismiss the current complaint are
 6     appropriate.  That's obviated by the previously stipulated
 7     schedule.
 8              THE COURT:  So your point would be Mr. Sbaiti would be
 9     preserving any motions to dismiss that he has --
10              MS. HOPPIN:  Yes, your Honor.
11              THE COURT:  -- to be filed afterwards.  So he wouldn't
12     have to make those now, just the 12(b)(2) one, because it's
13     relevant to the PI.  But he would have every right to make the
14     remaining motions to dismiss after the PI is decided.
15              MS. HOPPIN:  After -- exactly, your Honor.
16              THE COURT:  Mr. Sbaiti, what's your view on that?
17              MR. SBAITI:  Well, your Honor, again, we didn't agree
18     to that type of reverse order --
19              THE COURT:  Yes.
20              MR. SBAITI:  A big point of a preliminary injunction
21     is it relates to the pleadings.
22              THE COURT:  Right.
23              MR. SBAITI:  I don't see why they wouldn't amend next
24     week, and then we'll move shortly thereafter.
25              THE COURT:  The issue I had -- let's think through
```

P71DHURC

 1   this.  It's a PI motion.  They have an obligation to show they

 2   are likely to succeed on the merits of the complaint that they

 3   have.  So, if they have not amended the complaint, I'm going to

 4   look at the complaint that they have and evaluate whether

 5   there's a likelihood of success or serious questions with

 6   respect to success.  Now, if it's insufficient, that's on

 7   plaintiff.

 8            So, Mr. Sbaiti, given that, what is your view?

 9            MR. SBAITI:  That was exactly where I was going with

10   it.  Thank you, your Honor.

11            So, we'll limit our brief next week to the 12(b)(2),

12   and everything else we'll take up via the opposition to the PI.

13   Thank you.

14            THE COURT:  Yes.  And you're going to be getting to

15   the merits I assume in the PI briefing to some extent.

16            MR. SBAITI:  That was the intent, yes.

17            THE COURT:  Okay.  If you can get that by July 9th.

18            Then I'm going to move you up slightly, Ms. Hoppin,

19   only because it's a more limited motion and I need things by

20   the 28th.  So can I move you to the 22nd, and then the 28th for

21   the reply.  Ms. Hoppin, the 22nd, Mr. Sbaiti, the 28th.

22            How is that?

23            MR. SBAITI:  Your Honor, can I beg for two days?  I'll

24   literally be back on a plane back from Europe on the 28th all

25   day.

P71DHURC

1           THE COURT:  Okay.

2           MR. SBAITI:  If I could get to the 30th, that would be

3    amazing.  And I know I have co-counsel, but being lead on it, I

4    would just beg for two extra days.

5           THE COURT:  Okay.  Well, I will give it to you.

6           MR. SBAITI:  Thank you.

7           THE COURT:  So, given that, Ms. Hoppin, I'll give you

8    to the 23rd.  Is that okay?

9           MS. HOPPIN:  Yes, your Honor.  In that case, the reply

10   submission currently due July 11 from plaintiff is -- what is

11   the scope of that in light of this exchange?

12          THE COURT:  Okay.  So let's talk this through.

13          So, we have the 12(b)(2) motion schedule briefing.

14   Then we have -- now we want to deal with the PI briefing.  So I

15   have the opposition to the PI that's been filed by defendant

16   Chow, which, as I understand it, the plaintiffs' reply is due

17   the 11th.  Before we get to when your reply is due, Mr. Sbaiti,

18   when would you like to put in some additional papers on the PI,

19   because that will necessarily move the plaintiff's response

20   from the 11th to a reasonable time after that?

21          How long do you need?

22          MR. SBAITI:  I had asked for August 1st, but if we

23   could have July 30 for that as well, that would be ideal.  Does

24   that crunch the time too much on the back end?

25          THE COURT:  I think it does, and it does for the

P71DHURC

 1      court, too.

 2                  MR. SBAITI:  Okay.

 3                  THE COURT:  So that's the difficulty there.  I need to

 4      have enough time to review this, so I can be prepared for the

 5      PI hearing.  So, when is the soonest that you could get me -- I

 6      will certainly be considering, I will tell you this, I'm going

 7      to be considering the papers that you submitted on the TRO as

 8      part --

 9                  MR. SBAITI:  Yes.

10                  THE COURT:  -- of your response to the TRO/PI.  So, I

11      will be considering those.  I'm just giving you the opportunity

12      to put in anything additional that you would like.  So I will

13      consider those papers as well.

14                  Could you get those in by next week as well?

15                  MR. SBAITI:  That would be challenging, because of the

16      Fourth of July weekend.

17                  THE COURT:  Okay.

18                  MR. SBAITI:  And, you know, we had to look for an

19      expert to kind of explain and understand a lot of this, which

20      is one of the reasons why we wanted more time, knowing that --

21      I guess the big question that I had, that I just need to

22      reconsider for a second is if there's not going to be live

23      testimony, there's not going to be new evidence added to the

24      universe of evidence, could we have to the 23rd for our PI

25      response?  Even though I will be out of the country, at least

P71DHURC

```
 1    that will give us time to work with experts.  I'm a securities

 2    guy, and this case is like trying a securities case in 1915.

 3    And all the words sound the same, but they're different.

 4            So, if we could have to the 23rd, which I think is

 5    when their response to our motion to dismiss would be, and then

 6    if we can keep those together, I would appreciate that.

 7            THE COURT:  Well, I think I'm going to need it a

 8    little bit earlier.

