# Exhibit A

**PROPOSED DISCOVERY (CHOW)**

DEFINITIONS

1. **"Action"** means the lawsuit styled *Hurlock v. Kelsier, et al.*, Case No. 1:25-cv-03891-JLR (S.D.N.Y.).

2. **"Chow Declaration"** means the sworn declaration executed by You on June 27, 2025 and filed in this action at ECF No. 54.

3. **"Concerning"** means directly or indirectly, in whole or in part, constituting, evidencing, recording, reflecting, substantiating, describing summarizing, identifying, or referring or relating to in any way.

4. **"Communication(s)"** means any transmittal of information in the form of facts, ideas, inquiries, or otherwise. A document request for communications calls for production of correspondence, faxes, electronic mail, all attachments and enclosures thereto, computer tapes, discs, telephone tape recordings, text messages, recordings of any other type in any medium of written or oral communications, phone logs, message logs, and notes and memoranda of, or referring or relating to, written or oral communications

5. **"Document(s)"** means all recorded words, information, Communications (as defined above), or data of any kind, however created, recorded, stored, or maintained, and includes, without limitation, all drafts; communications; correspondence; memoranda; records; reports; books; reports and/or summaries of conversations or interviews; diaries; graphs; charts; diagrams; tables; photographs; recordings; tapes; microfilms; minutes; summaries, reports, and records of meetings or conferences; records and reports of consultants; press releases; stenographic, handwritten, or other notes; checks, front and back; check vouchers, check stubs, or receipts; wire transfer requests, approvals, orders, and confirmations; tape data sheets or data processing cards

or discs or any other printed, typewritten, or otherwise recorded matter, however produced or reproduced, whether or not now in existence; any paper or writing including files, contracts, correspondence, telegrams, agreements, letters, notes, manuals, forms, brochures, drawings, and other data or data compilation of any sort, stored in any medium from which information can be obtained either directly or, if necessary, after translation into a reasonably usable form; Electronically Stored Information (as defined below); internal or external web sites; output resulting from the use of any software program, including, without limitation, word processing documents, spreadsheets, database files, charts, graphs, outlines, electronic mail, instant messages, and all miscellaneous media on which they reside and regardless whether said electronic data exists in an active file, an archive file, a deleted file, or file fragment; activity listings of electronic mail receipts and transmittals; any and all items stored on computer memories, flash drives, hard disks, floppy disks, CD-ROM, DVD, magnetic tape, microfiche, or on any other media for digital data storage or transmittal such as, but not limited to, any mobile device or personal digital assistant; and file folder tabs, or containers and labels appended to, or relating to, any physical storage device associated with each original or copy of all documents requested herein. A draft or non-identical copy of any document, whether due to the addition of marginalia or other change, is a separate document within the meaning of this term. Where the electronic and hard copy versions of any document are separate documents per this definition, both the electronic and hard copy versions should be produced.

6.     "**DLMM**" means the "complex permissionless system with an incredible number of configuration options for teams looking to launch with it" referenced in Your public post on X at 11:18 p.m. on February 16, 2025.[1]

---

[1] https://x.com/hellochow/status/1891341548115149190

7. **"Dynamic Labs, Inc."** and **"Dynamic"** mean the Delaware entity referenced in the Meteora Disclaimer.

8. **"Dynamic Labs, Ltd**." or **"DLL"** means the entity referenced in the Chow, Spillane, and Hoe Yong Declarations.

9. **"Electronically Stored Information" ("ESI")** includes without limitation:

   a. information that is generated, received, processed, and recorded by computers and other electronic devices, including without limitation voicemails;

   b. internal or external web sites;

   c. output resulting from the use of any software program, including, without limitation, word processing documents, spreadsheets, database files, charts, graphs, outlines, electronic mails, instant messenger programs, bulletin board programs, operating systems, source code, PRF files, PRC files, batch files, ASCII files, and all miscellaneous media on which they reside and regardless of whether said electronic data exists in an active file, an archive file, a deleted file, or file fragment;

   d. activity listings of electronic mail receipts and transmittals; and

   e. any and all items stored on computer memories, flash drives, hard disks, floppy disks, CD-ROM, DVD, magnetic tape, microfiche, or on any other media for digital data storage or transmittal such as, but not limited to, smartphone or personal digital assistant (Palm Pilot, Blackberry, iPhone, iPad, or similar device).

10. **"Hoe Yong Declaration"** means the sworn declaration executed by Zhen Hoe Yong on June 27, 2025 and filed in this action at ECF No. 55.

