# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

OMAR HURLOCK, on behalf of himself and all
others similarly situated,

      Plaintiffs,

v.

KELSIER VENTURES, KIP PROTOCOL,
HAYDEN DAVIS, GIDEON DAVIS,
METEORA, THOMAS SAVIS, JULIAN PEH,
and BENJAMIN CHOW,

      Defendants.

**Case No. 1:25-cv-03891-JLR**
[rel: 1:25-cv-03286-JLR]

Hon. Jennifer L. Rochon

## CONSOLIDATED REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

## TABLE OF CONTENTS

TABLE OF CONTENTS........................................................................................................... i

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................... 1

PROCEDURAL HISTORY & BACKGROUND ....................................................................... 2

ARGUMENT .......................................................................................................................... 3

    I.    Preliminary Injunctive Relief is Appropriate and Warranted Based on the First Amended Complaint............................................................................................................................... 4

        A.    The First Amended Complaint Controls and Properly Alleges Jurisdiction over Defendant Davis............................................................................................................... 4

        A.    *Grupo Mexicano* Does Not Bar Equitable Relief ........................................................ 4

        B.    Class Certification is Not a Prerequisite to Preliminary Injunctive Relief ................... 7

    II.    Imminent and Irreparable Harm.......................................................................................... 8

    III.    Plaintiffs Have Made the Requisite "Merits" Showing on Their Equitable Claims..... 12

        A.    Plaintiffs Have Shown a Likelihood of Success on their GBL Claims ....................... 13

        B.    Plaintiffs Have Shown a Likelihood of Success on their Unjust Enrichment Claim.... 15

    IV.    Balance of Hardships and Public Interest ...................................................................... 16

CONCLUSION..................................................................................................................... 17

# TABLE OF AUTHORITIES

**Cases**

*A. A. R. P. v. Trump*,
   145 S. Ct. 1364 (2025) ............................................................ 7

*Blum v. Defendant 1*,
   2024 WL 5317287 (N.D. Fla. Feb. 5, 2024) ................................ 7

*Boynes v. Limetree Bay Ventures LLC*,
   110 F.4th 604 (3d Cir. 2024) ................................................... 8

*Breslow v. Phillips*,
   2023 WL 5955772 (S.D. Fla. July 7, 2023) ................................

*Bullock v. Doe*,
   2023 WL 9503380 (N. D. Iowa Nov. 3, 2023) ........................... 17

*Citigroup Glob. Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.*,
   598 F.3d 30 (2d Cir. 2010) ................................................... 3, 8

*Coley v. Vannguard Urban Improvement Ass'n, Inc.*,
   2016 WL 7217641 (E.D.N.Y. Dec. 13, 2016) .............................. 7

*Consumer Fin. Prot. Bureau v. Sasson*,
   2025 WL 1554514 (2d Cir. June 2, 2025) .................................. 6

*Cruz v. FXDirectDealer, LLC*,
   720 F.3d 115, 123-24 (2d Cir. 2013) ....................................... 8

*Dodge v. County of Orange*,
   209 F.R.D. 65 (S.D.N.Y. 2002) ............................................... 8

*Dong v. Miller*, 2018 WL 1445573
   (E.D.N.Y. Mar. 22, 2018) ..................................................... 12

*Donovan v. Finn*,
   1823 WL 2105 (N.Y. Ch. 1823) ............................................... 6

*Edmar Fin. Co., LLC v. Currenex, Inc.*,
   2023 WL 3570017 (S.D.N.Y. May 18, 2023) ............................. 11

*Eidelman v. Sun Prods. Corp.*,
   2017 WL 4277187 (S.D.N.Y. Sept. 25, 2017) ............................ 10

4935-3117-8325, v. 16

*Fed. Trade Comm'n v. Dluca,*
    2018 WL 1830800 (S.D. Fla. Feb. 28, 2018) ............................................................... 9

*Firemen's Ins. Co. of Newark, New Jersey v. Keating,*
    753 F. Supp. 1146 (S.D.N.Y. 1990)……………………………………………………..8

*Gaponyuk v. Alferov,*
    2023 WL 4670043 (E.D. Cal. July 20, 2023) .......................................................... 15

*Goetz v. Ainsworth Pet Nutrition, LLC,*
    768 F.Supp.3d 645, 660-61 (S.D.N.Y. 2025)……………………………………………..8

*Karlin v. IVF Am., Inc.,*
    93 N.Y.2d 282 (1999) ............................................................................................... 9

*Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.,*
    527 U.S. 308 (1999) ............................................................................................ 4, 6

*Gucci Am., Inc. v. Weixing Li,*
    768 F.3d 122 (2d Cir. 2014) ......................................................................... 4, 5, 6, 7

*Hahn v. Wylie,*
    54 A.D.2d 622 (1st Dep't 1976) .............................................................................. 5

*Heissenberg v. Doe,*
    2021 WL 8154531 (S.D. Fla. Apr. 23, 2021) .................................................... 16, 18

*In re Feit & Drexler, Inc.,*
    760 F.2d 406 (2d Cir.1985) ................................................................................... 12

*Jacobo v. Doe,*
    2022 WL 2052637 (E.D. Cal. June 7, 2022) .................................................... 12, 17

*Jones v. Bolles,*
    76 U.S. 364 (1869) ................................................................................................. 6

*Laza v. Reish,*
    84 F.3d 578 (2d Cir. 1996) ..................................................................................... 4

*Ligon v. City of New York,*
    925 F. Supp. 2d 478 (S.D.N.Y. 2013) .................................................................... 8

