**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

OMAR HURLOCK, on behalf of himself and all
others similarly situated,

       Plaintiff,

v.

KELSIER VENTURES, KIP PROTOCOL,
HAYDEN DAVIS, GIDEON DAVIS,
METEORA, THOMAS DAVIS, JULIAN PEH,
and BENJAMIN CHOW,

       Defendants.

Case No. 25-cv-03891-JLR
[rel: 1:25-cv-03286-JLR]

 

**DEFENDANT BENJAMIN CHOW'S SUR-REPLY IN OPPOSITION TO PLAINTIFF
OMAR HURLOCK'S MOTION FOR TEMPORARY RESTRAINING ORDER AND
PRELIMINARY INJUNCTION**

CAHILL GORDON & REINDEL LLP
Samson A. Enzer
Edward N. Moss
Miles C. Wiley
Gregory Mortenson
32 Old Slip
New York, New York 10005
(212) 701-3000

*Attorneys for Defendant
Benjamin Chow*

## TABLE OF CONTENTS

I.    The Court Should Not Consider the Amended Complaint or "New Evidence"...................1

II.   Plaintiff Cannot Demonstrate Irreparable Harm for Two Principal Reasons......................2

III.  Plaintiff Is Not Likely to Succeed on the Merits ...................................................4

    a.    Plaintiff's Unjust Enrichment Claim Fails For Three Additional Reasons ............6

    b.    Plaintiff's NYGBL Claim Fails ...........................................................8

IV.   The Balance of the Equities Still Does Not Favor Plaintiff...............................9

V.    Plaintiff's Application is Overbroad.........................................................9

VI.   Meteora Cannot be Enjoined ...........................................................11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.A.R.P.* v. *Trump*,
   145 S. Ct. 1364 (2025)...........................................................................................................9, 10

*Banks.com, Inc.* v. *Keery*,
   2010 WL 727973 (N.D. Cal. Mar. 1, 2010).......................................................................11

*CASA, Inc.* v. *Trump*,
   2025 WL 1952521 (D. Md. July 16, 2025).................................................................1, 9, 10

*Cohen* v. *Towns*,
   2025 WL 1380655 (S.D.N.Y. May 13, 2025) .........................................................................9

*Corsello* v. *Verizon New York, Inc.*,
   967 N.E.2d 1177 (N.Y. 2012)............................................................................................7-8

*Drabinsky* v. *Actors' Equity Association*,
   2023 WL 2955294 (S.D.N.Y. Apr. 14, 2023).......................................................................11

*Edmar Financial Co., LLC* v. *Currenex, Inc.*,
   2023 WL 3570017 (S.D.N.Y. May 18, 2023) ......................................................................6-7

*Farrell* v. *U.S. Olympic & Paralympic Committee*,
   567 F. Supp. 3d 378 (N.D.N.Y. 2021).................................................................................11

*FTC* v. *Dluca*,
   2018 WL 1830800 (S.D. Fla. Feb. 28, 2018) .........................................................................3

*Gaponyuk* v. *Alferov*
   2023 WL 4670043 (E.D. Cal. July 20, 2023) .........................................................................4

*Goodman* v. *Board of Managers of Harborview Condominium*,
   2023 WL 6977450 (S.D.N.Y. Oct. 23, 2023) .........................................................................7

*United States ex rel. Gordon* v. *Shiel Medical Laboratory*,
   2025 WL 949432 (E.D.N.Y. Mar. 29, 2025).........................................................................11

*Heissenberg* v. *Doe*,
   2021 WL 8154531, at *2 (S.D. Fla. Apr. 23, 2021) ...............................................................4

*Hines* v. *Lanigan*,
   2020 WL 6613213 (D.N.J. Nov. 10, 2020) ............................................................................1

*Jacobo* v. *Doe*,
    2022 WL 2052637 (E.D. Cal. June 7, 2022) ...................................................................3

*John Gil Construction, Inc.* v. *Riverso*,
    72 F. Supp. 2d 242 (S.D.N.Y. 1999).............................................................................1

*Kaye* v. *Grossman*,
    202 F.3d 611 (2d Cir. 2000).........................................................................................6

*McGirr* v. *Rehme*,
    891 F.3d 603 (6th Cir. 2018) ......................................................................................4

