UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| OMAR HURLOCK and ANUJ MEHTA, *on behalf of himself and all others similarly situated*,<br><br>Plaintiffs,<br><br>v.<br><br>KELSIER LABS, LLC d/b/a KELSIER VENTURES, HAYDEN MARK DAVIS, GIDEON DAVIS, CHARLES THOMAS DAVIS, METEORA, *an unincorporated association*, and BENJAMIN CHOW,<br><br>Defendants. | **Case No.: 1:25-cv-03891-JLR**<br><br>Hon. Jennifer L. Rochon |

**DECLARATION OF MAX BURWICK IN SUPPORT OF PLAINTIFFS' LETTER MOTION REQUESTING LEAVE TO FILE SUPPORTING MATERIALS UNDER SEAL AND FOR ENTRY OF A PROTECTIVE ORDER UNDER RULE 26(c)**

I, Max Burwick, declare pursuant to 28 U.S.C. § 1746:

1. I am counsel for Plaintiffs in this action. I submit this declaration in support of Plaintiffs' Letter-Motion to File Under Seal certain confidential-informant ("CI") materials and for entry of a protective order under Rule 26(c). I have personal knowledge of the facts set forth herein.

2. The Court held a preliminary-injunction hearing on August 19, 2025 (the "PI Hearing"). Plaintiffs have since filed a Combined Motion Under Fed. R. Civ. P. 54(b), Rule 65, and Rule 52(a)(2) (ECF No. 154) seeking narrow, address-specific relief to preserve a specific, traced res (the "PI Package"). The CI materials at issue are offered solely to

1

complete the irreparable-harm record; they are not offered for merits adjudication at this stage.

3. Timeline of CI Contact and Materials:

    a. On September 4, 2025, a non-party professional in the finance sector (the "CI") contacted me.

    b. I interviewed the CI on September 8, 2025.

    c. On September 12, 2025, the CI provided communications and documents on the express condition that his identity be protected.

    d. Plaintiffs had previously received information from other confidential sources and observed public-facing materials pointing in the same direction; the CI's materials are the first we have received from this specific CI in this chat-log format from a source with direct communications with certain defendants.

4. The CI is a non-party with an established professional reputation in the finance sector. The CI has worked on crypto projects not at issue here and is not accused of any wrongdoing. The CI sought confidentiality to avoid professional and personal harms.

5. The materials include communications with Hayden Davis that discuss:

    a. LIBRA launch-related roles and global coordination;

    b. M3M3 control;

    c. MELANIA; and

    d. An established and ongoing operational relationship with Defendants Chow and Meteora. As well as a relationship with non-party Ng Ming Yeow.

6. The materials bear directly on operational coordination and practical capacity to cause or pause outbound transfers—facts relevant to irreparable harm (risk of dissipation of a

2

specific res). *See* attached Exhibit A, PI Hearing Transcript Excerpts, "Aug. 19, 2025 Hr'g Tr." at 5–9.

7. The CI came to us through a network of previously vetted sources. We have corroborated the substance of the CI's information by (a) comparing it against information from multiple other CIs, (b) referencing public-facing materials, and (c) aligning it with on-chain timing and other contemporaneous artifacts. The CI's chat-log evidence adds clarity to these highly relevant issues.

8. Public disclosure would allow defendants (or others) to identify the CI with ease, because even heavily redacted versions of the chats would contain information which could be used to ascertain the CI's identity. In their raw form, the logs include precise timestamps and time-zone offsets, platform and channel identifiers, handles and usernames, distinctive lexical patterns, and contextual details that can be cross-referenced against defendants' own data. Even short verbatim quotes could enable triangulation of the CI. See Declaration of David Goldman, Dated October 1, 2025 ("Goldman Decl."), ¶¶ 7–8.

9. Based on my consultations with our Head of Investigations, modern chat platforms and review tools permit powerful natural-language search capabilities. Consistent across social and chat platforms, via direct message or small-group chats, even a non-salient three-to-five-word phrase, appearing to be immaterial or purely connective language, can be sufficient to return the exact message through a simple phrase search. See Goldman Decl. ¶¶ 7–8.

10. This risk is platform-agnostic. Whether the underlying messages reside in Discord, Telegram, Signal, Twitter/X DMs, Instagram, or similar tools, participants can run global or channel-level searches across their own histories and locate hits by phrase, partial

phrase, or paraphrase. Because the relevant chats occurred in small, known groups, seemingly generic phrasing can become near-unique in context—making identification straightforward once even a short exact quote is public. See Goldman Decl. ¶¶ 7–8.

11. For these reasons, even very short verbatim quotations in public filings pose disproportionate deanonymization risk. Plaintiffs have therefore used sanitized paraphrases in public submissions and reserved verbatim content for in camera review (and, if the Court requires adversarial access, Outside-Counsel-Eyes-Only under a no-identification and no-reverse-engineering regime). This approach protects identity while preserving the Court's ability to verify substance. See Goldman Decl. 10.

12. If identified, the CI faces serious risks, including:

    a. Professional blacklisting and loss of livelihood;

    b. Online harassment/doxxing; and

    c. Potential risks to personal and familial safety.

13. In my personal experience, public exposure of a cooperative insider in a high-value, high-profile crypto dispute predictably triggers such harms. During high-profile memecoin litigation my family was subjected to online harassment. During that same litigation non-parties physically appeared in my neighborhood and attempted to access our office.

14. Our practice frequently relies on non-party insiders to provide evidence that enables courts to preserve assets and protect victims. Unmasking this CI would chill cooperation by this CI and by other insiders in this and future matters, impairing the Court's ability to receive reliable, timely evidence at the PI stage.

