UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| OMAR HURLOCK and ANUJ MEHTA, on behalf of themselves and all others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br><br>KELSIER LABS, LLC, d/b/a KELSIER VENTURES, HAYDEN MARK DAVIS, GIDEON DAVIS, CHARLES THOMAS DAVIS, METEORA, *an unincorporated association*, and BENJAMIN CHOW,<br><br>*Defendants*. | Case No. 1:25-cv-03891-JLR<br><br><br>Hon. Jennifer L. Rochon |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO SUPPLEMENT UNDER FED. R. CIV. P. 15(d)**

## I. Introduction

Plaintiffs respectfully move for leave under Rule 15(d) to file and serve a single, narrowly tailored supplemental pleading to the Amended Class Action Complaint ("FAC"), ECF No. 115, to capture post-filing wallet movements that occurred on August 20, 2025, the day after the Court denied a preliminary injunction and dissolved the temporary restraining order ("TRO"), ECF No. 138. Plaintiffs also provide a concise status update to contextualize this request.

On October 1, 2025, Plaintiffs filed a motion to seal confidential-informant ("CI") materials and for entry of a narrowly tailored protective order, ECF No. 187. The materials memorialize conversations between the CI and Defendant Hayden Davis, identified as "DP-1" in ECF No. 189-1 ("Goldman Decl."), Ex. A. In those conversations, Davis describes coordinated token-launch and marketing operations among the Meteora and Kelsier defendants, acknowledges receiving direction from Defendant Chow, and admits to participating in joint international travel with Meteora leadership (among other material disclosures). Plaintiffs submitted that filing, in part, to complete the irreparable-harm record and to inform the Court's assessment of asset-dissipation risk, while simultaneously preserving the CI's safety and preventing spoliation.

Plaintiffs believe that the revelation of these materials provides grounds to seek leave to file a Second Amended Complaint ("SAC") under Fed. R. Civ. P. 15(a)(2). Plaintiffs are preparing that motion and the proposed SAC as diligently as practicable in light of the breadth of the whistleblower disclosures. This application is not that motion; it seeks only leave to file a narrow supplemental pleading under Rule 15(d). In the alternative, to the extent the Court prefers

to address these post-filing facts in the forthcoming proposed SAC and to keep the docket clean, Plaintiffs respectfully request that this application be denied without prejudice.

Filed contemporaneously with this Rule 15(d) application, Plaintiffs are submitting their reply in further support of their pending Rule 54(b) motion, ECF No. 154. This Rule 15(d) motion is intended to ensure that the operative record reflects post-filing facts relevant to asset dissipation risk and coordination.

For the Court's orientation, Plaintiffs advise that they will submit, under seal but available to opposing counsel, two whistleblower documents concerning M3M3 that are referenced in the impeachment chart in ECF No. 188-2. These materials show that (1) Kelsier and Meteora coordinated the M3M3 token launch; (2) Kelsier served as liquidity supplier; and (3) Defendant Benjamin Chow assisted with tokenomics modeling and strategic advisement for M3M3.

Finally, based on Plaintiffs' expanded understanding of Defendants' ongoing enterprise made possible by the CI Materials, the forthcoming proposed Second Amended Complaint will allege additional facts concerning the scope of harm. Plaintiffs' counsel presently represents more than 650 known affected purchasers, including more than 400 purchasers of the LIBRA token. Our clients' verified losses are approximately $17 million.

Plaintiffs offer this context to underscore the tightly cabined nature of this 15(d) request. Plaintiffs only seek leave to add one post-pleading paragraph alleging newly discovered August 20, 2025 transfers from the LIBRA sniper wallets. The supplement will align the operative complaint with next-day transfer activity following denial of preliminary relief, which bears directly on the Court's assessment of asset-preservation remedies and ongoing risk of dissipation.

II.     **Background**

On July 30, 2025, Plaintiffs filed the Amended Class Action Complaint ("FAC"), ECF No. 115. The FAC alleges, in part, $LIBRA extraction was carried out through defined wallets and intermediary addresses, with specific wallet identifiers appended. See, e.g., FAC ¶¶ 278–87; App'x C (wallet addresses). On August 19, 2025, the Court denied Plaintiffs' motion for a preliminary injunction and dissolved the TRO, ECF No. 138. The next day, August 20, 2025, two of the three core $LIBRA sniper wallets undertook the post-filing transfers summarized below. The proposed Rule 15(d) supplement adds no new parties or claims; it simply memorializes this post-filing wallet activity.

