# BURWICK LAW
*1 World Trade Center, 84th Fl.*
*New York, NY 10007*

October 31, 2025

Via ECF

Hon. Jennifer L. Rochon
United States District Court
Southern District of New York
500 Pearl Street, Room 1920
New York, NY 10007

Re: *Hurlock v. Kelsier Ventures, et al.*, Case No. 1:25-cv-03891
**Letter in Opposition to Defendants' Motion for Extension of Time (Dkt. No. 216)**

Dear Judge Rochon:

     Plaintiffs respectfully oppose the Kelsier Defendants' motion for a 14-day extension (Dkt. No. 216). Plaintiffs write to correct the materially incomplete and misleading record presented to the Court regarding Plaintiffs' basis for opposition.

     This motion represents the latest in a troubling pattern of conduct by the Kelsier Defendants and their counsel. Opposing counsel has not only failed to comply with Your Honor's Individual Rules but has done so in a manner that begins to feel improper in the context of recent communications between the parties. For example, counsel for the Kelsier Defendants recently included Plaintiffs' counsel on correspondence expressing their intention to "make [us] look like fools"[1]—a goal they appear to be pursuing through the present motion.

     Your Honor's Individual Rule 1.F requires that a party seeking an extension must state "the reasons given by the adversary for refusing to consent." The Kelsier Defendants' characterization of Plaintiffs' opposition as "unspecified prejudice" materially misrepresents our clearly articulated concerns, which we communicated both in writing and over the phone to opposing counsel.

     Far from "point[ing] only to a motion at Dkt. No. 206," Plaintiffs gave substantive reasons for our opposition grounded in concern about ongoing fraudulent conduct, asset dissipation, and a speedy resolution to this case. Specifically, in our October 30, 2025 email correspondence with opposing counsel, we stated:

---

[1] Although counsel for the Kelsier Defendants represents the email was inadvertently sent, the surrounding correspondence leaves that uncertain to Plaintiffs.

1

> *We are willing to work with you on your request for a 14-day extension of the deadline to oppose our motion for leave to file SAC but must also fulfill our obligation to safeguard the legitimate interests of our clients.*
>
> *Given the history of this case, we have concerns about ongoing asset dissipation which we believe will be exacerbated by your request for an extension. In addition, we await a ruling on our Rule 54(b) motion, which of course is related to our 15(a) motion for leave. Consistent with Section III (A) of the New York State Standards of Civility, which permits lawyers to "impose conditions appropriate to preserve rights that an extension might otherwise jeopardize," we respectfully request the following as a condition of our consent to your extension request:*
>
> *1. Execute an attestation that confirms whether your clients maintain control over the digital wallets at issue; and*
> *2. If your clients do maintain such control, an agreement that they will not transfer, sell, or otherwise dissipate assets from these wallets during the next 28-day period, while remaining free to receive assets into these wallets.*
>
> *We believe this proposal reasonably balances both parties' interests—providing your clients with the additional time they need to prepare their opposition while ensuring that the subject matter of this litigation remains preserved. This approach would allow us to proceed cooperatively without requiring Court involvement on either the extension request or asset preservation issues. We also believe that this proposal narrows the scope and addresses any concerns of untimely discovery demands. Please advise if you disagree.*
>
> *Please let us know by end of day tomorrow whether this proposal is acceptable. If you would prefer to discuss alternative arrangements that might address our concerns, we remain open to a meet-and-confer at your earliest convenience.*

Plaintiffs' opposition comes against the backdrop of an unprecedented escalation of the alleged fraud. Just this week, Meteora publicly acknowledged sending Defendant Hayden Davis $2.2 million of MET tokens. Like other tokens alleged to have been launched by Defendants in the course of this ongoing fraud, that token has lost over 80% of its value (representing significant investor losses). Zhen Hoe Yong, in his capacity as now-CEO of Meteora, took responsibility for this payment. This is the same individual who previously told this Court that Meteora was merely software and that he worked only at DLL's direction.

The Kelsier Defendants' stated intention to embarrass Plaintiffs' counsel before the Court appears to be manifesting in the present motion, which deliberately mischaracterizes our position as "unspecified prejudice" despite our detailed written objections.

When Plaintiffs' counsel has attempted professional dialogue, we have been met with hostility. For example, in an early attempt by Plaintiffs to reach consensus, counsel asked, "In your view, which pending motions would not be prejudiced?" Mr. Sbaiti responded, "Don't play

games with me." Good-faith attempts at professional dialogue should not be met with hostility that goes beyond mere zealous advocacy.

Beyond the substantive concerns and pattern of misconduct described above, Plaintiffs oppose the requested extension because a two-week extension for one group of defendants would create staggered motion practice and disrupt the orderly progression of this case. Efficiently entering the Second Amended Complaint into the record would provide the Court with important details about the scope of Defendants' ongoing fraudulent conduct, and impact potential motions for relief prior to final judgment. Moreover, the materials forming the basis of the proposed amendments have been in the record since Dkt. Nos. 196-197. Defendant Hayden Davis was himself the speaker in the communications at issue, so these amendments should come as no surprise to Defendants.

Contrary to Defendants' mischaracterization, Plaintiffs did not attempt to "trade contested substantive or discovery concessions for routine scheduling relief." Rather, consistent with Section III(A) of the New York State Standards of Civility—which explicitly permits lawyers to "impose conditions appropriate to preserve rights that an extension might otherwise jeopardize"—we sought minimal assurances against ongoing asset dissipation.

This Court should understand that this is not a completed fraud where the damage is done and delay is merely inconvenient. The fraud is active and ongoing. Every day of delay creates additional risk of harm to both our clients and the putative class. Defendants' past conduct demonstrates why such concerns are not theoretical: When Plaintiffs were assured that the $LIBRA assets would remain untouched, those assets were moved within 24 hours of this Court lifting the TRO. More troublingly, they were immediately converted deliberately to place those assets beyond this Court's reach.

The Kelsier Defendants' failure to accurately present Plaintiffs' opposition to the Court—as required by Your Honor's Rule 1.F—appears to be part of their counsel's stated strategy to delegitimize Plaintiffs' positions. While we understand the Court may ultimately grant the requested extension, we respectfully submit that Your Honor should have the complete and accurate picture of Plaintiffs' opposition, not the deliberately truncated and misleading version presented by the Kelsier Defendants. Our opposition is based on specific, articulated concerns about ongoing fraudulent conduct, documented patterns of misrepresentation, and the efficient administration of justice in this case.

cc: All Counsel of Record via ECF

Respectfully submitted,

By: /s/ *Luis Munoz de la Vega*
Luis Munoz de la Vega
1 World Trade Center, 84th Fl.
New York, NY 10007
(646) 762-1080
luis@burwick.law
*Counsel for Plaintiffs Omar Hurlock & Anuj Mehta*