**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| OMAR HURLOCK and ANUJ MEHTA, *on behalf of themselves and all others similarly situated*,<br><br>Plaintiffs,<br><br>v.<br><br>KELSIER LABS, LLC d/b/a KELSIER VENTURES, HAYDEN MARK DAVIS, GIDEON DAVIS, CHARLES THOMAS DAVIS, METEORA, *an unincorporated association*, and BENJAMIN CHOW,<br><br>Defendants. | Case No. 1:25-cv-03891 (JLR)<br><br>ORAL ARGUMENT REQUESTED |

**DYNAMICS LABS LIMITED'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT**

# TABLE OF CONTENTS

**Page**


PRELIMINARY STATEMENT ..... 1

BACKGROUND ..... 4

ARGUMENT ..... 8

I. THE CLAIMS AGAINST METEORA SHOULD BE DISMISSED BECAUSE METEORA IS NOT A LEGAL ENTITY WITH THE CAPACITY TO BE SUED. ..... 8

A. Meteora Is Software and Cannot Be Sued. ..... 8

B. Meteora Is Not an Unincorporated Association. ..... 9

C. Meteora Is Not a Partnership. ..... 12

II. EVEN IF METEORA WERE AN UNINCORPORATED ASSOCIATION, IT COULD NOT BE SUED UNDER NEW YORK LAW OR RICO. ..... 14

A. The State Law Claims Against Meteora Are Barred by the Martin Rule. ..... 14

B. Meteora Is Not Subject to Suit Under RICO. ..... 15

III. EVEN IF METEORA WERE A LEGAL ENTITY WITH THE CAPACITY TO BE SUED, THE AMENDED COMPLAINT FAILS TO STATE A CLAIM AGAINST IT. ..... 16

A. The Amended Complaint Fails to State a Claim Against Meteora for Fraud or Conspiracy to Defraud. ..... 17

1. Plaintiffs do not allege that Meteora made any materially misleading statements or omissions. ..... 17

2. Plaintiffs do not allege that Meteora acted with fraudulent intent. ..... 21

3. Plaintiffs do not allege that they reasonably relied on any statements or omissions made by Meteora. ..... 22

4. Plaintiffs do not allege that Meteora caused Plaintiffs' damages. ..... 23

5. Plaintiffs do not allege that Meteora conspired to commit fraud. ..... 23

B. The Amended Complaint Fails to State a Claim Against Meteora for Violation of RICO §§ 1962(c) or 1962(d). ..... 24

1. Plaintiffs do not allege that Meteora committed any predicate acts. ..... 25

2. Plaintiffs do not allege that Meteora caused their losses. ..... 25

3. Plaintiffs do not allege that Meteora directed the affairs of the RICO enterprise. ..... 26

4. Plaintiffs do not allege that Meteora conspired to violate RICO. ..... 27

C. The Amended Complaint Fails to State a Claim Against Meteora for Violation of GBL §§ 349 or 350. ....27

D. The Amended Complaint Fails to State a Claim Against Meteora for Unjust Enrichment. ....28

CONCLUSION ....29

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Albers by Albers v. Church of the Nazarene*,
698 F.2d 852 (7th Cir. 1983) .......... 12

*Am. Buying Ins. Servs., Inc. v. S. Kornreich & Sons, Inc.*,
944 F. Supp. 240 (S.D.N.Y. 1996) .......... 19

*Ardis Health, LLC v. Nakivell*,
2012 WL 5290326 (S.D.N.Y. Oct. 23, 2012) .......... 14

*Atl. Recording Corp. v. Project Playlist, Inc.*,
603 F. Supp. 2d 690 (S.D.N.Y. 2009) .......... 5

*Baisch v. Gallina*,
346 F.3d 366 (2d Cir. 2003) .......... 25

*Banks.com, Inc. v. Keery*,
2010 WL 727973 (N.D. Cal. Mar. 1, 2010) .......... 8

*Cambridge Cap. LLC v. Ruby Has LLC*,
2022 WL 2292817 (S.D.N.Y. June 24, 2022) .......... 22, 23

*Canelle v. Russian Tea Room Realty LLC*,
2002 WL 287750 (S.D.N.Y. Feb. 27, 2002) .......... 18

*Celestin v. Martelly*,
698 F. Supp. 3d 443 (E.D.N.Y. 2023) .......... 28

*Chambers v. Time Warner, Inc.*,
282 F.3d 147 (2d Cir. 2002) .......... 5

*Clifford v. Hughson*,
992 F. Supp. 661 (S.D.N.Y. 1998) .......... 25

*Cosgrove v. Or. Chai, Inc.*,
520 F. Supp. 3d 562 (S.D.N.Y. 2021) .......... 28

*de Atucha v. Hunt*,
128 F.R.D. 187 (S.D.N.Y. 1989) .......... 24

*DeFalco v. Bernas*,
244 F.3d 286 (2d Cir. 2001) .......... 24

*Dietrich v. Bauer*,
76 F. Supp. 2d 312 (S.D.N.Y. 1999) ........ 26

*Drabinsky v. Actors' Equity Ass'n*,
2023 WL 2955294 (S.D.N.Y. Apr. 14, 2023) ........ 3, 14, 15

*E.E.O.C. v. St. Francis Xavier Parochial Sch.*,
77 F. Supp. 2d 71 (D.D.C. 1999) ........ 2, 10, 11, 12

*First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*,
385 F.3d 159 (2d Cir. 2004) ........ 27

*Fitzgerald v. CBS Broadcasting, Inc.*,
491 F. Supp. 2d 177 (D. Mass. 2007) ........ 2, 11

*Fund Liquidation Holdings LLC v. Bank of Am. Corp.*,
991 F.3d 370 (2d Cir. 2021) ........ 8

*Gardner v. Sensio Inc.*,
645 F. Supp. 3d 310 (S.D.N.Y. 2022) ........ 17

*Georgia Malone & Co. v. Rieder*,
19 N.Y.3d 511 (2012) ........ 29

*Goldfine v. Sichenzia*,
118 F. Supp. 2d 392 (S.D.N.Y. 2000) ........ 26

*Gurung v. MetaQuotes Ltd.*,
2024 WL 3849460 (E.D.N.Y. Aug. 16, 2024) ........ 26

*Heifetz v. Rockaway Point Volunteer Fire Dep't*,
124 N.Y.S.2d 257 (Sup. Ct., Kings Cnty. 1953) ........ 10

*In re Magnetic Audiotape Antitrust Litig.*,
2000 WL 1855119 (S.D.N.Y. Dec. 19, 2000) ........ 10

*In re Seaboard Hotel Member Assocs., LLC*,
2021 WL 4243444 (Bankr. D. Conn. Sept. 16, 2021) ........ 19

*Jund v. Town of Hempstead*,
941 F.2d 1271 (2d Cir. 1991) ........ 16

*Kidz Cloz, Inc. v. Officially For Kids, Inc.*,
320 F. Supp. 2d 164 (S.D.N.Y. 2004) ........ 2, 12, 13

*Lerner v. Fleet Bank, N.A.*,
459 F.3d 273 (2d Cir. 2006) .......... 21

*Martin v. Curran*,
303 N.Y. 276 (1951) .......... 15

*McIntyre v. Longwood Cent. Sch. Dist.*,
2008 WL 850263 (E.D.N.Y. Mar. 27, 2008) .......... 15

*Miller v. Wells Fargo Bank, N.A.*,
994 F. Supp. 2d 542 (S.D.N.Y. 2014) .......... 28

*Nasik Breeding & Rsch. Farm Ltd. v. Merck & Co*.,
165 F. Supp. 2d 514 (S.D.N.Y. 2001) .......... 18

*Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Surgalign Spine Techs., Inc.*,
2024 WL 477031 (S.D.N.Y. Feb. 7, 2024) .......... 29

*Nynex Corp. v. Shared Res. Exch., Inc.*,
1990 WL 605347 (Sup. Ct., Westchester Cnty. Sept. 10, 1990) .......... 13

*Performing Arts Center of Suffolk Cnty. v. Actor's Equity Ass'n*,
2022 WL 16755284 (E.D.N.Y. Aug. 25, 2022) .......... 14

*Risley v. Universal Navigation Inc.*,
2025 WL 615185 (2d Cir. Feb. 26, 2025) .......... 2

*Rivkin v. Coleman*,
978 F. Supp. 539 (S.D.N.Y. 1997) .......... 14

*Rosner v. Bank of China*,
528 F. Supp. 2d 419 (S.D.N.Y. 2007) .......... 26

*Scott v. Gen. Motors Co.*,
605 F. App'x 52 (2d Cir. 2015) .......... 19

*Sperry v. Crompton Corp.*,
8 N.Y.3d 204 (2007) .......... 29

*Steinbeck v. Gerosa*,
4 N.Y.2d 302 (1958) .......... 13

*Stephenson v. Citco Grp. Ltd.*,
700 F. Supp. 2d 599 (S.D.N.Y. 2010) .......... 21

