UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| OMAR HURLOCK and ANUJ MEHTA, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>        v.<br><br>KELSIER VENTURES, HAYDEN DAVIS, GIDEON DAVIS, METEORA, THOMAS DAVIS, and BENJAMIN CHOW,<br><br>        Defendants. | Case No. 25-cv-03891-JLR |

**DEFENDANT BENJAMIN CHOW'S MOTION TO DISMISS REPLY**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT ...................................................................................................................................1

    I.    Plaintiffs Do Not Dispute That They Do Not Allege Materiality, Reasonable Reliance, or Causation. ....................................................................................................1

    II.   Plaintiffs Do Not Allege Mr. Chow Engaged in Misconduct. .........................................2

    III.  Plaintiffs' Fraud Claims Fail. ...........................................................................................4

    IV.  Plaintiffs' NYGBL Claims Fail. ......................................................................................6

    V.   Plaintiffs' Unjust Enrichment Claims Fail. .....................................................................7

    VI.  Plaintiffs' RICO Claims Fail ............................................................................................8

    VII. Plaintiffs' Conspiracy to Defraud and RICO Conspiracy Claims Fail ..........................11

CONCLUSION ..............................................................................................................................12

## TABLE OF AUTHORITIES

**Cases**   **Page(s)**

*Anwar* v. *Fairfield Greenwich Ltd.*,
   728 F. Supp. 2d 372 (S.D.N.Y. 2010)..................................................................................4

*Barron* v. *Helbiz, Inc.*,
   2023 WL 5672640 (S.D.N.Y. Sept. 1, 2023).......................................................................7

*Buchwald* v. *Renco Group*,
   539 B.R. 31 (S.D.N.Y. 2015)................................................................................................8

*BYD Co. Ltd.* v. *VICE Media LLC*,
   531 F. Supp. 3d 810 (S.D.N.Y. 2021)................................................................................2, 8

*Caro Capital, LLC* v. *Koch*,
   653 F. Supp. 3d 108 (S.D.N.Y. 2023)..................................................................................8

*de Atucha* v. *Hunt*,
   128 F.R.D. 187 (S.D.N.Y. 1989) .......................................................................................11

*First Capital Asset Management, Inc.* v. *Satinwood, Inc.*,
   385 F.3d 159 (2d Cir. 2004)........................................................................................10n, 11

*In re Livent, Inc. Securities Litigation*,
   148 F. Supp. 2d 331 (S.D.N.Y. 2001).................................................................................6

*Major League Baseball Properties, Inc.* v. *Price*,
   105 F. Supp. 2d 46 (E.D.N.Y. 2000) ...............................................................................8-9

*In re Refco, Inc. Securities Litigation*,
   826 F. Supp. 2d 478 (S.D.N.Y. 2011).................................................................................3

*Risley* v. *Universal Navigation Inc.*,
   2025 WL 615185 (2d Cir. Feb 26, 2025)..........................................................................3, 6

*SEC* v. *Apuzzo*,
   689 F.3d (2d Cir. 2012).....................................................................................................3n

*Spool* v. *World Child International Adoption Agency*,
   520 F.3d 178 (2d Cir. 2008)................................................................................... 10-11, 10n

*United States* v. *Diaz*,
   176 F.3d 52 (2d Cir. 1999)..................................................................................................9

*United States* v. *Minicone*,
   960 F.2d 1099 (2d Cir. 1992)...........................................................................................10n

*Velez* v. *Lasko Products, LLC*,
    706 F. Supp. 3d 444 (S.D.N.Y. 2023)..................................................................................8

*Wasserman* v. *Maimonides Medical Center*,
    970 F. Supp. 183 (E.D.N.Y. 1997) ...................................................................................12

**PRELIMINARY STATEMENT**[1]

As described in Mr. Chow's MTD, Plaintiffs' Amended Complaint ("FAC") fails to state any claims against Mr. Chow because it fails to allege: any misconduct by Mr. Chow; any actionable false or misleading statements or omissions by him; any facts supporting a strong inference of scienter; reasonable reliance on his statements when trading inherently speculative memecoins; causation; a RICO injury or enterprise; RICO or fraud violations by Mr. Chow; or an illegal agreement with any other Defendant. Instead, the FAC relies on group pleading and conclusory allegations to try to hold a software developer liable for others' purported misconduct.

