**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

OMAR HURLOCK and ANUJ MEHTA, *on behalf of themselves and all others similarly situated*,

*Plaintiffs,*

vs.

KELSIER LABS, LLC d/b/a KELSIER VENTURES, et al.,

*Defendants.*

Case No. 1:25-cv-03891 (JLR)

JURY TRIAL DEMANDED

**DEFENDANTS KELSIER LABS, LLC, HAYDEN MARK DAVIS, GIDEON DAVIS, AND CHARLES THOMAS DAVIS'S CONSOLIDATED REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTIONS TO DISMISS AMENDED CLASS ACTION COMPLAINT**

**SBAITI & COMPANY PLLC**
Mazin A. Sbaiti, Esq.
New York Bar No. 4339057
George M. Padis (Admitted *Pro Hac Vice*)
Texas Bar No. 24088173
2200 Ross Avenue – Suite 4900W
Dallas, TX 75201
T: (214) 432-2899
F: (214) 853-4367
E: mas@sbaitilaw.com
george.padis@sbaitilaw.com
*Counsel for Kelsier Labs, LLC, Hayden Mark Davis, Gideon Davis, and Charles Thomas Davis*

**M. CRIS ARMENTA, P.C.**
M. Cris Armenta (Admitted *Pro Hac Vice*)
217 Clancy Way
Bozeman, MT 59718
T: (310) 488-2080
F: (310) 421-1021
E: cris@crisarmenta.com
*Counsel for Hayden Mark Davis*

## TABLE OF CONTENTS


I. Preliminary Statement ..... 1

II. By Failing to Meaningfully Respond to the Moving Defendants' Arguments, Plaintiffs Have Conceded Those Issues ..... 2

III. Plaintiffs Fail to Plead Fraud with the Particularity Required by Rule 9(b) ..... 5

A. Plaintiffs' Opposition Confirms They Have Not Alleged the "Time, Place, Speaker, and Content" of Any Actionable Misrepresentation ..... 5

1. The Opposition Fails to Identify Any Specific Public Statements that Were False When Made by Hayden Davis ..... 6

B. The Opposition Fails to Identify Any Specific Public Statements That Were False When Made by Charles Thomas Davis or Gideon Davis ..... 8

C. Plaintiffs' Failure to Respond to Moving Defendants' No-Duty Argument Dooms Plaintiffs' Federal and State-Law Fraud Claims Premised on Omission ..... 8

D. Plaintiffs' Failure to Respond to Moving Defendants' Reliance Argument Dooms Plaintiffs' New York Common-Law Fraud Claims ..... 9

E. The Opposition's Response to Moving Defendants' Materiality Argument Depends on An Allegation Not Found in the Complaint and Fails ..... 9

F. The Opposition Confirms the Complaint Fails to Plead Facts Supporting a Strong Inference of Fraudulent Intent ..... 12

IV. Plaintiffs' Cursory RICO Standing Analysis Cannot Salvage Their Flawed Claims ..... 14

V. Plaintiffs' Failure to Allege Adverse Authority on the "Pattern" and "Enterprise" Elements Dooms Their Civil RICO Claims ..... 16

A. Plaintiffs Fail to Establish Closed- or Open-Ended Continuity ..... 16

B. Plaintiffs' Resort to the "Playbook" and "Blueprint" Labels Cannot Save Their RICO Claims Premised on Unrelated Predicate Acts ....... 18

C. Plaintiffs' Cursory "Enterprise" Analysis Fails to Confront Adverse Authority ....... 18

VI. The Conspiracy Claims Fail Because the Underlying RICO and Fraud Claims Fail ....... 20

VII. Plaintiffs' State-Law Claims Should Be Dismissed Under Rule 12(b)(6) ....... 20

A. Plaintiffs' New York General Business Law Claims Should Be Dismissed ....... 20

B. Plaintiffs' Unjust-Enrichment Claims Should Be Dismissed ....... 22

VIII. The Court Lacks Personal Jurisdiction Over the State-Law Claims Against the Moving Defendants ....... 22

IX. Conclusion ....... 23

Certificate of Compliance ....... 24

## TABLE OF AUTHORITIES

**Cases**

*Boyle v. United States*,
556 U.S. 938 (2009) .......... 19

*Bridge v. Phoenix Bond*,
553 U.S. 639 (2008) .......... 9

*Cruz v. FXdirectdealer, LLC*,
720 F.3d 115 (2d Cir. 2013) .......... 21

*Curry Mgmt. Corp. v. JPMorgan Chase Bank, N.A.*,
643 F. Supp. 3d 421 (S.D.N.Y. 2022) .......... 2

*Denney v. Deutsche Bank AG*,
443 F.3d 253 (2d Cir. 2006) .......... 14

*DiVittorio v. Equidyne Extractive Indus.*,
822 F.2d 1242 (2d Cir. 1987) .......... 5

*Edmondson v. Raniere*,
751 F. Supp. 3d 136 (E.D.N.Y. 2024) .......... 8, 10

*Elsevier Inc. v. W.H.P.R., Inc.*,
692 F. Supp. 2d 297 (S.D.N.Y. 2010) .......... 20

*Empire Merchs., LLC v. Reliable Churchill LLLP*,
902 F.3d 132 (2d Cir. 2018) .......... 14, 15

*Equinox Gallery Ltd. v. Dorfman*,
306 F. Supp. 3d 560 (S.D.N.Y. 2018) .......... 20

*Fink v. Time Warner Cable*,
714 F.3d 739 (2d Cir. 2013) .......... 21

*First Capital Asset Mgmt. v. Satinwood, Inc.*,
385 F.3d 159 (2d Cir. 2004) .......... 12, 19

*Flexborrow LLC v. TD Auto Fin. LLC*,
255 F. Supp. 3d 406 (E.D.N.Y. 2017) .......... 8

*GICC Capital Corp. v. Tech. Fin. Grp., Inc.*,
67 F.3d 463 (2d Cir. 1995) .......... 16, 17, 18

*Gorog v. Musk*,
No. 22-CV-5037, 2024 WL 4329918 (S.D.N.Y. Aug. 29, 2024)........................................10

*Goshen v. Mutual Life Ins. Co.*,
774 N.E.2d 1190 (N.Y. 2002)................................................................................................21

*Greene v. Clean Rite Centers, LLC*,
714 F. Supp. 3d 134 (E.D.N.Y. 2024) ............................................................................ 20-21

*H.J. Inc. v. Nw. Bell Tel. Co.*,
492 U.S. 229 (1989)........................................................................................................16, 17

*Hunt v. Enzo Biochem, Inc.*,
530 F. Supp. 2d 580 (S.D.N.Y. 2008) ........................................................................................9

