UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| OMAR HURLOCK AND ANUJ MEHTA, *on behalf of themselves and all others similarly situated*<br><br>Plaintiffs,<br><br>v.<br><br>KELSIER LABS, LLC, d/b/a KELSIER VENTURES, HAYDEN MARK DAVIS, GIDEON DAVIS, CHARLES THOMAS DAVIS, METEORA, *an unincorporated association*, and BENJAMIN CHOW,<br><br>Defendants. | Case No.: Case No. 1:25-cv-03891-JLR |

**DECLARATION OF MAX BURWICK, ESQ. IN SUPPORT OF
APPLICATION FOR TEMPORARY RESTRAINING ORDER**

Max Burwick, an attorney duly admitted to practice before this Court, declares under penalty of perjury pursuant to 28 U.S.C. § 1746:

**I. INTRODUCTION AND QUALIFICATIONS**

1. I am Partner at Burwick Law PLLC, counsel of record for Plaintiffs in the above-captioned action. I have personal knowledge of the facts set forth in this declaration based upon my participation in this litigation, review of documents and blockchain evidence, consultation with blockchain forensic experts, and communications with opposing counsel.

2. I submit this declaration in support of Plaintiffs' Motion for Temporary Restraining Order to prevent the destruction of blockchain evidence through conversion to untraceable cryptocurrency formats.

## II. PROCEDURAL HISTORY

3. This action was commenced on March 17, 2025 with the filing of a Complaint for Damages, in New York State Supreme Court for the County of New York. The case was removed to this Court on May 9, 2025.

4. This Court granted Plaintiffs' that motion on May 29, 2025, finding that "Plaintiff has established the likelihood of irreparable harm in the absence of temporary injunctive relief given the ease through which these assets could be dissipated, the risks that Defendants will do so, and the value of the Defined Assets in relation to losses alleged to have been suffered by the Plaintiff putative class." [Dkt. 13].

5. A preliminary injunction hearing was held before this Court on August 19, 2025, where the Court denied Plaintiffs' motion for preliminary injunction seeking a complete asset freeze and dissolved the temporary restraining order previously granted [Dkt.138].

6. This renewed motion seeks materially different relief than what was previously denied. The prior motion sought a complete freeze of all Defendants' assets to preserve them for a potential judgment. This motion seeks only to prevent the specific act of converting traceable digital assets into untraceable formats that would destroy blockchain evidence. Defendants would retain full use of their funds for all legitimate purposes.

## III. NEW EVIDENCE OF IMMINENT HARM

8. Since the preliminary injunction hearing, Plaintiffs have conducted continuous monitoring of blockchain wallets associated with the $LIBRA and $M3M3 token fraud.

9. **The November 16, 2025 Test Transaction**: On November 16, 2025, our blockchain monitoring detected the following sequence of transactions that we now understand to be a test of Defendants' anonymization capabilities:

    a. At 18:48:07 UTC, the wallet identified as "$Libra Team Wallet 2" (blockchain address: 2QmyirshoyT2ApsQU8bXdeGa2vTsNp1rxEzv4qhzTwyh) executed a swap of 1,367,016.21 LIBRA tokens for 16.65 SOL tokens. The transaction hash is: 65jNutLAN7R1JtCoexEFzAyZo3nogjAG3bpckZk7gwSrR63sZrc1Z5BwFjcdwxHfCHF1ZgymkPmTqXSwTcNKeVru.

    b. At 18:49:35 UTC (88 seconds later), the same wallet transferred 23.4 SOL tokens to a newly created wallet address: 7mXzWU5MB6wnzhZjsZXh24Pi3yT1j26PvsPoqSNt9SNi. Transaction hash: 2MGVEvUKBJrX5YuHTm4JucyuPV2zXC2erhbcsrPULUwkPUWsJH4Lx6Yi5pF9cdyRbzzjxMBg5MCNuyoXe7icirTB.

    c. At 18:49:49 UTC (14 seconds after the previous transaction), the newly created wallet transferred the entire 23.4 SOL to "NEAR Intents" (address: HWjmoUNYckccg9Qrwi43JTzBcGcM1nbdAtATf9GXmz16). Transaction hash: 5oB68p1NtHSpYjpbinDCxNyyLpeFJ3FPNJGqohNFJ4sDEQyebaGi5KAWz3wuNjQSyfvU6ZrbedNt1CYBVGTVDUoq.

10. NEAR Intents is a cross-chain anonymous token swap protocol. Based on consultation with our forensic experts, NEAR Intents enables users to swap tokens across different blockchains while breaking the transaction trail. Once funds enter NEAR Intents, they cannot be traced to their ultimate destination. The November 16 transaction was therefore a successful test of Defendants' ability to anonymize digital assets.

