IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| OMAR HURLOCK and ANUJ MEHTA, *on behalf of themselves and all others similarly situated*,<br><br>    Plaintiffs,<br><br>vs.<br><br>KELSIER LABS, LLC d/b/a KELSIER VENTURES, et al.,<br><br>    Defendants. | Case No. 1:25-cv-03891 (JLR) |

**DEFENDANTS KELSIER LABS, LLC, HAYDEN MARK DAVIS, GIDEON DAVIS, AND CHARLES THOMAS DAVIS'SMEMORNANDUM OF LAW IN OPPOSITION TO EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER TO PREVENT DESTRUCTION OF BLOCKCHAIN EVIDENCE**

**SBAITI & COMPANY PLLC**
Mazin A. Sbaiti, Esq.
New York Bar No. 4339057
George M. Padis (Admitted *Pro Hac Vice*)
Texas Bar No. 24088173
2200 Ross Avenue – Suite 4900W
Dallas, TX 75201
T: (214) 432-2899
F: (214) 853-4367
E: mas@sbaitilaw.com
george.padis@sbaitilaw.com

*Counsel for Kelsier Labs, LLC, Hayden Mark Davis, Gideon Davis, and Charles Thomas Davis*

**M. CRIS ARMENTA, P.C.**
M. Cris Armenta (Admitted *Pro Hac Vice*)
217 Clancy Way
Bozeman, MT 59718
T: (310) 488-2080
F: (310) 421-1021
E: cris@crisarmenta.com

*Counsel for Hayden Mark Davis*

**TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................................. i

TABLE OF AUTHORITIES .......................................................................................................... ii

I.   PRELIMINARY STATEMENT .......................................................................................1

II.  ARGUMENTS AND AUTHORITIES..............................................................................2

     A.   This is the Same Motion All Over Again ...............................................................2

     B.   There is No Evidence Defendants Used "Anonymization Tools" .........................3

     C.   There is No Evidence That Plaintiffs Have Done or Will Do
          Anything Unlawful..................................................................................................4

III. CONCLUSION...................................................................................................................5

CERTIFICATE OF COMPLIANCE ...............................................................................................6

## TABLE OF AUTHORITIES

*Grupo Mexicano de Desarrollo, S. A. v. Alliance Bond Fund, Inc.*,
    527 U.S. 308 (1999) ..................................................................................................3

*Trump v. CASA, Inc.*,
    No. 24A884, 2025 WL 1773631 (U.S. June 27, 2025) ...........................................3

## I. PRELIMINARY STATEMENT

Defendants Hayden Davis, Charles Thomas Davis, Gideon Davis, and Kelsier Labs ("<u>Defendants</u>") respectfully oppose *Plaintiffs' Emergency Motion for Temporary Restraining Order to Prevent Destruction of Blockchain Evidence* ("TRO Motion").

For the fourth time, Plaintiffs complain that the $LIBRA-related tokens are at risk of dissipation which is irreparable harm justifying injunctive relief. This Court already ruled that dissipation of these funds would not be irreparable harm—Plaintiffs have no right to them, Plaintiffs' claims are of highly dubious merit, and damages are an adequate remedy. Nothing has changed to warrant reversal of that conclusion. If anything, the currently pending 12(b)(6) motions reinforce the notion that this case is meritless.

Plaintiffs mask the fact that this is the same motion filed again by seeking a slightly different injunction. Plaintiffs claim they seek only to block "anonymization tools," but they have not justified this invasive maneuver. What they really seek to do is put Defendants under a microscope for funds that this Court has correctly ruled Plaintiffs are not likely to be entitled to, and are (and should remain) freely movable, transferable, and alienable, which will not cause irreparable harm.

Fatally, the Plaintiffs have not provided this Court with any evidence that the Defendants are responsible for the extraction of the $3,910 from Libra Wallet 2, and have not provided this Court with any evidence that the other swaps and transfers were anonymous, invisible, nefarious or unlawful. Defendants, again, vastly overclaim what their evidence shows: they irresponsibly attribute the "anonymization" tools to the *Defendants*, despite their own expert acknowledging that he has no evidence as to who controls the specific anonymous wallet.

