UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| OMAR HURLOCK AND ANUJ MEHTA, *on behalf of themselves and all others similarly situated*<br><br>Plaintiffs,<br><br>v.<br><br>KELSIER LABS, LLC, d/b/a KELSIER VENTURES, HAYDEN MARK DAVIS, GIDEON DAVIS, CHARLES THOMAS DAVIS, METEORA, *an unincorporated association*, and BENJAMIN CHOW,<br><br>Defendants. | Case No. 1:25-cv-03891-JLR |

**AMENDED [PROPOSED] ORDER GRANTING EMERGENCY TEMPORARY RESTRAINING ORDER TO PREVENT DESTRUCTION OF BLOCKCHAIN EVIDENCE**

Upon consideration of Plaintiffs' Emergency Motion for a Temporary Restraining Order ("TRO Motion"), the memorandum of law in support thereof, the Declaration of Max Burwick, Esq. and exhibits, the Declaration of David Goldman and exhibits, the pleadings and record to date in this action, and good cause appearing, the Court makes the following findings and conclusions solely for purposes of this application:

**FINDINGS OF FACT**

1. Plaintiffs allege that Defendants orchestrated a fraudulent scheme involving the $LIBRA token on the Solana blockchain, and that investor funds were funneled into a small set of "team" and "exit" wallets associated with the LIBRA launch.

2. The Goldman Declaration, based on public blockchain explorers and forensic tools, shows that on November 16, 2025, a wallet identified as "$Libra Team Wallet 2" swapped LIBRA tokens for SOL, moved those SOL through a newly created "first hop" wallet, and

then routed the SOL through the NEAR Intents protocol into ZCash's shielded pool. Once in the shielded pool, the assets are no longer traceable on-chain.

3. The Goldman and Burwick declarations further show that on November 18, 2025, multiple LIBRA-related wallets, including Exit Wallet 1 and the $Libra Deployer Wallet, converted approximately $61.5 million in USDC into approximately 456,491 SOL and consolidated those tokens into two "positioning" wallets, as follows:

- Exit Wallet 1 (multi-signature wallet):
  61yKS9bjxWdqNgAHt439DfoNfwK3uKPAJGWAsFkC5M4C
- $Libra Deployer Wallet (First Hop):
  FKp1tEiy55hiAZs3RaYr8mj87U5ZcopB5aXgCPD8dNX7

As of approximately 3:00 p.m. Eastern Time on November 18, 2025, these wallets together held about 456,491.11 SOL, with an aggregate value exceeding $62 million, funded almost entirely from USDC balances associated with LIBRA proceeds.

4. Plaintiffs' submissions credibly describe this sequence—conversion of stablecoins to a liquid intermediary asset (SOL) and consolidation into fresh wallets with little prior history—as the "staging" phase for anonymization, which can then be completed in under two minutes using privacy coins, mixers, or cross-chain protocols.

5. The Goldman Declaration explains that certain tools and protocols—including privacy-focused cryptocurrencies such as Monero and ZCash shielded pools, mixing or tumbling services, and certain cross-chain and zero-knowledge systems—are designed to obscure or break the public transaction history on which blockchain tracing depends. Once funds are converted into such privacy environments, the on-chain trail for those funds cannot practically be reconstructed.

6. The Burwick Declaration explains that the publicly visible transaction history for LIBRA-related wallets is important evidence in this case. It allows Plaintiffs to trace

flows of investor money, identify additional participants whose only footprint is receiving funds from those wallets, quantify enrichment, and construct a time-stamped narrative of the alleged scheme.

7. If the SOL currently held in Exit Wallet 1 and the $Libra Deployer (First Hop) wallet—or digital assets into which those tokens are subsequently converted—are moved into privacy coins, mixers, shielded pools, or comparable anonymization environments, the on-chain evidence of where those proceeds go next will be permanently lost.

8. Plaintiffs' counsel notified defense counsel by email on November 18, 2025 of the observed USDC-to-SOL conversions, the consolidation into the above wallets, the resemblance of those patterns to known anonymization pipelines, and Plaintiffs' intent to seek emergency relief. Defense counsel did not commit that anonymization tools would not be used with respect to these wallets.

9. The Burwick Declaration further represents that conversion of SOL through certain decentralized protocols into privacy coins can be completed in approximately 30–60 seconds, that such protocols operate continuously and without human intervention, and that any attempt to provide formal notice and await a full adversarial hearing would create a substantial risk that the challenged transactions could be executed before the Court is able to act.

