UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

OMAR HURLOCK, on behalf of himself and all others similarly situated,

Plaintiff,

v.

KELSIER VENTURES, KIP PROTOCOL, HAYDEN DAVIS, GIDEON DAVIS, METEORA, THOMAS DAVIS, JULIAN PEH, and BENJAMIN CHOW,

Defendants.

Case No.: 25 CV 03891 (JLR)

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR HEARING WITH RESPECT TO COUNSEL AND APPOINTMENT AS INTERIM CLASS COUNSEL**

Timothy J. Treanor
Arlo Devlin-Brown
Managing Principals
Treanor Devlin Brown PLLC
666 Third Avenue
New York, NY 10017

*Attorneys for Plaintiff*

## TABLE OF CONTENTS


**INTRODUCTION** .................... **1**

**STATEMENT OF FACTS** .................... **2**

**ARGUMENT** .................... **6**

I. THE COURT SHOULD HOLD A HEARING TO DETERMINE WHETHER HURLOCK'S PURPORTED TERMINATION OF TREANOR DEVLIN BROWN WAS VALID .................... 6

II. TREANOR DEVLIN BROWN SHOULD BE APPOINTED INTERIM CLASS COUNSEL .................... 13

A. *Burwick Law Cannot Adequately Protect The Interests Of The Class* .................... 13

B. *The Interim Class Counsel Rule Permits Appointment Of Treanor Devlin Brown Here* .................... 18

C. *Treanor Devlin Brown Is Well Qualified To Serve As Interim Class Counsel* .................... 21

**CONCLUSION** .................... **25**

## Table Of Authorities

### CASES

*Ademiluyi v. Pennymac Mortg. Inv. Tr. Holdings I, LLC*, 2015 WL 575362 (D. Md. Feb. 10, 2015) ....18

*Amos v. Bd. of Sch. Directors of City of Milwaukee*, 408 F. Supp. 765 (E.D. Wisc. 1976)....20

*Buonasera v. Honest Co., Inc.*, 318 F.R.D. 17, 18 (S.D.N.Y. 2016) ....13

*Casper v. Lew Lieberbaum & Co.*, 1999 WL 335334 (S.D.N.Y. May 26, 1999) ....11

*Cullen v. New York State Civil Service Comm'n.*, 566 F.2d 846 (2nd Cir. 1977) ....19,20

*Davis v. Kraft Foods North America*, 2006 WL 237512 (E.D. Pa. 2006)....19

*East Maine Baptist Church v. Regions Bank*, 2007 WL 3022220 (E.D. Mo. 2007) ....19

*In re "Agent Orange" Product Liability Litigation*, 996 F.2d 1425 (2d Cir. 1993) ....11

*In re Air Cargo Shipping*, 240 F.R.D. 56 (E.D.N.Y.2006) ....21

*In re Bear Stearns Companies, Inc. Securities, Derivative, and Employee Retirement Income Security Act (Erisa) Litigation*, 2009 WL 50132 (S.D. N.Y. 2009) ....21

*In re Crude Oil Commodity Futures Litigation,* 2012 WL 569195 (S.D. N.Y. 2012) ....21

*In re Scott Wiener*, 2019 WL 2575012 (Bankr. S.D.N.Y. June 21, 2019) ....11

*Kay v. Wells Fargo & Co.*, 247 F.R.D. 572 (N.D. Cal. 2007) ....19

*LCX AG v. John Doe Nos. 1-25*, (N.Y. Sup. Ct., Index No. 154644/2022) ....14

*Maywalt v. Parker & Parsley Petroleum Company*, 67 F.3d 1072, 1078 (2d Cir. 1995) ....18,19

*People of the State of New York v. Unknown Parties* (Queens Cty. Sup. Ct., Index No. 700647/2025) ....14

*Red v. Unilever PLC*, 2010 WL 3629689 (N.D. Cal. Sept. 14, 2010) ....12

*Ortiz v. Fibreboard Corp.*, 27 U.S. 815 (1999) ....11

*White v. Experian Info. Sols.,* 993 F. Supp. 2d 1154 (C.D. Cal. 2014) ....19

## STATUTES

28 U.SC. § 1332(d) .................................................................................................... 9

## RULES

Federal Rule of Civil Procedure 23 ............................................................................ passim
NYRCP 1.0(j)……………………………………………………………………………….7
NYRPC 1.2…………………………………………………………………………………6
NYRPC 1.4. .........................................................................................................7,10
NYRPC 1.5(g)……..……………………………………………………………………….7