 9            MR. SBAITI:  Okay.

10            THE COURT:  This is going to be a pretty substantive

11    briefing.  That's why we're giving more time, and I need to

12    give it the time and attention it deserves.  I appreciate and

13    am trying to acknowledge the expedited nature of these

14    proceedings, so if I could get something the week of the 14th

15    from you, and then get a response from plaintiffs the week of

16    the 23rd, then I would have ample time to get through

17    everything.

18            Will that work for you, Mr. Sbaiti?

19            MR. SBAITI:  If --

20            THE COURT:  You're away that week?

21            MR. SBAITI:  Yes.  I'm on a plane on the 4th.

22            THE COURT:  It could be later in the week.

23            MR. SBAITI:  The 16th, would that work?

24            THE COURT:  Sure.

25            MR. SBAITI:  Thank you, your Honor.
```

P71DHURC

1          THE COURT:  So July 16 is the additional opposition

2    papers.  Again, I will consider your TRO papers as well.

3          Then, Ms. Hoppin, if you could get me your reply by

4    July 23rd, that would be helpful, and then I'll have everything

5    so that I can get ready and really be prepared to move forward

6    on that PI as soon as we have that hearing.

7          Ms. Hoppin, that will work?

8          MS. HOPPIN:  If we could have a little more than a

9    week to reply to a whole new submission -- could we move it to

10   Monday the 28th, for example, your Honor?

11         THE COURT:  Yes.  I can give you the 28th.  Yes.

12         MS. HOPPIN:  I appreciate that.  And, also, I assume

13   there will be a consolidated reply?  There is no longer a

14   July 11 reply due.  It will be a consolidated reply to both?

15         THE COURT:  That is correct.

16         MS. HOPPIN:  Your Honor, could I request an increase

17   of the reply word limit to 6,000 words for the consolidated

18   reply?

19         THE COURT:  Would you remind me what the current limit

20   is, because --

21         MS. HOPPIN:  3500, your Honor.

22         THE COURT:  -- we went from pages to words recently.

23         MS. HOPPIN:  That trips me up, too.  It is 3500 for a

24   standard reply.

25         THE COURT:  Yes.  That's fine.

P71DHURC

1          MS. HOPPIN:  Thank you.

2          THE COURT:  All right.  Now, I have ignored defendant

3     Chow through this entire proceeding here, so, Mr. Enzer, is

4     there anything that you object to in what we've been discussing

5     or anything you'd like to add?

6          MR. ENZER:  Thank you, your Honor.  August 19 at 1:00

7     p.m. is fine for us for the hearing.

8          THE COURT:  Okay.

9          MR. ENZER:  With respect to the schedule for the

10    briefing, we have no objection to that schedule.  We would just

11    reserve our rights.  I don't expect that we're going to be

12    putting anything else in, but if anyone raises new issues, we

13    reserve our rights on that.  And, for the rest, I think your

14    Honor has resolved the remaining outstanding issue.

15         THE COURT:  All right.  Well, that is fine.  I will

16    hold a couple of hours on the 19th then for this hearing, with

17    no witnesses, but I'll provide -- we will have argument.  It

18    may even be a little longer than that, so please hold the

19    afternoon in case I want more argument on the 12(b)(2) motion

20    or something like that.  I want to have ample time, so please

21    do hold that afternoon.

22         Let's see.  I think that covers everything that we

23    need.  I will hear you on the 19th and try to give you a

24    decision as soon as I possibly can after that.  I realize

25    everything that is on hold here, and so I'm asking for these

P71DHURC

1    papers on an expedited schedule, so that I can be prepared to

2    give you a ruling as soon as possible after that hearing.

3              All right.  Then let me do a little round robin here.

4              Mr. Sbaiti, is there anything further that we need to

5    discuss during this hearing today?

6              MR. SBAITI:  I don't believe so, your Honor.  Thank

7    you for your time.

8              THE COURT:  Thank you.

9              Before I do the rest of the round robin, I just want

10   to say, while you're going through the papers, that some of the

11   arguments about whether an injunction is appropriate here,

12   given that there are money damages and the like, is an

13   important consideration that I'm thinking about.  So I just

14   want you to understand that some of the issues raised by

15   Mr. Sbaiti and by Mr. Chow have some -- are causing the Court

16   to consider them quite closely.  So, just so you all know that

17   moving into this.

18             All right.  Ms. Hoppin, anything further from the

19   plaintiffs?

20             MS. HOPPIN:  Nothing further from plaintiffs.  Thank

21   you, your Honor.

22             THE COURT:  Mr. Enzer, anything further from defendant

23   Chow?

24             MR. ENZER:  No, your Honor.  Thank you.

25             THE COURT:  Thank you.

P71DHURC

1          Before we end, Ms. Hoppin, are there any other

2     defendants that I should be expecting here in terms of service

3     or appearing in this matter?  How are we doing on that?

4          MS. HOPPIN:  Service is fiercely underway, your Honor.

5     The answer is I hope so but cannot confirm definitely at this

6     point.

7          THE COURT:  All right.  Good.  Thank you.

8          All right.  Well, then, I'll put out a brief order

9     that sets down this schedule that's been agreed upon by the

10    parties, and we will proceed.  You know where to find me if

11    anything else comes up and you need any assistance.

12          Enjoy the holiday weekend, everyone.  Court is

13    adjourned.  Take care.

14          (Adjourned)

15

16

17

18

19

20

21

22

23

24

25