11. **"Mercurial"** and **"Mercurial Finance"** means the entity founded by You and others, as described on its website,[2] which "sunsetted" in February 2023 in connection with the

---

[2] *See* https://docs.mercurial.finance/mercurial/team

creation of Meteora, as described at: https://meteoraag.medium.com/update-for-mercurial-stakeholders-as-of-feb-2023-2bf091627e52.

12.     **"Meteora"** means the entity that was created in February 2023 in connection with the "sunsetting" of Mercurial, as described at: https://meteoraag.medium.com/update-for-mercurial-stakeholders-as-of-feb-2023-2bf091627e52.

13.     **"Meteora Disclaimer"** means the content on the Meteora Website quoted in part in Paragraph 8 of the Hoe Yong Declaration, as of the date of that Declaration.

14.     **"Meteora Website"** means the website referenced in footnote 2 of the Chow Declaration and footnote 2 of the Hoe Yong Declaration.

15.     **"Person"** includes natural persons and entities of every kind, whether incorporated or unincorporated.

16.     **"Spillane Declaration"** or **"Spillane Decl."** mean the sworn declaration executed by Meghan K. Spillane on June 27, 2025 and filed in this action at ECF No. 57.

17.     **"TRO"** means the temporary restraining order granted by the Court on May 27, 2025, and filed in this action at ECF. No. 19.

18.     **"You"** and **"Your"** refer to Benjamin Chow, along with any of their predecessors, successors, assigns, managers, officers, directors, employees, agents, attorneys, and any and all persons acting on behalf of any of them, as well as any other person under their direction or control or from which they have the right or the practical ability to obtain information, records, or documents of any kind.

## **PROPOSED INTERROGATORIES (CHOW)**

### INSTRUCTIONS

1. Unless otherwise indicated, the relevant time period is January 1, 2024 to the present.

2. Each interrogatory is addressed to Your personal knowledge as well as to the knowledge and information of Your predecessors, successors, and affiliates; any past and present, agents, representatives, trustees, executors, administrators, or beneficiaries, agents, officers, employees, attorneys, investigators, or other representatives.

3. Each interrogatory shall be construed as being inclusive rather than exclusive. Thus, words importing the singular shall include the plural; words importing the plural shall include the singular; words importing one gender shall include both genders; the words "and" and "or" shall be construed conjunctively or disjunctively as necessary to make the request inclusive; the word "all" means "any and all" and the word "any" means "any and all"

4. Definitions provided herein apply to any grammatical variant of the term or phrase defined.

5. Each question shall be responded to separately and fully and each response shall be preceded by the question to which it responds.

6. Each interrogatory herein should be construed independently and not by reference to any other interrogatory for the purpose of limitation.

7. If any of these interrogatories or portions thereof cannot be responded to fully, respond to the extent possible, and state the reasons for not responding more fully. If the response to any interrogatory is a denial or an affirmation, but only as to part, specify as much of it as is true and deny only the remainder

1

8. When the response to any interrogatory is based upon information other than the personal knowledge of the person responding to these interrogatories, state the name, job title, business and residence address of the source of the information if such source is a natural person and/or the identity of any document, report or record.

9. With respect to each interrogatory, in addition to supplying the information requested, You are to identify all documents that support, refer to, or evidence the subject matter of each interrogatory in Your response thereto.

10. If any or all documents identified herein are no longer in Your possession, custody or control because of destruction, loss or any other reason, then do the following with respect to each and every such document: (a) describe the nature of the document (e.g., letter or memorandum); (b) state the date of the document; (c) identify the persons who sent and received the original and a copy of the document; (d) state in detail the contents of the document; and (e) state the manner and date of disposition of the document. If you are in possession of a copy of any such document, provide a response utilizing the copy identified as such.

11. To the extent that any interrogatory calls for information that cannot be precisely and completely furnished, such information as can be furnished should be included in the response, together with a statement that further information sought cannot be furnished and a statement as to the reasons therefor. If the information that cannot be furnished is believed to be available from another person, identify such person and such documents, and include a detailed statement of the reasons for believing such person has the described or requested information

12. Where a claim of privilege is asserted in responding to any interrogatories and information is not provided on the basis of such assertion:

    a. state the basis on which the privilege is or will be claimed; and

b. provide the following information:

  i. For documents: (1) the type of document (e.g., letter or memorandum or e-mail); (2) general subject matter of the document; (3) the date of the document; (4) the author and/or sender of the document; (5) the person, place and/or entity to whom the document was sent and/or filed; and (6) such other information as is sufficient to identify the document, including, where appropriate, the author, addressee, and any other recipient of the document, and where not apparent, the relationship of the author, addressee, and any other recipient to each other;

  ii. For oral communications: (1) the name of the person making the communication, the names of persons present while the communication was made, and where not apparent, the relationship of the persons present to the person making the communication; (2) the date and place of communication; and (3) the general subject matter of the communication.