*Mason v. Reed's Inc.,*
    515 F. Supp. 3d 135 (S.D.N.Y. 2021) .................................................................. 12

iii

*Micro Signal Research, Inc. v. Otus*,
   417 F.3d 28 (1st Cir. 2005) ................................................................................. 15

*Mirashi v. Doe*,
   2025 WL 893003 (D.N.J. Mar. 21, 2025) ........................................................... 16

*Mullins v. City of New York*,
   626 F.3d 47 (2d Cir. 2010) .................................................................................. 12

*Newbro v. Freed*,
   409 F. Supp. 2d 386 (S.D.N.Y. 2006), *aff'd*, 2007 WL 642941 (2d Cir. Feb. 27, 2007) ........... 5

*Oswego Laborers' 214 Pension Fund v. Marine Midland Bank, N.A.*,
   85 N.Y.2d 20 (1995) ............................................................................................. 9

*Paradigm BioDevices, Inc. v. Centinel Spine, Inc.*,
   2013 WL 1915330 (S.D.N.Y. May 9, 2013) ....................................................... 6

*Polvay v. FCTI, Inc.*,
   713 F. Supp. 3d 1 (S.D.N.Y. 2024) ............................................................... 10, 11

*RPB SA v. Hyla, Inc.*,
   2020 WL 6723491 (C.D. Cal. Aug 21, 2020) ................................................... 13

*S.E.C. v. Credit Bancorp, Ltd.*,
   290 F.3d 80 (2d Cir. 2002) .................................................................................... 5

*Shamrock Power Sales, LLC v. Scherer*,
   1016 WL 6102370 (S.D.N.Y Oct. 18, 2016) ...................................................... 7

*Shaoxing Bon Textiles Co., Ltd. v. 4-U Performance Group LLC*,
   2017 WL 737315 (S.D.N.Y. Feb. 6, 2017) ....................................................... 13

*State Farm Mut. Auto. Ins. Co. v. Metro Pain Specialists P.C.*,
   2023 WL 1801995 (E.D.N.Y. Feb. 7, 2023) ......................................................4

*State Farm Mut. Auto. Ins. Co. v. Tri-Borough NY Med. Prac. P.C.*,
   120 F.4th 59 (2d Cir. 2024) .................................................................................. 4

*Stutman v. Chem. Bank*,
   95 N.Y.2d 24 (2000) ........................................................................................... 10

*Tran v. Muhammad*,
   2021 WL 681128 (C.D. Cal. Jan. 15, 2021) ...................................................... 12

4935-3117-8325, v. 16

*Tull v. United States*,
481 U.S. 412 (1987)..................................................................................... 5

*Wachovia Sec., L.L.C. v. Stanton,*
571 F. Supp. 2d 1014 (N.D. Iowa 2008).................................................... 17

*Westernbank Puerto Rico v. Kachkar*,
2009 WL 2871160 (D. Puerto Rico Sept. 1, 2009).................................... 14

*Winans v. Ornua Foods N. Am. Inc.*,
731 F. Supp. 3d 422 (E.D.N.Y. 2024) ...................................................... 11

*Yogaratnam v. Doe*,
2024 WL 2050608 (E.D. La. May 8, 2024), *case reopened*, 2024 WL 4504435
(E.D. La. Aug. 21, 2024) ............................................................................ 7

**Rules**

Fed. R. Civ. P. 12........................................................................................ 2, 3

Fed. R. Civ. P. 15........................................................................................ 2, 3

Fed. R. Civ. P. 65........................................................................................ 1, 18

**Treatises**

J. Story, Commentaries on Equity Jurisprudence § 184 (12th ed. 1877) ...................................... 6

Restatement (First) of Restitution § 166 (Am. L. Inst. 1937) ...................................... 5

Restatement (Third) of Restitution and Unjust Enrichment § 4 cmt. d (2011)......................6

2 Newberg and Rubenstein on Class Actions § 4:30 (6th ed.)............................7

Plaintiff Omar Hurlock respectfully submits this reply memorandum of law in further support of his motion for a temporary restraining order and preliminary injunction (Dkt. 13, the "Motion") and in response to the oppositions filed by Defendants Benjamin Chow[1] and Hayden Davis.[2] For the reasons set forth herein and in Plaintiff's opening submission, this Court should enter a preliminary injunction that continues the terms of the Temporary Restraining Order entered on May 27, 2025 (Dkt. 19, the "TRO") through the pendency of this litigation, with one minor modification.[3]

## PRELIMINARY STATEMENT

When tens of thousands of investors lost over $280 million in a coordinated cryptocurrency fraud, they sought the equitable powers of this Court to preserve the proceeds of that fraud. Defendants now ask this Court to look away—to treat digital assets that move at the press of a button across anonymous networks as if they were cash sitting safely in a bank vault. They are wrong on the law and the facts.

Defendants' oppositions rest on three errors. First, they misread *Trump v. CASA* and *Grupo Mexicano* to bar all preliminary relief in cases seeking equitable remedies. But the Supreme Court has never held that federal courts lack power to freeze assets traceable to fraud when plaintiffs seek disgorgement, restitution, and permanent injunctive relief. To the contrary, this Circuit

---

[1] Defendant Chow filed a Memorandum of Law (Dkt. 53, "Chow Mem.").

[2] Defendant Hayden Davis filed a Memorandum of Law (Dkt. 102, "Second Davis Mem."). Previously, Mr. David moved to dissolve the TRO (Dkt. 41, "Dissolution Motion"), and a Memorandum of Law (Dkt. 42, "First Davis Mem.").