*Micro Signal Research, Inc.* v. *Otus*,
    417 F.3d 28 (1st Cir. 2005).........................................................................................4

*Mirashi* v. *Doe*,
    2025 WL 893003 (D.N.J. Mar. 21, 2025).....................................................................3

*Paz Systems, Inc.* v. *Dakota Group Corp.*,
    2006 WL 8430241 (E.D.N.Y. June 16, 2006) .............................................................1

*R.B. Development, Co. Ltd.* v. *Tutis Capital LLC*,
    2012 WL 2357318 (E.D.N.Y. June 20, 2012) ..........................................................2-3

*Risley* v. *Universal Navigation, Inc.*,
    2025 WL 615185 (2d Cir. Feb. 26, 2025).....................................................................5

*Snowbridge Advisors LLC* v. *ESO Capital Partners UK LLP*,
    589 F.Supp.3d 401 (S.D.N.Y. 2022)............................................................................7

*State Farm Mutual Automotive Insurance Co.* v. *Metro Pain Specialists P.C.*,
    2023 WL 1801995 (E.D.N.Y. Feb. 7, 2023)..................................................................2

*State Farm Mutual Automotive Insurance Co.* v. *Tri-Borough NY Medical
    Practice P.C.*,
    120 F.4th 59 (2d Cir. 2024) .........................................................................................2

*Targum* v. *Citrin Cooperman & Co., LLP*,
    2013 WL 6087400 (S.D.N.Y. Nov. 19, 2013) ..............................................................5

*Trump* v. *CASA*,
    145 S. Ct. 2540 (2025).............................................................................................9-10

*United States* v. *Bonanno Organized Crime Fam. of La Cosa Nostra*,
    879 F.2d 20 (2d Cir. 1989)..........................................................................................11

*Wachovia Securities, L.L.C.* v. *Stanton*,
    571 F. Supp. 2d 1014 (N.D. Iowa 2008)......................................................................9

*Westernbank Puerto Rico* v. *Kachkar*,
    2009 WL 2871160 (D. Puerto Rico Sept. 1, 2009)....................................................................4

*Yuille* v. *Uphold HQ Inc.*,
    686 F. Supp. 3d 323 (S.D.N.Y. 2023)..........................................................................................8

## PRELIMINARY STATEMENT

Plaintiff's Amended Complaint (Dkt. 115, "AC") and "new evidence" (Dkt. 111 and 112) are a startling confession that Plaintiff is not entitled to the extraordinary relief he seeks and a desperate, last-ditch attempt to rescue a fatally flawed request for emergency relief for which Plaintiff had (and has) no evidence. The Court should not reward such last-minute gamesmanship by considering these late filings.

But even if the Court does, they do not change the inescapable fact that Plaintiff's request should be denied because: (1) Plaintiff cannot show irreparable harm; (2) Plaintiff has not shown a likelihood of success on the merits; (3) the balance of equities are against Plaintiff; and (4) the relief Plaintiff seeks is prohibited by the Supreme Court's ruling in *Trump* v. *CASA, Inc*. Furthermore, injunctive relief is inappropriate against Meteora because it is not a legal entity.

## ARGUMENT

### I.    The Court Should Not Consider the Amended Complaint or "New Evidence"

Plaintiff seeks to salvage his doomed request by changing the case to purportedly allege a broad conspiracy across multiple "memecoins" and add fraud, conspiracy and RICO claims. These are not simply "additional" details (Reply at 4), and "turns the entire briefing process on its head." *See Paz Systems, Inc.* v. *Dakota Group Corp.*, 2006 WL 8430241, at *3 (E.D.N.Y. June 16, 2006) (striking submission where "plaintiff, having provided insufficient evidence to support its motion for an injunction in its moving papers, would like to, on reply, submit the very evidence it withheld"). The Court should consider only the original complaint and corresponding evidence. *See John Gil Construction, Inc.* v. *Riverso*, 72 F. Supp. 2d 242, 247 n.3 (S.D.N.Y. 1999) (considering original complaint because motion and opposition were filed based on it); *Hines* v. *Lanigan*, 2020 WL 6613213, at *1 (D.N.J. Nov. 10, 2020) (refusing to consider allegations from amended complaint filed after motion for preliminary injunction was filed).