15. The confidential-informant materials do not identify, and do not discuss, any of the five Target Wallet addresses. They are submitted for a narrower purpose: to complete the irreparable-harm record by (a) demonstrating non-speculative risk of dissipation, and (b) impeaching factual predicates in the defense declarations that the Court reviewed when denying preliminary relief on August 19, 2025. See Aug. 19, 2025 Hr'g Tr. at 65–66 (noting the ruling turned on irreparable harm).

16. At the TRO stage, the Court expressed concern about flight risk and non-appearance; by the PI ruling, the Court found the dissipation risk insufficiently concrete on the then-existing record. The new CI materials—created and exchanged before and after the LIBRA launch—change that calculus by showing ongoing, deliberate coordination capable of prompt asset movement. They therefore address the precise ground on which preliminary relief was previously denied.

17. To avoid confusion, these exhibits are not offered to prove which wallet addresses are controlled by which individuals; that showing is provided by forensic tracing. Rather, the CI materials demonstrate the capacity and cadence of human decision-making behind token launches and asset flows—facts that increase the likelihood of asset dissipation absent a targeted, status-quo-preserving order.

18. The CI content is highly searchable. Even short verbatim quotes can be used to locate and delete the underlying threads across multiple platforms; revealing platform cues or precise timestamps would likewise facilitate targeted searches and spoliation. Plaintiffs therefore provide sanitized paraphrases on the public docket and submit unredacted versions in camera. If the Court requires adversarial access, Plaintiffs propose Outside-Counsel-Eyes-Only access with no-identification and no-reverse-engineering

conditions. This approach maintains public understanding while protecting the integrity of the evidence and the safety and privacy of a non-party witness.

19. Taken together with David Goldman's tracing in ECF No. 157 (which identifies a specific set of proceeds), the CI materials supply the credibility and capacity facts necessary to conclude that the risk of dissipation is real and imminent. They support the targeted preservation relief Plaintiffs request in their motion papers. The accompanying memorandum of law sets out the legal standards; this declaration provides the factual record.

20. It is also technically easy to delete or purge chat content on many platforms, whether by bulk channel deletion, per-message deletion, or auto-delete features (the specifics vary by service). Publicly revealing distinctive phrasing or timestamps would signal exactly what to look for and what to remove, increasing the risk of spoliation before preservation steps can be enforced. See Goldman Decl. 8.

21. At present, defendants do not know which platform(s) the CI used for the communications at issue. Disclosing details in a manner that narrows the platform—or disclosing phrases that will hit across multiple platforms—would enable rapid, platform-by-platform searches by defendants to identify and delete the relevant threads. See Goldman Decl. 8.

22. Accordingly, Plaintiffs' proposal—no public screenshots, no verbatim quotes, no platform indicators, and timestamp bucketing—is narrowly tailored to minimize spoliation risk while still providing the Court with in camera access to the unredacted materials and the public with the substance needed to understand the irreparable-harm showing.

23. Plaintiffs have narrowly tailored their request:

    a. We propose filing sanitized, paraphrased versions of the CI content for the public docket that convey the substance needed for the Court's analysis but omit identity-revealing (and dissipation-enabling) details (no handles, channel IDs, message IDs, exact timestamps, or unique phraseology).

    b. We will lodge the unredacted set in camera for the Court's review.

    c. If the Court requires adversarial access, we request Outside-Counsel-Eyes-Only access with no-identification, no-contact, and no reverse-engineering restrictions, and read-only controls.

24. The public filings will remain intelligible: our memorandum explains how the CI materials bear on irreparable harm; the demonstratives depict the addresses/balances/last-movement and authority pathways; and only identity-revealing or dissipation-enabling details are withheld.

    a. Paraphrasing is sufficient to maintain public understanding. The public filings describe the who, what, when, why at a level that allows any reader to understand (i) the operational coordination at issue, and (ii) why that reality bears directly on irreparable harm. The Court's in camera review of the unredacted materials ensures accuracy and completeness, while any Outside-Counsel-Eyes-Only access the Court may require preserves adversarial testing without exposing the CI.

    b. The paraphrasing level was calibrated to avoid phrase-collision with the underlying messages (i.e., we intentionally avoid unique or unusual strings that could be plugged into search tools) and to omit platform cues and precise timestamps, while preserving all material substance relevant to the Court's ruling.

> If the Court desires, Plaintiffs can provide supplemental sealed annotations mapping each paraphrase to its source message(s) for the Court's private review.

25. Plaintiffs commit to re-evaluate redactions at appropriate milestones and to propose further unsealing where feasible.

26. Exhibits. The following are submitted with Plaintiffs' letter-motion:

    a. Goldman Declaration Ex. A (Public): Sanitized CI Paraphrase Compendium (speaker labels; date buckets; relevance notes).

    b. Goldman Declaration Ex. B (Sealed – Court-Only): Unredacted CI Packet.

    c. Burwick Declaration Ex. A (Public): PI Hearing Transcript Excerpts (relevant pages only)

    d. Burwick Declaration Ex. B (Public): Impeachment Chart

    e. Burwick Declaration Ex. C (Public): Proposed Protective Order (Rule 26(c))

    f. Burwick Declaration Ex. D (Public): Proposed Sealing Order

I declare under penalty of perjury that the foregoing is true and correct. Executed on October 1, 2025.

Dated: October 1, 2025
New York, New York

By: /s/ Max L Burwick
Max L Burwick
43 W 43rd St., Suite 114
New York, NY 10036
(646) 762-1080
max@burwick.law
*Counsel for Plaintiffs Omar Hurlock*
*& Anuj Mehta*