### III. The Proposed Supplement

The single paragraph below is designed to be inserted in the FAC's "CONTINUING FRAUD" section (beginning around p. 83 of the filed FAC), immediately following the paragraphs addressing ongoing control and proceeds flow (e.g., ¶¶ 324–27).

Plaintiffs' propose the following supplemental paragraph as the only addition sought at this time:

On August 20, 2025, the day after the Court denied a preliminary injunction and dissolved the temporary restraining order, on-chain records show that two of the three core $LIBRA sniper wallets moved funds: one transferred its remaining proceeds to a new Solana wallet, where they remain as of this filing; another wallet laundered the money onto the Ethereum network, and then converted the money from Circle USDC stablecoin, which is able to be programmatically frozen by the courts, into a decentralized token that cannot be programmatically frozen by the courts. These movements bear directly on asset-dissipation risk by demonstrating immediate post-order transfers of $LIBRA proceeds following dissolution of the TRO.

IV. **Argument**

   A. **Rule 15(d)'s standard is liberal and governs here.**

Rule 15(d) authorizes a narrowly tailored supplement to capture post-pleading events closely tethered to the operative allegations, and leave should be freely granted absent prejudice.

Rule 15(d) permits a party, "on just terms," to serve a supplemental pleading "setting out any transaction, occurrence, or event that happened after the date of the pleading." Fed. R. Civ. P. 15(d). The Second Circuit has held that leave to supplement "should be freely permitted when the supplemental facts connect it to the original pleading," and reversed a denial of Rule 15(d) relief on that basis. *Quaratino v. Tiffany & Co.*, 71 F.3d 58, 66 (2d Cir. 1995) (cleaned up).

Consistent with *Quaratino*, courts in this District apply a liberal standard to Rule 15(d) where the new facts arise post-filing and are part and parcel of the existing case. *Kleeberg v. Eber*, 331 F.R.D. 302, 314–15 (S.D.N.Y. 2019) (explaining Rule 15(d) and permitting supplementation to present post-pleading facts connected to the operative allegations). The Second Circuit has likewise explained that permission to supplement should be "freely granted" where it promotes efficient resolution of the controversy and does not cause undue delay or prejudice. *Bornholdt v. Brady*, 869 F.2d 57, 68 (2d Cir. 1989). And in this District, leave to supplement is "liberally granted" absent prejudice. *Argus Inc. v. Eastman Kodak Co.*, 552 F. Supp. 589, 602–03 (S.D.N.Y. 1982) (granting Rule 15(d) leave).

   B. **Applying the standard, leave should be granted.**

The proposed one-paragraph supplement easily satisfies Rule 15(d). It records wallet transfers that occurred after the FAC was filed and that bear directly on matters already pleaded—ongoing control of proceeds, asset-dissipation risk, and equitable relief. This is precisely the connection *Quaratino* requires. 71 F.3d at 66 (leave is proper when the

supplemental facts "connect" to the case already pleaded). See also *Kleeberg*, 331 F.R.D. at 314–15 (Rule 15(d) supplementation appropriate to present post-pleading facts tied to the operative complaint).

No countervailing factor warrants denial. Plaintiffs seek no new claims, parties, or remedies and propose a single paragraph that neither alters deadlines nor imposes discovery burden—the very circumstances in which leave is "freely granted." *Bornholdt*, 869 F.2d at 68 (identifying the absence of undue delay and prejudice as key considerations). See also *Argus*, 552 F. Supp. at 602–03 ("absent prejudice," supplementation should be liberally allowed).

Granting leave promotes judicial economy and a merits-focused resolution. Keeping the operative pleading ensures the record reflects post-filing facts relevant to proceeds control, enterprise operation, and dissipation risk—an appropriate use of Rule 15(d). *Kleeberg*, 331 F.R.D. at 314–15; *Quaratino*, 71 F.3d at 66.

V. **Conclusion**

Accordingly, Plaintiffs respectfully request that the Court grant leave under Rule 15(d) to file the single supplemental paragraph set out in Section III, to be inserted in the FAC's "Continuing Fraud" section following ¶¶ 324–27. For the avoidance of doubt, this motion seeks leave to supplement under Fed. R. Civ. P. 15(d) only; it does not seek leave to amend under Rule 15(a)(2). Plaintiffs anticipate filing any Rule 15(a)(2) request by separate motion, and if the Court prefers to consider supplementation and amendment together, Plaintiffs will withdraw this motion without prejudice and present a consolidated request at that time.

Dated: October 3, 2025
New York, New York

Respectfully submitted,
/s/ Max Burwick
Max Burwick
Burwick Law
43 W 43rd St., Suite 114
New York, NY 10036
(646) 762-1080
max@burwick.law