*U.S. Cap. Partners, LLC v. Stanwich Cap. Advisors, LLC*,
2015 WL 4388421 (S.D.N.Y. July 17, 2015) .......... 20

*United States ex rel. Gordon v. Shiel Med. Lab'y*,
2025 WL 949432 (E.D.N.Y. Mar. 29, 2025) .......... 8

*United States v. Bonanno Organized Crime Family of La Cosa Nostra*,
879 F.2d 20 (2d Cir. 1989) .......... 3, 13, 15, 16

*Velez v. Lasko Prods., LLC*,
706 F. Supp. 3d 444 (S.D.N.Y. 2023) .......... 17

*Williams v. Affinion Grp., LLC*,
889 F.3d 116 (2d Cir. 2018) .......... 24, 27

*Woodhams v. Allstate Fire & Cas. Co.*,
748 F. Supp. 2d 211 (S.D.N.Y. 2010) .......... 17

*Zhu v. First Atl. Bank*,
2005 WL 2757536 (S.D.N.Y. Oct. 25, 2005) .......... 27

**Statutes**

18 U.S.C. § 1962(c) .......... 7, 24

18 U.S.C. § 1962(d) .......... 7, 24

N.Y. Gen. Bus. Law § 349 .......... *passim*

N.Y. Gen. Bus. Law § 350 .......... *passim*

**Rules**

Fed. R. Civ. P. 9(b) .......... *passim*

Fed. R. Civ. P. 12(b)(6) .......... 1

Fed. R. Civ. P. 17(b) .......... *passim*

Dynamic Labs Limited ("Dynamic Labs") respectfully submits this Memorandum of Law in Support of Its Motion to Dismiss the Amended Class Action Complaint (ECF No. 115) ("Amended Complaint" or "AC") pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure. The claims against Defendant Meteora should be dismissed with prejudice for the reasons set forth herein and for the reasons in Defendant Benjamin Chow's Memorandum of Law in Support of His Motion to Dismiss the Amended Class Action Complaint ("Chow Br."), which Dynamic Labs hereby incorporates by reference.

## PRELIMINARY STATEMENT

Meteora is a decentralized peer-to-peer protocol that people can use to create liquidity pools and trade tokens on the Solana Blockchain. It was developed and deployed on the Solana Blockchain by Dynamic Labs, a British Virgin Islands corporation with two directors—non-parties Ming Yeow and Siong Ong. To help develop Meteora, Dynamic Labs retained another non-party—Raccoon Labs Pte. Ltd. ("Raccoon Labs")—whose sole shareholder—non-party Zhen Hoe Yong—and Chow also contributed to the development of Meteora at the direction of Dynamic Labs. Given the decentralized nature of the Meteora protocol, Dynamic Labs does not provide, own, or control Meteora, but since deploying Meteora on the Solana Blockchain, it has provided technical tools for users to interact with Meteora.

In inexplicable disregard of the existence of Dynamic Labs, Plaintiffs now seek to hold "Meteora"—purportedly an unincorporated association consisting of Dynamic Labs, Raccoon Labs, Yeow, Ong, Yong, and Chow and two other entities who are not alleged to have anything to do with developing or deploying Meteora—liable for damages they allegedly suffered when they, on their own volition, purchased $M3M3 and $LIBRA tokens. Plaintiffs' willfully blind theory of liability fails at every level. In fact, earlier this year, the U.S. Court of Appeals for the Second

Circuit rejected precisely Plaintiffs' theory of liability, holding that it "defies logic" to suggest that a software developer could be held liable for "a third-party user's misuse of the platform." *Risley* v. *Universal Navigation Inc.*, 2025 WL 615185, at *4 (2d Cir. Feb. 26, 2025) (internal quotation marks and citation omitted).

*First*, neither the Meteora software, nor the collection of individuals and entities Plaintiffs call Meteora, is a legal entity capable of being sued. Software obviously lacks the capacity to be sued, and the Amended Complaint does not allege that the purported members of Meteora formed an unincorporated association. A determinative characteristic of an unincorporated association is that it is "an entity operating ***without a corporate charter***." *E.E.O.C. v. St. Francis Xavier Parochial Sch.*, 77 F. Supp. 2d 71, 77 (D.D.C. 1999), *aff'd sub nom.*, 254 F.3d 315 (D.C. Cir. 2000) (emphasis added). Here, the Amended Complaint and the documents incorporated by reference therein show that Meteora is software developed by contractors and consultants acting at the direction of Dynamic Labs—***an incorporated entity with a charter***. At best, Plaintiffs are attempting to sue the operations or a division of Dynamic Labs, but the unincorporated operations and divisions of incorporated entities cannot be sued. *See Fitzgerald v. CBS Broadcasting, Inc.*, 491 F. Supp. 2d 177, 183 (D. Mass. 2007); *St. Francis Xavier*, 77 F. Supp. 2d at 78.[1]

*Second*, even if Meteora were an unincorporated association, it could not be sued under any of the claims asserted in the Amended Complaint. Under New York's *Martin* rule, state law

---

[1] Plaintiffs' half-hearted attempt to argue in their Motion for an Order Granting Alternative Service and Extension of Time to Serve Defendant Meteora (ECF No. 129) ("Motion for Alternative Service") that the purported members of Meteora formed a partnership fares even worse. The Amended Complaint's failure to allege that the purported members of Meteora shared in any losses resulting from the development of Meteora alone dooms their argument even had it alleged any of the other requirements of a partnership. *Kidz Cloz, Inc. v. Officially For Kids, Inc.*, 320 F. Supp. 2d 164, 171 (S.D.N.Y. 2004) ("The requirement that the parties have agreed to share in the profits and losses is 'an indispensable essential of a contract of partnership or joint venture.'" (quoting *Steinbeck v. Gerosa*, 4 N.Y.2d 302, 317 (1958)).

claims can only be maintained against an unincorporated association if the wrongful conduct was authorized or ratified by each of the unincorporated association's members with full knowledge of the facts. *See, e.g.*, *Drabinsky v. Actors' Equity Ass'n*, 2023 WL 2955294, at *3-4 (S.D.N.Y. Apr. 14, 2023), *aff'd*, 108 F.4th 206 (2d Cir. 2024). Because Plaintiffs do not identify all of the purported members of Meteora, much less allege that all of the purported members authorized or ratified the allegedly wrongful conduct with full knowledge of the facts, Plaintiffs' New York state law claims for fraud, conspiracy to defraud, violations of General Business Law ("GBL") §§ 349 and 350, and unjust enrichment are barred by the *Martin* rule. The only other claims asserted in the Amended Complaint—for violations of the federal Racketeer Influenced and Corrupt Organizations ("RICO") Act—fare no better. Only entities capable of holding property are persons with the capacity to be sued under RICO, and under New York law, unincorporated associations cannot hold property. *See United States v. Bonanno Organized Crime Family of La Cosa Nostra*, 879 F.2d 20, 28 (2d Cir. 1989).

*Third*, even if the claims asserted in the Amended Complaint could be maintained against Meteora, the Amended Complaint fails to state a claim against Meteora.

The fraud claim fails because Plaintiffs do not allege that Meteora made any materially false or misleading statements or omissions, much less with fraudulent intent. The statements attributed to Meteora regarding the Meteora software and the $M3M3 launch are inactionable puffery, and, as a result, Plaintiffs could not have reasonably relied on them. Nor could the challenged statements or omissions have caused Plaintiffs' purported damages: at its core, the Amended Complaint alleges that Plaintiffs' purported damages were not caused by statements or omissions made by Meteora, but by manipulations of the liquidity pools associated with the $M3M3 and $LIBRA token launches.

The substantive RICO claim fares even worse than the fraud claim. Because the substantive RICO claim is based on wire fraud and Plaintiffs fail to allege a fraud claim, the substantive RICO claim fails as a matter of law. In addition, Plaintiffs fail to allege any of the other requirements of a substantive RICO claim: they do not allege any pattern of racketeering activity, the existence of a RICO enterprise, or that Meteora participated in the management of a RICO enterprise.

Because the Amended Complaint does not allege either a primary tort or RICO violation, both the conspiracy to defraud and RICO conspiracy claims fail, but they fail for another reason well: Plaintiffs do not allege an agreement to defraud or an agreement to violate RICO's substantive provisions. At most, one purported member of Meteora—Chow—provided technical assistance in connection with the launch of the $M3M3 token. That is a far cry from a conspiracy to defraud or violate RICO.

The claims for violation of GBL §§ 349 and 350 fail for the same reason that the fraud claim fails: the Amended Complaint does not allege either that Meteora made any false or misleading statements or omissions or that any of the challenged statements or omissions allegedly made by Meteora caused Plaintiffs' injury.