Nothing in Plaintiffs' opposition (Dkt. 215, the "Opposition" or "Opp.") rebuts these showings. Indeed, Plaintiffs fail to respond to several arguments, and thus waive any objection to dismissal on those grounds. Where Plaintiffs do respond, they largely rehash allegations in the FAC that Mr. Chow already addressed and that do not save their claims. If anything, Plaintiffs' Opposition demonstrates that the Court was correct to be "extremely skeptical" (Dkt. 152-2 at 66:2-9, Aug. 19, 2025 Hr'g Tr.) of Plaintiffs' claims, and the FAC should be dismissed with prejudice.

**ARGUMENT**

**I.   PLAINTIFFS DO NOT DISPUTE THAT THEY DO NOT ALLEGE MATERIALITY, REASONABLE RELIANCE, OR CAUSATION.**

Mr. Chow demonstrated in his MTD that Plaintiffs do not sufficiently allege any statements made by Mr. Chow were material, Plaintiffs reasonably relied on any material misstatements or omissions by Mr. Chow, or Mr. Chow's actions caused Plaintiffs' losses (MTD at 15-16, 20-23,

---

[1] All capitalized terms not defined herein have the meanings ascribed to them in Mr. Chow's Memorandum of Law in Support of His Motion to Dismiss (Dkt. 176) ("MTD"). Unless otherwise noted, internal citations and quotations are omitted and emphasis is added.

27). Plaintiffs ignore these arguments, waiving opposition to them. *See BYD Co. Ltd.* v. *VICE Media LLC*, 531 F. Supp. 3d 810, 819 (S.D.N.Y. 2021) ("[Plaintiffs'] failure to oppose Defendants' specific argument in a motion to dismiss is deemed waiver of that issue."). Addressing materiality and causation with respect to "Meteora" in opposition to Dynamic Lab's Motion to Dismiss, is not sufficient. (DLL Opp. at 19-22). Materiality and causation must be addressed with respect to *each* defendant and Plaintiffs never address *Mr. Chow's* arguments regarding these issues. (MTD at 13, 22). Therefore, Plaintiffs' fraud claims fail for lack of materiality, reasonable reliance, and causation, and Plaintiffs' NYGBL and RICO claims fail for lack of causation. And without viable fraud and RICO claims, their conspiracy and RICO conspiracy claims are also doomed. (MTD at 30-32).

## II.    PLAINTIFFS DO NOT ALLEGE MR. CHOW ENGAGED IN MISCONDUCT.

All of Plaintiffs' claims against Mr. Chow also fail because they do not allege that he engaged in misconduct. (MTD at 11-13).

In response, Plaintiffs rehash allegations regarding (1) the "M3M3 Calcs Template" explaining staking options for $M3M3; (2) remarks Mr. Chow made regarding liquidity; (3) "technical contributions" Mr. Chow made to the launches; and (4) comments Mr. Chow made on a photo of Mr. Davis and Argentine President Milei. (Opp. at 15-16).

But as Mr. Chow demonstrated in his MTD, these allegations do not save Plaintiffs' claims. (MTD at 11-12). Plaintiffs do not allege Mr. Chow made false statements to promote the $LIBRA or $M3M3 tokens; participated in the allegedly manipulative activity like sniping, wallet freezing, and liquidity extraction; or conspired to commit fraud. (MTD at 11-17). Indeed, Plaintiffs' allegations against Mr. Chow are consistent with his consulting role with DLL, and software developers (like Mr. Chow) may not be held liable for "a third-party user's misuse of the platform." *Risley* v. *Universal Navigation Inc.*, 2025 WL 615185, at *4 (2d Cir. Feb 26, 2025).