*In re DDAVP Direct Purchaser Antitrust Litig.*,
585 F.3d 677 (2d Cir. 2009)....................................................................................................13

*In re Lottery.com, Inc. Sec. Litig.*,
765 F. Supp. 2025 (S.D.N.Y. 2025)........................................................................................14

*Kassel v. Moynihan*,
No. 23-CV-06958, 2024 WL 2832813 (S.D.N.Y. June 3, 2024) ..........................................2

*Kyszenia v. Ricoh USA, Inc.*,
583 F. Supp. 3d 350 (E.D.N.Y. 2022) ......................................................................................8

*Luce v. Edelstein*,
802 F.2d 49 (2d Cir. 1986)........................................................................................................5

*Metromedia v. Fugazy*,
983 F.2d 350 (2d Cir. 1992)....................................................................................................17

*Meyer v. JinkoSolar Holdings Co.*,
761 F.3d 245 (2d Cir. 2014)....................................................................................................11

*Nunes v. Fusion GPS*,
531 F. Supp. 3d 993 (E.D. Va. 2021) ......................................................................................20

*Reich v. Lopez*,
858 F.3d 55 (2d Cir. 2017)..................................................................................................17, 18

*Sergeants Benevolent Ass'n Health & Welfare Fund v. Sanofi-Aventis U.S. LLP*,
806 F.3d 71 (2d Cir. 2015) ..............................................................................................9, 14, 15

*Shields v. Citytrust Bancorp*,
25 F.3d 1124 (2d Cir. 1994)....................................................................................13

*Spool v. World Child Int'l Adoption Agency*,
520 F.3d 178 (2d Cir. 2008)..................................................................... 16-17, 18

*United States v. Litvak,*
808 F.3d 160 (2d Cir. 2015)....................................................................................8, 10

*Velez v. Lasko Products, LLC*,
706 F. Supp. 3d 444 (S.D.N.Y. 2023) .......................................................................14

*Williams v. Affinion Grp., LLC*,
889 F.3d 116 (2d Cir. 2018)...............................................................................6, 7, 12

*Yuille v. Uphold HQ, Inc.*,
686 F. Supp. 3d 323 (S.D.N.Y. 2023) .........................................................................7

**Rules**

CLPR § 302....................................................................................................................23

FED. R. CIV. P. 9(b) ..........................................................................................................5

## I. Preliminary Statement

Plaintiffs in this case put their money into meme coins and claim they lost money. This lawyer-engineered case seeks to turn these two isolated facts into a RICO class action. But Plaintiffs have not pleaded a case for fraud or RICO (or anything else). They concede most of the arguments in the Motion to Dismiss. Plaintiffs' Opposition[1] repeatedly asserts the soundbite that the Davises and Kelsier executed a repeatable fraud "playbook" (Opp'n 8, 11, 22, 23, 35) but never identifies any actual, specific, public, pre-purchase misstatement by any Moving Defendant that was false and material, or that was relied upon, as required by Rule 9(b).

In responding to Defendants' Motion to Dismiss, Plaintiffs effectively concede that their only reliance allegations are with respect to President Milei's posts and on private "online investment group" messages—not on any false statement by Hayden Davis, Gideon Davis, Charles Thomas Davis, or Kelsier. *Compare* MTD 28–31, *with* Opp'n 20–22.[2] Yet, Plaintiffs have not even attempted to show how the statements by Milei or the Reddit groups they cite were factually false when made, and somehow attributable to any defendant, much less to *all* defendants. Hurlock's allegations show that he sold his $LIBRA coins hours *before* Milei withdrew his statement. The $M3M3 allegations show that the coin's value was sustained for a longer period of time and does not even allege that Mehta sold based upon a corrective disclosure.

Plaintiffs' Opposition also does not cure the doctrinal defects in Plaintiffs' RICO claims:

[1] References and citations to "Opposition" and "Opp'n" refer to Plaintiffs' Opposition to the Motion to Dismiss Filed by Defendants Kelsier Labs, LLC, Hayden Mark Davis, Gideon Davis, and Charles Thomas Davis Pursuant to F.R.C.P. 12(b)(2) and 12(b)(6), Dkt. No. 214.

[2] References and citations to "Motion to Dismiss" and "MTD" refer to Defendants Kelsier Labs, LLC, Hayden Mark Davis, Gideon Davis, and Charles Thomas Davis's Consolidated Memorandum of Law in Support of Motions to Dismiss, Dkt. No. 174.

Plaintiffs never establish closed-ended "continuity" within an eight-week window, nor do they meaningfully try (*see* Opp'n 24); Plaintiffs' lone support for its fraud and RICO theories is its invocation of vague market dynamics and speculation about a supposed "infrastructure for fraud" that presents a "threat of future criminal conduct" (*id.* at 24–25)—but this entire thesis is circular. It ignores the fact that meme coins are speculative investments—every purchaser assumes the risk of losing their money. It is also insufficient to establish open-ended racketeering. Plaintiffs allege (at best) parallel action rather than a distinct wrongful enterprise purpose (*see id.* at 26). These pleading failures persist against the backdrop of a previously amended complaint and, now, a proposed second amended complaint that suffers from the same fatal flaws.

Therefore, and for the reasons further explained below, Plaintiffs' claims should be dismissed with prejudice in full.

## II. By Failing to Meaningfully Respond to the Moving Defendants' Arguments, Plaintiffs Have Conceded Those Issues.

"A party may be deemed to concede an argument by failing to address it in an opposition brief." *Curry Mgmt. Corp. v. JPMorgan Chase Bank, N.A.*, 643 F. Supp. 3d 421, 426 (S.D.N.Y. 2022); *accord Kassel v. Moynihan*, No. 23-CV-06958, 2024 WL 2832813, at *8 (S.D.N.Y. June 3, 2024) (Rochon, J.). As summarized below, many of the Moving Defendants' arguments should be deemed conceded by Plaintiffs' failure to address them in their Opposition:

| MTD Argument | Where in MTD | What Plaintiffs' Opposition Says | Opposition Response Status | |
|---|---|---|---|---|
| No pre-purchase, defendant-specific misstatements by Hayden Davis | Part I.C.1, p. 19 | Describes Hayden's "specific acts"; no identification of Hayden's pre-launch public statements (p. 14) | Not sufficiently addressed | Opposition never identifies a Hayden statement satisfying Rule 9(b) |