11. The November 18, 2025 Mass Conversions: Beginning in the early morning hours of November 18, 2025, Defendants initiated massive conversions of USDC stablecoins to SOL tokens across multiple wallets:

    a. Exit Wallet 1 (61yKS9bjxWdqNgAHt439DfoNfwK3uKPAJGWAsFkC5M4C): This multi-signature wallet, requiring 2 of 3 authorized signers, converted $44,593,888.56 USDC to 328,619.45 SOL through 37 separate transactions between [time] and [time]. Our analysis shows that Exit Wallet Member 1 (3qAbEVhxvehqWae3iHtMSfE6mR2uhzmwjyKb5NGdQj2s) and Exit Wallet Member 2 (4Tmxqm4PPVSwVo3jeFyGcXVojwP1WLGehQZupHdezpxv) signed each transaction.

    b. $Libra Deployer Wallet (DefcyKc4yAjRsCLZjdxWuSUzVohXtLna9g22y3pBCm2z): This wallet, which originally created and distributed the LIBRA tokens, executed the following transactions on November 18: i. Removed $3,939,972.91 in USDC liquidity from Meteora DLMM pools ii. Converted $17,000,455.10 USDC to 127,783.28 SOL through 34 separate transactions iii. Transferred 127,871.66 SOL and 54,287,599.19 LIBRA tokens to a newly created wallet: FKp1tEiy55hiAZs3RaYr8mj87U5ZcopB5aXgCPD8dNX7

12. Current Status: As of 3:00 PM ET on November 18, 2025:

    o   Exit Wallet 1 holds 328,619.45 SOL (approximately $44.6 million)

    o   $Libra Deployer (First Hop) holds 127,871.66 SOL (approximately $18.02 million)

    o   Total: 456,491.11 SOL tokens (over $62 million) positioned for anonymization

13. Attached to our expert David Goldman's Declaration is a visual diagram prepared by our forensic experts showing the complete flow of funds and the anonymization pathway.

## IV. ATTEMPTS TO PROVIDE NOTICE

14. Given the emergency nature of this application and the speed with which digital assets can be anonymized, I have attempted to provide notice to Defendants' counsel as follows:

15. On November 18, 2025, I notified Defendants' counsel via email of: 1) the detected blockchain transactions showing the USDC to SOL conversions; 2) our analysis showing these conversions match documented patterns for anonymization; 3) our intent to seek emergency relief from this Court today.

16. Specifically, at 11:30 a.m. on November 18, 2025, I sent an email to all defense counsel of record informing them that, "We just observed one of the wallets previously frozen under the TRO attempting to move funds through an anonymizing service. We intend to file a TRO this afternoon. We are available to discuss if you have questions this morning"

17. During that email exchange, I also provided to defense counsel the addresses for the digital wallets at issue. Defense counsel did not provide an explanation for the observed movements.

18. Providing formal notice of this Motion to Defendants would defeat the purpose of the Order as it would enable Defendants to complete the irreversible anonymization of $62 million in digital assets before any hearing could be held.

19. Based on the November 16 test transaction and consultation with our experts: a.) Defendants have demonstrated the ability to transfer SOL to anonymization protocols in under 2 minutes; b.) Conversion from SOL to Monero (untraceable cryptocurrency) can be completed in 30-60 seconds using decentralized exchanges; c.) These exchanges operate 24/7 without any human intervention; d.) No know-your-customer (KYC)

verification is required; and e.) Once converted to privacy coins or processed through mixers, the funds become permanently untraceable.

## V. IRREPARABLE HARM FROM EVIDENCE DESTRUCTION

20. The harm Plaintiffs face is not merely monetary but evidentiary. The blockchain provides an immutable, public ledger that allows us to:

    - o   Identify wallet ownership and control
    - o   Trace the flow of investor funds
    - o   Establish connections between conspirators
    - o   Prove the timing and coordination of fraudulent transfers
    - o   Identify additional victims and defendants

21. Once Defendants convert their SOL tokens to privacy coins or route them through mixing services, this evidence is permanently destroyed. No subpoena, court order, or forensic technology can reconstruct the trail once it enters privacy protocols.

22. Our expert has confirmed that once the SOL tokens are converted to privacy formats:

    - o   The sending address becomes hidden among cryptographic decoys
    - o   The receiving address is replaced with one-time stealth addresses
    - o   The transaction amounts are encrypted
    - o   No forensic tool, including those used by government agencies, can penetrate these privacy features

23. This constitutes classic spoliation of evidence under Second Circuit law—the intentional destruction of evidence relevant to pending litigation. But unlike traditional spoliation that might be remedied through sanctions or adverse inferences, the destruction here is absolute and irreversible.

## VI. THE NARROW NATURE OF REQUESTED RELIEF

25. I want to emphasize that Plaintiffs are NOT seeking to freeze Defendants' assets or prevent them from using their funds. Under the proposed order,

    **Defendants CAN:**

    - Transfer funds between any transparent blockchain wallets
    - Convert digital assets to U.S. dollars or other fiat currencies
    - Pay attorneys, vendors, employees, and personal expenses
    - Trade between Bitcoin, Ethereum, SOL, USDC, and thousands of other traceable cryptocurrencies
    - Conduct any legitimate business operations

    **Defendants CANNOT**:

    - Convert to privacy coins (Monero, Zcash, Dash, etc.)
    - Use mixing services or tumblers
    - Employ zero-knowledge proof protocols
    - Use cross-chain bridges to privacy networks

26. This narrow prohibition serves only to preserve evidence, not to restrict Defendants' legitimate use of funds.

## VII. VERIFICATION

27. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed on November 19, 2025
New York, New York

*/s/ Max Burwick*
Max Burwick, Esq.