The Motion should be denied.

## II.     ARGUMENTS AND AUTHORITIES

A.     THIS IS THE SAME MOTION ALL OVER AGAIN.

Plaintiffs have filed multiple attempts to grab these assets. Plaintiffs first sought and obtained a TRO over all the $LIBRA assets predicated on the notion that the assets were subject to dissipation and dissipation would irreparably harm the Plaintiffs and the Class [Dkt. 19]. The Defendants voluntarily appeared to defend the motion and the case.

On August 19, 2025, after Plaintiffs were given a full and fair opportunity to supplement the record, the Court dissolved the TRO and denied the Motion for Preliminary Injunction. [Dkt. 138]. The Court expressed its "extreme skepticism" about the merits of the case and ruled that "it is plain that money damages would be available to compensate the putative class for defendants' alleged conduct should plaintiffs prevail in this litigation." [Transcript of Proceedings, August 19, 2025, at 57:14-17]. The Court further held that the "unique nature of cryptocurrency is not alone sufficient to support a finding of irreparable harm" [Tr. at 65:1-2] and noted that no evidence had been presented regarding the insolvency of any defendant [Tr. at 65:3-6].

Since the hearing, Plaintiffs' tactics have become vexatious. While contending that they have secret witnesses and documents, they have supplemented and amended the Complaint (and seek to amend again). Despite the fact that the pleadings are not settled and the operative Complaint is subject to a pending Motion to Dismiss, the docket reflects 248 entries already. Plaintiffs have filed a variety of meritless follow-up motions to the original TRO, which the Court properly denied. (*See, e.g.,* Order denying request for expedited discovery [Dkt. 104]; Order denying motion to seal and for an evidentiary hearing [Dkt. 184]; Order denying motion to seal [Dkt. 192]; Order denying Motion to Appoint Ad Litem [Dkt. 210]; Order denying Rule 52(b) motion [Dkt. 220]; Order denying

Motions regarding denied Preliminary Injunction [Dkt. 220]; and Order denying alternative service [Dkt. 221]).

The Court should again deny the TRO Motion because the usual requirements for a TRO are simply not met. This Court already ruled that there is not a real likelihood of success on the merits, that the threatened risk of dissipation is not irreparable harm, and that damages are adequate. Nothing in the new TRO Motion changes those realities or compels revisiting them. To the contrary, the activity has more perfectly legitimate purposes, including fulfilling the purpose of the $LIBRA token. Also, the chances of success on the merits have not improved since August—Plaintiffs' likelihood of success has further decreased given the 12(b)(6) briefing (of which this Court can take judicial notice).

And finally, there is still no basis in equity to award what amounts to tens of millions in class-wide relief for an uncertified, unascertainable, international damages class. *Trump v. CASA, Inc.*, No. 24A884, 2025 WL 1773631, at *6, 10-11 (U.S. June 27, 2025); *Grupo Mexicano de Desarrollo, S. A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 333 (1999). This is especially so where the only named plaintiff's claim (Hurlock's) is worth less than $100, and the facts show that he sold his coins before any corrective disclosure occurred.

B.  **THERE IS NO EVIDENCE DEFENDANTS USED "ANONYMIZATION TOOLS."**

Plaintiffs make the unfounded claim—without providing any supporting evidence—that the Defendants have used "anonymization tools" to remove $LIBRA and make it untraceable. However, Plaintiffs themselves admit that this is pure speculation. Plaintiffs' TRO Motion relies solely on the Declaration of David Goldman, an employee of Plaintiffs' counsel, for factual support. However, Mr. Goldman himself acknowledges that he "express[es] no opinion on who controls any

3

wallet" (Declaration of David Goldman ("Goldman Decl.") ¶ 24). Thus, they admit that they do not know the identity of the person or entity controlling Libra Wallet 2, which, according to their allegations, was responsible for extracting a whopping difference-making $3,170 from the blockchain to an unknown destination.