## CONCLUSIONS OF LAW

10. The Court has subject-matter jurisdiction over this action and personal jurisdiction over the appearing Defendants.

11. A temporary restraining order is an extraordinary remedy. To obtain such relief, Plaintiffs must show (1) irreparable harm in the absence of an injunction, (2) either a likelihood of success on the merits or sufficiently serious questions going to the merits to make them a

fair ground for litigation, and (3) that the balance of hardships and the public interest favor relief.

12. On the present record, Plaintiffs have made a sufficient showing of irreparable harm. The harm they identify is not the risk of non-payment of a money judgment, but the permanent destruction of uniquely probative evidence—namely, the public, transaction-level record of where LIBRA proceeds now sit and where they will be sent. Courts have recognized that the intentional destruction or concealment of evidence can constitute irreparable harm warranting injunctive relief, particularly where later sanctions cannot restore the lost information.

13. Plaintiffs have also shown, at a minimum, sufficiently serious questions going to the merits of their claims, including their fraud and RICO theories and their contention that the funds now consolidated in the identified wallets are LIBRA proceeds, to make those questions a fair ground for litigation while the evidence is preserved.

14. The balance of hardships tips decidedly in Plaintiffs' favor. Plaintiffs face the loss of critical evidence concerning the movement and allocation of alleged fraud proceeds. By contrast, the narrow restraints imposed herein do not freeze Defendants' assets or prevent them from using funds for legitimate purposes; rather, for a limited time, they restrict only the use of specific anonymization and chain-breaking tools with respect to a defined tranche of assets.

15. The public interest favors preserving relevant evidence, ensuring the integrity of judicial proceedings, and preventing the use of privacy tools to evade lawful process, while allowing parties to continue to transact and conduct business on transparent rails.

16. The relief ordered below is prohibitory and status-quo-preserving. It maintains the current traceable state of the defined assets long enough for the Court to consider fuller

adversarial presentations on preliminary-injunction relief.

17. The Court's prior denial of a preliminary injunction freezing assets does not preclude this narrower order. The present application is based on new post-hearing developments on November 16 and 18, 2025, and seeks different relief: preservation of blockchain evidence, not a freeze of all assets to secure a potential damages judgment. Nothing in this Order revisits or alters the Court's prior rulings.

**ACCORDINGLY, IT IS HEREBY ORDERED AND ADJUDGED THAT:**

### I. PERSONS BOUND

18. Defendants KELSIER LABS, LLC d/b/a KELSIER VENTURES, HAYDEN MARK DAVIS, GIDEON DAVIS, CHARLES THOMAS DAVIS, METEORA, and BENJAMIN CHOW (collectively, "Defendants"), together with their officers, agents, servants, employees, and attorneys, and all other persons who are in active concert or participation with any of them who receive actual notice of this Order, are temporarily restrained and enjoined as set forth below.

### II. ASSETS AND WALLETS COVERED

19. For purposes of this Order, the term "Covered Assets" means:

    a. All digital assets currently held in the following wallets:
       - Exit Wallet 1: 61yKS9bjxWdqNgAHt439DfoNfwK3uKPAJGWAsFkC5M4C
       - $Libra Deployer (First Hop): FKp1tEiy55hiAZs3RaYr8mj87U5ZcopB5aXgCPD8dNX7
       - Exit Wallet 2: XNFXF4svhrYVhGWQW6HX26QpPtVFvDyuC4nT5XwSwg5
       - Exit Wallet 3: B9KTwxhc9e6qrjw5nfmhgcN38oKFTBtnef8AwaTPVQ6q
       - Exit Wallet 4: FTjLYkNARZHnqekpKj5mHzbJx7EqW1fSr15Ec4oijBUQ

    b. Any digital assets into which the assets described in paragraph 20(a) are hereafter converted, exchanged, or swapped, so long as those assets remain on transparent,

traceable rails (e.g., SOL, USDC, BTC, ETH or comparable non-privacy coins and tokens).