## ETHICS OPINIONS

NYSBC Ethics Opinion 677 (Dec. 12, 1995) ..........................................................................10

NYSBC Ethics Opinion 64 (1977) ..................................................................................10

## Introduction

In a troubling turn of events, Burwick Law began attempting to remove Treanor Devlin Brown PLLC (hereinafter, "Treanor Devlin Brown")[1] from further involvement in this case two days after the firm secured for Plaintiff a temporary restraining order ("TRO") freezing as much as $280 million in cryptocurrency to the benefit of the victim class. [redacted]

Counsel in a class action cannot be removed based on the mercurial whims of a single lawyer who thinks he can control counsel appointments. Removal of counsel must be based on the informed consent of the client. [redacted] the Court should appoint Treanor Devlin Brown as interim class counsel to protect the interests of the putative class. Rule 23(g)(3) provides that the Court "may designate interim counsel to act on behalf of a putative class before determining whether to certify the class." [redacted]

[1] Treanor Law PLLC changed its name to Treanor Devlin Brown PLLC effective June 19, 2025, to reflect the addition of a new partner, Arlo Devlin-Brown. We will refer to the firm by the new name throughout for convenience.

[redacted]

Treanor Devlin Brown is well-positioned to serve as interim class counsel. Its founding partners have a combined five decades of experience investigating, prosecuting and defending complex financial frauds in federal court. The firm has amply demonstrated its ability to litigate on behalf of the class in this matter based on its successful application for the TRO, [redacted]

The $LIBRA scam unfolded the night of February 14, 2025. The Defendants pumped up the price of the worthless token with a bogus story about helping the Argentine economy together with a precisely-timed promotion by the Argentine President. They then pulled out hundreds of millions of dollars in cryptocurrencies that investors had paid for the tokens before the price crashed hours later and the scam was revealed.

Treanor Devlin Brown began investigating a potential $LIBRA class action shortly thereafter. Declaration of Timothy J. Treanor ¶6. [redacted] While Treanor's work was underway, Burwick Law

filed a complaint (the "Complaint") in New York County Supreme Court alleging three New York state law violations. The Complaint called for the appointment of a receiver in its prayer for relief, but Burwick Law took no steps to freeze funds during the two months the case sat in state court before it was removed to federal court by defendant Benjamin Chow.

On April 2, reports appeared in the media that Treanor Devlin Brown was investigating the $LIBRA scam for potential litigation. *Id.* ¶6. Mr. Burwick reached out on the same day suggesting that the firms work together, which led to negotiations related to a collaboration on $LIBRA and other matters. *Id.* The parties reached an agreement on roles in the planned litigation, and signed a co-counsel Term Sheet dated May, 4 2025. *Id.*

[redacted]

[redacted]

The motion was filed *ex parte* and pursuant to the Court's practices for sealed submissions. On May 27th, the Court conducted a non-public, *ex parte* hearing on the motion, with Mr. Treanor leading the argument. The Court granted the motion the same day, and it was successfully served the following day, with Circle confirming it had frozen nearly $58 million in USDC.

Two days later, Mr. Burwick left a message for Mr. Treanor that he wanted Treanor Devlin Brown out of the case. *Id.* ¶12. And on the following morning, Mr. Burwick sent written notice that the co-counsel agreement was terminated. *Id.* The termination notice purported to order this firm to "not take any further action or contact the court without our knowledge and written consent." [redacted]

Four days later Treanor Devlin Brown received from Burwick Law's outside counsel a letter apparently signed by Omar Hurlock, but clearly drafted by a lawyer, "terminat[ing] the Treanor Devlin Brown Fim PLLC ("Treanor") and all attorneys formally or informally associated with it." *Id.* ¶26. Outside counsel prepared a draft motion bearing the electronic signature of Timothy J. Treanor, seeking leave to withdraw based on Hurlock's supposed wishes, and instructing Treanor Devlin Brown that it be filed with the Court as written, with any alterations to be first discussed. *Id.*

[redacted]

[redacted] Max Burwick began commenting publicly on the Order in the early afternoon of May 28th, more than 24 hours before the Court publicly filed the Order. *Id.* ¶23.