13. You have a continuing duty to supplement your responses if You learn that a response was incomplete or incorrect when made, or if You obtain information that makes a response incomplete or incorrect.

## INTERROGATORIES

1. Identify and explain the factual bases for the following two statements, and explain the contradiction between them:

   a. in Paragraph 1 of the Chow Declaration, that DLL is "the software development company that created the computer code underlying Meteora";

   b. in the Meteora Disclaimer, that "Dynamic Labs Inc. developed much of the initial code for Meteora."

2. Identify and explain in detail the nature of the affiliation between DLL, Dynamic Labs, Inc., Mercurial Finance, and Meteora, including but not limited to by providing detailed information regarding:

    a. any ownership interest in, or control or management authority over, one entity with respect to the other, whether direct or indirect;

    b. any common officers, directors, managers, employees, contractors, or agents;

    c. any common owners, whether direct or indirect, and whether in whole or in part;

    d. Your past and current affiliations with DLL, Dynamic, Meteora, or Mercurical Finance or their respective affiliates, including but not limited to any ownership interests; beneficial interests; directorships; or employment in any capacity.

3. Explain the respective roles and rights of You, Dynamic Labs, Inc., and DLL, in the Mercurial Finance and Meteora, at all times between January 1, 2021 to the present.

4. Identify all entities affiliated with "Meteora" or "Mercurial" and, if incorporated, provide their legal names, any trade names, and the jurisdictions in which they are incorporated; the legal and trade names of their predecessors, if any; and the nature of their affiliation with Meteora or Mercurial, including but not limited to:

    a. the entity or entities from you publicly resigned as "CEO" in February 15, 2025;

    b. the entity or entities from you which you received any form of compensation in connection with your tenure as "CEO" of "Meteora," and the nature and form of that compensation;

    c. the entity or entities that employ or compensate Mr. Hoe Yong in his current role at "Meteora";

    d. the entities that receive or that are entitled to receive transaction fees from "Meteora";

5. Describe in detail the process by which updates to Meteora and the Meteora DLMM are approved, reviewed, implemented, and audited (by a third-party) and identify all Person(s)

4

who, at any time between January 1, 2023 to the present have had Upgrade Authority, including but not limited to Members of any MultiSig assigned the Upgrade Authority.

6. Describe in detail the composition of the MultiSig between January 1, 2023 and the present, including any changes to the approval threshold, the number of members, or the Person(s), wallets, or entities constituting MultiSig members, and identify the dates of the changes to the MultiSig and the Person(s), wallets, or entities responsible for implementing them.

7. With respect to the assertion in Paragraph 11 of Your Declaration that You did not "set up the Meteora liquidity pool used by Davis to sell $LIBRA tokens," identify the referenced "Meteora liquidity pool;" explain the steps taken to "set up" that liquidity pool; identify the Person(s) involved in or responsible for directing and executing each step; identify the Person(s) involved in or responsible for selecting the parameters of that liquidity pool (referenced in Paragraph 1 of Your Declaration); and describe in detail Your involvement in and awareness of each such step, decision, and selection.

8. With respect to Your statements in Your public post on X at 11:18 p.m. on February 16, 2025 that "we had no involvement in the [$LIBRA] project at all beyond providing IT support, including commenting on the liquidity curve and helping verify the token's authenticity after the token was publicly launched,"[1] identify all Persons referred to as "we" and explain at detail Your and their role in "providing IT support," "commenting on the liquidity curve," and "helping verify the token's authenticity after the token was publicly launched."

9. Identify the "program account" referenced in Paragraph 3 of the Chow Declaration and Paragraph 4 of the Hoe Yong Declaration and the Person(s) that have possession, custody, control, or ownership of that account; explain the relationship between You and such Persons; and

---

[1] https://x.com/hellochow/status/1891341548815149190

5

state the source and basis of Your understanding that "transaction fees owed to DLL from $LIBRA trading by Meteora users have remained in the Program account since the $LIBRA launch on February 14, 2025." Chow Decl. ¶ 3.