[3] Mr. Hurlock has assented to Defendant Davis' request for a "carve-out" to the TRO in one narrow respect: the 500,000,000 $LIBRA tokens publicly allocated by Defendants for "Argentina growth" and transferred to the "Argentina wallet" at launch should not be restrained. Dkt. 93; July 1 Tr. 9:12-10:17.

recognizes that victims of deception who seek equitable remedies may invoke the Court's inherent powers to preserve the status quo pending judgment.

Second, Defendants claim no irreparable harm exists because cryptocurrency is merely "fungible" money. This ignores the unique characteristics of blockchain assets: their instantaneous and irreversible transferability, the absence of traditional intermediaries, and, the ease with which they cross international borders. Moreover, Defendants' own conduct—laundering proceeds through multiple wallets, threatening to send assets to Argentina, explicitly calling the frozen funds their "leverage," and deliberately obfuscating control relationships—demonstrates the imminent risk of irreparable harm absent injunctive relief.

Third, Defendants cannot escape liability by claiming ignorance. Plaintiff's allegations detail how the Meteora Defendants secretly collaborated with the Kelsier Defendants to orchestrate the LIBRA fraud, extracting millions while publicly promoting themselves as protectors of retail investors. This culpable conduct ensures Plaintiff's likelihood of success on the merits. The Court should continue its restraint of the LIBRA Proceeds until those merits are adjudicated.

## PROCEDURAL HISTORY & BACKGROUND

On May 27, 2025 this Court conducted an *ex parte* hearing on Plaintiff's Motion and entered the TRO pursuant to Rule 65. The TRO applies to all "$LIBRA cryptocurrency, or proceeds obtained through trading $LIBRA cryptocurrency" (the "LIBRA Proceeds") "held or controlled by the Defendants." TRO at 3. The TRO prohibits "(i) Defendants, (ii) their officers, agents, servants, employees, and attorneys, and (iii) other persons who are in active concert or participation with such persons" from, among other things, processing, routing, selling, transferring, conveying, or otherwise interfering with, the assets to which it applies. *Id.* The TRO also specifically freezes "57,654,371 USDC, together with any other $LIBRA Proceeds" held in

two specifically identified cryptocurrency wallets, LIBRA Wallet 1 and LIBRA Wallet 2.[4]  *Id*.  It was extended on consent from Defendants Chow (Dkt 21) and Davis (Dkt. 52), the only Defendants to appear to date.

On July 1, 2025, this Court conducted a videoconference ("July 1 Conference"), granting Defendant Davis' request to file a Rule 12(b)(2) motion and scheduling the Preliminary Injunction hearing (the "Hearing") for August 19, 2025.  *Id.*  On July 9,  Defendant Davis filed a Rule 12(b)(2) motion to dismiss Plaintiff's claims against him.  Dkt. 86.

On July 28, 2025, Plaintiffs timely filed their Amended Complaint as-of-right under Rule 15(a), consolidating claims in the related action[5] with those asserted here. (Dkt. __, "FAC").

No new Defendants are named in the FAC.[6]  As before, the FAC asserts claims for unjust enrichment and violations of GBL 349 and 350 against all Defendants, on behalf of the same proposed class of $LIBRA investors represented by Mr. Hurlock (the "$LIBRA Subclass").  FAC ¶¶ ___; Compl. ¶¶ 1; 172-79.  The FAC also asserts claims for fraud and conspiracy to defraud on behalf of the $LIBRA Subclass.  FAC ¶¶ ___.[7]

## ARGUMENT

In this Circuit, a party seeking a preliminary injunction is required to show "(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief."  *Citigroup Glob. Markets, Inc. v.*

---

[4] Capitalized terms herein are defined in the FAC.

[5] *Clark v. Chow*, No. 1:25-cv-03268 (S.D.N.Y.).

[6] Julian Peh and KIP Protocol are no longer named as Defendants.

[7] The FAC also asserts RICO claims, which are not relevant to the Motion.

*VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010).  Plaintiffs have made this showing.

I.    **Preliminary Injunctive Relief is Appropriate and Warranted Based on the First Amended Complaint**

Preliminary injunctive relief is appropriate because the Court has personal jurisdiction over Defendant Davis, because Plaintiffs seek final equitable relief, and because class certification is not a prerequisite to obtaining class-wide preliminary injunctive relief.  *Compare* Second Davis Mem., at 9-10, 14-15, 22-23; Chow Mem., at 8-11, 24-26 and Dkt. 95.

A.    **The First Amended Complaint Controls and Properly Alleges Jurisdiction over Defendant Davis**

The FAC is the proper basis for this Court's preliminary injunction decision, including its extension of the TRO.  The FAC "provide[s] additional details . . . which supplement Plaintiffs' already-sufficient allegations."  *State Farm Mut. Auto. Ins. Co. v. Metro Pain Specialists P.C.*, 2023 WL 1801995, at *3 (E.D.N.Y. Feb. 7, 2023).  In these circumstances, district courts extend in-place injunctions predicated on no-longer-operative pleadings.  *Id.; see also State Farm Mut. Auto. Ins. Co. v. Tri-Borough NY Med. Prac. P.C.*, 120 F.4th 59, 78 (2d Cir. 2024) (hereinafter, "*State Farm*") (intervening amended pleading did not moot preliminary injunction appeal because its "propriety" "[did] not turn on any change effected by the [amended pleading]"); *compare* July 1 Tr. 20:1–7 (Judge Rochon: "*if [plaintiffs] have not amended the complaint*, I'm going to look at the complaint that they have . . .") (emphasis supplied).

The FAC—which mooted Defendant Davis' 12(b)(2) motion—"supplements" the material allegations in the original complaint underlying the TRO, including jurisdictional allegations. FAC ¶¶ ___.  Thus, if renewed, Defendant Davis's jurisdictional challenge fails.