The cases cited by Plaintiff (Reply at 4)—which involved a scheme to defraud State Farm—are inapposite. There, the new complaint "borrow[ed] heavily" from the prior complaint and the court merely found newly added defendants were subject to the already existing injunction. *See State Farm Mutual Automotive Insurance Co.* v. *Metro Pain Specialists P.C.*, 2023 WL 1801995, at *3 (E.D.N.Y. Feb. 7, 2023); *State Farm Mutual Automotive Insurance Co.* v. *Tri-Borough NY Medical Practice P.C.*, 120 F.4th 59, 78-79 (2d Cir. 2024) (new complaint did not moot appeal).

Even if the Court considers the new submissions, Plaintiff still fails to carry his burden.

## II. Plaintiff Cannot Demonstrate Irreparable Harm for Two Principal Reasons

First, the principal relief Plaintiff seeks is ***money damages***. Plaintiff quantifies his damages (Reply at 1) and Plaintiff's Amended Complaint—including new RICO claims seeking treble damages—is animated by claims seeking money damages. The cryptocurrencies at issue are highly liquid digital assets, and money damages would remedy his purported injuries. Because this is a case about money, there is no irreparable harm. (Opp. at 8-11).

Plaintiff argues that because he seeks "disgorgement" and "restitution," he is eligible for injunctive relief. (Reply at 5-6). That is not the law. A plaintiff must "demonstrate an equitable interest in **particular property**" to escape the prohibition on "injunctions freezing a defendant's assets in order to ensure their availability for a future judgment of money damages." *R.B. Development, Co. Ltd.* v. *Tutis Capital LLC*, 2012 WL 2357318, at *3 (E.D.N.Y. June 20, 2012) (denying injunctive relief where movant had not "adequately identified particular funds in the defendants' possession"). It is not enough to assert an "equitable claim"; a plaintiff must trace his alleged losses to particular funds or property in the defendant's possession. *Id.*

Here, Plaintiff seeks disgorgement of "all revenue generated by Defendants through transaction fees" (AC ¶ 446), but does not allege he has traced (or can trace) $LIBRA transaction

fees to anything in Mr. Chow's possession. This is fatal to Plaintiff's attempt to recast what is ultimately a money damages claim.

Second, Plaintiff has shown no threat of dissipation by Mr. Chow since it is undisputed that Mr. Chow has no ability, let alone any intention, to move the assets at issue. (Opp. at 4-5, 13).

In reply, Plaintiff recycles the same arguments Mr. Chow already rebutted. Plaintiff's principal argument is that the "intangible, fast-moving, and opaque nature" of cryptocurrency itself warrants an asset freeze, (Reply at 8-9), and relies on the same misplaced cases—*FTC* v. *Dluca*, 2018 WL 1830800 (S.D. Fla. Feb. 28, 2018) and *Jacobo* v. *Doe*, 2022 WL 2052637 (E.D. Cal. June 7, 2022)—that do not justify an asset freeze for reasons already stated. (Opp. at 15).[1]

Plaintiff's new "evidence" about potential dissipation is equally unpersuasive. The lion's share of evidence once again relates to Defendant Davis (not Mr. Chow). And while Plaintiff suggests that, after the $LIBRA launch, "Defendants" used "multiple transfers between multiple intermediary wallets," (Reply at 9), Plaintiff cites no evidence of Mr. Chow directing or receiving any such transfers. (*Cf.* Chow Decl. ¶¶ 12-13).

Indeed, the ***only*** allegations specific to Mr. Chow are that he has "obfuscated" his ability to control the assets at issue and has "overseas connections." (Reply at 10-11). Mr. Chow, however, has been clear: he has "a claim on a portion of DLL's revenues, including a portion of any DLL revenues from trading fees received from Meteora user transactions," but he does "not personally have possession, custody, control, or ownership of the program account." (Chow Decl. ¶¶ 3-4). This is not obfuscating; it is no different from an employee having a claim on earned wages, but lacking control over the company's payroll account.

---

[1] *Mirashi* v. *Doe*, also does not justify an asset freeze. Like *Jacobo*, *Mirashi* involved hacking allegations where "[p]lainitff may, unfortunately, never identify the Hacker." 2025 WL 893003, at *4-5 (D.N.J. Mar. 21, 2025). This is not the situation here.