Finally, the claim for unjust enrichment fails both because it is duplicative and because there was no relationship between Plaintiffs and Meteora at all—much less one that would have caused Plaintiffs to rely on Meteora.

## BACKGROUND

Meteora is software. Specifically, it is "a distributed set of specially-developed smart contracts … deployed on the Solana blockchain or such other compatible blockchain network, … which allows any user to trade digital asset pairs directly in a peer-to-peer manner via Liquidity

Pools." (Terms of Service, Meteora, https://docs.meteora.ag/legal/terms-of-service (last visited Sept. 29, 2025) ("Terms of Service"); *see* Disclaimer, Meteora, https://www.meteora.ag/disclaimer (archived at http://web.archive.org/web/20250707222328/https://www.meteora.ag/disclaimer) ("Disclaimer") ("Meteora is a decentralized peer-to-peer protocol that people can use to create liquidity and trade [Solana] tokens.").)[2] Dynamic Labs developed and deployed Meteora on the Solana Blockchain. (*See* Disclaimer ¶ 2 ("Dynamic Labs … developed much of the initial code for Meteora."); *see also* Terms of Service ¶ 3 ("[Dynamic Labs'] sole role is the deployment of [Meteora].").) Following the deployment of Meteora on the Solana blockchain, Dynamic Labs "solely functions as a provider of technical tools for users, and is not offering any sort of securities product or regulated service nor does it hold any user assets on custody." (Terms of Service ¶ 3; *see* Disclaimer ¶ 2 (Dynamic Labs "does not provide, own, or control Meteora, which is run by smart contracts deployed on the Solana blockchain.").)

The "technical tools" provided by Dynamic Labs allow users to "interact with [Meteora] to create Liquidity Pools, view their Liquidity Pools created or accessed, and interact with other users in Meteora ecosystem." (Terms of Service ¶ 2.) The technical tools provided by Dynamic Labs include the three "Meteora Programs" identified by the Plaintiffs, *i.e.*, the programs currently named "DLMM," "DAMM v1 Program," and "Stake2Earn." (*See* AC ¶ 130 & App'x B; Developer Guide, Meteora, https://docs.meteora.ag/developer-guide/home (last visited Sept. 29,

---

[2] The Court may consider documents incorporated by reference into, or integral to, the Amended Complaint. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002). The Amended Complaint incorporates the Meteora website by reference (*see* AC ¶ 39 ("Meteora maintains a public website at https://www.meteora.ag/")), and cites it no fewer than 25 times (*see, e.g.*, AC ¶¶ 39, 51, 129-30, 140-156, 171, 352, 388(a), 412). Because the Amended Complaint incorporates the Meteora website by reference and relies on it extensively, the Court may consider its contents, including the Terms of Service and Disclaimer, in connection with this motion. *See Atl. Recording Corp. v. Project Playlist, Inc.*, 603 F. Supp. 2d 690, 693 n.3 (S.D.N.Y. 2009).

2025).) Dynamic Labs controls the "upgrade authority" for the three "Meteora Programs" through the multisig wallet that Plaintiffs identify as the "Meteora Multisig." (*See* AC ¶ 81 ("When a program is deployed on Solana, the program's deployer"—here, Dynamic Labs—"specifies an 'upgrade authority.'"); *id.* ¶ 132-33 (the "upgrade authority" for "Meteora programs" is the "Meteora MultiSig" wallet).) As Plaintiffs acknowledge, Dynamic Labs "automatically receives certain transaction fees from Meteora liquidity pools, which are 'automatically transfer[red]' by 'Meteora software' to a 'program account controlled by [Dynamic Labs].'" (*Id.* ¶ 52 (quoting Declaration of Benjamin Chow (ECF No. 54) ("Chow Decl.") ¶ 3).)

Dynamic Labs "is an entity incorporated on March 8, 2021 in the British Virgins Islands" with two directors: Yeow and Ong. (*Id.* ¶¶ 46, 48, 52.) Dynamic Labs retained Raccoon Labs to help develop and deploy Meteora on the Solana blockchain and to develop tools for users to interact with Meteora. (*See id.* ¶ 157 ("Raccoon Labs publicly identifies itself as 'the team ***behind*** Jupiter and Meteora.'" (emphasis added)).) Raccoon Labs is a company incorporated in Singapore that "employs personnel that develop, operate, and deploy 'Meteora' and 'Jupiter' programs and that provide related services." (*Id.* ¶ 49.) Yong is the sole shareholder and a director of Raccoon Labs. (*Id.* ¶¶ 47, 49.)

The Amended Complaint alleges that prior to his "resignation," Chow "held primary control over and responsibility for … the operation of Meteora programs deployed on the Solana blockchain and the provision of related services by the 'Meteora team.'" (*Id.* ¶ 40.) It also alleges that Chow has asserted "'a claim on a portion of [Dynamic Labs'] revenues, including a portion of any [Dynamic Labs'] revenues from trading fees received from Meteora user transactions.'" (*Id.*) According to Chow, he is a "consultant to Dynamic Labs" and "contributed to the development of the Meteora software as a co-founder of the project." (Chow Decl. ¶ 1.)

Although Meteora is software developed by Dynamic Labs, the Amended Complaint asserts that "Meteora" is an "unincorporated association" whose members "include, but are not limited to," Chow, Yeow, Yong, Ong, Raccoon Labs, Block Raccoon S.A. ("Block Raccoon"), Dynamic Labs, and Dynamic Labs, Inc. ("DLI"). (AC ¶ 39.) It asserts against all Defendants, including Meteora, claims for fraud, conspiracy to defraud, violations of RICO §§ 1962(c) and 1962(d), GBL §§ 349 and 350, and unjust enrichment. (*Id.* ¶¶ 345-443.) At the core of all of Plaintiffs' claims against Meteora is the assertion that Meteora made materially false or misleading statements or omissions regarding the Meteora software or the $M3M3 and $LIBRA launches.

Specifically, the Amended Complaint alleges that through its @MeteoraAG X account, Meteora promoted the M3M3 Platform as a way to "turn[] the race to dump [memecoins] into a race to stake [memecoins]." (AC ¶ 174; *see id.* ¶¶ 165, 170-72, 175.) It also alleges that through that same X account, Meteora promoted the launch of the $M3M3 token, stating that "$M3M3 is a token created by @WEAREM3M3_ community members … to test the platform & bring together all who believe in the (3,3) vision." (*Id.* ¶ 176.) According to the Amended Complaint, Meteora later reported "that approximately $800,000 in SOL rewards had been distributed to top stakers, in addition to restaked $M3M3 Tokens." (*Id.* ¶ 234.)[3] The Amended Complaint also alleges that through a different X account—@WEAREM3M3_—"Meteora issued public assurances between December 6 and 7, 2024, promising to 'pay back stakers in full.' Meteora claimed that over $3 million in rewards had been allocated to stabilize Token price and reaffirmed the promise of $4.5 million in total rewards and $200,000 daily distributions." (AC ¶ 228; *see id.*

[3] *See also* Declaration of Meghan K. Spillane in Support of Dynamic Labs Limited's Motion to Dismiss the Amended Class Action Complaint ("Spillane Decl.") Ex. A.

¶¶ 230, 351-52, 412.)[4] The Amended Complaint otherwise attempts to attribute statements to Meteora on the ground that they were made by all "Defendants" or by other Defendants or non-parties. (*See, e.g.*, AC ¶¶ 6, 13, 21, 173, 181, 191-92, 231-32, 300, 314-17, 346, 349-52, 364.)

## ARGUMENT

### I. THE CLAIMS AGAINST METEORA SHOULD BE DISMISSED BECAUSE METEORA IS NOT A LEGAL ENTITY WITH THE CAPACITY TO BE SUED.

Whether a party that is neither an individual nor a corporation is capable of being sued is determined in the first instance "by the law of the state where the court is located." Fed. R. Civ. P. 17(b)(3). If that party does not have the capacity to be sued under the law of the state in which the court is located, then it may be sued "in its common name to enforce a substantive right existing under the United States Constitution or laws." *Id.* Plaintiffs attempt to allege in the Amended Complaint that Meteora is an unincorporated association and argue in their Motion for Alternative Service that Meteora is a partnership. Because Meteora is software—and not an unincorporated association, partnership, or any other kind of legal entity—it cannot be sued under either New York or federal law.

#### A. Meteora Is Software and Cannot Be Sued.

"Legal existence is a jurisdictional issue … [a]nd a party lacking legal existence 'lack[s] standing to sue or be sued.'" *United States ex rel. Gordon v. Shiel Med. Lab'y*, 2025 WL 949432, at *8 (E.D.N.Y. Mar. 29, 2025) (internal quotation marks and citations omitted); *accord Fund Liquidation Holdings LLC v. Bank of Am. Corp.*, 991 F.3d 370, 382-84 (2d Cir. 2021). Software has no legal existence and cannot be sued. *See, e.g.*, *Banks.com, Inc. v. Keery*, 2010 WL 727973, at *7 (N.D. Cal. Mar. 1, 2010) (dismissing claims against domain names because they "lack[] the

[4] *See also* Spillane Decl. Exs. B, C.

capacity to be sued" under Rule 17(b)). Because Meteora is software, it has no legal existence and cannot be sued.