Plaintiffs' argument that *Risley* is inapplicable because "the *Risley* defendant provided genuinely neutral technology without knowledge of or participation in any fraudulent scheme" (Opp. at 16) does not save their claims. As an initial matter, the *Risley* plaintiffs alleged that defendants knew of "fraudulent activities pertaining to scam tokens" but did nothing to stop them because they were profitable. 2025 WL 615185, at *2.[2] Even if Plaintiffs were to allege Mr. Chow knew Meteora was being used in a fraudulent scheme (they do not), this claim would still be barred under *Risley*. Moreover, Meteora is a permissionless protocol accessible by anyone to create liquidity pools for trading memecoins (MTD at 4), and Plaintiffs' invention of a distinction between a "neutral technology" and Meteora has no basis in law or fact. Nor does *In re Refco, Inc. Securities Litigation*—a case finding that a defendant not directly involved in the relevant transactions was not liable for aiding and abetting a breach of fiduciary duty (a claim not at issue here)—change this result. 826 F. Supp. 2d 478, 519 (S.D.N.Y. 2011).

Plaintiffs' mischaracterization of Meteora's so-called "upgrade authority" (Opp. at 15) also does not save their claims. Plaintiffs' allegations describe a standard security feature designed to prevent unauthorized changes to Meteora's software code by requiring a majority of seven wallets to approve such changes. The feature's existence does not suggest fraud, and Plaintiffs do not allege that Mr. Chow (or anyone) used it in connection with the $M3M3 or $LIBRA token launches or the allegedly fraudulent scheme.

To the extent Plaintiffs purport to connect Mr. Chow to fraudulent conduct, it is through group pleading and conclusory allegations the Court need not credit. (MTD at 12-13). And

---

[2] Plaintiffs' citation to *SEC* v. *Apuzzo*, which addresses the pleading standard for an enforcement action alleging an aiding and abetting claim under the securities laws (689 F.3d 204, 213-14 (2d Cir. 2012)), is inapposite because they are private plaintiffs, do not assert an aiding and abetting claim against Mr. Chow, and do not plead that he knew of or substantially assisted any fraud.

3

Plaintiffs' reliance on *Anwar* v. *Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372 (S.D.N.Y. 2010) (Opp. at 16), is unavailing. As *Anwar* explains, the group pleading doctrine allows "plaintiffs only to connect defendants to [corporate] ***statements***" ***if*** "the defendant was a corporate insider, with direct involvement in day-to-day-affairs, at the entity issuing the statement." *Id.* at 405-06. It is no substitute for pleading each element of a viable claim against Mr. Chow, and it cannot save Plaintiffs' claims when Plaintiffs cannot allege "Meteora" made any misstatements attributable to Mr. Chow. (Dkt. 223 at 17-21).

### III. PLAINTIFFS' FRAUD CLAIMS FAIL.

Plaintiffs' FAC fails to state any fraud claims for several reasons (MTD at 13-22), and nothing in their Opposition salvages them.

***First***, and as discussed above in Section I, Plaintiffs waived any opposition to the FAC's materiality, reasonable reliance, or causation defects.

***Second***, Plaintiffs fail to allege that Mr. Chow made any knowingly false, material misrepresentations or omissions. (MTD at 13-17). The comment, "[w]hat changing the world looks like [fire emoji]" on a photograph of Hayden Davis and President Milei (Opp. at 12) was issued weeks prior to the $LIBRA launch and offers a non-actionable opinion. Moreover, Plaintiffs do not (and cannot) cite to any allegations demonstrating with specificity why it is false. (MTD at 15).