| | | | | |
|---|---|---|---|---|
| No public statements by Kelsier; vague corporate role insufficient | Part I.C.2, p. 18 | "Specific roles" and enterprise promotion; no Kelsier-attributed statement (pp. 14–15) | Not addressed | Opposition never identifies a Kelsier statement satisfying Rule 9(b) |
| No pre-purchase, defendant-specific misstatements by Gideon Davis | Part I.C.3, p. 19 | "Specific roles" defeat group pleading; no identification of Gideon's public statements (pp. 14–15) | Not addressed | Opposition never identifies a Gideon statement satisfying Rule 9(b) |
| No pre-purchase, defendant-specific misstatements by Charles T. Davis (only reposts/future-oriented statements) | Part I.C.4, p. 20 | "Specific roles" and planning documents; no identification of actionable public statements (pp. 15, 18) | Not addressed | Opposition never identifies a Charles Thomas statement satisfying Rule 9(b) |
| Material-omissions theory under civil RICO or New York law fails for lack of any duty or special relationship | Part I.D., pp. 20–21 | Asserts misrepresentations were material; does not identify a duty to disclose or special relationship (pp. 13–18) | Not addressed | The opposition does not supply a cognizable duty; MTD's duty point goes unrebutted |
| Rule 9(b) reliance is not pleaded: Plaintiffs never allege reasonable, defendant-specific reliance tied to the "time, place, speaker, and content" of any Kelsier or Davis statement | Part I.E.3 ("Plaintiffs never plead reasonable reliance under Rule 9(b)"), pp. 25–28 | Addresses Rule 9(b) via roles, puffery, and scienter; no discrete reliance analysis (pp. 13–18) | Not addressed | Opposition has no reliance element analysis and does not confront the reliance defects identified in the MTD |
| RICO proximate cause ("by reason of") fails: Plaintiffs' own admissions attribute purchases to non-party Milei and Chow's and Meteora's reputations | Part II, pp. 28–31 | Asserts first-party reliance is not a prerequisite for RICO standing (pp. 19–21) | Insufficiently addressed | Opposition does not grapple with Plaintiffs' admissions breaking causation for Kelsier and the Davises |
| $M3M3 and $LIBRA are not horizontally related: different purposes, anticipated results, methods of commission, and kinds of purchasers—as underscored by the fact | Part III.A.1, pp. 33–35 | Labels the schemes a cohesive "playbook" and asserts that defendants "followed the same blueprint" (pp. 22–23) | Insufficiently addressed | Opposition does not engage the differences in methods, victims, purposes, and separate-lawsuit history demonstrating lack of relatedness |

| | | | | |
|---|---|---|---|---|
| the $M3M3 scheme was originally an entirely separate securities lawsuit | | | | |
| Closed-ended continuity under *Spool* and *GICC* must be "substantial period"; a few months is facially insufficient | Part III.A.2, pp. 35–36 | Acknowledges Second Circuits looks "for periods exceeding two years"; asserts closed-ended continuity nonetheless established (pp. 23–25) | Insufficiently addressed | No meaningful engagement with controlling Second Circuit holdings cited in the MTD |
| Open-ended continuity: no facts showing an ongoing threat; schemes were closed because they are inherently terminable under *GICC* and *Spool* | Part III.A.3, pp. 36–38 | Conclusory assertions that the enterprise was "built for repetition," citing a "handful of other projects" (pp. 24–25) | Insufficiently addressed | Opposition's assertions lack factual engagement with the legal standard required for open-ended continuity, do not rebut argument the two predicate acts are "inherently terminable," and improperly point to legitimate business projects as evidence of future racketeering |
| Enterprise: allegations are consistent with parallel, legitimate arm's-length business; no common fraudulent purpose | Part III.B.1, pp. 39–40 | Asserts common purpose was to "guarantee outsized insider profits at the expense of retail investors" (p. 26) | Insufficiently addressed | Does not rebut the MTD's arguments that allegations are consistent with parallel business interests to launch meme coins or that each defendant acted for his own business interests, rather than a shared enterprise purpose |
| "[F]our-and-a-half months . . . is not long enough to establish the 'longevity' element" | Part III.B.2, pp. 41–42 | Asserts without citing caselaw that the four-and-half month "duration was more than enough to achieve its illicit goals" (pp. 26–27) | Insufficiently addressed | Does not address or distinguish cases holding that a four-month period is insufficient to plead longevity |

## III. Plaintiffs Fail to Plead Fraud with the Particularity Required by Rule 9(b).

Plaintiffs acknowledge that, to plead fraud under Rule 9(b), they must allege "the time, place, and content" as well as "the identity of the person making" each purported misrepresentation. Opp'n 13. Yet, in opposing the Motion to Dismiss, they rely on the same non-actionable statements—still untethered to any fraudulent conduct—and the same group-pleading defects that plagued both the original complaint and the live amended complaint.

### A. Plaintiffs' Opposition Confirms They Have Not Alleged the "Time, Place, Speaker, and Content" of Any Actionable Misrepresentation.

Plaintiffs claim the first amended complaint "provides a detailed and methodical account" that "carefully delineat[es] the specific role each Kelsier Defendant played" in the alleged "fraudulent schemes." Opp'n 13–14. Plaintiffs rely on *DiVittorio v. Equidyne Extractive Indus.,* 822 F.2d 1242, 1247 (2d Cir. 1987), for the proposition that merely identifying each defendant's "role" in the alleged RICO scheme with particularity is sufficient to satisfy Rule 9(b). (Opp'n 14).

If only saying it made it so. In *DiVittorio*, the Second Circuit affirmed dismissal of the complaint against nearly all defendants precisely because the complaint failed to "ascribe particular roles to each of the defendants herein charged with participating in the allegedly fraudulent scheme." *See* 822 F.2d at 1246. The Second Circuit reversed as to the insiders specifically because of an exception to Rule 9(b)'s particularity requirement recognized in *Luce v. Edelstein*, 802 F.2d 49, 55 (2d Cir. 1986), which is limited to fraudulent representations in a securities offering memorandum. *Id.* at 1247–48 (quoting *Luce*, 802 F.2d at 55)).

*DiVittorio* therefore stands for the proposition that complaints lacking specific allegations as to each defendant's role should be dismissed; it does not establish that merely identifying roles is

always sufficient to survive a motion to dismiss. *See id.*[3] Indeed, the fraud claims in *DiVittorio* survived against only three defendants because they were insiders or affiliates involved in the securities offering; the claims against all other defendants were dismissed for failure to plead particularized misconduct. *See id.* at 1247–49.

### 1. The Opposition Fails to Identify Any Specific Public Statements that Were False When Made by Hayden Davis.

In response to the Motion to Dismiss's argument that the Complaint does not identify a specific public statement attributed to Hayden Davis upon which a reasonable purchaser could have relied (MTD 17–18), Plaintiffs identify a handful "specific *acts*" and assert Hayden Davis was the "public-facing leader and chief promoter" of the alleged racketeering enterprise. Opp'n 14 (emphasis added). That's not enough to plead fraud. *See Williams v. Affinion Grp., LLC*, 889 F.3d 116, 124 (2d Cir. 2018) (holding a plaintiff must, at a minimum, "detail the specific statements that are false or fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent."). The premise is circular.