Despite this, Plaintiffs' counsel irresponsibly concludes in the TRO Motion that the *Defendants* were responsible for the transactions, stating: "The November 16 test transaction shows that Defendants have already used anonymization tools with LIBRA proceeds and can complete that process in under two minutes." TRO Motion at 13. This is baseless. The Defendants neither control Libra Wallet 2 nor did what Plaintiffs' counsel say they did. And for the others, Plaintiffs point to what they call "Exit Wallet Activity" and "Deployer Wallet Liquidation." These fancy terms boil down to a simple concept: transfers of tokens occurred. However, according to Plaintiffs' own evidence, these transactions are fully visible—they were not shielded from the public blockchain, nor were any anonymous tools used.

Therefore, there is no evidence to support the TRO Motion.

C.  **THERE IS NO EVIDENCE THAT DEFENDANTS HAVE DONE OR WILL DO ANYTHING UNLAWFUL OR WRONGFUL WITH THE ASSETS.**

There is no evidence that the alleged transactions are nefarious or unlawful—as opposed to being part of the Viva La Libertad Project—indeed, they are perfectly consistent with the initial stated purpose and with the pre-launch published tokenomics.[1] And the fact that this Court denied

---

[1] By way of reminder, $LIBRA is a meme coin that was launched "[a]s a symbol" and "in honor of Javier Milei's libertarian ideas." Original Compl. ¶ 48. Proceeds from the $LIBRA token were intended "to boost the Argentine economy by funding small projects and local businesses" in Argentina. Am. Compl. ¶ 44. A tokenomics graph on the project's website [https://www.vivalalibertadproject.com/] indicated that 50% of the token proceeds would be used to support "Argentina Growth," 30% would provide "Liquidity," and the remaining 20% would be retained as "Treasury." Am. Compl. ¶¶ 258–259. Nothing about the transactions is inconsistent with these allocations and representations.

4

the TRO in August means that the Court confirmed Defendants' right to transfer, use or alienate the tokens and assets. To the extent they have control over the assets, Defendants have no duty to report—and should not have to—their every move taken in connection with the effectuation of the Project and consistent with the published tokenomics on the website. There is no basis for mandating so in the law, equity, or in the record.

### III.   CONCLUSION

The TRO Motion lacks any evidence to justify injunctive relief as to any person other than Hurlock, which simply does not warrant the relief requested. Plaintiffs' attempt to claim, yet again, that irreparable harm or the dissipation of assets exists fails. There is *still* no evidentiary or legal basis for the imposition of the TRO sought by the Plaintiffs. The TRO Motion should be denied again.

Dated:  November 21, 2025

**SBAITI & COMPANY PLLC**

*/s/ Mazin A. Sbaiti*
**Mazin A. Sbaiti**
New York Bar No. 4339057
**George M. Padis** (Admitted *Pro Hac Vice*)
3102 Maple Avenue – Suite 400
Dallas, TX 75201
T: (214) 432-2899
F: (214) 853-4367
E: mas@sbaitilaw.com
    george.padis@sbaitilaw.com
*Counsel for Kelsier Labs, LLC, Hayden Mark Davis, Gideon Davis, and Charles Thomas Davis*

**M. CRIS ARMENTA, P.C.**
M. Cris Armenta (Admitted *Pro Hac Vice*)
217 Clancy Way
Bozeman, MT 59718
T: (310) 488-2080
F: (310) 421-1021
E: cris@crisarmenta.com
*Counsel for Hayden Mark Davis*

**CERTIFICATE OF COMPLIANCE**

    In compliance with Local Civil Rule 7.1 of the United States District Courts for the Southern District of New York, I hereby certify that this memorandum of law contains 1,367 words, excluding the portions of the brief exempted by Local Civil Rule 7.1.

                                                */s/ Mazin A. Sbaiti*
                                                Mazin A. Sbaiti