### III. PROHIBITED CONDUCT (ANONYMIZATION AND CHAIN-BREAKING)

20. With respect to the Covered Assets, Defendants and all other persons bound by this Order are TEMPORARILY RESTRAINED AND ENJOINED from engaging in any of the following conduct:

    a. Converting, exchanging, swapping, or otherwise transforming any Covered Assets into privacy-focused or anonymity-enhancing assets, including but not limited to assets designed to obscure wallet addresses, transaction histories, or transferred amounts (such as Monero (XMR) or ZCash).

    b. Sending any Covered Assets to, or through, any mixing, tumbling, or similar obfuscation service that pools inputs and redistributes outputs in a manner intended to sever the link between sending and receiving addresses, or to any service marketed or understood as providing on-chain transaction privacy or obfuscation.

    c. Using cross-chain bridges, atomic-swap services, or similar protocols to move Covered Assets to other chains, wallets, or assets where the purpose or effect is to break traceability of those assets, particularly where such services are known to facilitate conversion into privacy coins or opaque environments.

    d. Employing protocol-level privacy technologies with respect to Covered Assets, including but not limited to shielded pools, ring signatures, stealth addresses, or zero-knowledge proof systems, where the purpose or effect is to conceal the movement or ownership of those assets.

21. For the avoidance of doubt, these prohibitions run with the Covered Assets during the pendency of this Order. Covered Assets may be moved among transparent wallets or converted among transparent, non-privacy digital assets, but may not be moved into, or

through, the anonymization or obfuscation mechanisms described above while this Order remains in effect.

### IV. PERMITTED CONDUCT

22. Nothing in this Order shall be construed to prohibit Defendants, or any other person, from:

    a. Transferring Covered Assets or other digital assets between transparent, traceable blockchain addresses, so long as such transfers do not involve the anonymization or obfuscation mechanisms prohibited in paragraph 21.

    b. Converting Covered Assets or other digital assets into United States dollars or other fiat currencies through regulated, know-your-customer (KYC) compliant exchanges and financial institutions.

    c. Using funds (including Covered Assets, so long as they remain on transparent rails) to pay reasonable attorneys' fees, litigation costs, employee salaries, contractor payments, rent, utilities, and other ordinary business expenses.

    d. Using funds (including Covered Assets, so long as they remain on transparent rails) to pay reasonable personal living expenses.

    e. Trading among widely used, non-privacy cryptocurrencies and stablecoins (such as SOL, BTC, ETH, USDC, and similar transparent assets) on ordinary exchanges, provided that any such trades do not employ the anonymization or chain-breaking mechanisms described in paragraph 21.

### V. PRESERVATION OF RECORDS

23. Defendants, and all other persons bound by this Order, shall preserve all documents and electronically stored information in their possession, custody, or control that relate to:

    a. The wallets identified in paragraph 20(a);

b. Any transfers of Covered Assets since November 16, 2025; and

c. Any use, attempted use, or planned use of privacy coins, mixers, shielded pools, cross-chain bridges, or other anonymization tools with respect to the Covered Assets.

This paragraph imposes a preservation obligation only; it does not itself require production of such materials.

### VI.  DURATION, HEARING, AND MODIFICATION

24. This Temporary Restraining Order shall take effect immediately upon entry and shall remain in effect for fourteen (14) days, unless extended for good cause, by consent of the parties, or converted to a preliminary injunction by further order of the Court.

25. A hearing on Plaintiffs' request for a preliminary injunction is set for _____, 2025 at _____ __.m. in Courtroom 20B of the United States Courthouse, 500 Pearl Street, New York, New York 10007, or at such other time and manner as the Court may direct.

26. Defendants may move to dissolve or modify this Order on two (2) days' written notice to Plaintiffs' counsel, or on such shorter notice as the Court may allow.

### VII. SECURITY

27. Pursuant to Federal Rule of Civil Procedure 65(c), the Court requires Plaintiffs to post security in the amount of $[_____], to be posted by [method] on or before [date], as security for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained. In light of the narrow scope of this Order and Defendants' continued ability to use their assets for legitimate purposes, the Court finds that a modest bond is appropriate.

### VIII. NOTICE AND SERVICE

28. Plaintiffs shall promptly serve this Order and the TRO Motion on Defendants by:

    a. Email to counsel of record for each appearing Defendant; and

    b. Any additional methods reasonably calculated to provide actual notice to any non‑appearing Defendants known to Plaintiffs.

29. Service by email to counsel of record shall be deemed effective upon transmission.

### IX. EFFECT AND ENFORCEMENT

30. This Order binds only the persons identified in paragraph 19 and those in active concert or participation with them who receive actual notice of this Order.

31. Any person who violates this Order may be subject to all lawful measures of enforcement, including but not limited to contempt proceedings, monetary sanctions, and such other relief as the Court deems appropriate.

**SO ORDERED.**

Dated: November __, 2025
      New York, New York

                                                                      _____
                                                                       Hon. Jennifer L. Rochon
                                                                       United States District Judge