[redacted]

[redacted]

## Argument

### I. The Court Should Hold A Hearing To Determine Whether Hurlock's Purported Termination Of Treanor Devlin Brown Was Valid

Co-counsel does not get to hire and fire other co-counsel at a whim. The decision must be made by the mutual client, after receiving information sufficient to make such a decision. As a starting point, "a lawyer shall abide by a client's decisions concerning the objectives of representation." NYRPC 1.2. Accordingly, "[a] lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the

representation." NYRPC 1.4(b). "A lawyer may not withhold information to serve the lawyer's own interest." NYRPC 1.4, note 7. Informed consent "to a proposed course of conduct" can only be obtained from a client "after the lawyer has communicated information adequate for the person to make an informed decision, and after the lawyer has adequately explained to the person the material risks of the proposed course of conduct and reasonably available alternatives." NYRPC 1.0(j). The initiation and termination of co-counsel arrangements are circumstances in which a client's informed consent is vital. NYRPC 1.5(g) requires that "a client's agreement is confirmed in writing" to co-counsel arrangements in which fees are split. *See also,* New York State Bar Association Ethics Opinions 864 (2011), 1160 (2017) and 1244 (2022) (affirming written consent requirement for co-counsel agreements in various contexts). A change in these arrangements likewise requires a client's informed consent, especially where a proposed change is initiated by counsel.

[redacted]

[redacted]

[redacted]

[redacted] Both Mr. Treanor and his new partner Mr. Devlin-Brown have spent decades prosecuting and defending cases involving some of the most complex fraud schemes of our era, including numerous cases involving crypto fraud. Treanor Decl.¶¶ 29-33.

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

---

[redacted]

## II. Treanor Devlin Brown Should Be Appointed Interim Class Counsel

Regardless of whether Mr. Hurlock personally wishes to continue to engage Treanor Devlin Brown in these proceedings, the Court should appoint this firm as interim class counsel. Rule 23(g)(3) provides that the Court "may designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action." Doing so "clarifies responsibility for protecting the interests of the class during precertification activities." *Buonasera v. Honest Co., Inc.*, 318 F.R.D. 17, 18 (S.D.N.Y. 2016), *quoting* Manual For Complex Litigation (Fourth) § 21.11 (2004).

[redacted]

[redacted]

[8] We can provide our analysis on this issue if the Court deems it necessary to its resolution of this motion.

[9] See, e.g., *LCX AG v. John Doe Nos*. 1-25, (N.Y. Sup. Ct., Index No. 154644/2022) (order restraining crypto assets alleged to have been stolen, including freeze order to Circle); *People of the State of New York v. Unknown Parties* (Queens Cty. Sup. Ct., Index No. 700647/2025) (freeze order to Circle for stolen cryptocurrency).

[redacted]

Portnoy was intimately involved in the $LIBRA scam, and received approximately $5 million in $LIBRA proceeds from defendant Haden Davis to show for it. In February 2025, Portnoy had begun posting about his ability to inflate the price of meme coins—which would

---

[redacted]

send the price up and allow Portnoy to sell before they fell again and make tremendous profits. *Id.* ¶15. Portnoy then asked Davis for assistance in launching his own meme coin, and Davis flew to Portnoy's home for meetings. *Id.* At some point, Davis asked Portnoy to promote $LIBRA on his social media platforms when it was ready to launch. *Id.* Portnoy initially agreed and was "seconds away" from doing so. *Id.* He apparently balked when Davis told Portnoy that Portnoy needed to keep secret the fact that Davis would give him millions in free $LIBRA in exchange for the touting. *Id.*

Still Portnoy, armed with inside information about the timing of the launch, and that President Milei would back the token, spent about $5 million of his own money to buy $LIBRA shortly after announcement. *Id.* ¶ 16. But he failed to sell it before the token collapsed to almost nothing, causing Portnoy to lose virtually his entire investment. Davis immediately sent Portnoy his money back even while refusing to issue refunds to other purchasers. *Id.* And Davis sent Portnoy these funds from a wallet that had links to other pump-and-dump schemes that Davis and other defendants had conducted on Meteora. *Id.* Portnoy was then confronted by a reporter who saw the blockchain transfer and asked if he had been reimbursed, which he then publicly admitted. *Id.* He characterized what had been returned to him "stolen funds" and acknowledged that Davis probably should not have sent them back to him. *Id.*

[redacted]

[redacted]

[redacted]

### B. The Interim Class Counsel Rule Permits Appointment Of Treanor Devlin Brown Here

"The ultimate responsibility to ensure that the interests of class members are not subordinated to the interests of either the class representatives or class counsel rests with the district court." *Maywalt v. Parker & Parsley Petroleum Company*, 67 F.3d 1072, 1078 (2d Cir. 1995). "[R]ivalry or uncertainty" among attorneys is therefore a prime situation where the appointment of interim counsel is "particularly appropriate." Advisory Committee Notes to Rule 23(g). Accordingly, "[t]he relief available under Rule 23(g) is generally invoked where" discord among lawyers "may result in confusion or duplication of efforts before the class is certified." *Ademiluyi v. Pennymac Mortg. Inv. Tr. Holdings I, LLC*, 2015 WL 575362,*7 (D. Md. Feb. 10, 2015).