6

**PROPOSED DOCUMENT REQUESTS (CHOW)**

INSTRUCTIONS

1. Each reference to a corporation, limited liability company, partnership, limited partnership, joint venture, unincorporated association, government agency, or other non-natural person shall be deemed to include each and all of its present and former subsidiaries, parents, affiliates, predecessors, and successors, and with respect to each of such entities, its present and former officers, directors, shareholders, employees, members, partners, limited partners, representatives, agents, accountants, attorneys, and any other person who acted or purported to act on its behalf.

2. Each request shall be construed as being inclusive rather than exclusive. Thus, words importing the singular shall include the plural; words importing the plural shall include the singular; words importing one gender shall include both genders; the words "and" and "or" shall be construed conjunctively or disjunctively as necessary to make the request inclusive; the word "all" means "any and all" and the word "any" means "any and all".

3. All Documents and Communications produced pursuant to this request are to be produced as they are kept in the usual course.

4. If a Document or Communication is redacted or not produced on the ground that it is privileged and therefore not subject to disclosure, the following information is to be supplied for each Document:

    a. the nature of the privilege being claimed;

    b. the type of Document;

    c. general subject matter of the Document;

    d. the date of the Document; and

1

      e.   other such information as is sufficient to identify the Document including where appropriate, the author(s) of the Document, the addressee(s) of the Document, the identity of any Person who had an opportunity to review such Document and, where not apparent, the relationship of the author and the addressee to each other.

5.    If any portion of any Document or Communication is responsive to any request included herein, the entire Document or Communication is to be produced.

6.    Each Document or Communication requested herein shall be produced in its entirety without deletion, redaction, or excisions, except as qualified by Instruction 4, regardless of whether You consider the entire Document relevant or responsive to this request. If You have redacted any portion of the Document, stamp the word "REDACTED" beside the redacted information on each page of the Document which You have redacted. Any redactions to Documents produced should be identified on a privilege log in accordance with Instruction 4.

7.    All Documents and Communications are to be produced in the form and in the same order within each file in which they existed prior to production, and the file folders, boxes, or other containers or bindings in which such Documents are found are to be produced intact, including the title, labels, or other descriptions of each such folder, box, or other binding container.

8.    If any or all Documents identified herein are no longer in Your possession, custody or control because of destruction, loss or any other reason, then do the following with respect to each and every such document: (a) describe the nature of the Document (e.g., letter or memorandum); (b) state the date of the Document; (c) identify the persons who sent and received the original and a copy of the Document; (d) state in detail the contents of the Document; and (e)

state the manner and date of disposition of the Document. If You are in possession of a copy of any such Document, provide a response utilizing the copy identified as such.

9. Non-identical copies of Documents, drafts, or copies with annotations, and marks of marginalia shall be treated and produced as separate Documents.

10. All ESI responsive to this request that is maintained in the usual course in electronic format shall be produced in its native format along with the software necessary to interpret such files if such software is not readily available, with the metadata normally contained within such Documents, and the necessary load files. If such metadata is not available, each Document shall be accompanied by a listing of all file properties concerning such Document, including, but not limited to, all information concerning the date(s) the Document was last accessed, created, modified or distributed, as well as the author(s) and recipient(s) of the Document.

11. If any of these requests cannot be responded to in full, You are to produce Documents and Communications to the extent possible, specifying the reason for Your inability to produce further Documents, and stating what knowledge, information, or belief You have concerning the unproduced portion.

12. These requests are continuing. If, after producing the requested documents, You obtain or becomes aware of further documents responsive to these Requests, You are required to produce such additional documents.

## REQUESTS

1. All contracts and agreements entered into by You, whether on Your own behalf or on behalf of another, related to $LIBRA or to the February 14, 2025 $LIBRA launch on the Meteora Platform.

2. Documents sufficient to identify the nature, terms, and duration of Your involvement, between January 1, 2021 to the present—whether as an employee, founder, CEO, consultant, advisor, director, or in any other capacity—including but not limited to the nature and source of all associated compensation received by You or on Your behalf at:

    a. DLL referenced in Paragraph 1 of the Chow Declaration;

    b. Dynamic Labs, Inc., referenced in the Meteora Website;

    c. Mercurial

    d. Meteora

3. Documents sufficient to identify the nature and terms of Your "business relationship with DLL," referenced in Paragraph 3 of the Chow Declaration, including but not limited to the basis for your "claim on a portion of DLL's revenues," referenced in that same Paragraph, and to identify the nature and terms of all other "business relationships" between You and any other entities related in any way to Meteora or the Meteora Platform.

4. All Documents and Communications related to Your involvement in $LIBRA, as described in Your public post on X at 11:18 p.m. on February 16, 2025.[1]

---

[1] https://x.com/hellochow/status/1891341548115149190

4