A.    ***Grupo Mexicano* Does Not Bar Equitable Relief**

*Grupo Mexicano* does not bar equitable relief because Plaintiffs are fraud victims, not creditors. In *Grupo Mexicano*, the Supreme Court held only that preliminary injunctions are unavailable in "actions for money damages" to restrain otherwise lawful dispositions of funds *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 130 (2d Cir. 2014) ("The Court's holding was limited to actions for money damages," citing *Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 310 (1999)); *Grupo Mexicano*, 527 U.S. at 314 ("In the case of the usual preliminary injunction, the plaintiff seeks to enjoin, pending the outcome of the litigation, action that he claims is unlawful."). Here, however, the proposed class of $LIBRA investors retain an equitable interest in the property at issue, and "assets acquired by fraud are subject to a constructive trust for the benefit of the defrauded party." *S.E.C. v. Credit Bancorp, Ltd.*, 290 F.3d 80, 88 (2d Cir. 2002) (citing Restatement (First) of Restitution § 166 (1937)). Thus, Defendants cannot lawfully transact in the LIBRA Proceeds.[8]

In addition to his claim for damages, Mr. Hurlock seeks final equitable relief including a permanent injunction, restitution, disgorgement, and an equitable receivership. FAC ¶¶ ___; *see also* Compl. at 39-44; GBL § 349(h) (providing for injunctive relief); GBL § 350-e(3) (same); *Newbro v. Freed*, 409 F. Supp. 2d 386, 398 (S.D.N.Y. 2006) ("A claim of restitution based upon a theory of unjust enrichment is an equitable remedy."), *aff'd*, 2007 WL 642941 (2d Cir. Feb. 27, 2007); *Tull v. United States*, 481 U.S. 412, 424 (1987) (disgorgement is "traditionally considered an equitable remedy"); *Hahn v. Wylie*, 54 A.D.2d 622, 622 (1st Dep't 1976) ("[T]he power of appointing a receiver, pendente lite, is incidental to the jurisdiction of a court of equity."). As the Supreme Court explained, "preliminary relief available in a suit seeking equitable relief has nothing to do with the preliminary relief available in a creditor's bill seeking equitable assistance

---

[8] As noted above, Mr. Hurlock has already consented to modify the TRO in one limited respect.

in the collection of a legal debt." *Grupo Mexicano*, 527 U.S. at 325. Federal courts "maintain the equitable power" to issue an asset freeze "where the plaintiff is pursuing a claim for final equitable relief" and "the preliminary injunction is ancillary to the final relief." *Gucci*, 768 F.3d at 131. Thus, "[w]here, as here, a plaintiff seeks equitable remedies such as restitution and disgorgement, a district court 'ha[s] the inherent equitable authority to issue [an] [a]sset [f]reeze [i]njunction.'" *Consumer Fin. Prot. Bureau v. Sasson*, 2025 WL 1554514, at *2 (2d Cir. June 2, 2025) (quoting *Gucci*, 768 F.3d at 130).

This inherent authority is consistent with the historical approach to equitable remedies in fraud cases. Relief for fraudulent conduct is a traditional basis for equitable jurisdiction. *See* J. Story, Commentaries on Equity Jurisprudence § 184 (12th ed. 1877).[9] "[C]ourts of equity will . . . interfere in cases of fraud to set aside acts done." *Id*. at 187. And among the remedies available to a court working to "set aside acts done" by fraudsters are traditional equitable remedies such as injunctive relief, restitution,[10] disgorgement, and the appointment of a receiver.

Finally, Plaintiff's pursuit of legal claims alongside equitable claims does not affect his entitlement to preliminary injunctive relief. "[A]s many courts have held, where plaintiffs seek both equitable and legal relief in relation to specific funds, a court retains its equitable power to freeze assets." *Paradigm BioDevices, Inc. v. Centinel Spine, Inc.*, 2013 WL 1915330, at *2 (S.D.N.Y. May 9, 2013) (collecting cases). Indeed, even if the digital assets traded for $LIBRA

---

[9] "[I]n the sense of a court of equity, [fraud] properly includes all acts, omissions, and concealments which involve a breach of legal or equitable duty, trust, or confidence, justly reposed, and are injurious to another, or by which an undue and unconscientious advance is taken of another." *Id*. at § 187.

[10] "[T]he hallmark of equitable remedies in restitution cases is that they give relief to the claimant via rights in identifiable assets," and Mr. Hurlock seeks relief via rights in the specific assets used to purchase the LIBRA tokens. *See* Restatement (Third) of Restitution and Unjust Enrichment § 4 cmt. d (2011).

*are* "fungible and liquid cash-equivalents," Chow Mem. at 11—doubtful itself, *see infra* at II—a preliminary injunction restraining their use is nonetheless appropriate based on Plaintiffs' related claims seeking equitable relief. *See Gucci*, 768 F.3d at 131 (approving a preliminary injunction freezing "money," clearly a fungible asset, based on defendants' "profits from the use of the plaintiff's property.")

### B.    Class Certification is Not a Prerequisite to Preliminary Injunctive Relief

Defendants claim that *Trump v. CASA, Inc.*, 145 S. Ct. 2540 (2025) in conjunction with *Grupo Mexicano*, works a sea change in the availability of preliminary injunctive relief for putative class members. Second Davis Mem. at 9; Letter from Samson Enzer, Dkt. 95. But the same Court that decided *CASA* disagrees. *A. A. R. P. v. Trump*, 145 S. Ct. 1364, 1369 (2025), ("[B]ecause courts may issue temporary relief to a putative class . . . we need not decide whether a class should be certified as to the detainees' due process claims in order to temporarily enjoin the Government from removing putative class members while the question of what notice is due is adjudicated.").