Any so-called "overseas connections" also do not create a dissipation risk.  Mr. Chow resides in New York and has participated in every stage of this litigation.  No evidence suggests Mr. Chow intends to abscond, default, or transfer assets beyond the reach of this Court.  *Gaponyuk* v. *Alferov* and *Heissenberg* v. *Doe*—which each involved unnamed and unknown defendants that could have been located anywhere—do not compel a different finding.  *Gaponyuk*, 2023 WL 4670043, at *1-2 (E.D. Cal. July 20, 2023); *Heissenberg*, 2021 WL 8154531, at *2 (S.D. Fla. Apr. 23, 2021) (same).

Plaintiff's allegations that Meteora's status as software code and lack of formal incorporation renders it part of a "corporate shell game" (Reply at 10) also do not justify an asset freeze.  There is no "shell game."  In reality, Plaintiff chose to ignore information provided regarding Meteora and the corporate entity that drafted much of its code.  (*See* Spillane Decl. ¶¶ 5-6).  Plaintiff's cited authorities are inapposite.  Each involves documented histories of fraudulent transfers or other attempts to evade judgments—which are not present here.  *See McGirr* v. *Rehme*, 891 F.3d 603, 614 (6th Cir. 2018) (systematic attempt to render party judgment proof); *Micro Signal Research, Inc.* v. *Otus*, 417 F.3d 28, 31 (1st Cir. 2005) (repeated failure to repay plaintiff and switching underlying business to different entity); *Westernbank Puerto Rico* v. *Kachkar*, 2009 WL 2871160, at *11 (D. Puerto Rico Sept. 1, 2009) (noting a "history of . . . fraudulent behavior").

Finally, CPLR § 6201(1) does not provide a basis for an order of attachment against Mr. Chow because he lives in New York.

## III.    Plaintiff Is Not Likely to Succeed on the Merits

The only claims relevant to the request for injunctive relief are Plaintiff's NYGBL and unjust enrichment claims relating to the $LIBRA launch.  Plaintiff's new allegations do not raise

4

serious questions on the merits, and (as Mr. Chow's motion to dismiss will demonstrate), all of the claims fail as a matter of law.[2]

First, the Amended Complaint does not cure the fundamental defect in Plaintiff's request—there is no evidence Mr. Chow personally engaged in the alleged $LIBRA fraud.  (Opp. at 17-19). Plaintiff argues that Mr. Chow's provision of IT support implies he had a role in the alleged $LIBRA fraud (Reply at 12-13), but this is not accurate.  Mr. Chow helped create software others allegedly abused.  This is not enough to state a claim.  (*Id.*). *See also Risley* v. *Universal Navigation*, *Inc.*, 2025 WL 615185, at *4 (2d Cir. Feb. 26, 2025) ("[I]t defies logic that a drafter of a smart contract, a computer code, could be held liable" for "a third-party user's misuse of the platform.").

Indeed, it is still undisputed that Mr. Chow was not a member or promoter of the Viva La Libertad! project and did not:

- own, control, or set up the smart contract that minted $LIBRA tokens;
- recruit President Javier Milei or other alleged "touters" of $LIBRA;
- configure the one-sided Meteora liquidity pool used to sell $LIBRA tokens;
- transfer any $LIBRA tokens into or out of the pool;
- buy or sell $LIBRA tokens;
- extract from the pool or receive any payments made for $LIBRA tokens;
- draft, review, approve, or disseminate any allegedly false statements allegedly inducing $LIBRA token purchases; or

---

[2] Plaintiff's new allegations and claims regarding the $M3M3 token launch have no bearing on the merits of his $LIBRA-related claims.  Even if it were appropriate to consider such allegations, these claims against Mr. Chow are just as fatally flawed as the $LIBRA-related claims.  Plaintiff does not plausibly allege Mr. Chow made any material misstatements, committed fraud, or entered into any conspiracy with any other Defendants.  The RICO claims fail for a number of reasons, including failure to allege that Mr. Chow personally committed any predicate acts.  *See, e.g.*, *Targum* v. *Citrin Cooperman & Co., LLP*, 2013 WL 6087400, at *5 (S.D.N.Y. Nov. 19, 2013) ("[P]laintiff must allege that *each* defendant committed two or more predicate acts.").

- engage in any insider trading, "sniping," or other illicit trading of $LIBRA tokens.

(Chow Decl. ¶¶ 6-15; Opp. at 3).