Plaintiffs concede that Meteora is software. The Amended Complaint repeatedly describes Meteora as a "leading memecoin launch platform." (AC ¶ 115; *see id.* ¶¶ 184, 187, 191, 334, 349, 364.) That description is consistent with the Disclaimer that was posted by Dynamic Labs on the Meteora website, which explains that: "Meteora is a decentralized peer-to-peer protocol that people can use to create liquidity and trade [Solana] tokens." (Disclaimer ¶ 1.) That description also is consistent with the Terms of Service on the Meteora website to use Dynamic Labs' applications for accessing Meteora. The first paragraph of the Terms of Service explains that "Meteora is a distributed set of specially-developed smart contracts … deployed on the Solana blockchain or such other compatible blockchain network, … which allows any user to trade digital asset pairs directly in a peer-to-peer manner via Liquidity Pools (as defined herein)." (Terms of Service ¶ 1.)

Because Meteora is software deployed by Dynamic Labs on the Solana blockchain, and not a legal entity with capacity to be sued, the claims against Meteora should be dismissed.

**B. Meteora Is Not an Unincorporated Association.**

The Amended Complaint's conclusory assertion that "Meteora is an unincorporated association with capacity to sue and be sued under federal law and New York law" is entirely unsupported by any factual allegations. (AC ¶ 39.) Instead, what the Amended Complaint alleges and the documents incorporated by reference therein show is that Chow and Raccoon Labs acted at the direction of Dynamic Labs—an incorporated entity—to develop Meteora and deploy it on the Solana blockchain and to provide tools to Meteora users "to create Liquidity Pools, view their Liquidity Pools created or accessed, and interact with other users in [the] Meteora ecosystem."

(Terms of Service ¶ 2.) Those relationships do not support the formation of an unincorporated association.

"For the purposes of Rule 17(b)[,] an unincorporated association is a voluntary group[] of persons, without a charter, formed by mutual consent for the purpose of promoting a common objective." *In re Magnetic Audiotape Antitrust Litig.*, 2000 WL 1855119, at *1 (S.D.N.Y. Dec. 19, 2000) (internal quotation marks and citation omitted). A determinative characteristic of an unincorporated association is that it is "an entity operating ***without a corporate charter***." *St. Francis Xavier*, 77 F. Supp. 2d at 77 (emphasis added). The existence of a corporate charter means that there cannot be an unincorporated association. *See id.*[5]

Here, the purported members of Meteora do not form an unincorporated association because Meteora and certain tools to interact with it were created by Dynamic Labs—a company with a corporate charter whose board is composed of two of the purported members of Meteora. (*See* AC ¶ 52; Terms of Service ¶¶ 1-4.) Dynamic Labs, in turn, directed two other purported members of Meteora—Chow and Raccoon Labs (which is alleged to be wholly owned by another purported member of Meteora, Yong)—in connection with developing Meteora and tools to interact with it. (AC ¶¶ 40, 49, 157; Chow Decl. ¶ 1.) The remaining purported members of Meteora—Block Raccoon and DLI—are not alleged to have had any involvement with Meteora. (*See* AC ¶¶ 50, 51.)[6] Plainly, the purported members of Meteora are not a voluntary group of

---

[5] Under New York law, the existence of a corporate charter similarly defeats an allegation that an unincorporated association exists. *See, e.g.*, *Heifetz v. Rockaway Point Volunteer Fire Dep't*, 124 N.Y.S.2d 257, 260 (Sup. Ct., Kings Cnty. 1953), *aff'd*, 282 A.D. 1062 (2d Dep't 1953).

[6] Although Plaintiffs allege "[o]n information and belief" that DLI is affiliated with Dynamic Labs, a cursory review of public information shows that those entities are entirely unrelated. (*See* Dynamic Labs, Inc., https://www.dynamic.xyz/company (last visited Sept. 29, 2025) (describing the founders of DLI); Spillane Decl. Ex. D.) The statement Plaintiffs identify in the Disclaimer

persons, without a charter, formed by mutual consent for the purpose of promoting a common objective. The purported members are, instead, comprised of an entity with a corporate charter (Dynamic Labs), the directors of that corporate entity, and persons acting at the direction of that corporate entity. Meteora is, therefore, not an unincorporated association.

By naming Meteora as a defendant, Plaintiffs are, in essence, attempting to sue the operations or a division of Dynamic Labs, which developed and deployed the Meteora project. But operations and divisions of companies are not capable of being sued. *See, e.g.*, *Fitzgerald*, 491 F. Supp. 2d at 183 ("[Television] stations, as mere operations of defendant, cannot sue or be sued."). Because "a division of a corporation … operate[s] with a charter—the charter of the larger corporation[,]" "the federal law definition of an unincorporated association does not encompass an unincorporated division of a corporation." *St. Francis Xavier*, 77 F. Supp. 2d at 77.

The rule that unincorporated divisions of a corporation cannot be sued as unincorporated associations "comports with the policy behind Rule 17(b)(1)." *Id.* "Rule 17(b)(1) serves two purposes. First it prevents state law from frustrating the enforcement of federal substantive rights where state law does not grant unincorporated associations and partnerships the capacity to be sued. … Second, it eliminates the need to individually sue all members of the association or partnership, if the membership is so large that joinder is impracticable to maintain suit against the members as a class." *Id.* (internal quotation marks and citations omitted).

The enforcement of federal law would not be frustrated here by the Court finding that Meteora cannot be sued for at least two reasons. *First*, Meteora cannot hold property and is not, therefore, capable of being sued under RICO—the only federal claims asserted in the Amended

---

that "Dynamic Labs, Inc. developed much of the initial code for Meteora" is a typo; it should read "Dynamic Labs Ltd." (Disclaimer ¶ 2.)

Complaint. (*See infra* Section III.B.) *Second*, Plaintiffs could sue Dynamic Labs, therefore also avoiding a frustration of federal law. *See St. Francis Xavier*, 77 F. Supp. 2d at 77 (enforcement of federal law not frustrated because "plaintiff can usually bring suit against the corporation"); *see also Albers by Albers v. Church of the Nazarene*, 698 F.2d 852, 857 (7th Cir. 1983).

Likewise, the second policy rationale is not implicated because the purported members of Meteora identified by Plaintiffs are not so numerous that joinder is impracticable—there are only eight of them.

### C. Meteora Is Not a Partnership.

For the first time in their Motion to Alternative Service, Plaintiffs asserted that Meteora is a partnership under New York law, but the Amended Complaint does not even attempt to allege that the members of Meteora formed a partnership. In fact, the Amended Complaint's allegations show the opposite—that the purported members of Meteora never formed a partnership.

To plead the existence of a partnership, Plaintiffs must allege "(1) the parties' sharing of profits and losses; (2) the parties' joint control and management of the business; (3) the contribution by each party of property, financial resources, effort, skill, or knowledge to the business; and (4) the parties' intention to be partners." *Kidz Cloz*, 320 F. Supp. 2d at 171. "The requirement that the parties have agreed to share in the profits and losses is 'an indispensable essential of a contract of partnership or joint venture.'" *Id.* (quoting *Steinbeck*, 4 N.Y.2d at 317).

Because the Amended Complaint does not allege that the purported members of Meteora shared "profits and losses," it fails to plead that Meteora is a partnership. *See id.* The Amended Complaint alleges only that "Mr. Chow 'ha[s] a claim on a portion of [non-party Dynamic Labs'] revenues, including a portion of any [Dynamic Labs'] revenues from trading fees received from Meteora user transactions.'" (AC ¶ 40 (quoting Chow Decl. ¶ 3).) Even assuming such revenues

are profits—and they are not[7]—Plaintiffs do not plausibly allege any facts showing an agreement to share losses among the purported members of Meteora. *Kidz Cloz* is directly on point. In *Kidz Cloz*, one of the plaintiffs argued that "his share of the profits consisted of the commissions paid to him by" one of the defendants. *Id.* at 174. The court held that "[e]ven assuming that (1) these commissions were profits and (2) [the plaintiff] ha[d] put forth sufficient evidence demonstrating an agreement with [the defendant] to share these profits, this element is still not met because [the plaintiff] has not demonstrated that the parties agreed … to share losses." *Id.* at 175. For this reason alone, Plaintiffs fail to allege that the purported members of Meteora formed a partnership.