Plaintiffs further argue that Mr. Chow falsely identified "Meteora as decentralized and permissionless when he knew he retained backend control." (Opp. at 16). This does not save their fraud claims because Plaintiffs do not challenge specific statements made by Mr. Chow or allege why they are false. (*See* MTD at 15).[3] Meteora is permissionless because anyone can access it

---

[3] Although Mr. Chow allegedly wrote on February 16, 2025 that Meteora protocols are

4

(MTD at 4), and decentralized because there is no centralized decision-making authority controlling the protocol.[4]

***Third***, Plaintiffs fail to plead a strong inference that Mr. Chow acted with scienter. The far more compelling inference is that Mr. Chow provided technical support to the $M3M3 and $LIBRA launches. (MTD at 17-19). In opposition, Plaintiffs offer a hodgepodge of arguments largely addressed in Mr. Chow's MTD and do nothing to weaken this non-fraud inference, or demonstrate that Plaintiffs adequately allege motive and opportunity or strong circumstantial evidence of conscious misbehavior.

Plaintiffs raise Mr. Chow's alleged statements regarding liquidity and the "M3M3 Calcs Template" (Opp. at 18), but these were entirely consistent with his role providing technical support. (MTD at 18-19, 31). His statement that he "enabled" Mr. Davis (Opp. at 18) is also consistent with a non-fraud inference that he regretted working with Mr. Davis because he was taken advantage of and "totally rugged" by him. (MTD at 9, 32).

Mr. Chow's right to trading fees from DLL (Opp. at 18-19)—a profit motive—does not give rise to a strong inference of scienter, particularly where Plaintiffs do not allege that Mr. Chow stood to receive any extraordinary compensation in connection with the launches or personally benefitted from the alleged price manipulation and capital extraction. (MTD at 18, n.10).

Plaintiffs also assert that scienter can be inferred from Mr. Chow's "deliberately illegal behavior" designing the Meteora protocol, misrepresenting the platform as decentralized, and

---

permissionless (FAC ¶ 300), this statement is not plausibly alleged to be false and cannot form the basis for a claim because it was made after the alleged fraud was completed.

[4] Meteora's "upgrade authority" requiring a majority of seven wallets to approve changes to Meteora's code does not establish centralized control over the protocol; it simply protects the Meteora software from unilateral and unauthorized changes by nefarious actors.

failing to prevent misuse of the platform. (Opp. at 19). But, as discussed above, designing software misused by others is not illegal (even with knowledge it is being misused (*see Risley*)), and, Plaintiffs do not allege any specific statements where Mr. Chow allegedly misrepresented that Meteora is decentralized (also, Meteora *is* decentralized).

Finally, Plaintiffs assert that the "magnitude of the fraud" supports an inference of scienter, citing the wholly inapposite *In re Livent, Inc. Securities Litigation*, 148 F. Supp. 2d 331, 367 (S.D.N.Y. 2001). In *Livent*, the court considered the magnitude of the fraud—"countless small adjustments to [] accounting entries"—in analyzing whether the defendant auditor acted recklessly because "more opportunities should exist to discover a larger fraud than a smaller fraud." *Id.* This analysis is not applicable outside the context of auditor (or similar monitoring-related) liability. Plaintiffs' conclusory statements about the size, sophistication, and complexity of the fraud say nothing of Mr. Chow's state of mind, particularly given the paucity of specific allegations against him, and failure to allege how he stood to profit from the alleged fraud centering on "sniping" and liquidity extraction. (MTD at 18).

## IV. PLAINTIFFS' NYGBL CLAIMS FAIL.

Plaintiffs' NYGBL claims fail because they do not dispute that they fail to allege causation and they fail to allege any misleading act or practice by Mr. Chow; and Mr. Mehta's NYGBL claim (regarding $M3M3) fails without a territorial nexus to New York. (*Supra* Section I; MTD at 23-24).

In response, Plaintiffs assert that "false representations about decentralization, concealment of insider control, fabricated endorsements, and hidden manipulation mechanisms" constitute deceptive conduct. (Opp. at 24). As discussed above, Plaintiffs do not allege that Mr. Chow's statements were false, or that he engaged in any other misconduct. (*Supra* Sections II, III).