Even if "specific acts" could satisfy Rule 9(b), the actions Plaintiffs attribute to Hayden Davis do not. The actions Plaintiffs identify are that Davis "cultivat[ed] the relationship with Argentine President Javier Milei to create a false narrative of government backing for $LIBRA," posted photos with Milei to "amplify this false affiliation," participated in private "planning calls for the $M3M3 launch," and *after* the $LIBRA launch, stated he was in "control of $LIBRA's liquidity." Opp'n 14.

To begin, a cultivated relationship with a political figure (or a celebrity) does not amount to

[3] Confusing a necessary condition for a sufficient condition is sometimes called the flaw of the converse.

an actionable affirmative misrepresentation that can support a fraud claim. On the contrary, an allegedly false "narrative" of affiliation with a political figure is similar to the vague "impression" allegations rejected by the court in *Yuille v. Uphold HQ, Inc.*, 686 F. Supp. 3d 323, 344–45 (S.D.N.Y. 2023). In *Yuille*, the plaintiff claimed that a cryptocurrency exchange had created the "impression" that it "was a secure cryptocurrency platform when in fact it was not." *Id.* at 345. The district court dismissed the allegation, characterizing the purported security assurances as mere "puffery" on which no reasonable consumer would rely. *Id.* at 346–47.

The district court in *Yuille* further reasoned that the mere fact that a "single account (Plaintiff's own) was compromised and that Defendant failed to respond sufficiently timely to an outside attack" did not demonstrate the "impression was false when . . . communicated." *Id.* Similarly here, even if Hayden Davis had implied the $LIBRA launch had Milei's support, there is no allegation in the Complaint that Milei did *not* support the launch—which he in fact did support (as alleged)—and therefore nothing to suggest that Davis's "impression" or "implied assurance" was false when communicated.

In fact, the Complaint concedes Milei *did* support the launch until he (apparently) changed his mind or was politically compelled to withdraw support given the chatter in the Twitterverse that his Tweet in support may have been a sham (it wasn't). Similarly, Plaintiffs do not allege that Davis's *post*-launch statement that Hayden was "in control of $LIBRA liquidity" was false when made—nor could they, since that was the basis of their prejudgment asset freeze requests. Nor do Plaintiffs explain how any reasonable consumer could have possibly relied on any statements made by Davis in private planning calls concerning the $M3M3 launch (if they were indeed made). *See* Opp'n 14.

### B. The Opposition Fails to Identify Any Specific Public Statements that Were False When Made by Charles Thomas Davis or Gideon Davis.

As for Charles Thomas Davis, the Opposition talks solely about his role as an alleged "key operational planner" (Opp'n 15) without identifying "the specific statements that are false or fraudulent," let alone "when and where the statements were made" or "why [any such] statements were fraudulent." *See Williams*, 889 F.3d at 124.[4] So, too for Gideon Davis. Opp'n 15. Thus, Plaintiffs' RICO and fraud claims against Gideon and Charles Thomas should be dismissed.

### C. Plaintiffs' Failure to Respond to Moving Defendants' No-Duty Argument Dooms Plaintiffs' Federal and State-Law Fraud Claims Premised on Omission.

Moving Defendants' argued that Plaintiffs' material-omissions theory failed for lack of any duty owed. MTD 20–21. Plaintiffs' Opposition *never* addresses Moving Defendants' argument on this point, nor engages the cases cited therein. *See* Opp'n 13–19. Plaintiffs' failure is fatal. "[T]o state a claim for wire or mail fraud based on a material omission of fact, defendant must owe a duty to plaintiffs" to disclose. *See Flexborrow LLC v. TD Auto Fin. LLC*, 255 F. Supp. 3d 406, 423 (E.D.N.Y. 2017). And as it is under federal law, "[u]nder New York law, omissions are actionable as a basis for claims of fraud 'only if the non-disclosing party has a duty to disclose.'" *Kyszenia v. Ricoh USA, Inc.*, 583 F. Supp. 3d 350, 368–69 (E.D.N.Y. 2022). Plaintiffs' reliance on vague ideas about market infrastructure do not bridge this gap. There are no market requirements for disclosures—whatever those might have been—and there are no laws or regulations that impose a duty to do anything specifically. That much is undisputed.

By presenting no arguments in opposition to Moving Defendants' motion to dismiss

---

[4] As explained in the Motion to Dismiss, Charles's statement "Here we go. Been waiting for this one!" in reposting Meteora's X post, "It's official. We are M3M3" (MTD 20)—is precisely the kind of vague future-oriented and aspirational statement that is "so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their importance." *See United States v. Litvak,* 808 F.3d 160, 175 (2d Cir. 2015); *Edmondson v. Raniere*, 751 F. Supp. 3d 136, 175 (E.D.N.Y. 2024).

Plaintiffs' material-omissions theory, any material omission claim should be dismissed.

### D. Plaintiffs' Failure to Respond to Moving Defendants' Reliance Argument Dooms Plaintiffs' New York Common-Law Fraud Claims.

As Plaintiffs correctly observe, a plaintiff's personal reliance is not an element of Plaintiffs' civil RICO claims premised on wire fraud under *Bridge v. Phoenix Bond*, 553 U.S. 639, 661 (2008). Opp'n 21–22.[5] But New York common-law fraud explicitly requires reasonable reliance as an essential element. "To recover damages for fraud under New York law," a plaintiff must plead: "(1) a misrepresentation or omission of material fact; (2) that the defendant knew to be false; (3) that the defendant made with the intention of inducing reliance; (4) *upon which the plaintiff reasonably relied*; and (5) that caused injury to the plaintiff." *Hunt v. Enzo Biochem, Inc.*, 530 F. Supp. 2d 580, 592 (S.D.N.Y. 2008) (emphasis added). Plaintiffs' failure to meaningfully address the Moving Defendants' no-reliance argument (MTD 25–28) amounts to a concession that Plaintiffs' common-law fraud claim should be dismissed and casts serious doubt on Plaintiffs' ability to establish RICO standing. *See Sanofi-Aventis*, 806 F.3d at 87.

### E. The Opposition's Response to Moving Defendants' Materiality Argument Depends On an Allegation Not Found in the Complaint and Fails.

Through the Motion to Dismiss, the Moving Defendants argued that the following tweet was inactionable and immaterial puffery: "A big step in our vision to ensure the next generation of technology and finance reach the masses. We are proud to advise @JMilei on executing this goal in

[5] In the Second Circuit, reliance often functions as a practical necessity to establish the proximate-cause element of RICO standing, which effectively injects a reliance element into mail and wire-fraud predicates: "That is because reliance will typically be a necessary step in the causal chain linking the defendant's alleged misrepresentation to the plaintiffs' injury: if the person who was allegedly deceived by the misrepresentation (plaintiff or not) would have acted in the same way regardless of the misrepresentation, then the misrepresentation cannot be a but-for, much less proximate, cause of the plaintiffs' injury." *Sergeants Benevolent Ass'n Health & Welfare Fund v. Sanofi-Aventis U.S. LLP*, 806 F.3d 71, 87 (2d Cir. 2015).