The Court has wide latitude in appointing counsel in situations such as these. A court is not required to accept a named plaintiff's choice of his personal counsel to represent the class at large. *See Maywalt*, 67 F.3d at 1078 (rejecting efforts by named plaintiffs to appoint their preferred class counsel)*; see also Kay v. Wells Fargo & Co.*, 247 F.R.D. 572, 579 (N.D. Cal. 2007) (finding applicant counsel inadequate because of undue delay in conducting discovery and requiring, as a condition of certification, that the class representative publicize notice reasonably calculated to solicit other attorneys to compete for appointment in applicant's place); *East Maine Baptist Church v. Regions Bank*, 2007 WL 3022220, *8–9 (E.D. Mo. 2007) (denying without prejudice a motion for appointment of class counsel in order to permit the class representatives to solicit impartial co-counsel who might be added to remedy the conflict of interest problems of the applicant attorney); *Davis v. Kraft Foods North America*, 2006 WL 237512, *12 (E.D. Pa. 2006) (finding class counsel to possess conflict with the class and dismissing class action claims without prejudice to allow "[p]laintiff's retention of replacement counsel").

Where counsel representing a named plaintiff is inadequate, a court can consider "appointing independent and entirely unrelated counsel going forward." *White v. Experian Info. Sols.,* 993 F. Supp. 2d 1154, 1177 (C.D. Cal. 2014) (considering but declining to do so), as amended (May 1, 2014), *aff'd sub nom. Radcliffe v. Hernandez*, 818 F.3d 537 (9th Cir. 2016). For example, in *Cullen v. New York State Civil Service Comm'n.,* 566 F.2d 846 (2nd Cir. 1977), the district court found that the class counsel chosen by the named plaintiff could not adequately safeguard class interests, and appointed instead an experienced law professor not previously involved in the matter. The Second Circuit rejected the interlocutory appeal of the district court's decision, noting that absent "exceptional circumstances" a court's selection of class

counsel "should be left untouched by the appellate court." *Id.* at 849. The Circuit commented favorably on the district court's refusal to abide by the plaintiff's preferred class representative: "Since absent class members are conclusively bound by a party alleged to represent their interests, the court's selection of counsel for the absent class should be guided by the best interests of those members, *not the entrepreneurial initiative of the named plaintiff's counsel.*" 566 F.2d at 849 (emphasis added).

Similarly, in *Amos v. Bd. of Sch. Directors of City of Milwaukee*, the district court appointed counsel other than preferred counsel of the class representative to serve class counsel. 408 F. Supp. 765 (E.D. Wis.), *aff'd sub nom. Armstrong v. Brennan*, 539 F.2d 625 (7th Cir. 1976), *vacated on other grounds*, 433 U.S. 672, (1977). The court observed that "[w]hile in most instances lawyers designated as legal representatives of the class are the retained counsel of the named representative parties, there appears to be no good reason why this should necessarily be so." *Id.* at 774-75. "To hold that the Court is limited in its choice of class counsel to attorneys appearing for the representative parties—to assert, in effect, that the class will be represented by those attorneys or not at all—is to instill a controlling element of entrepreneurial initiative into the situation which may be contrary to the best interests of the class which the Court has a fiduciary obligation to protect." *Id.* at 775. This approach does not "preclude the participation of the representative parties' retained counsel in subsequent proceedings" as personal counsel to the named plaintiff. *Id. See also Cullen*, 566 F.3d at 849 ("Moreover, appellants have not been deprived of their chosen counsel, for he still remains in the case. They have simply been prevented from imposing their choice on the absent class members.").