Following *A. A. R. P.*, "the filing of a class suit . . . coupled with a showing that the standard for injunctive relief has been met, is sufficient to enable such relief to the entire putative class. Nothing more, in terms of class certification, is necessary." 2 Newberg and Rubenstein on Class Actions § 4:30 (6th ed.). The unavailability of such preliminary relief could render the putative class action meaningless, and many "collateral doctrinal consequences"—for example, preserving appellate jurisdiction—attach upon the filing of the class action, not upon certification. *Id*. Thus, "classwide injunctive relief is available in a putative class action, without the need for a court to undertake provisional or conditional certification inquiries." *Id*.

Finally, Mr. Hurlock's reliance on Rule 23, in conjunction with his well-pleaded class allegations, vitiates any argument that preliminary injunctive relief must apply to him alone. Chow Mem. at 24-26; Second Davis Mem. at 22-23. Defendants cite *Kane v. De Blasio*, 19 F.4th 152

(2d Cir. 2021)—a facial challenge to New York City's Covid-19 vaccine mandate—to argue that injunctive relief may extend to Hurlock but no farther. However, the *Kane* plaintiffs sought the universal injunctive relief expressly disapproved in *CASA* without making the showings necessary under Rule 23. *Kane*, 19 F.4th at 173 ("Plaintiffs' challenge is an end run around the rules governing class certification."). Here, in contrast, Plaintiffs have properly alleged numerosity, typicality, commonality, and adequacy. FAC ¶¶ ___; Compl. at ¶¶ 172-79; *compare* Rule 23(a).[11]

## II.    Imminent and Irreparable Harm

"Perhaps the single most important prerequisite for the issuance of a preliminary injunction is a demonstration that if it is not granted the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered." *Firemen's Ins. Co. of Newark, New Jersey v. Keating*, 753 F. Supp. 1146, 1150 (S.D.N.Y. 1990) (citation and quotation omitted). "[P]laintiffs must demonstrate 'an injury that is neither remote nor speculative, but actual and imminent.'" *Id*. But "[t]he standard for preliminary injunctive relief requires a threat of irreparable harm, not that irreparable harm already have occurred." *Mullins v. City of New York*, 626 F.3d 47, 55 (2d Cir. 2010).

*First*, the intangible, fast-moving, and opaque nature of cryptocurrencies justifies this Court's equitable intervention. The speed and irreversibility of cryptocurrency transfers; the lack of central intermediaries like banks responsive to the Court's orders; the anonymity of crypto holdings; and cryptographic signatures enabling precise tracing all distinguish cryptocurrency from "cash in a defendant's bank account." *Compare* Chow Mem., at 12; First Davis Mem., at 13.

---

[11] The territorial restrictions on GBL claims do not affect class certification, at least at this stage, because, as the Second Circuit has explained, as long as "some part of the underlying transaction occurred in New York State" out-of-state victims have standing under Section 349. *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 123-24 (2d Cir. 2013). *See also Goetz v. Ainsworth Pet Nutrition, LLC*, 768 F.Supp.3d 645, 660-61 (S.D.N.Y. 2025).

Indeed, "many courts have recognized that the failure to promptly freeze the cryptocurrency leads to irreparable harm." *Mirashi v. Doe*, 2025 WL 893003, at *4 (D.N.J. Mar. 21, 2025); see also *Jacobo v. Doe*, 2022 WL 2052637, at *5 (E.D. Cal. June 7, 2022) ("The speed and anonymous nature of cryptocurrency transactions" increase the likelihood that Defendants "place the assets at issue in this matter beyond the reach of the court."); *Fed. Trade Comm'n v. Dluca*, 2018 WL 1830800, at *2 (S.D. Fla. Feb. 28, 2018) ("This independence from traditional custodians makes it difficult for law enforcement to trace or freeze cryptocurrencies in the event of fraud or theft").

*Second*, Plaintiffs have demonstrated that "if no preliminary injunction were to issue, Defendants would likely attempt to transfer or dissipate the [cryptocurrency assets]." *Dong v. Miller*, 2018 WL 1445573, at *11 (E.D.N.Y. Mar. 22, 2018). Here, Defendants' concerted efforts to conceal the cryptocurrency assets and their threats to use these assets for their own benefit "all suggest that further dissipation is actual and imminent." *Breslow v. Phillips*, 2023 WL 5955772, at *4 (S.D. Fla. July 7, 2023); *Jacobo*, 2022 WL 2052637 at *5. *See also In re Feit & Drexler, Inc.,* 760 F.2d 406, 416 (2d Cir.1985) (enjoining party found to have engaged in "numerous" and "substantial efforts to hide and secrete assets"); *Tran v. Muhammad*, 2021 WL 681128, at *3 (C.D. Cal. Jan. 15, 2021) ("To determine whether a defendant is likely to dissipate or conceal the funds owed, courts consider the defendant's history of similar misconduct.).

Plaintiffs have put forth unrebutted evidence that Defendants have already attempted to conceal their ill-gotten gains. Mr. Ehrenhofer's Tracing Report demonstrates that Defendants took deliberate actions to conceal the LIBRA Proceeds, including using multiple, rapid transfers to obscure their extractions of Plaintiff's assets. First Ehrenhofer Decl. ¶¶ 15-18 and Ex. 2; Second Ehrenhofer Decl. ¶ 56. This pattern of multiple transfers between multiple intermediary wallets in rapid succession before concentrating the ill-gotten gains in multiple wallets is sufficient reason

9

alone to find that "[i]f the [assets in the LIBRA Wallets are] not frozen, there is a risk they will become untraceable and unrecoverable." *RPB SA v. Hyla, Inc*., 2020 WL 6723491, at *13 (C.D. Cal. July 27, 2020) ("Plaintiff has submitted substantial evidence that the Funds at issue have been transferred to numerous of transferees in multi-layered transactions."); *Shaoxing Bon Textiles Co., Ltd. v. 4-U Performance Group LLC*, 2017 WL 737315, at *3 (S.D.N.Y. Feb. 6, 2017).