Plaintiff does not dispute these dispositive facts. All the Amended Complaint adds to the mix are conclusory, misleading allegations that change nothing. For example, Plaintiff claims two incongruous allegations—launching a token on Meteora is a complex undertaking, and the alleged $LIBRA fraud was "sophisticated"—somehow "strongly suggests" Mr. Chow had a role in designing $LIBRA. (Reply at 12-13). He also argues Mr. Chow's alleged work with Hayden Davis on $M3M3 shows Mr. Chow had a role with respect to $LIBRA. (*Id.*). But Plaintiff's rank speculation about Mr. Chow's involvement with $LIBRA does not cast any doubt whatsoever on Mr. Chow's sworn testimony to the contrary (Chow Decl. ¶¶ 6-15).

Plaintiff also misleadingly suggests Meteora is not truly "permissionless" such that Mr. Chow must have had a starring role with respect to $LIBRA. (Reply at 13). Plaintiff alleges certain, highly specific aspects of a token launch **might** require involvement from the Meteora team—for example, changing default settings for fees, or creating a "unique custom pool config key" (*see* AC ¶ 142)—but there are no allegations here that those highly specific exceptions had anything at all to do with $LIBRA. Nor does this change the fact that anyone can launch a token on Meteora without seeking or obtaining permission from any centralized intermediary. (Chow Decl. ¶ 2).

Even if Plaintiff had alleged any wrongdoing by Mr. Chow, his claims against Mr. Chow fail for additional reasons.

### a.    Plaintiff's Unjust Enrichment Claim Fails For Three Additional Reasons

First, an unjust enrichment claim requires that "one party has received money or a benefit at the expense of another," and that "equity and good conscience require restitution." *Kaye* v. *Grossman*, 202 F.3d 611, 616 (2d Cir. 2000). As Plaintiff's cited cases acknowledge, "courts

require proof that the defendant received a 'specific and direct benefit' from the property sought to be recovered" and plaintiffs must "allege some kind of relationship or connection to [the] defendant." *Edmar Financial Co., LLC* v. *Currenex, Inc.*, 2023 WL 3570017, at *20 (S.D.N.Y. May 18, 2023).

Here, although Plaintiff alleges "Defendants" received "excessive transaction fees from Meteora protocols" as a result of the alleged $LIBRA misconduct (AC ¶ 440), Plaintiff does not sufficiently allege he had any "relationship or connection" to Mr. Chow.  Unlike the plaintiffs in *Currenex* (direct users of defendant's trading platform), Plaintiff does not allege a direct relationship with Mr. Chow.  Instead, he alleges he placed his trades "through the [user interfaces] provided by Phantom or Bullx" and that a portion of his trades were then "routed" through the Meteora DLMM.  (AC ¶ 38).

Second, Plaintiff fails to identify any statements or affirmative steps taken by Mr. Chow with respect to the $LIBRA launch, beyond insufficient group pleadings regarding "Defendants" or "Meteora Defendants."  (*See* AC ¶¶ 427, 439-443).  *Snowbridge Advisors LLC* v. *ESO Capital Partners UK LLP*, 589 F.Supp.3d 401, 421 (S.D.N.Y. 2022) (dismissing unjust enrichment claim where plaintiff failed to allege any "affirmative acts" by defendants resulting in defendants obtaining a benefit at the expense of plaintiff); *Goodman* v. *Board of Managers of Harborview Condominium*, 2023 WL 6977450, at *5 (S.D.N.Y. Oct. 23, 2023) ("It is well established in this Circuit that plaintiffs cannot simply lump defendants together for pleading purposes.").

Finally, Plaintiff's unjust enrichment claim fails because it is duplicative of his NYGBL claim.  (Opp. at 23).  The two claims seek to recover the same funds and are based on the same allegations of wrongdoing.  If his NYGBL claim fails, his unjust enrichment claim will fail.  Although some courts in the Second Circuit allow such duplicative claims to survive (Reply at 15-

16), the better approach is to dismiss because "[a]n unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim." *Corsello* v. *Verizon New York, Inc.*, 967 N.E.2d 1177, 1185 (N.Y. 2012).