But Plaintiffs also fail to allege any of the other three elements of a partnership. *First*, Plaintiffs do not allege that the purported members of Meteora shared "joint control and management." *Id.* at 171. In *Bonanno Organized Crime Family*, the Second Circuit held that joint control and management does not exist where "the relationship among the … members resembles that of the hierarchy in a privately owned company." 879 F.2d at 28. Because the relationship among the purported members of Meteora is in fact the hierarchy in a privately owned company (*see supra* Section I.B), they did not share joint control and management.[8]

*Second*, Plaintiffs do not allege that anyone contributed property, financial resources, effort, skill, or knowledge to Meteora. And tellingly, the Meteora website and other documents

[7] "An agreement to distribute the proceeds of an enterprise upon a percentage basis does not give rise to a joint venture if the enterprise does not represent a joinder of property, skills and risks." *Steinbeck*, 4 N.Y.2d at 317; *see Nynex Corp. v. Shared Res. Exch., Inc.*, 1990 WL 605347, at *5 (Sup. Ct., Westchester Cnty. Sept. 10, 1990) ("The sharing of gross revenues or gross earnings, as opposed to profits (which encompasses a sharing of losses) does not create a partnership or joint venture.").

[8] Plaintiffs' conclusory (and circular) assertion that "Defendant Chow and the Meteora Defendants control the underlying blockchain programs through the 4-of-7 Meteora Program MultiSig, enabling them to modify, upgrade, and manipulate the smart contracts that govern all transactions" adds nothing to explain how the purported members of Meteora shared control. (AC ¶ 381.)

incorporated by reference into the Amended Complaint show that only one purported member of Meteora—Dynamic Labs—did. (*See, e.g.*, Disclaimer ¶ 2; Terms of Service ¶ 3.) Where only one party contributed capital, "another indicia of partnership … is missing." *Rivkin v. Coleman*, 978 F. Supp. 539, 543–44 (S.D.N.Y. 1997) (finding no partnership existed where only one party made "monetary contributions, not the least of which was the [other party's] salary paid for the time she spent assisting with the … venture").

*Third*, Plaintiffs do not allege that the purported members of Meteora intended to be partners. Although the Amended Complaint alleges that Chow "is a co-founder of Defendant Meteora," (AC ¶ 40), an agreement acknowledging that another person was a "founding partner" is insufficient to allege a partnership if the agreement "does not contemplate a loss-sharing arrangement." *Ardis Health, LLC v. Nakivell*, 2012 WL 5290326, at *6 (S.D.N.Y. Oct. 23, 2012) ("Founders Agreement [that did not contemplate a loss-sharing arrangement] would not have created a valid partnership under New York law.").

For these reasons, Meteora is not an unincorporated association, partnership, or any other kind of legal entity, and Plaintiffs cannot allege otherwise.

## II. EVEN IF METEORA WERE AN UNINCORPORATED ASSOCIATION, IT COULD NOT BE SUED UNDER NEW YORK LAW OR RICO.

### A. The State Law Claims Against Meteora Are Barred by the *Martin* Rule.

Under New York's *Martin* rule, state law claims can only be maintained against an unincorporated association if the wrongful conduct was authorized or ratified by each of the association's members. *See, e.g.*, *Drabinsky*, 2023 WL 2955294, at *3-4 (cleaned up); *Performing Arts Center of Suffolk Cnty. v. Actor's Equity Ass'n*, 2022 WL 16755284, at *6 (E.D.N.Y. Aug. 25, 2022) (dismissing claims for fraud and unjust enrichment for failure to allege authorization or ratification by every member of unincorporated association); *McIntyre v. Longwood Cent. Sch.*

*Dist.*, 2008 WL 850263, at *13 (E.D.N.Y. Mar. 27, 2008) (dismissing claim for violation of New York State Human Rights law for failure to allege authorization or ratification by every member of unincorporated association), *aff'd*, 380 F. App'x 44 (2d Cir. 2010). Because an unincorporated person is "not an artificial person, and has no existence independent of its members. … A part of the members of a voluntary organization cannot bind the others without their consent before the act which it is claimed binds them is done, or they, with full knowledge of the facts, ratify and adopt it." *Martin v. Curran*, 303 N.Y. 276, 280 (1951) (internal quotation marks and citation omitted). This means that Plaintiffs must allege that "each member … 'expressly or impliedly with full knowledge authorize[d] or ratif[ied] the specific acts in question.'" *Drabinsky*, 2023 WL 2955294, at *3 (quoting *Martin*, 303 N.Y. at 282).

Here, Plaintiffs do not allege that any of Meteora's purported members authorized or ratified its allegedly wrongful conduct—much less with "full knowledge" of any allegedly wrongful conduct. In fact, Plaintiffs do not even identify all of the purported members of "Meteora." Instead, they allege that Meteora's purported members "include, but are not limited to" Chow, Yeow, Yong, Ong, Raccoon Labs, Block Raccoon, Dynamic Labs, and DLI. (AC ¶ 39.) Because Plaintiffs do not identify all of Meteora's purported members, much less allege that every one of them ratified the allegedly wrongful conduct with full knowledge of the facts, their New York state law claims are barred by the *Martin* rule. *See Drabinsky*, 2023 WL 2955294, at *3–4.

### B. Meteora Is Not Subject to Suit Under RICO.

"[I]n addition to being at least an association-in-fact for purposes of Rule 17(b)(1), [a defendant] must, in order to be subject to suit under RICO, be a 'person'—that is, an 'entity capable of holding a legal or beneficial interest in property.'" *Bonanno*, 879 F.2d at 27 (quoting 18 U.S.C. § 1961(3)). Courts apply that definition as written: if a defendant lacks the legal capacity to hold property, it is not a RICO "person" and cannot be sued under RICO. *See id.* at 27-29 (affirming

dismissal of RICO claims against Bonanno Family because it could not hold property and only entities capable of holding property qualify as "persons" for purposes of RICO); *accord Jund v. Town of Hempstead*, 941 F.2d 1271, 1281-82 (2d Cir. 1991) (finding political committees were RICO "persons" only because New York statutes authorized them to hold assets). "'Since unincorporated associations, clubs, societies, unless recognized by statute, have no legal existence, they cannot, in the absence of statutory authorization, take or hold property in the association name, either by way of gift or purchase.'" *Bonanno*, 879 F.2d at 29 (quoting N.Y. Jur. 2d Ass'ns & Clubs § 6 (1980)).

No RICO claim can be maintained against Meteora because even if Meteora were an unincorporated association, it cannot hold property. *Id.* No statute authorizes Meteora to hold property, and Plaintiffs do not allege any facts showing that Meteora holds property or is capable of holding property. Plaintiffs merely assert that "[e]ach Defendant is a 'person' under 18 U.S.C. §1961(3) because each is an 'individual or entity capable of holding a legal or beneficial interest in property.'" (AC ¶ 377.) But "[l]egal conclusions, deductions, or opinions couched as factual allegations"—such as this—"are not given a presumption of truthfulness.'" *Bonanno*, 879 F.2d at 27 (internal quotation marks and citation omitted).

## III. EVEN IF METEORA WERE A LEGAL ENTITY WITH THE CAPACITY TO BE SUED, THE AMENDED COMPLAINT FAILS TO STATE A CLAIM AGAINST IT.

Even if the Amended Complaint adequately alleged that Meteora is a legal entity that could be sued under New York state law or for violations of RICO, the Amended Complaint still should be dismissed as to Meteora for failing to state a claim against Meteora upon which relief can be granted.

### A. The Amended Complaint Fails to State a Claim Against Meteora for Fraud or Conspiracy to Defraud.

"To state a claim for fraud under New York law, a plaintiff must allege (1) a material misrepresentation or omission of fact; (2) which the defendant knew to be false; (3) which the defendant made with the intent to defraud; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff." *Velez v. Lasko Prods., LLC*, 706 F. Supp. 3d 444, 461-62 (S.D.N.Y. 2023) (Rochon, J.) (internal quotation marks and citation omitted).

Federal Rule of Civil Procedure 9(b) requires plaintiffs to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "[T]he complaint must: (1) detail the events giving rise to the fraud, such as the statement or omission that is alleged to be fraudulent, the identity of the speaker, the location of the fraud, and the reason the statement is fraudulent; and (2) allege facts 'that give rise to a strong inference of fraudulent intent.'" *Gardner v. Sensio Inc.*, 645 F. Supp. 3d 310, 322 (S.D.N.Y. 2022) (quoting *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 171 (2015)). "Fraudulent statements or conduct must be attributed to each defendant individually; 'Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to defendants.'" *Woodhams v. Allstate Fire & Cas. Co.*, 748 F. Supp. 2d 211, 222 (S.D.N.Y. 2010) (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)).

Because the Amended Complaint fails to allege any of the elements of fraud with the particularity required by Rule 9(b), the fraud claims against Meteora should be dismissed.