As to Mr. Mehta's NYGBL claim, Plaintiffs point to allegations that *Mr. Hurlock* purchased *$LIBRA* tokens in New York. (Opp. at 25). These allegations are irrelevant to *Mr. Mehta's* claim. Moreover, allegations that Mr. Chow lived in and "controlled" the Meteora software from New York (Opp. at 25) are insufficient. (MTD at 24). As Plaintiffs' cited authority recognizes (Opp. at 25), Plaintiffs must "allege a 'transaction' with a sufficient New York nexus." *Barron* v. *Helbiz, Inc.*, 2023 WL 5672640, at *8 (S.D.N.Y. Sept. 1, 2023). Unlike in *Barron*, Plaintiffs here do not allege any deceptive communications made from New York, marketing events from New York, or that the liquidity pool Plaintiffs transacted with (allegedly created by the Kelsier Defendants) was administered or created in New York.

## V.    PLAINTIFFS' UNJUST ENRICHMENT CLAIMS FAIL.

Plaintiffs' unjust enrichment claims fail because Plaintiffs do not allege fraudulent conduct by Mr. Chow or a direct benefit from Plaintiffs, and the claim is duplicative of Plaintiffs' NYGBL claim. (MTD at 24-25). Plaintiffs respond that: Mr. Chow was unjustly enriched through participation in a pump-and-dump scheme providing him with cryptocurrency assets extracted from Plaintiffs and trading fees; and FRCP Rule 8(d)(2) permits pleading in the alternative. This does not save their claims.

*First*, as discussed above in Section II, Plaintiffs do not allege that Mr. Chow engaged in any misconduct relating to the $LIBRA or $M3M3 launches.

*Second*, Plaintiffs' group pleading that "Defendants" were directly enriched through a pump-and-dump scheme and "fraudulent capital extraction" does not state a claim against Mr. Chow because Plaintiffs do not (and cannot) allege that he extracted or received any of these assets. (MTD at 24). Moreover, Mr. Chow's entitlement to trading fees is too attenuated to state an unjust enrichment claim. (MTD at 25). Plaintiffs' authorities are not to the contrary. In *Caro Capital, LLC* v. *Koch*, 653 F. Supp. 3d 108 (S.D.N.Y. 2023), the counterclaim plaintiff directly conveyed

7

a website, a brand name, and a board member to the defendant. Here, neither Plaintiff conveyed *anything* to Mr. Chow. And in *Buchwald* v. *Renco Group*, 539 B.R. 31 (S.D.N.Y. 2015), the court dismissed because plaintiffs failed to demonstrate a benefit conveyed on the defendants traced directly back to plaintiffs. Plaintiffs' claims fail for the same reason.

*Third*, even if Rule 8 sometimes permits pleading in the alternative, "claims for unjust enrichment will not survive a motion to dismiss where plaintiffs fail to explain how their unjust enrichment claim is not merely duplicative of their other causes of action." *Velez* v. *Lasko Products, LLC*, 706 F. Supp. 3d 444, 463 (S.D.N.Y. 2023) (Rochon, J.). Here, Plaintiffs do not offer any such explanation.

## VI. PLAINTIFFS' RICO CLAIMS FAIL.

Plaintiffs' FAC fails to state any RICO claims for several reasons (MTD at 25-30) and nothing in their Opposition changes these conclusions.

*First*, Plaintiffs do not allege "an injury to business or property" and waive the point by not responding to Mr. Chow's arguments (MTD at 26). *BYD Co.*, 531 F. Supp. 3d at 819 ("[F]ailure to oppose Defendants' *specific argument* in a motion to dismiss is deemed waiver of that issue.").

Even if Plaintiffs preserved it by responding in opposition to the Kelsier Defendants' motion to dismiss (Dkt. 214 at 20), out-of-pocket losses from trading are irrelevant. In purchasing their tokens, Plaintiffs "received exactly what they bargained and paid for," *Major League Baseball Properties, Inc.* v. *Price*, 105 F. Supp. 2d 46, 53 (E.D.N.Y. 2000), and purported injuries are based on disappointment in realizing loss instead of profit are expectation damages, not an injury to business or property. This is not a RICO injury. (MTD at 26).