Argentina and continue changing the world for the better. VIVA LA LIBERTAD." Mot. to Dismiss 19 (quoting Compl. ¶¶ 249–51).

In response, Plaintiffs claim this tweet falls "squarely into the category of material factual claims" because it "orchestrated a narrative that the token was 'Argentina's coin.'" Opp'n 16. Plaintiffs go on to assert that, for any reasonable investor in "the volatile cryptocurrency market, the suggestion of sovereign backing is sovereign backing is profoundly material." *Id.*

To be sure, the statement that $LIBRA was "Argentina's coin" would have been a serious affirmative representation of material fact upon which a reasonable purchaser might rely. The problem is: despite Plaintiffs' use of quotation marks, Kelsier never made any such statement. Nor does the Complaint contain an allegation that Kelsier (or Hayden, Gideon, or Charles Thomas Davis) ever made any such statement. Not only that, but the Tweet that came out on January 30, 2025 (two weeks before the $LIBRA launch) is a comment on Milei's Tweet of his general discussion with Hayden Davis about cryptocurrencies, and does not even reference the $LIBRA token nor relate in any way to its launch.[6]

With the "Argentina's coin" (fictional) context removed, the Kelsier's tweet's vague and aspirational statements fail to meet the test. And they easily fall within the category of "mere puffery," "boastful statement[s]," or "blustering" that are "so obviously unimportant to a reasonable [purchaser] that reasonable minds could not differ on the question of their importance." *See Litvak,* 808 F.3d at 175; *Edmondson v. Raniere*, 751 F. Supp. 3d 136, 170 (E.D.N.Y. 2024). Another court within this District summarily dismissed a case involving similar allegations. In *Gorog v. Musk*, No. 22-CV-5037, 2024 WL 4329918 (S.D.N.Y. Aug. 29, 2024), plaintiffs alleged that Elon

[6] https://x.com/JMilei/status/1885068460268363889

Musk made statements on Twitter "to the effect that":

> Dogecoin might be his favorite currency and that he had purchased some for his son, that Dogecoin is the people's crypto and the future currency of Earth, that Dogecoin might become the standard for the global financial system and the currency of the internet, that Musk agreed to become Dogecoin's CEO, and that Musk might put a "literal" Dogecoin in SpaceX and fly it to the moon and that Dogecoin would pay for the mission, that Tesla vehicles could be bought with Dogecoin, and the like.

*Id.* at *1. Judge Hellerstein dismissed the case in a 385-word, one-page order, holding that "[t]hese statements are aspirational and puffery, not factual and susceptible to being falsified" and that "no reasonable investor could rely upon them." *Id.* The same reasoning applies here.

Plaintiffs' reliance on the Second Circuit's decision in *Meyer v. JinkoSolar Holdings Co.*, 761 F.3d 245 (2d Cir. 2014), for the proposition that "having chosen to speak about compliance measures, an issuer has 'a duty to tell the whole truth'" (Opp'n 16) changes nothing. That case invokes the unremarkable premise that a half-truth can be misleading. But here, there is no half-truth alleged to have been made by any of the Moving Defendants that was relied on, such that they would have needed to fill in or correct to render the statement not untrue.

Here, Plaintiffs struggle to identify *any* actionable material affirmative representations by any Moving Defendant, and we are left to guess at what particular statement on which particular issue or topic gave rise to any supposed duty to "tell the whole truth." *Cf. id.* To be sure, Plaintiffs point to the tokenomics chart published on the VLL website, which reflects the anticipated allocation of tokens. They claim that the chart—showing 20% of funds allocated to Argentine non-profits—is "demonstrably false." (Opp'n 16.) But they never say how or why—or why it is material. They further complain that the website did not provide details on the intended use of the "Argentina growth" tokens. This is incorrect. The website explicitly states that the mission is "to boost the

Argentine economy by funding small projects and local businesses, supporting those who seek to grow their ventures and contribute to the country's development." There is no allegation of fact to show how this was false when made—indeed, it was and continues to be the true intention and purpose. Hurlock cannot say that he relied on it though—he sold before Milei deleted his tweet AND without there being any indication that Moving Defendants had changed their mind about the purpose of the meme coin.

Moreover, the website is a perfect example of Plaintiffs' improper group pleading. *See* MTD 15–16 ("[T]he Complaint does not allege with particularity that any specific individual defendant was solely or directly responsible for drafting, publishing, or approving the tokenomics disclosures on the Viva La Libertad website."). The Complaint alleges generally and on information and belief, that the "Defendants" (collectively) designed and executed the $LIBRA launch, including the creation and use of the website to promote the token." *See* Compl. ¶¶ 253–63. Such unspecific, undifferentiated allegations are facially insufficient. *See First Capital Asset Mgmt. v. Satinwood, Inc.*, 385 F.3d 159, 174–75 (2d Cir. 2004); *Williams*, 889 F.3d at 124.

### F. The Opposition Confirms the Complaint Fails to Plead Facts Supporting a Strong Inference of Fraudulent Intent.

Plaintiffs proceed under the motive-and-opportunity and conscious-misbehavior theories for establishing fraudulent intent. Opp'n 17–18. Both approaches fail. To begin, the Opposition again fails to differentiate between the Moving Defendants, instead focusing on group-pleaded "Kelsier Defendants." *Id.* at 18. As for the substance, Plaintiffs attempt to distinguish a "generalized profit motive" from "an illicit goal to be achieved through market manipulation" enabled through a "unique" opportunity as the developers of the meme coin. *Id.* But Plaintiffs critically fail to distinguish these allegations from the motive and opportunity for the organizers of *any meme coin*

*launch*. After all, and as noted in the Motion to Dismiss, no reasonable purchaser of a meme coin "would believe that the launch organizers are working to launch the meme coin 'for free.'" MTD 23.