### C. Treanor Devlin Brown Is Well Qualified To Serve As Interim Class Counsel

When appointing interim class counsel, courts look to the same factors used in determining the adequacy of class counsel under Rule 23(g)(1)(A). *See In re Crude Oil Commodity Futures Litigation,* 2012 WL 569195, at *1 (S.D. N.Y. 2012); *In re Bear Stearns Companies, Inc. Securities, Derivative, and Employee Retirement Income Security Act (Erisa) Litigation*, 2009 WL 50132, at *11 (S.D. N.Y. 2009), amended on denial of reconsideration, 2009 WL 2168767 (S.D.N.Y. 2009); *In re Air Cargo Shipping*, 240 F.R.D. 56, 57 (E.D.N.Y. 2006). These factors include: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources counsel will commit to representing the class. In addition, Rule 23(g)(1)(B) permits the court to consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class."

Treanor Devlin Brown is an appropriate choice for interim class counsel, particularly under these circumstances. Mr. Treanor has been a practicing litigator for three decades with extensive experience in the most challenging and complex fraud cases of the era. Treanor Decl. ¶29-30. As a federal prosecutor, Mr. Treanor led investigations that ultimately recovered billions of dollars from offshore illegal gambling operations and the financial institutions that serviced them. *Id.* ¶29. Following this, Mr. Treanor served for 17 years as partner at Sidley Austin, and for more than ten of those years was Global Co-Chief of the firm's White Collar Crime and Investigations practice. *Id.* ¶30. He has received extensive industry recognition, including being named in 2022 by Law 360 as one of its five annual "White Collar MVPs." *Id.*

His work involved complex financial fraud investigations, civil RICO matters, and a range of other matters for global companies and financial institutions. *Id.* He also served as lead counsel to the Monitor of HSBC Bank and separately recovered hundreds of millions of dollars of corruption and fraud proceeds for the world soccer community. *Id.* His practice has involved significant cryptocurrency cases, including defending the "Bitcoin King" in the Silk Road prosecutions and representing a portfolio manager of Three Arrows Capital, the crypto hedge fund that collapsed and contributed to the crypto winter in 2022. *Id.*

Arlo Devlin-Brown brings a similarly broad and deep set of experiences to this litigation. Mr. Devlin-Brown served as an Assistant U.S. Attorney in the U.S. Attorney's Office for the Southern District of New York for over a decade, ultimately heading up its Public Corruption Unit. *Id.* ¶¶ 31-32. He handled the investigation and prosecution of some of the most complex financial fraud cases of the era, including the successful prosecution of SAC Capital and a number of its portfolio managers in the largest insider trading case ever charged and an enforcement action against JP Morgan Chase relating to its handling of Madoff accounts that led to $1.7 billion in recovery for the Ponzi scheme's victims. *Id.* ¶31. Mr. Devlin-Brown then served for nine years as a partner at Covington & Burling LLP, one of the country's preeminent law firms, in which he represented companies and individuals in complex fraud and money laundering investigations and related civil litigation, including class actions. *Id.* ¶32. Like Mr. Treanor, he has extensive blockchain experience, having represented one of the leading crypto lending platforms in developing compliance programs and more than 15 current and former employees of FTX in connection with DOJ, SEC and CFTC investigations. *Id.* Treanor Devlin Brown expects to add additional attorneys and investigative staff to meet the needs of this and

other litigation demands, and its partners have a history of working well with co-counsel and opposing counsel of all sorts, which is part of what has made the experience here with Burwick Law so extraordinary and frankly disappointing.

Treanor Devlin Brown has likewise proven its mettle in this matter. [redacted]

[redacted]

The continued role of Treanor Devlin Brown is particularly vital in the near term, while the TRO freezing the assets is challenged and while an amended complaint building on the long-running investigative efforts should be filed. Treanor Devlin Brown is confident that its handling of these next steps will demonstrate its strength to continue in the role as interim class counsel, and ultimately class counsel once the case is certified. The Court of course can at any point reassess which counsel or combination of counsel protects the best interests of the class. What is clear now is that Burwick Law's efforts to remove this firm does not serve the interests of the class, and appointment of Treanor Devlin Brown as class counsel can protect it.

## Conclusion

For the foregoing reasons, the Court should order a hearing to determine whether Omar Hurlock provided informed consent to the termination of Treanor Devlin Brown as his counsel, and the Court should appoint Treanor Devlin Brown interim class counsel in this case.

DATED: June 23, 2025

Respectfully submitted,

/s/Timothy J. Treanor
Timothy J. Treanor
Arlo Devlin-Brown
Managing Principals
Treanor Devlin Brown PLLC
666 Third Avenue
New York, NY 10017

*Attorneys for Plaintiff*