Additionally, Defendants' inculpatory behavior makes clear the imminent risk of irreparable harm. Davis promised to "reinvest 100% of the funds under [his] control," but he did no such thing. Treanor Decl. ¶¶ 24-25. Instead, Davis refunded one purchaser—Barstool Sports CEO Dave Portnoy—$5 million, despite publicly describing investors refunds as "insane." *Id*. ¶ 26. Davis has also refused to relinquish control of the assets "even if it's a trusted third party" because his "only leverage point is that [he] has all this money." *Id*. Now—ostensibly to make good on his intention to "tell everyone to fuck off" by giving "all the money to an Argentinean nonprofit" (*Id*., at 25)—Davis has requested permission to send unspecified LIBRA Proceeds to Argentina. July 1 Tr. 10:01-10. Likewise, Defendants Meteora and Chow have intentionally misrepresented and obfuscated their own practical ability to control the assets in question, and the continuing profits they are earning from them in the form of trading fees. FAC ¶¶ ___; Hoppin Decl. Exs. D and E. Their participation in the LIBRA scam (FAC ¶¶ ___), stated interest in these fees (Chow Decl. ¶ 3), and corporate shell game with Meteora—sometimes passed off as a juridical entity, sometimes not, (Chow Decl, ¶ 3; Chow Mem., at 2; FAC ¶¶ ___; Hoppin Decl. Exs. C-M— provide "a strong indication that [they] may dissipate or conceal assets." *Micro Signal Research, Inc. v. Otus*, 417 F.3d 28, 31 (1st Cir. 2005) (finding irreparable injury where defendant engaged in fraud and reorganized business to frustrate the repayment of outstanding debt); *McGirr v. Rehme*, 891 F.3d 603, 613-14 (6th Cir. 2018) (finding irreparable injury where injunction target

4935-3117-8325, v. 16

played a "high-stakes shell game" to conceal assets "likely obtained through fraud"). *See also Westernbank Puerto Rico v. Kachkar*, 2009 WL 2871160, at *11 (D. Puerto Rico Sept. 1, 2009) (defendants "total control" over the assets puts them at a "high risk of concealment or dissipation").

*Third*, Defendants' overseas connections demonstrate a heightened risk that they will transfer the assets "to offshore entities organized in unknown locations." *Gaponyuk v. Alferov*, 2023 WL 4670043, at *3 (E.D. Cal. July 20, 2023). Hayden Davis is known to travel internationally and Charles Thomas Davis has business connections in the Middle East. Treanor Decl. ¶ 33; FAC ¶ ___. Similarly, the Meteora Defendants have connections to Singapore, Panama, and the British Virgin Islands. FAC ¶¶ ___; Hoppin Decl. G, I, and J. Chow's Declaration states it was executed in Vietnam. Chow Decl. This "offshoring" risk is particularly acute because of the nature of the digital assets at issue. *Heissenberg v. Doe,* 2021 WL 8154531, at *2 (S.D. Fla. Apr. 23, 2021).

Defendants attempt to argue that their success at stashing the LIBRA Proceeds in their current locations, and leaving them there, minimizes the risk of harm. The mere fact that some LIBRA Proceeds have remained in the LIBRA Wallets—where they were successfully hidden by Defendants until Plaintiff's expert located them—does not reduce the risk that these assets will be dissipated before this Court enters a judgment in this action.[12] Defendants cannot launder stolen funds through a series of intermediary wallets, successfully conceal them for months, explicitly

---

[12] Related, any delay in Plaintiff's preliminary injunction application was not unreasonable. It was necessitated by the tracing investigation (May 27 Tr. 7:01-8:05) and Defendant Chow's removal of this action from state court. *See Marks Organization, Inc. v. Joles,* 784 F.Supp.2d 322, 333-34 (S.D.N.Y. 2011); *Arc of Cal. v. Douglas*, 757 F.3d 975, 990 (9th Cir. 2014) ("Usually, delay is but a single factor to consider in evaluating irreparable injury; courts are loath to withhold relief solely on that ground.") (internal quotations and citations omitted).

call them "leverage" they refuse to relinquish, and then claim the assets are "safe" because they have not recently been transferred.[13]

## III.    Plaintiffs Have Made the Requisite "Merits" Showing on Their Equitable Claims

This Court entered the TRO based on Plaintiffs' unjust enrichment and GBL claims. *See* TRO Hearing Tr. at 21:6-24. Plaintiffs have shown a "likelihood of success" on the merits of both claims against all Defendants; alternatively, at a minimum, Plaintiffs have shown "sufficiently serious questions going to the merits" of those claims "to make them a fair ground for litigation" and "a balance of hardships tipping decidedly toward the party requesting the preliminary relief," which is sufficient in this Circuit. *Citigroup Glob. Markets, Inc.*, 598 F.3d at 35.[14]

Defendant Chow's principal argument to the contrary is that his own role is insufficiently alleged. Chow Mem. at 17-19. But Chow operated and controlled Meteora from its "launch" in February of 2023 through at least February 16, 2025, when he publicly announced his resignation because of the $LIBRA scandal, publicly admitting his provision of "technical support." FAC ¶¶ ___. The sophistication of the $LIBRA capital extraction scheme on Meteora's DLMM Program—together with the Meteora Defendants' contemporaneous admissions that their own expertise was generally required to competently use Meteora launch programs—strongly suggests Chow helped design the $LIBRA scam, as he did with $M3M3. FAC ¶¶ ___.