### b.    Plaintiff's NYGBL Claim Fails

Plaintiff purports to allege a NYGBL claim based on both misstatements and omissions. (AC ¶¶ 421-431; Reply at 13-15).  As to the misstatements, Plaintiff claims the Viva La Libertad! project was falsely represented as an investment initiative to support Argentinian enterprises. (Reply at 14).  But this fails as to Mr. Chow because it remains undisputed that he did not launch or promote $LIBRA, had no involvement in Viva La Libertad!, and did not make, draft, review, approve, or disseminate any of the allegedly false statements.  (Opp. at 17-21; Chow Decl. ¶¶ 6-15).

As to omissions, Plaintiff essentially argues that Defendants failed to disclose they were collaborating to "manipulate" $LIBRA liquidity pools, and suggests he had "no reason" to do any diligence before purchasing the memecoin shortly after President Milei tweeted about it.  (Reply at 13-14; *see* AC ¶ 38).  Tellingly, however, Plaintiff does not dispute that it was disclosed that projects could launch tokens using one-sided liquidity pools, and that anyone, at any time, can identify the specific assets in, and fee structures of, each liquidity pool created using Meteora. (Opp. at 20).  *See Yuille* v. *Uphold HQ Inc.*, 686 F. Supp. 3d 323, 348 (S.D.N.Y. 2023) (rejecting NYGBL claim against operator of cryptocurrency platform where plaintiff did not "allege any material information in [d]efendant's possession that it failed to disclose").

Even if the disclosures did not doom Plaintiff's "omissions" theory, Plaintiff's NYGBL claim as to Mr. Chow fails for lack of causation.  (Opp. at 20-21).  Plaintiff's failure to address this argument waives any opposition to it.

## IV.    The Balance of the Equities Still Does Not Favor Plaintiff

Plaintiff argues Mr. Chow has not identified any hardship that would result from the Court's granting an injunction, and that denying one would prejudice Plaintiff because it would give Defendants time to transfer assets.  (Reply at 16-17).  This does not carry Plaintiff's burden to show the balance of hardships tips decidedly in his favor.  *Cohen* v. *Towns*, 2025 WL 1380655, at *4 (S.D.N.Y. May 13, 2025).

The harm to Mr. Chow goes hand-in-hand with Plaintiff's failure to establish the requisite elements for injunctive relief.  It is prejudicial to freeze transaction fees that accrued as the result of users trading through Meteora, and the balance of equities does not favor Plaintiff when he "has not made [a] sufficient showing of likelihood of success on the merits."  *Wachovia Securities, L.L.C.* v. *Stanton*, 571 F. Supp. 2d 1014, 1048 (N.D. Iowa 2008).

Moreover, there is no inkling of a dissipation risk with respect to Mr. Chow, and granting injunctive relief in such circumstances would harm the public interest.  (Opp. at 24).

## V.    Plaintiff's Application is Overbroad

Plaintiff's request for injunctive relief should be denied as overbroad.  In *Trump* v. *CASA*, the Supreme Court vacated a series of so-called "universal injunctions" and held that courts lack authority to issue such wide-sweeping relief in part because it exceeds what is necessary to provide complete relief to each plaintiff with standing.  145 S. Ct. 2540, 2555-56 (2025).  *CASA* significantly curtails the power of courts to issue preliminary injunctions on behalf of a *putative* class.  Because "injunctive relief should generally extend only to the suing plaintiff," injunctive relief for a class requires the class first be certified in accordance with "the rigors of Rule 23."  *Id.* at 2566 (Alito, J., concurring).

In response, Plaintiff argues that courts may nonetheless "'issue temporary relief to a putative class.'"  (Reply at 7 (quoting *A.A.R.P.* v. *Trump*, 145 S. Ct. 1364, 1369 (2025)—an

9

opinion issued *before CASA*—and an outdated version of Newberg & Rubenstein on Class Actions)).

The updated version of Newberg disagrees: "*CASA* . . . implies [] classwide relief prior to class certification would run afoul of the prohibition on universal injunctions." 2 Newberg and Rubenstein on Class Actions § 4:30 (6th ed.) (June 2025 update) ("Newberg Update"). Even if *A.A.R.P.* is still good law, its purported support of "temporary relief to a putative class" is limited to temporary restraining orders. *See* Newberg Update § 4:30 (In the wake of *CASA*, "the breadth of the *A.A.R.P.* holding is somewhat unclear . . . [and] [a] narrow reading [of *A.A.R.P.*] would be that the holding authorizes only *temporary restraining orders* for a putative class but still demands the familiar full class certification proceedings before a court can issue a *preliminary injunction*.").