#### 1. Plaintiffs do not allege that Meteora made any materially misleading statements or omissions.

The vast majority of the challenged posts on the @MeteoraAG X account are accurate descriptions of Meteora's "M3M3 Platform" or inactionable aspirational statements about the goals of the M3M3 Platform and do not concern the $M3M3 or $LIBRA token launches. (*See* AC

¶¶ 165, 170, 171, 172, 174, 175.) Specifically, Plaintiffs allege that posts on the @MeteoraAG X account announced that the M3M3 Platform introduces a "staking flywheel" to turn "the race to dump [memecoins] into a race to stake." (AC ¶¶ 174, 175; *see also id.* ¶ 170 (the M3M3 Platform is a "'new stake-to-earn mechanism where top memecoin stakers compete to earn fee rewards from permanently-locked liquidity'"), ¶ 171 (the M3M3 Platform is a "'new meta to transform memecoins from [Player vs. Player] to [Player Pump Player]'"), ¶ 172 ("Memecoins are currently a race to dump.").) None of those statements are alleged to be false or misleading. Plaintiffs do not allege that the M3M3 Platform lacked a staking mechanism to encourage tokenholders to stake their tokens, and the statements that this staking flywheel would turn "the race to dump into a race to stake" are aspirational statements that amount to nothing more than inactionable puffery. Statements, like these, that "do not set forth a concrete representation as to … future performance[] are in the nature of commercial puffery and cannot form the basis for a fraud claim." *Nasik Breeding & Rsch. Farm Ltd. v. Merck & Co.*, 165 F. Supp. 2d 514, 530 (S.D.N.Y. 2001); *see also Canelle v. Russian Tea Room Realty LLC*, 2002 WL 287750, at *5 (S.D.N.Y. Feb. 27, 2002) (restaurant owner's statement that he intended to "reinvent Russian cooking" was mere puffery and "not the type of statement upon which one may reasonabl[y] rely").

Tellingly, the only post on the @MeteoraAG X account about either $M3M3 or $LIBRA[9] is not alleged by Plaintiffs to be false or misleading. That statement is the announcement that "$M3M3 is a token created by @WEAREM3M3_ community members inspired by the M3M3 vision," that those @WEAREM3M3_ community members "aim to use $M3M3 to test the platform & bring together all who believe in the (3,3) vision," and that "$M3M3 is live m3m3.meteora.ag." (AC ¶ 176.) Plaintiffs do not allege that $M3M3 was not, in fact, created by

[9] Plaintiffs do not allege that there are any posts on the @MeteoraAG X account about $LIBRA.

@WEAREM3M3_ community members or that $M3M3 tokens could not be traded on the M3M3 Platform, and the statement that @WEAREM3M3_ community members "aim to use $M3M3 to test the platform" is the type of "explicitly aspirational" statement that is inactionable puffery. *Scott v. Gen. Motors Co.*, 605 F. App'x 52, 54 (2d Cir. 2015) (statement that General Motors "'aim[ed]' to increase vehicle profitability" was "quintessential commercial puffery").[10]

Beyond these inactionable statements, Plaintiffs do not challenge any other posts on the @MeteoraAG X account, but instead challenge posts on the @WEAREM3M3_ X account, alleging "[o]n information and belief" that "all 'M3M3' communications were operated and controlled by Defendants Chow and Meteora." (AC ¶ 167.) Such allegations are not adequate to plead that Meteora made those statements. "Allegations of fraud based on information and belief do not satisfy Rule 9(b) unless 'the facts are peculiarly within the knowledge of the defendants, in which case the complaint must allege facts demonstrating the basis for the information and belief.'" *Am. Buying Ins. Servs., Inc. v. S. Kornreich & Sons, Inc.*, 944 F. Supp. 240, 248–49 (S.D.N.Y. 1996) (quoting *Spira v. Nick*, 876 F. Supp. 553, 557 (S.D.N.Y. 1995)). Here, Plaintiffs have pleaded no facts in support of their assertion that all "M3M3" statements were made by Meteora or Chow, so those statements cannot be attributed to them based solely upon "information and belief." *See, e.g.*, *In re Seaboard Hotel Member Assocs., LLC*, 2021 WL 4243444, at *9-10 (Bankr. D. Conn. Sept. 16, 2021) (rejecting attempt to impute fraudulent intent based on unsupported allegations made "upon information and belief").[11]

---

[10] Plaintiffs misleadingly imply that "[o]n January 31, 2025, Meteora reported that approximately $800,000 in SOL rewards had been distributed to top [$M3M3] stakers, in addition to restaked $M3M3 Tokens." (AC ¶ 234.) In fact, that statement discusses rewards made across the M3M3 Platform—not just to $M3M3 stakers—and Plaintiffs do not even attempt to allege that statement is false or misleading. (*See* Spillane Decl. Ex. A.)

[11] In fact, the statements attributed to Meteora, Chow, and @WEAREM3M3_ make clear that they were made by different persons and entities. For example, the Amended Complaint alleges that

Regardless, Plaintiffs do not allege any facts showing that the @WEAREM3M3_ statements are false or misleading. (AC ¶¶ 228, 230.)[12] Those posts stated that @WEAREM3M3_ would "pay back stakers in full" and described token allocations (*id.* ¶ 228), and announced a trading competition (*id.* ¶ 230). Plaintiffs' conclusory assertion that these statements were "false[]" (*see* AC ¶¶ 351-52) is not enough to satisfy Rule 9(b). *See U.S. Cap. Partners, LLC v. Stanwich Cap. Advisors, LLC*, 2015 WL 4388421, at *5 (S.D.N.Y. July 17, 2015) (dismissing fraud counterclaim because the pleading did not "explain why the statements were fraudulent" (internal quotation marks and citation omitted)).

Further, none of the other statements allegedly made by the purported members of Meteora are actionable. Raccoon Labs, Block Raccoon, Ong, Yong, and Yeow are not alleged to have made *any statements* about the M3M3 Platform, $M3M3, or $LIBRA at any time before Plaintiffs purchased their tokens. Indeed the only statements attributed to Yong and Yeow were made on March 6, 2025, and February 17, 2025, respectively. (AC ¶¶ 314-16.) Because these statements were made *after* Plaintiffs purchased their $M3M3 and $LIBRA tokens, they could not have reasonably relied them when making their purchases. And for the reasons in Chow's motion to dismiss, Chow did not make any false or misleading statements. (*See* Chow Br. § II.A.)

Finally, Plaintiffs' fraud claim against Meteora should be dismissed to the extent it is based on statements and material omissions attributed to "Defendants." (*See* AC ¶¶ 257-63, 346, 349-

---

Meteora explained that "$M3M3 is a token created by @WEAREM3M3_ community members," *i.e.*, not Meteora. (AC ¶ 176.) Similarly, the Amended Complaint also alleges that Chow announced that Meteora "'received [the] 25% grant from the @WEAREM3M3_ team' and was 'working with them on some airdrops' that would 'grow the M3M3 community of pumpers,'" which also shows that @WEAREM3M3_ is different from Meteora. (AC ¶ 232.)

[12] The statements alleged in paragraphs 228 and 230 of the Amended Complaint were posted on the @WEAREM3M3_ X account. (*See* Spillane Decl. Exs. B, C.)

52, 364.) For the reasons in Chow's motion to dismiss, those group pled allegations cannot adequately plead a fraud claim. (*See* Chow Br. 16-17.) In addition, the Amended Complaint does not allege that any of those statements are actionable or that any Defendant had a duty to disclose the allegedly omitted information. (*See id.* § II.A.)

**2. Plaintiffs do not allege that Meteora acted with fraudulent intent.**

Plaintiffs do not allege facts sufficient to raise a strong inference of fraudulent intent as to Meteora. Under Rule 9(b), "'[t]he requisite strong inference of fraud may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness.'" *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290-91 (2d Cir. 2006) (quoting *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994)). Plaintiffs fail to allege facts sufficient to show either that Meteora had motive and opportunity to commit fraud or that constitute strong circumstantial evidence of conscious misbehavior or recklessness.

As to motive and opportunity, Plaintiffs allege only that Dynamic Labs—one of the members of Meteora—"automatically receives certain transaction fees from Meteora liquidity pools." (AC ¶ 52.) That is not enough. "The mere receipt of compensation and the maintenance of a profitable professional business relationship … does not constitute a sufficient motive for purposes of pleading scienter." *Stephenson v. Citco Grp. Ltd.*, 700 F. Supp. 2d 599, 620-21 (S.D.N.Y. 2010) (internal quotation marks and citation omitted). "'To hold otherwise would effectively abolish the requirement of pleading facts which support a strong inference of scienter against professional defendants.'" *Id.* Because Plaintiffs allege only that one purported member of Meteora received ordinary transaction fees from all liquidity pools, they have failed to plead that Meteora had motive and opportunity to commit fraud in connection with either the $M3M3 or $LIBRA launches.