*Second*, allegations regarding Mr. Chow's conduct—*i.e.*, the technical support he provided for the launches of $M3M3 and $LIBRA—do not provide plausible inferences of (1) an enterprise

8

with a common racketeering purpose; (2) Mr. Chow's participation in the operation or management of any such enterprise; or (3) predicate acts by him. (MTD at 28-30). In response, Plaintiffs argue that the "enterprise" involved fraudulent token launches that were not legitimate business activity; that Mr. Chow was an active participant in its operation and management (not a passive service provider) and committed predicate acts because he designed and controlled the Meteora platform; provided planning documents, models, and technical support for the launches; participated in planning discussions regarding the launches; and made public statements to promote the allegedly fraudulent tokens. (Opp. at 19-21).

This does not save their claims. As discussed above in Sections II and III, Plaintiffs do not allege that Mr. Chow participated in any allegedly fraudulent conduct or made any false statements. The design of the Meteora platform; models, documents, and other technical support provided to those launching tokens; and communications with the Kelsier Defendants are entirely consistent with Mr. Chow's (non-fraudulent) technical-support role in the launches. (*Supra* Section III). Importantly, Plaintiffs do not (and cannot) allege (other than in impermissible group pleading) that Mr. Chow participated in the alleged false promotions, wallet manipulations, and capital extraction that purportedly led to Plaintiffs' losses. The "simple taking of directions and performance of tasks that are necessary or helpful to the enterprise, without more, is insufficient" for RICO liability. *United States* v. *Diaz*, 176 F.3d 52, 92 (2d Cir. 1999). Plaintiffs' failure to plead any wrongdoing by, or fraud claim against, Mr. Chow dooms their RICO claims. (MTD at 30).

*Third*, Plaintiffs also fail to allege a pattern of racketeering activity (open-ended or closed-ended) because they do not allege a threat of continuing criminal activity or past criminal conduct

extending for a substantial period (*i.e.*, more than two years). (MTD at 29). Plaintiffs' arguments in opposition do not change this conclusion.

Plaintiffs argue that open-ended continuity exists because "but for public exposure, the enterprise would have continued executing similar frauds indefinitely" and the "threat of continued criminal activity is inherent in the enterprise's structure and purpose." (Opp. at 22-23). This ignores (and therefore concedes) Mr. Chow's obvious observation that (even though there was no misconduct to begin with), there cannot be any threat of future misconduct from him[5] because he resigned from his role.

Regarding closed-ended continuity, Plaintiffs argue that there is no bright-line rule regarding the amount of time an alleged fraud must last, and the level of complexity and the repeated nature of the alleged fraud supports a finding of closed-ended continuity here. (Opp. at 22). This is plainly wrong. Tellingly, Plaintiffs do not cite any case in the Second Circuit finding closed-ended continuity based on a fraud lasting less than two years.[6] As the Second Circuit explained in *Spool*, "it will be rare that conduct persisting for [less than two years] establishes closed-ended continuity, particularly where . . . the activities alleged involved only a handful of participants and do not involve a complex, multi-faceted conspiracy." 520 F.3d at 184. Here, Plaintiffs purport to allege a pump-and-dump scheme perpetrated by a handful of individuals over the course of a few months. This is not an extraordinary case or complex fraud justifying a

---

[5] *See First Capital Asset Management, Inc.* v. *Satinwood, Inc.*, 385 F.3d 159, 180 (2d Cir. 2004) ("In analyzing the issue of continuity . . . we evaluate [] RICO allegations **with respect to each defendant individually**.").

[6] *See Spool* v. *World Child International Adoption Agency*, 520 F.3d 178, 184-85 (2d Cir. 2008) (predicate acts spanning around 16 months—over three times longer than the five months alleged here—were "of insufficient length to demonstrate closed-ended continuity"); *United States* v. *Minicone*, 960 F.2d 1099, 1102-03 (2d Cir. 1992) (affirming RICO convictions for an enterprise acting for approximately **16 years**).