Plaintiffs' Opposition attempts bolster their conscious-behavior theory by pointing to "actions after the fraud" as "evidence of consciousness of guilt," specifically the use of certain blockchain mixers to hide profits allegedly extracted from $M3M3 investors. Opp'n 19 (citing FAC ¶ 241). But the cited paragraph again suffers from the same group-pleading problem. FAC ¶ 241 ("Defendants [group-pleaded] also used blockchain mixers"). Identifying the individual defendant is even more critical when it comes to alleging fraudulent intent: as the Second Circuit has held, "[i]n a case involving multiple defendants, plaintiffs must plead circumstances providing a factual basis for scienter for each defendant" to avoid the impermissible stigma of "guilt by association." *In re DDAVP Direct Purchaser Antitrust Litig.*, 585 F.3d 677, 695 (2d Cir. 2009)

Even the case relied on by Plaintiffs—*Shields v. Citytrust Bancorp*, 25 F.3d 1124, 1130 (2d Cir. 1994)—supports dismissal because, in *Shields*, the Second Circuit affirmed dismissal of the complaint "for failure to plead fraud with the particularity required by Rule(b)." *Id.* at 1132.

Plaintiffs further attempt to allege "conscious misbehavior" by the group-pleaded Kelsier Defendants based on the private *M3M3 Token Launch Organizer* and *M3M3 Cals Template.* Yet they have not provided these documents to the Court, nor identified any content showing misbehavior, let alone the deliberate or reckless intent required for scienter. Plaintiffs further rely on Hayden Davis's single-word response—"agreed"—to the observation that no one would purchase tokens if 95% were not publicly available, claiming it demonstrates intent. (Opp'n 18-19.) This trivial acknowledgment of basic market reality does not support a strong inference of conscious

misbehavior. Courts have repeatedly rejected similar claims where the alleged "knowledge" was minimal or non-specific. *See, e.g.*, *In re Lottery.com, Inc. Sec. Litig.*, 765 F. Supp. 3d 303, 345–60 (S.D.N.Y. 2025) (Rochon, J.) (dismissing 10b-5 claims for lack of strong inference of scienter); *Velez v. Lasko Products, LLC*, 706 F. Supp. 3d 444 (S.D.N.Y. 2023) (holding that mere knowledge of lower-quality components is insufficient to establish conscious misbehavior or recklessness).

**IV. Plaintiffs' Cursory RICO Standing Analysis Cannot Salvage Their Flawed Claims.**

To establish RICO standing, injury and proximate cause are analyzed together, and the pleading standard is "more rigorous" than "standing under Article III." MTD 28 (citing *Denney v. Deutsche Bank AG*, 443 F.3d 253, 266 (2d Cir. 2006)). Federal courts limit causation for civil RICO to the "first step" in a causal chain; "[W]hat falls within that 'first step' depends in part on . . . an assessment 'of what is administratively possible and convenient.'" *Empire Merchs., LLC v. Reliable Churchill LLLP*, 902 F.3d 132, 141 (2d Cir. 2018). Relevant administrative difficulties in the civil RICO context include (1) "whether it would [be] difficult to determine how much the tortious conduct injured the defendant, as compared to other factors" and (2) "whether more directly injured victims would be better suited as plaintiffs." *Id.* And where, as here, the Complaint asserts wire-fraud predicates, (3) reliance is an essential element of the causal chain. *See Sanofi-Aventis*, 806 F.3d at 87.

Plaintiffs' Opposition addresses none of the three above- and previously mentioned (MTD 28–29) causal components necessary to establish RICO standing. First, the Moving Defendants identified many instances of third-party conduct breaking the chain of causation—including concerns that Milei's tweet expressing support for $LIBRA was the result of his account's having been hacked and the retraction of Milei's original tweet—which Plaintiffs did not address. *Compare*

MTD 29, *to* Opp'n 21. Yes, Plaintiffs assert their injury "flowed directly from the execution of the market manipulation scheme," Opp'n 22, but they do not point to a false statement that, when corrected, immediately resulted in a declining price. Plaintiffs similarly make no allegations to show how any of their losses were not market-driven—which is particularly problematic in the context of meme coins, where all charts look substantially similar (a large increase followed by a precipitous decline).

Second, Plaintiffs do not address the binding Second Circuit caselaw holding that reliance is an essential element of RICO standing for claims premised on wire or mail fraud. *See Sanofi-Aventis*, 806 F.3d at 87 ("reliance will typically be a necessary step in the causal chain linking the defendant's alleged misrepresentation to the plaintiffs' injury"). This failure is particularly problematic here because Plaintiffs *admit* they relied on third-party statements and conduct, including "Defendant Chow's endorsement" (as for $M3M3), "Meteora's reputation as a trustworthy launch platform," statements in a "private online investment group" (as for $LIBRA), and the "seeming endorsement of Argentinian President Javier Milei." FAC ¶¶ 107, 333, 334, 100, 108.

And third, Plaintiffs also do not respond to, and therefore concede, the Moving Defendants' argument that more direct victims (those who traded directly with the Moving Defendants) would be better suited as lead plaintiffs. *See* MTD 31 (citing *Empire Merchs.*, 902 F.3d at 144). While Plaintiffs hint at the idea that the vague fraudulent statements and fraudulent infrastructure somehow affects market price—this quasi "fraud on the market" theory has no factual basis in the allegations—there are no allegations of adequate market liquidity, price discovery, coverage, or sustained trading to show that relying on market price can be any kind of substitute for reliance on the fraudulent statements or so-called infrastructure.

Because Plaintiffs fail to plausibly allege that any predicate act was the but-for and proximate cause of a clear, definite injury to their business or property, they lack RICO standing.

## V. Plaintiffs' Failure to Address Adverse Authority on the "Pattern" and "Enterprise" Elements Dooms Their Civil RICO Claims.

The Motion to Dismiss asserted Plaintiffs had failed to plausibly allege a RICO "pattern" or "enterprise," essential elements of a civil RICO claim. MTD 32–42.

### A. Plaintiffs Fail to Establish Closed- or Open-Ended Continuity.

To plead a RICO pattern, a plaintiff must allege *continuity*—at least two predicate acts that "amount to or pose a threat of continued criminal activity." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239–41 (1989). Closed-ended continuity requires pleading a series of related predicates extending over a "substantial period of time," and open-ended continuity requires establishing that racketeering acts will continue into the future. *GICC Capital Corp. v. Tech. Fin. Grp., Inc.*, 67 F.3d 463, 465–66 (2d Cir. 1995); *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 184–85 (2d Cir. 2008). Where, as here, the enterprise is a legitimate business, continuity is not inferred merely because the enterprise will keep operating; plaintiffs must plead facts showing that racketeering is the entity's regular way of conducting business or that concrete plans exist for future racketeering. *See H.J.*, 492 U.S. at 242; *GICC*, 67 F.3d at 466.

Plaintiffs essentially concede they cannot establish closed-ended continuity because the RICO predicate acts, separated by only a few months, did not extend over "a substantial period of time." *See* Opp'n 24. Plaintiffs' understated acknowledgment that "the Second Circuit often looks for periods exceeding two years" (*see id.*) is contrary to the precedential decisions cited in the Motion to Dismiss, which squarely hold that a "sixteen-month period of time is insufficient to establish closed-ended continuity," *Spool v. World Child Int'l Adoption Agency,* 520 F.3d 178, 184 (2d Cir.