---

[13] In addition, under CPLR § 6201(1), plaintiffs may obtain an order of attachment when a defendant "is a nondomiciliary residing without the state, or is a foreign corporation not qualified to do business in the state" and "something, whether it is a defendant's financial position or past and present conduct, poses a real risk to the enforcement of a future judgment." CPLR § 6201(1). Mr. Hurlock has made these showings here.

[14] The latter standard "afford[s] considerable 'flexibility in the face of varying factual scenarios and the greater uncertainties inherent at the outset of particularly complex litigation.'" *State Farm*, 120 F.4th at 83 (quoting *Citigroup Glob. Markets, Inc.*, 598 F.3d at 35).

4935-3117-8325, v. 16

Moreover, Chow had been secretly collaborating with the Kelsier Defendants for months to execute and jointly profit from serial fraudulent memecoin launches on Meteora, of which $LIBRA was just one (albeit the highest profile) example.  FAC ¶¶ ___.

Chow's related attempts to describe Defendant Meteora as "permissionless" software fail for similar reasons.  Meteora programs were not "permissionless":  they required supporting services from the "Meteora team" and, in the case of high-profile token launches, bespoke assistance from Chow himself.  FAC ¶¶ ___; Hoppin Decl. Exs. D, E, and F.

### A.    Plaintiffs Have Shown a Likelihood of Success on their GBL Claims

Both Defendants concede, as they must, that their alleged conduct was "consumer oriented" under GBL §§ 349 and 350.  *See generally Karlin v. IVF Am., Inc.*, 93 N.Y.2d 282, 290 (1999) (both statutes "apply to virtually all economic activity").

Defendant Chow protests that the existence of "one-sided liquidity pools" was disclosed on the Meteora Website.  Chow Mem., at 20.  But developer-directed materials published on the Meteora Website are not adequate "disclosures" that overcome the materially misleading omissions made to the retail traders that bought $LIBRA.  Those traders had no reason to visit the Meteora Website, which catered to memecoin promoters.  FAC ¶¶ ___; Hoppin Decl. Exs D, E, and F.  As to those traders, the Meteora and Kelsier Defendants intentionally jointly marketed the Meteora Defendants as trustworthy leaders in the Solana ecosystem, whose principal aim was memecoin investor protection. FAC ¶¶ ___.  The existence of "one-sided" memecoin launch pools, and the technically sophisticated manner of their potential abuse, was not effectively disclosed to those traders "acting reasonably under the circumstances" and its omission was "likely to mislead" them.  *Oswego Laborers' 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 26 (1995).

4935-3117-8325, v. 16

Moreover, the principal omission at issue in Plaintiffs' GBL claims are that: (i) with technical expertise, DLMM memecoin launch pools could be manipulated to rapidly execute a massive capital extraction scheme during a high-profile memecoin launch, and (ii) the Meteora Defendants (who possessed unparalleled technical expertise in Meteora Programs) were secretly collaborating with the Kelsier Defendants (the $LIBRA launch team) to do just that.  FAC ¶¶ ___. Those omissions were not disclosed in any form and are unquestionably "likely to mislead a reasonable consumer acting reasonably under the circumstances."[15]  *Oswego Laborers' 214 Pension Fund,* 85 N.Y.2d at 26.

The same is true of the principal affirmative misrepresentation underlying Plaintiff's GBL claims:  that there *was* a legitimate, government-affiliated "investment project" in Argentina.  FAC ¶¶ ___.  That was false: Defendant Davis intentionally procured a highly misleading promotional statement from Argentinian President Javier Milei, strategically timed to lend $LIBRA a false appearance of legitimacy and government affiliation at the moment of the token's launch on Meteora.  Tens of thousands of reasonable consumers were misled.

Defendant Davis challenges Plaintiffs' "reliance" allegations, Davis Mem. at 16, but "reliance is *not* an element of a section 349 claim."  *Stutman v. Chem. Bank*, 95 N.Y.2d 24, 30 (2000) (emphasis in original).  Moreover, "much like 'the securities context' where 'proof of reliance is not required where a duty to disclose material information has been breached, or where there are material omissions or misstatements in a proxy statement[;] [r]ather, the materiality of the omission or misstatement satisfies the causation requirement.'"  *Polvay v. FCTI, Inc.*, 713 F. Supp. 3d 1, 8 (S.D.N.Y. 2024) (quoting *Stutman*, 95 N.Y.2d at 30 n.2).  For that reason, a Court

---

[15] In any event, "[g]enerally, this inquiry is not appropriate on a motion to dismiss," because it is highly fact-specific, *Eidelman v. Sun Prods. Corp.*, 2017 WL 4277187, at *3 (S.D.N.Y. Sept. 25, 2017)  (collecting cases).

in this District has recently held that "a presumption of reliance for purposes of showing causation" can be applied in a putative class action under GBL §§ 349 and 350 when the misrepresentations at issue are materially misleading. *Id.* at 9.

Plaintiffs have also adequately established that the transactions at issue "occur[ed] in New York." *Goshen v. Mut. Life Ins. Co. of New York*, 98 N.Y.2d 314, 324 (2002). Without exceptions, they are Solana blockchain transactions, which become irrevocable by operation of a consensus mechanism operated by Solana Labs, from its New York and California officers. Moreover, as in *Cruz v. FXDirectDealer, LLC,* 720 F.3d 115 (2d Cir. 2013), this action arises out of a scheme to defraud investors using an exchange operated in and from New York, by Defendant Chow, a New York resident. Thus, those transactions "occurred in New York and implicate [its] interests," giving their out-of-state victims statutory standing under GBL 349 and 350, at least at this preliminary stage of the action. *Id.* at 123-24.