That *CASA* changed everything is evident from cases remanded after *CASA*, where courts have taken up class certification issues **before** issuing class-wide preliminary relief. *E.g.*, *CASA, Inc.* v. *Trump*, 2025 WL 1952521, at *3 (D. Md. July 16, 2025) (noting motion for class certification and subsequent briefing).

Here, Plaintiff alleges he lost approximately $60 worth of cryptocurrency, yet seeks to freeze hundreds of millions of dollars on behalf of an uncertified class (*see* AC ¶¶ 331, 334). After *CASA*, however, it is clear that freezing assets nearly **five million times greater than a plaintiff's own damages**, as Plaintiff seeks to do here, is impermissible. *See CASA*, 145 S. Ct. at 2563 (Thomas, J., concurring) ("In no circumstance can a court award relief beyond that necessary to redress the plaintiffs' injuries."). If the Court is inclined to grant any injunctive relief here (and it should not), it should be limited to the approximately $60 in damages that Plaintiff alleges.

## VI.    Meteora Cannot be Enjoined

Plaintiff's request for injunctive relief against Meteora should be denied because Meteora is not a legal entity, "[a]nd a party lacking legal existence lacks standing to sue or be sued." *United States ex rel. Gordon* v. *Shiel Medical Laboratory*, 2025 WL 949432, at *8 (E.D.N.Y. Mar. 29, 2025) (cleaned up).  Because Meteora is "a decentralized peer-to-peer software protocol," (Yong Decl. ¶ 2), and software has no legal existence, Meteora cannot be sued.  *See, e.g.*, *Banks.com, Inc.* v. *Keery*, 2010 WL 727973, at *7 (N.D. Cal. Mar. 1, 2010).    Even if Meteora were an unincorporated association, Plaintiff could not maintain his claims against it for at least three reasons.  First, Plaintiff has failed to name and serve the president or treasurer of Meteora, as required by N.Y. General Associations Law § 13.  *See Farrell* v. *U.S. Olympic & Paralympic Committee*, 567 F. Supp. 3d 378, 390-91 (N.D.N.Y. 2021).  Second, Plaintiff's state law claims against Meteora are barred by the *Martin* rule because Plaintiff has not alleged that the wrongful conduct was authorized or ratified by each of Meteora's alleged members.  *See, e.g.*, *Drabinsky* v. *Actors' Equity Association*, 2023 WL 2955294, at *3-4 (S.D.N.Y. Apr. 14, 2023).  Indeed, Plaintiff does not even identify all of the purported members of Meteora.  (*See* AC ¶ 39 (Meteora members "include, but are not limited to")).  Third, no RICO claim could be maintained against Meteora since it is not "'capable of holding a legal or beneficial interest in property,'" even if it were an unincorporated association.  *United States* v. *Bonanno Organized Crime Family of La Cosa Nostra*, 879 F.2d 20, 27 (2d Cir. 1989) (quoting 18 U.S.C. § 1961(3)).

## CONCLUSION

Plaintiff's motion should be denied.

Dated:  August 8, 2025

Respectfully submitted,

CAHILL GORDON & REINDEL LLP

By: /s/ Samson A. Enzer
Samson A. Enzer
Edward N. Moss
Miles C. Wiley
Gregory Mortenson
32 Old Slip
New York, New York 10005
212-701-3000
senzer@cahill.com
emoss@cahill.com
mwiley@cahill.com
gmortenson@cahill.com
*Attorneys for Benjamin Chow*

## CERTIFICATION OF COMPLIANCE

Pursuant to Paragraph 3.C of the Individual Rules of Practice in Civil Cases of Judge Jennifer L. Rochon, counsel for Defendant Benjamin Chow has complied with all of the formatting rules contained therein.  The total number of words contained in this brief—exclusive of the cover page, certificate of compliance, table of contents, and table of authorities—is 3,456 words.

Date:   August 8, 2025                   CAHILL GORDON & REINDEL LLP

By:     */s/ Samson A. Enzer*
        Samson A. Enzer
        32 Old Slip
        New York, New York 10005
        (212) 701-3000
        senzer@cahill.com


*Attorneys for Defendant Benjamin Chow*