Plaintiffs do not even attempt to allege any facts constituting strong circumstantial evidence of conscious misbehavior or recklessness as to any purported member of Meteora, except Chow, and the allegations as to Chow fail for the reasons in Chow's motion to dismiss. (*See* Chow Br. § II.B.)

The remaining allegations regarding the fraudulent intent of all "Defendants" fail to raise a strong inference of fraudulent intent as to Meteora because they violate the prohibition on group pleading. (*See* Chow Br. 19.)

**3. Plaintiffs do not allege that they reasonably relied on any statements or omissions made by Meteora.**

Plaintiffs do not allege that they reasonably relied on any statements attributed to Meteora. As explained in Section III.A.1, *supra*, any statements directly attributed to Meteora about the M3M3 Platform or $M3M3 are either true or inactionable puffery. *See, e.g.*, *Cambridge Cap. LLC v. Ruby Has LLC*, 2022 WL 2292817, at *5 (S.D.N.Y. June 24, 2022) (dismissing counterclaim for fraud because "no reasonable individual could rely upon [puffery]"). Plaintiffs also could not have reasonably relied on the statement that the $M3M3 token would be used to "test" the M3M3 Platform, which plainly bespeaks caution. *See, e.g.*, *San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Cos., Inc.*, 75 F.3d 801, 811 (2d Cir. 1996) ("Liability may not be imposed based on statements that, considered in their entirety, clearly bespeak caution.") (internal quotation marks omitted).

Plaintiffs otherwise allege only that they relied on "Defendants' representations that $M3M3 was launched publicly and fairly," "the $M3M3 market price as a measure of the asset's value," "Chow's reputation and Meteora's purported trustworthiness," "Meteora's reputation as a trustworthy launch platform," Defendants' false representations regarding "the reliability of the Meteora Defendants, the M3M3 Platform, $M3M3, and $M3M3's post-launch price" and

"$LIBRA … and [] the existence of the VLL Project." (AC ¶¶ 225, 333-34, 367, 416, 427.) Critically, Plaintiffs do not allege that Meteora made any statements about these topics. Even if they did, Plaintiffs could not have reasonably relied on such statements because statements about reputation are also inactionable puffery. *See, e.g.*, *Cambridge Capital LLC*, 2022 WL 2292817, at *5 (statement that counterclaim defendant had "a pristine reputation" was "one of puffery that [was] too general to cause reasonable reliance"); *Porwal v. Ballard Power Sys., Inc.*, 2019 WL 1510707, at *8 (S.D.N.Y. Mar. 21, 2019) ("'[S]tatements about reputation' … [were] 'too general to cause a reasonable investor to rely upon them.'" (quoting *City of Pontiac Policemen's & Firemen's Ret, Sys. v. UBS AG*, 752 F.3d 173, 183 (2d Cir. 2014))).

In addition, as explained in Chow's motion to dismiss, Plaintiffs could not reasonably rely on any of the challenged statements about the $M3M3 and $LIBRA token launches because the market was fully aware that memecoins, such as $M3M3 and $LIBRA, are volatile and that the value of most memecoins collapses. (*See* Chow Br. 21.)

**4. Plaintiffs do not allege that Meteora caused Plaintiffs' damages.**

As explained in Chow's motion to dismiss (*see* Chow Br. § II.D), Plaintiffs' purported losses were caused by "manipulation[s]" of the $M3M3 and $LIBRA liquidity pools. (AC ¶¶ 197, 215-16, 219, 223-24, 277-78, 388.) Because the Amended Complaint does not allege that Meteora participated in those "manipulation[s]," the fraud claim against Meteora should be dismissed. Plaintiffs do not otherwise allege how any statement attributed to Meteora—or any member of Meteora, including Chow (*see* Chow Br. § II.D)—could possibly have caused their losses.

**5. Plaintiffs do not allege that Meteora conspired to commit fraud.**

Plaintiffs' claim for conspiracy to defraud should be dismissed for two reasons.

*First*, for the reasons in Sections III.A.1-4, *supra*, Plaintiffs fail to plead a claim for fraud, and, therefore, their conspiracy claim must fail. *See Zappin v. Comfort*, 2022 WL 6241248, at *11

(S.D.N.Y. Aug. 29, 2022), *report and recommendation adopted*, 2022 WL 4592551 (S.D.N.Y. Sept. 30, 2022) ("To state a claim for civil conspiracy under New York law, a plaintiff must allege a primary underlying tort." (footnote omitted)).

*Second*, the Amended Complaint does not plead adequately an agreement to commit fraud. To plead an agreement for common law conspiracy, Plaintiffs must plead "what the 'agreement' was and what each defendant agreed to do to further the conspiracy." *de Atucha v. Hunt*, 128 F.R.D. 187, 189-190 (S.D.N.Y. 1989), *aff'd sub nom. deAtucha v. Commodity Exch.*, 979 F.2d 846 (2d Cir. 1992). The only purported member of Meteora who is alleged to have spoken with the Kelsier Defendants is Chow. For the reasons in Chow's motion to dismiss, the Amended Complaint fails to allege that he agreed to intentionally act, and intentionally acted, in furtherance of a civil conspiracy. (*See* Chow Br. § VI.)

### B. The Amended Complaint Fails to State a Claim Against Meteora for Violation of RICO §§ 1962(c) or 1962(d).

"To sustain a RICO claim under 18 U.S.C. § 1962(c), a plaintiff must show '(1) that the defendant (2) through the commission of two or more acts (3) constituting a pattern (4) of racketeering activity (5) directly or indirectly invests in, or maintains and interest in, or participates in (6) an enterprise (7) the activities of which affect interstate or foreign commerce.'" *Williams v. Affinion Grp., LLC*, 889 F.3d 116, 123-34 (2d Cir. 2018) (quoting *Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (2d Cir. 1983)). "The requirements of section 1962(c) must be established ***as to each individual defendant***." *DeFalco v. Bernas*, 244 F.3d 286, 306 (2d Cir. 2001) (emphasis added).

As explained in Chow's motion to dismiss, Plaintiffs fail to plead adequately (1) that they suffered an injury to "business or property," (2) the existence of a RICO enterprise, or (3) a pattern of racketeering. (*See* Chow Br. § V.) For each of those reasons, the RICO claims against Meteora

should be dismissed. In addition, the RICO claims against Meteora should be dismissed because, for the reasons below, Plaintiffs fail to plead adequately that Meteora committed any predicate acts, caused their losses, directed the affairs of the purported RICO enterprise, or conspired with the Kelsier Defendants.

**1. Plaintiffs do not allege that Meteora committed any predicate acts.**

For the reasons in Section III.A, *supra*, Plaintiffs fail to plead a common law fraud claim against Meteora. Accordingly, they fail to plead a predicate wire fraud violation as well. *Clifford v. Hughson*, 992 F. Supp. 661, 669 (S.D.N.Y. 1998) ("[W]here the fraudulent scheme is premised upon an inadequate pleading of common law fraud, the allegations of mail and wire fraud must fail." (internal quotation marks and citation omitted)).

**2. Plaintiffs do not allege that Meteora caused their losses.**

Plaintiffs' RICO claim against Meteora fails because Plaintiffs do not allege how any of Meteora's statements caused their injury. "[A] plaintiff does not have standing [to assert a RICO claim] if he suffered an injury that was indirectly (and hence not proximately) caused by the racketeering activity or RICO predicate acts, even though the injury was proximately caused by some non-RICO violations committed by the defendants." *Baisch v. Gallina*, 346 F.3d 366, 375 (2d Cir. 2003). Proximate causation requires a "direct relation" between the alleged conduct and the claimed injury. *See Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 268 (1992).

Here, Plaintiffs' only alleged injury—that they "paid inflated prices for digital assets and incurred transaction fees"—was not caused by Meteora. (AC ¶ 394.) As explained in Section III.A.4, *supra*, that purported injury was caused by "manipulation[s]" of the $M3M3 and $LIBRA liquidity pools. Because there is no allegation that Meteora participated in those "manipulation[s]," Plaintiffs' RICO claim against it should be dismissed. *See In re Tether & Bitfinex Crypto Asset Litig.*, 576 F. Supp. 3d 55, 122 (S.D.N.Y. 2021) (dismissing Section 1962(c)

RICO claim because plaintiffs were "harmed by the decisions of independent market participants" and not by defendants' alleged conduct).