10

departure from the two-year "*minimum* duration necessary to find closed-ended continuity." *First Capital Asset Management*, 385 F.3d at 181.

### VII. PLAINTIFFS' CONSPIRACY TO DEFRAUD AND RICO CONSPIRACY CLAIMS FAIL.

Plaintiffs do not dispute that their conspiracy and RICO conspiracy claims fail if they fail to allege an underlying fraud or RICO violation. (MTD at 30). As set forth above in Sections III and VI, they do not state such claims here, and thus their conspiracy to defraud and RICO conspiracy claims should be dismissed.

Furthermore, Plaintiffs' conspiracy and RICO conspiracy claims fail because Plaintiffs do not adequately allege a corrupt agreement and simply rehash the allegations of the FAC. (MTD at 30-32; Opp. at 23-24). They argue an illegal agreement can be inferred from allegations that the Meteora and Kelsier Defendants: (1) entered into a partnership backed by a $2 million investment; (2) used private communication channels and participated in phone calls; (3) jointly created planning documents; and (4) because the scheme was sophisticated and required coordination that necessitated a conspiracy. (Opp. at 23 (citing FAC ¶¶ 163-64, 201-04, 207-08)).

But Mr. Chow addressed *each* of these allegations in his MTD (at 30-32), and they do not state viable conspiracy claims. Plaintiffs offer no more than conclusory assertions that the Court need not credit, "fail[ing] to specify"—as they must—"what the 'agreement' was and *what each defendant agreed to do* to further the conspiracy." *de Atucha* v. *Hunt*, 128 F.R.D. 187, 190 (S.D.N.Y. 1989). Tellingly, Plaintiffs' Opposition does not (and cannot) point to any allegations demonstrating that Mr. Chow knowingly assented to the agreement or how he agreed to support the purported conspiracy. It is not enough to conclusorily assert that he provided "technological infrastructure and expertise" for the scheme because labels cannot substitute for facts suggesting a conscious commitment to the alleged scheme. (Opp. at 24). *See Wasserman* v. *Maimonides*

11

*Medical Center*, 970 F. Supp. 183, 191 (E.D.N.Y. 1997) (no RICO conspiracy where plaintiffs failed to allege that "individual defendants, by their words or actions, manifested a conscious agreement to commit predicate acts"). As discussed above and in the MTD, Plaintiffs' allegations are wholly consistent with Mr. Chow's role as a technical support provider for users of Meteora, which cannot form the basis for a claim here.

## CONCLUSION

For these reasons, the FAC should be dismissed with prejudice.

Dated: November 18, 2025

Respectfully submitted,

CAHILL GORDON & REINDEL LLP

By: */s/ Samson A. Enzer*
Samson A. Enzer
Miles C. Wiley
Gregory Mortenson
Danielle Simard
32 Old Slip
New York, New York 10005
212-701-3000
senzer@cahill.com
mwiley@cahill.com
gmortenson@cahill.com
dsimard@cahill.com

*Attorneys for Defendant Benjamin Chow*

## CERTIFICATION OF COMPLIANCE

Pursuant to Paragraph 3.C of the Individual Rules of Practice in Civil Cases of Judge Jennifer L. Rochon, counsel for Defendant Benjamin Chow has complied with all of the formatting rules contained therein. The total number of words contained in this brief—exclusive of the cover page, certificate of compliance, table of contents, and table of authorities—is 3,500 words.

Date:  November 18, 2025                         CAHILL GORDON & REINDEL LLP

                                                 By:    */s/ Samson A. Enzer*
                                                        Samson A. Enzer
                                                        32 Old Slip
                                                        New York, New York 10005
                                                        (212) 701-3000
                                                        senzer@cahill.com

                                                 *Attorneys for Defendant Benjamin Chow*