2008), and note that the Second Circuit had previously overturned a jury instruction that "a few weeks or months' might constitute 'a substantial period of time.'" *GICC*, 67 F.3d at 467 (citing *Metromedia v. Fugazy,* 983 F.2d 350 (2d Cir. 1992)). Indeed, Plaintiffs' contention "there is no bright-line rule" (Opp'n 24) is directly contradicted by the Second Circuit decision in *GICC*: "Though an approach giving such weight to the duration of criminal activities alleged in connection with a closed-ended pattern of racketeering activity *is undoubtedly somewhat mechanistic*, we believe that it is required to effectuate Congress's intent to target 'long-term criminal conduct.'" 67 F.3d at 468 (emphasis added).

Plaintiffs' closed-ended-continuity fares no better. To plead a "pattern of racketeering activity" predicated on open-ended continuity, a plaintiff must allege facts showing "past criminal conduct coupled with a threat of future criminal conduct." *GICC*, 67 F.3d at 465-66. The threat element is satisfied only where the complaint plausibly pleads (1) that the racketeering scheme, by its nature, projects into the future or (2) that the racketeering acts are the "regular way" the enterprise conducts its business. *See H.J.*, 492 U.S. at 242–43. The Opposition resorts to labels like "fraud factory with a repeatable business model" (Opp'n 24–25) instead of identifying concrete factual allegations demonstrating how and why the Defendants will continue to commit racketeering acts after the identified scheme ends. *See Reich v. Lopez*, 858 F.3d 55, 60-61 (2d Cir. 2017).

Plaintiffs totally (and fatally) fail to confront, let alone rebut, the Moving Defendants' argument that the alleged $M3M3 and $LIBRA schemes cannot establish open-ended continuity because they are "inherently terminable." *GICC*, 67 F.3d at 466–67 (finite plan to strip a single company of assets insufficient); *Spool*, 520 F.3d at 186 (holding that an alleged fraudulent adoption processing scheme was "inherently terminable" because "once the defendants conclude"

processing client applications, they have no more adoption "files with which to work"); MTD 36–37. Plaintiffs do not dispute that each scheme was fully executed within hours of beginning, precluding open-ended continuity as a matter of law under Second Circuit precedent. *See GICC*, 67 F.3d at 466–67; *Spool*, 520 F.3d at 186.

**B. Plaintiffs' Resort to the "Playbook" and "Blueprint" Labels Cannot Save Their RICO Claims Premised on Unrelated Predicate Acts.**

To establish horizontal relatedness, a plaintiff must allege that the predicate acts share common purposes, participants, victims, or methods of commission, or "otherwise are interrelated by distinguishing characteristics." *Reich*, 858 F.3d at 60–61. Plaintiffs assert in a conclusory manner that both schemes followed the "same blueprint" (Opp'n 23) but do not meaningfully confront the fact that $M3M3 and $LIBRA both involved entirely different alleged methods of commission—single-sided liquidity pools, in the case of $LIBRA, and an alleged "freeze/thaw" sniping theory for $M3M3. *Compare* Compl. ¶¶ 150–52, 290., *with id.* ¶¶ 197, 216. Indeed, when this lawsuit was originally filed, single-sided liquidity pools were the heart of Plaintiff's theory of the case. Of course, the Opposition does not engage with the point that the $M3M3 scheme was originally the subject of an *entirely separate* federal securities lawsuit (*Clarke v. Chow*, No. 25-CV-3268)—which underscores that these two predicate acts are unrelated. Nor does the Opposition grapple with the divergent purposes of the meme coins: one to end player-versus-player competition, and the other to promote decentralized finance in Argentina. *See* Opp'n 22–23. Plaintiffs' characterizations cannot change the reality that these two schemes are so unrelated that they were initially filed as separate actions and only later fused into a putative class action for unexplained strategic purposes.

**C. Plaintiffs' Cursory "Enterprise" Analysis Fails to Confront Adverse Authority.**

To state a RICO claim, a plaintiff must plausibly allege a RICO "enterprise," that defendants

shared a distinct, wrongful purpose beyond parallel business interests. *See Boyle v. United States*, 556 U.S. 938, 946 (2009). The Opposition confirms Plaintiffs proceed only on an association-in-fact theory. Opp'n 26. To plead an association-in-fact enterprise, the grouping must have "at least three structural features": (1) a common fraudulent purpose, (2) relationships among those associated with the alleged enterprise, and (3) longevity sufficient to permit these associates to pursue the enterprise's purpose. *See Boyle*, 556 U.S. at 946.

Plaintiffs fail at each element. Plaintiffs' analysis of a "common purpose" is restricted to two sentences citing only one paragraph in the Complaint. Opp'n 26 ("the common purpose was . . . to engineer token launches that appeared legitimate while exploiting hidden control to guarantee outsized insider profits at the expense of retail investors" (citing FAC ¶ 379)). Although sensationalized, Plaintiffs' Opposition does not meaningfully differentiate an arms' length business arrangement to fund and launch meme coins from "a common purpose to engage in a particular fraudulent course of conduct." *See Satinwood*, 385 F.3d at 174. And merely describing "relationships and structure" as "clear and defined" (Opp'n 26) does not plead sufficient facts to show that the relationships between Meteora, Chow, Hayden Davis, Kelsier, Gideon Davis, and Charles Thomas Davis were so intertwined that the Court could fairly conclude that the alleged members "functioned as a continuing unit." *Cf. Boyle*, 556 U.S. at 943. For instance, Plaintiffs do not point to detailed factual allegations about the interpersonal relationships, communications, or how the groups—located in different parts of the country—functioned as a continuing unit.

Plaintiffs' failure to plausibly allege "longevity" especially cries out for dismissal. Plaintiffs' Opposition glosses over (Opp'n 26–27) the numerous cases cited in the Motion to Dismiss indicating that four-and-a-half months is not enough to establish the "longevity" element of a RICO claim. *See*

MTD 41–42. For example, courts within the Second Circuit have typically encountered multi-*year* schemes before finding adequate longevity. *Equinox Gallery Ltd. v. Dorfman*, 306 F. Supp. 3d 560, 573 (S.D.N.Y. 2018) (finding six years adequately alleges "that the enterprise had sufficient longevity"); *Elsevier Inc. v. W.H.P.R., Inc.*, 692 F. Supp. 2d 297, 306 (S.D.N.Y. 2010) (finding 11 years is "a sufficient period of time to satisfy the requirement of longevity"). And persuasive authority holds that four-and-a-half months is not enough. *See, e.g.*, *Nunes v. Fusion GPS*, 531 F. Supp. 3d 993, 1007 (E.D. Va. 2021) (holding six months does not "sufficiently support longevity.").