## B.    Plaintiffs Have Shown a Likelihood of Success on their Unjust Enrichment Claim

To prevail on a claim for unjust enrichment, plaintiffs must establish "(1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." *Winans v. Ornua Foods N. Am. Inc.*, 731 F. Supp. 3d 422, 431 (E.D.N.Y. 2024). Defendant Chow does not contest the adequacy of Plaitniff's showing on any of these elements. Instead, he argues only that (i) this claim is "improper" because it duplicates the GBL claim, and (ii) his own "culpable conduct" is insufficiently alleged. Chow Mem. at 23. Defendant Chow's "role" in the $LIBRA fraud is more than adequately alleged for the reasons summarized above. *See also* FAC ¶¶ ___; Treanor Decl. ¶¶ 15-16. As for duplicativeness, Plaintiffs seek different relief (restitution and disgorgement) under different legal elements (no requirement to prove consumer orientation) implicating different facts. It is thus "conceivable that [Plaintiffs] might

15

lose on [their] GBL claims but prevail on [their] unjust enrichment claim." *Winans,* 731 F. Supp. 3d at 432 (declining to dismiss the unjust enrichment claim); *see also Seaman v. This Is L., Inc.,* 2024 WL 4449405, at *6 (E.D.N.Y. Oct. 2, 2024).

Plaintiffs more-than-adequately allege the "benefits" obtained by Defendants at their expense:  (i) the digital assets paid to acquire $LIBRA and then promptly extracted by the Defendants and their associated from $LIBRA launch and liquidity pools; and (ii) the associated trading fees automatically apportioned between the Meteora and Kelsier Defendants. FAC ¶¶ ___. These allegations indisputably describe a "direct" and wrongfully obtained benefit that must be disgorged. *Edmar Fin. Co., LLC v. Currenex, Inc.,* 2023 WL 3570017, at *21 (S.D.N.Y. May 18, 2023) (trading fees paid on electronic foreign exchange were "direct" benefit for purposes of unjust enrichment claim against exchange and certain "insiders" that allegedly received preferential treatment); *Mason v. Reed's Inc.,* 515 F. Supp. 3d 135, 147 (S.D.N.Y. 2021) (plaintiff adequately "alleged that equity and good conscience require restitution because the defendant's profit was due to allegedly untrue or misleading statements").

## IV.    Balance of Hardships and Public Interest

The balance of hardships "weighs decidedly in Plaintiff's favor" *Breslow,* 2023 WL 5955772 at *4.    Here, "[a] delay in defendant's ability to transfer the assets only minimally prejudice defendant, whereas withholding injunctive relief would severely prejudice plaintiff by providing defendant time to transfer the allegedly purloined assets into other accounts beyond the reach of this court." *Jacobo,* 2022 WL 2052637, at *6.    Indeed, Defendant Davis does not even dispute this issue, let alone raise that the requested injunction would cause him harm.  *See generally,* First and Second Davis Mems.  Defendant Chow also fails to identify any hardship that he will suffer if the Court granted the requested injunction.  Instead, Chow primarily rehashes his arguments on irreparable harm.  Chow Mem., at 24.  But the "[balance of hardships analysis] is

not identical to the irreparable harm analysis." *Wachovia Secs., L.L.C. v. Stanton,* 571 F. Supp. 2d 1014, 1047 (N.D. Iowa 2008) (internal quotations and citations omitted).   His arguments therefore fail to show the balance of hardships tips in his favor.[16]

## CONCLUSION

For the foregoing reasons, Mr. Hurlock's Motion should be granted.

---

[16]   Likewise, any harm to third-party Circle is *de minimis* as it will "only need to freeze a minimal number of addresses." *Bullock v. Doe*, 2023 WL 9503380, at *6 (N. D. Iowa Nov. 3, 2023).

DATED:    July 28, 2025                    Respectfully submitted,
          New York, NY


**BURWICK LAW, PLLC**          **HOPPIN GRINSELL LLP**


**By:** */s/ Max Burwick*          **By:** */s/ Margaret B. Hoppin*

Max Burwick                    Margaret B. Hoppin
43 West 43rd Street, Ste. 114   Timothy W. Grinsell
New York, NY 10036             Joshua S. Molder
Tel: (646) 762-1080            11   Hanover   Square,   Ste.
max@burwick.law                1405
                               New York, NY 10005
                               Tel: 646.475.3550
                               margot@hoppingrinsell.com
                               tim@hoppingrinsell.com
                               josh@hoppingrinsell.com


                    *Attorneys for Plaintiffs*

4935-3117-8325, v. 16

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Civil Rule 7.1(c) and Paragraph 3.C of the Individual Rules of Practice in Civil Cases of Judge Jennifer L. Rochon, I certify that the foregoing memorandum of law has complied with the word count limitations set forth in those Rules, as modified by this Court's Order dated July 1, 2025 (Dkt. 62), which granted an enlarged word limit of 6,000 words for this submission.  The total number of words contained in this brief—exclusive of the cover page, certificate of compliance, table of contents, and table of authorities—is 5237 words.

DATED:       July 28, 2025
             New York, NY                    /s/ Margaret B. Hoppin
                                             Margaret B. Hoppin

                                             **HOPPIN GRINSELL LLP**
                                             11 Hanover Square, Ste. 1405
                                             New York, NY 10005
                                             Tel:  646.475.3550
                                             margot@hoppingrinsell.com