#### 3. Plaintiffs do not allege that Meteora directed the affairs of a RICO enterprise.

Plaintiffs' RICO claim against Meteora should be dismissed because the Amended Complaint fails to allege that Meteora "had 'some part in directing' the 'operation or management' of the enterprise." *Rosner v. Bank of China*, 528 F. Supp. 2d 419, 431 (S.D.N.Y. 2007) (quoting *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993)). To adequately plead a RICO claim, Plaintiffs must allege more than mere participation; they must allege "actual control over [the] enterprise." *Goldfine v. Sichenzia*, 118 F. Supp. 2d 392, 402-03 (S.D.N.Y. 2000). Merely alleging that a defendant provided "goods or services that ultimately benefit the enterprise" is not enough. *Id.* at 403. "Regardless of how indispensable or essential such services may have been, rendering a professional service by itself does not qualify as participation in a RICO enterprise." *Rosner*, 528 F. Supp. 2d at 431 (S.D.N.Y. 2007); *see also Gurung v. MetaQuotes Ltd.*, 2024 WL 3849460, at *9 (E.D.N.Y. Aug. 16, 2024) (providing software to alleged enterprise in exchange for monthly fee does "not permit a reasonable inference that [the defendant] shared the common purpose of defrauding [the plaintiff] or relationships with other members of the enterprise"); *Dietrich v. Bauer*, 76 F. Supp. 2d 312, 347 (S.D.N.Y. 1999) ("RICO liability may not be imposed on a defendant who merely carries on its own professional activities.")

The Amended Complaint alleges that the Kelsier Defendants used the "M3M3 Platform" and the "Meteora DLMM" to launch $M3M3 and $LIBRA, respectively. (AC ¶¶ 184, 253.) But Plaintiffs fail to allege that Meteora was otherwise involved in the $M3M3 and $LIBRA launches, beyond deploying the Meteora software that allegedly was used in connection with the $M3M3 and $LIBRA token launches. In fact, the only purported member of Meteora who is alleged to

have interacted with the Kelsier Defendants at all is Chow, and for the reasons in Chow's motion to dismiss, the Amended Complaint fails to allege that he participated in the operation or management of a RICO enterprise. (*See* Chow Br. § V.C.)

**4. Plaintiffs do not allege that Meteora conspired to violate RICO.**

Like their claim for conspiracy to defraud, Plaintiffs' RICO conspiracy claim against Meteora should be dismissed for at least two reasons.

*First*, for the reasons in Sections III.B.1-3, *supra*, the Amended Complaint does not adequately plead a primary RICO violation. "[Plaintiff]'s failure to adequately plead facts that would satisfy the pleading requirements of §§ [1962(a)], 1962(b) or (c) necessarily dooms any claim [they] might assert under § 1962(d)." *Zhu v. First Atl. Bank*, 2005 WL 2757536, *3 (S.D.N.Y. Oct. 25, 2005) (internal quotations marks and citation omitted); *accord First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 182 (2d Cir. 2004).

*Second*, the Amended Complaint does not allege that Meteora agreed to violate RICO's substantive provisions. "[T]o state a RICO conspiracy, a plaintiff must allege 'the existence of an agreement to violate RICO's substantive provisions.'" *Williams*, 889 F.3d at 124 (quoting *United States v. Sessa*, 125 F.3d 68, 71 (2d Cir. 1997)). The only purported member of Meteora who is alleged to have spoken with the Kelsier Defendants is Chow. For the reasons in Chow's motion to dismiss, the Amended Complaint fails to allege that Chow agreed with the Kelsier Defendants to violate RICO. (*See* Chow Br. § VI.)

**C. The Amended Complaint Fails to State a Claim Against Meteora for Violation of GBL §§ 349 or 350.**

"In order to plead a sufficient claim under either § 349 or § 350, 'a plaintiff must allege [i] that the defendant … engaged in consumer-oriented conduct; [ii] that the conduct was materially misleading; and [iii] that the plaintiff suffered injury as a result of the allegedly deceptive act or

practice.'" *Cosgrove v. Or. Chai, Inc.*, 520 F. Supp. 3d 562, 575 (S.D.N.Y. 2021) (alterations in original) (quoting *Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 292 (S.D.N.Y. 2015)). Plaintiffs' GBL claims fail for two separate reasons.

*First*, for the reasons in Section III.A.1, *supra*, the Amended Complaint does not allege that Meteora made any false or misleading statements or omissions, which is fatal to Plaintiffs' GBL claims. *See, e.g.*, *Celestin v. Martelly*, 698 F. Supp. 3d 443, 470–71 (E.D.N.Y. 2023) (dismissing GBL claims because, among other reasons, they were premised on inadequate fraud claim).

*Second*, for the reasons in Section III.A.4, *supra*, the Amended Complaint does not allege that Meteora's conduct caused Plaintiffs' injury. Plaintiffs' GBL claims also fail for this independent reason.[13] *See, e.g.*, *Miller v. Wells Fargo Bank, N.A.*, 994 F. Supp. 2d 542, 557–58 (S.D.N.Y. 2014) (dismissing GBL claim because the "causation element [of a GBL claim] is essential" and plaintiff "failed to plead how the[] allegedly deceptive acts or practices caused his alleged injury").

### D. The Amended Complaint Fails to State a Claim Against Meteora for Unjust Enrichment.

As explained in Chow's motion to dismiss, the claim for unjust enrichment is duplicative of the claims for violation of GBL §§ 349 and 350 and should be dismissed for this reason alone. (*See* Chow Br. § IV.) In addition, the unjust enrichment claim against Meteora should be dismissed because the Amended Complaint fails to allege a sufficiently close relationship between Plaintiffs and Meteora.

[13] Count VI also fails because the alleged transaction did not occur in New York. (*See* Chow Br. § III.)

To state a claim for unjust enrichment, Plaintiffs must allege "that (1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered." *Georgia Malone & Co. v. Rieder*, 19 N.Y.3d 511, 516 (2012) (internal quotation marks and citations omitted). Unjust enrichment claims require a "sufficiently close relationship with the other party" and generally fail where "the pleadings failed to indicate a relationship between the parties that could have caused reliance or inducement." *Id.* at 516–17. Furthermore, because Plaintiffs' claim for unjust enrichment is based on the same allegations as Plaintiffs' fraud claim (*see* AC ¶¶ 435, 441 ("Defendants' profits from these deceptive practices were achieved at the direct expense [of Plaintiffs].")), it must meet the heightened standard of particularity under Rule 9(b). *See Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Surgalign Spine Techs., Inc.*, 2024 WL 477031, at *7 (S.D.N.Y. Feb. 7, 2024). It does not.

All that Plaintiffs allege is that one of Meteora's purported members—Dynamic Labs—"automatically receives certain transaction fees from Meteora liquidity pools." (AC ¶ 52.) That is not enough. Such alleged benefits are far "too attenuated" to sustain the unjust enrichment claim. *See Sperry v. Crompton Corp.*, 8 N.Y.3d 204, 216 (2007) (holding that consumers' alleged overpayment for finished products and defendants' alleged profits from upstream sales were "simply too attenuated" to sustain unjust enrichment claim).

## **CONCLUSION**

Dynamic Labs respectfully requests that the Court dismiss the Amended Complaint with prejudice.[14]

---

[14] At present, due to the anonymous nature of users on Meteora, Dynamic Labs lacks sufficient information to determine whether any Plaintiff viewed and agreed to the Terms of Service, which contain an arbitration clause. Because Plaintiffs' assent cannot be established based on the information presently known by Dynamic Labs and disclosed in the Amended Complaint, it is not possible for Dynamic Labs to move to compel arbitration at this stage. Nothing in this filing should

Date: October 31, 2025
New York, New York

Respectfully submitted,

**GOODWIN PROCTER LLP**

By: /s/ Meghan K. Spillane
Meghan K. Spillane
Charles A. Brown
The New York Times Building
620 Eighth Avenue
New York, New York 10018
Telephone: (212) 813-8800
mspillane@goodwinlaw.com
cbrown@goodwinlaw.com

Zoe M. Bellars
1900 N Street, NW
Washington, DC 20036
Telephone: (202) 346-4000
zbellars@goodwinlaw.com

*Attorneys for Dynamic Labs Limited*

---

be construed as a waiver of Dynamic Labs' contractual right to arbitrate. Dynamic Labs expressly reserves the right to move to compel arbitration should discovery or further proceedings reveal that one or more Plaintiffs viewed and assented to the Terms of Service.

**CERTIFICATE OF COMPLIANCE**

Pursuant to Paragraph 3.C of the Individual Rules of Practice in Civil Cases of Judge Jennifer L. Rochon, counsel for Dynamic Labs Limited has complied with all of the formatting rules contained therein. The total number of words contained in this brief—exclusive of the cover page, certificate of compliance, table of contents, and table of authorities—is 8,673 words.

Date: October 31, 2025

**GOODWIN PROCTER LLP**

By: */s/ Meghan K. Spillane*

Meghan K. Spillane
Charles A. Brown
The New York Times Building
620 Eighth Avenue
New York, New York 10018
Telephone: (212) 813-8800
mspillane@goodwinlaw.com
cbrown@goodwinlaw.com

Zoe M. Bellars
1900 N Street, NW
Washington, DC 20036
Telephone: (202) 346-4000
zbellars@goodwinlaw.com

*Attorneys for Dynamic Labs Limited*