## VI. The Conspiracy Claims Fail Because the Underlying RICO and Fraud Claims Fail.

Plaintiffs do not dispute Moving Defendants' argument that if the underlying RICO claims and fraud claims are dismissed, then the conspiracy claims should also necessarily be dismissed. *See* Opp'n 28–29. Thus, the conspiracy claims should be dismissed.

## VII. Plaintiffs' State-Law Claims Should Be Dismissed Under Rule 12(b)(6).

### A. Plaintiffs' New York General Business Law Claims Should Be Dismissed.

The Motion to Dismiss made four arguments for dismissal of the New York General Business Law ("GBL") claims: First, Plaintiffs do not plead a deceptive act or transaction "in New York" by any Moving Defendant; second, Plaintiffs fail to plead a materially misleading statement likely to deceive a reasonable consumer; and third, for section 350, Plaintiffs do not identify the "specific text of a specific advertisement" or reliance. Fourth, the motion also pointed to Plaintiffs' failure to plead causation. MTD 44–51.

Plaintiffs' Opposition largely sidestepped these defects. On territoriality, they leaned on the presence of a New York plaintiff and allegations that a non-moving co-defendant resided or operated from New York (Opp'n 30–31), but did not tie any Moving Defendant's alleged deceptive act or transaction to New York. *See Greene v. Clean Rite Centers, LLC*, 714 F. Supp. 3d 134, 147 (E.D.N.Y.

2024) (holding that to satisfy the GBL's territoriality requirement, the plaintiff must allege (a) he or she "actually view[ed] a deceptive statement while in New York" or (b) the "underlying deceptive 'transaction' t[ook] place" in New York (quoting *Cruz v. FXdirectdealer, LLC*, 720 F.3d 115, 122 (2d Cir. 2013)). To support their argument that these allegations are sufficient to establish territoriality under Section 349, Plaintiffs cite *Goshen v. Mut. Life Ins. Co.*, 774 N.E.2d 1190 (N.Y. 2002). But *Goshen* supports the dismissal of Plaintiffs' section 349 claim. In *Goshen*, the New York Court of Appeals held that "hatching a scheme" or "originating a marketing campaign in New York" does not constitute an actionable deceptive act or practice under Section 349. *Id.* at 1195.

Second, Plaintiffs fail to identify a materially misleading statement by any Moving Defendant likely to deceive a reasonable consumer. Courts may determine, as a matter of law, that alleged statements would not mislead a reasonable consumer absent a specific falsifiable representation; vague hype and generalized "impressions" are insufficient. MTD 44–45 (citing *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013)). Plaintiffs' Opposition again resorts to group pleading and undifferentiated references to "promotional campaigns" (Opp'n 31) without pinning any specific statement, speaker, and context to any Moving Defendant. That failure is dispositive.

Third, the section 350 claim independently fails because Plaintiffs do not allege "false advertising" with the required specificity and do not plead reliance. MTD 51 (citing *Fink*, 174 F.3d at 742).

Fourth, Plaintiffs have not pleaded causation. Plaintiffs' Opposition offers no particularized causation theory tied to any specific Moving Defendant and any specific statement viewed in New York.

### B. Plaintiffs' Unjust-Enrichment Claims Should Be Dismissed.

For unjust enrichment, the Motion to Dismiss showed the claim is duplicative of Plaintiffs' deception and tort theories and is not available as a "catchall" backstop. MTD 52–53. Plaintiffs responded with a generalized appeal to alternative pleading at the Rule 8 stage, without confronting the line of decisions dismissing unjust-enrichment claims that merely duplicate the same facts underpinning the statutory and tort counts, or the Court of Appeals' admonition that unjust enrichment is not a fallback when other claims fail. *See* Opp'n 31–32. Their concession that unjust enrichment is intended to be a "backstop" (Opp'n 31) underscores why it should be dismissed. Plaintiffs' inadequate response should result in dismissal.

## VIII. The Court Lacks Personal Jurisdiction Over the State-Law Claims Against the Moving Defendants.

If this Court dismisses the federal claims, the court will lack personal jurisdiction over the Moving Defendants. The Motion to Dismiss set out the two-step analysis: Plaintiffs must establish personal jurisdiction under New York's long-arm statute separately for each defendant and each claim, and then show that exercising jurisdiction comports with due process. MTD 53. Group pleading is impermissible. *Id.*

Plaintiffs' Opposition lacks any evidence—meaning, there is no evidence showing that any Moving Defendant transacted business in New York, committed a New York tortious act causing injury in New York with the requisite in-forum conduct, or otherwise purposefully availed themselves of New York in a manner from which these claims arise. Opp'n 33. Plaintiffs instead invoke a "conspiracy theory of jurisdiction," (Opp'n 32–33) which has a dubious basis in constitutional law. Nor do they address the due-process requirement that each defendant

have minimum contacts with New York such that the claims "arise out of or relate to" those

contacts. *See* MTD 59–60. Reliance on another defendant's alleged New York activities or the supposed "direction" of a broader scheme from New York (Opp'n 34) does not satisfy the New York Long Arm Statute (CLPR § 302) or due process for these Moving Defendants.

The Motion to Dismiss raised these defects in detail; the Opposition does not address them at all. Plaintiffs instead invoke a "conspiracy theory of jurisdiction," (Opp'n 32–33) which has no basis in fact and a questionable basis in law.

## IX. CONCLUSION

Based on the foregoing, the Motion to Dismiss should be granted with prejudice.

Dated: November 18, 2025

**SBAITI & COMPANY PLLC**

*/s/ George M. Padis*
**Mazin A. Sbaiti**
New York Bar No. 4339057
**George M. Padis** (Admitted *Pro Hac Vice*)
3102 Maple Avenue, Suite 4900W
Dallas, TX 75201
T: (214) 432-2899
F: (214) 853-4367
E: mas@sbaitilaw.com
george.padis@sbaitilaw.com

*Counsel for Kelsier Labs, LLC, Hayden Mark Davis, Gideon Davis, and Charles Thomas Davis*

**M. CRIS ARMENTA, P.C.**
M. Cris Armenta (Admitted *Pro Hac Vice*)
217 Clancy Way
Bozeman, Montana 59718
T: (310) 488-2080
F: (310) 421-1021
E: cris@crisarmenta.com

*Counsel for Hayden Mark Davis*

## CERTIFICATE OF COMPLIANCE

In compliance with Local Civil Rule 7.1 of the United States District Courts for the Southern District of New York, I hereby certify that this memorandum of law contains 6,986 words, excluding the portions of the brief exempted by Local Civil Rule 7.1.

*/s/ George M. Padis*
George M. Padis